1  Abby Sullivan Engen (SBN 270698)
   asullivanengen@centrolegal.org
2  CENTRO LEGAL DE LA RAZA
   3400 E. 12th Street
3  Oakland, CA 94601
   Telephone: (510) 244-4312
4
   *Attorney for Petitioner*
5

6

7                    **UNITED STATES DISTRICT COURT**
8                  **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN FRANCISCO DIVISION**
9

10  **Frescia Anthuane GARRO PINCHI**,          Case No. 3:25-CV-5632

11              Petitioner,                     **MEMORANDUM OF POINTS AND**
                                                **AUTHORITIES IN SUPPORT OF**
12              v.                              **PETITIONER'S EX PARTE**
                                                **MOTION FOR TEMPORARY**
13  **POLLY KAISER**, Acting Field Office Director of  **RESTRAINING ORDER**
    the San Francisco Immigration and Customs
14  Enforcement Office; **TODD LYONS**, Acting
    Director of United States Immigration and Customs
15  Enforcement; **KRISTI NOEM**, Secretary of the
    United States Department of Homeland Security,
16  **PAMELA BONDI**, Attorney General of the United
    States, acting in their official capacities,
17
                Respondents.
18

19

20

21

22

23

24

25

26

27

28

---

MPA ISO PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-CV-5632

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

INTRODUCTION ............................................................................................................... 7

BACKGROUND ................................................................................................................. 8

ARGUMENT ..................................................................................................................... 13

   I.  PETITIONER IS LIKELY TO SUCCEED ON THE MERITS. ...................................... 13

      A. Petitioner's detention violates substantive due process because she is neither a flight risk nor a danger to the community ............................................................................. 13

      B. The government violated procedural due process by depriving Petitioner of the opportunity to contest her arrest and detention before a neutral decisionmaker ........... 16

   II. PETITIONER WILL CONTINUE TO SUFFER SERIOUS AND IRREPARABLE INJURY ABSENT A TRO. ..................................................................................... 19

   III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH STRONGLY IN PETITIONER'S FAVOR. ........................................................... 20

SECURITY ....................................................................................................................... 21

CONCLUSION ................................................................................................................. 21

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A.E. v. Andrews*,
4
   2025 WL 1424382 (E.D. Cal. May 16, 2025) ................................................... 17, 18

5
*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................................ 13, 19

6
*Baca v. Moreno Valley Unified Sch. Dist.*,
7
   936 F. Supp. 719 (C.D. Cal. 1996) ........................................................................ 21

8
*Bent v. Barr*,
   445 F. Supp. 3d 408, 419 (N.D. Cal. 2020) ............................................................ 20
9

*California v. Azar*,
10
   911 F.3d 558 (9th Cir. 2018) .................................................................................. 20

11
*Cnty. of Sacramento v. Lewis*,
12
   523 U.S. 833 (1998) ................................................................................................ 14

13
*Demore v. Kim*,
   538 U.S. 510 (2003) ................................................................................................ 14
14

*Diaz v. Kaiser*,
15
   2025 WL 1676854 (N.D. Cal. June 14, 2025) ................................................. 18, 19

16
*Diep v. Wofford*,
17
   2025 WL 6047444 (E.D. Cal. Feb. 25, 2025) ......................................................... 17

18
*Doe v. Becerra*,
   2025 WL 691664 (E.D. Cal. Mar. 3, 2025) ...................................................... 18, 19
19

*Doe v. Noem*,
20
   __F. Supp. 3d __, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ...................... 19

21
*Env't Prot. Info. Ctr. v. Carlson*,
22
   968 F.3d 985 (9th Cir. 2020) .................................................................................. 20

23
*Gagnon v. Scarpelli*,
   411 U.S. 778 (1973) ................................................................................................ 16
24

*Garcia v. Bondi*,
25
   2025 WL 1676855 (N.D. Cal. June 14, 2025) ....................................................... 19

26
*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ................................................................................ 19
27

*Hernandez v. Sessions*,
28
   872 F.3d 976 (9th Cir. 2017) ............................................................................ passim

*Hurd v. D.C., Gov't,*
   864 F.3d 671 (D.C. Cir. 2017) ................................................................................. 16

*Index Newspapers LLC v. U.S. Marshals Serv.,*
   977 F.3d 817 (9th Cir. 2020) .................................................................................... 21

*Jackson v. Indiana,*
   406 U.S. 715 (1972) ................................................................................................. 14

*Jimenez v. Wolf,*
   2020 WL 510347 (N.D. Cal. Jan. 30, 2020) ............................................................ 17

*Johnson v. Ryan,*
   55 F.4th 1167 (9th Cir. 2022) ................................................................................... 16

*Jones v. Blanas,*
   393 F.3d 918 (9th Cir. 2004) .................................................................................... 17

*Jorge M. F. v. Wilkinson,*
   2021 WL 783561 (N.D. Cal. Mar. 1, 2021) ................................................. 18, 19, 20

*Jorgensen v. Cassiday,*
   320 F.3d 906 (9th Cir. 2003) .................................................................................... 21

*Mahdawi v. Trump,*
   2025 WL 1243135 (D. Vt. Apr. 30, 2025) ................................................................ 14

*Martinez v. Clark,*
   124 F.4th 775 (9th Cir. 2024) ................................................................................... 18

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) ............................................................................................ 16, 17

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012) .................................................................................... 19

*Morrissey v. Brewer,*
   408 U.S. 471 (1972) ............................................................................................ 16, 17

*Nielsen v. Preap,*
   586 U.S. 392 (2019) ................................................................................................. 14

*Nozzi v. Hous. Auth. of City of Los Angeles,*
   806 F.3d 1178 (9th Cir. 2015) .................................................................................. 17

*Ortega v. Bonnar,*
   415 F. Supp. 3d 963 (N.D. Cal. 2019) ......................................................... 16, 17, 18

*Padilla v. Immigr. & Customs Enf't,*
   953 F.3d 1134 (9th Cir. 2020) .................................................................................. 21

*Padilla v. U.S. Immigr. and Customs Enf't*,
704 F. Supp. 3d 1163 (W.D. Wash. 2023) ................................................................. 15

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
766 F.2d 1319 (9th Cir. 1985) .................................................................................. 21

*Romero v. Kaiser*,
2022 WL 1443250 (N.D. Cal. May 6, 2022) .............................................................. 19

*Rosales-Mireles v. United States*,
585 U.S. 129 (2018) .................................................................................................. 20

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) ..................................................................... 15

*Singh v. Holder*,
638 F.3d 1196 (9th Cir. 2011) .................................................................................. 18

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) .................................................................................... 13

*Valdez v. Joyce*,
2025 WL 1707737 (S.D.N.Y. June 18, 2025) ...................................................... 18, 19

*Vargas v. Jennings*,
2020 WL 5074312 (N.D. Cal. Aug. 23, 2020) ........................................................... 19

*Warsoldier v. Woodford*,
418 F.3d 989 (9th Cir. 2005) .................................................................................... 20

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ...................................................................................................... 13

*Wolff v. McDonnell*,
418 U.S. 539 (1974) .................................................................................................. 13

*Young v. Harper*,
520 U.S. 143 (1997) .................................................................................................. 16

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ................................................................................. 8, 13, 14, 16

*Zinermon v. Burch*,
494 U.S. 113 (1990) .................................................................................................. 16


**Regulations**

8 C.F.R. § 239.2(a)(7), (c) ........................................................................................ 12

**Other Authorities**

Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deporta*tion Push, Wash. Post, May 23, 2025............................................................. 11

Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam *Jordan, How ICE is Seeking to Ramp Up Deportations Through Courthous*e Arrests, N.Y. Times, May 30, 2025.................................. 12

*Make the Road N.Y. v. Noem*, No. 1:25-cv-00190-JMC, Plaintiffs' Mem. in Support of Mot. to Postpone the Date of Agency Action, Dkt. 50-1 at 11 (D.D.C. June 10, 2025) ..........................

Margaret Kadifia, *Immigrants Fearful as ICE Nabs at Least 15 in S.F., Including Toddler,* Mission Local, June 5, 2025 ...................................................................................................... 11

Sarah Ravani, *ICE Arrests Two More at S.F. Immigration Court, Advocates Say*, S.F. Chron., June 12, 2025 ........................................................................................................................... 11

Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, S.F. Standard, May 27, 2025 ............................................................................................................. 11

U.S. Dep't of Homeland Sec. Off.of Inspector Gen., OIG 24-23, *Final Report: Results of an UnannouncedInspection of ICE's Golden State Annex in McFarland, California* (Apr. 18, 2024) ...................................................................................................................................... 15

## INTRODUCTION

Petitioner Frescia Anthuane Garro Pinchi went to the San Francisco Immigration Court on July 3, 2025, expecting a routine master calendar hearing in which she would discuss her case with the immigration judge and schedule further proceedings on her pending asylum application. So she was surprised when, during the hearing, the Department of Homeland Security ("DHS") lawyer orally moved to dismiss her case altogether. Petitioner, unrepresented by counsel, orally opposed DHS's motion. The Immigration Judge did not grant the motion to dismiss. Instead, the judge gave Petitioner time to respond and set a further hearing for July 31, 2025, ominously adding, "but I probably won't see you that day." Indeed, minutes after Petitioner exited the courtroom, a group of roughly four DHS agents, some of whom were masked to conceal their identities, arrested her before she could leave the courthouse, violently separating her from her loved ones who were accompanying her in court. They did not present a warrant or tell Petitioner why they were arresting her.

Nothing about Petitioner's immigration case justified this arrest and detention. When Petitioner first entered the country in April of 2023, federal immigration officers released her within days on her own recognizance and with no ankle shackle or intrusive supervision conditions. The government thus necessarily determined that she did not pose a flight risk or danger to the community—let alone one warranting detention. Since then, Petitioner's exemplary conduct has only confirmed the government's prediction. She attended every court hearing and check-in. She obtained full-time employment. She has never been arrested and has no criminal history—anywhere in the world.

None of this mattered to the government. Rather than determining that Petitioner posed a flight risk or danger to the community, federal immigration agents arrested her pursuant to a new, sweeping, and unlawful policy targeting people for arrest at immigration courthouses for the purpose of placing them in expedited-removal proceedings. This enforcement campaign is specifically intended to increase ICE arrest numbers to satisfy internal agency quotas.

Petitioner's summary arrest and indefinite detention flout the Constitution. The *only* legitimate interests that civil immigration detention serves are mitigating flight risk and

preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Petitioner without making any affirmative showing of changed circumstances, the government violated Petitioner's procedural due process rights. At the very least, she was constitutionally entitled to a hearing before a neutral decisionmaker at which the government should have justified her detention.

As a result of her arrest and detention, Petitioner is suffering irreparable and ongoing harm. The unconstitutional deprivation of "physical liberty" "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner also faces numerous additional irreparable harms due to her detention, including acute medical dangers detailed below and in the attached declarations; separation from her community; and disruption in her employment and consequent health risks to her ill mother in Peru.

In light of this irreparable harm, and because she is likely to succeed on the merits of her due process claims, Petitioner respectfully requests that this Court issue a temporary restraining order ("TRO") immediately releasing her from custody and enjoining the government from re-arresting her absent the opportunity to contest that arrest at a hearing before a neutral decision maker. To maintain this Court's jurisdiction, the Court should also prohibit the government from transferring Petitioner out of this District and removing her from the country until these proceedings have concluded.

## BACKGROUND

Petitioner Garro Pinchi is a 27-year-old asylum seeker who fled persecution in Peru. Petitioner's Habeas Petition ("Pet.") ¶ 1. Petitioner was briefly detained by federal agents after entering the United States. Declaration of Brayan Santiago Ropero Cano ("Ropero Cano Dec.") ¶ 12. Determining that she was not a flight risk or a danger to the community, the agents released Petitioner on her own recognizance with a notice to appear for removal proceedings in

immigration court. *Id.*

Petitioner has lived in California for over two years. Declaration of Abby Sullivan Engen ("Sullivan Engen Dec.") ¶ 4. Petitioner obtained a full-time job at a company called Multistream Service. Ropero Cano Dec. ¶ 14. She is an exemplary employee and was recognized as "Employee of the Month" just last month. *Id.*

In April 2024, Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture. Sullivan Engen Dec. ¶ 4. Petitioner has no criminal record and has meticulously complied with all the requirements that the government has imposed on her. Ropero Cano Dec. ¶¶ 11-12. She has diligently attended every immigration court hearing, *id.* ¶ 12, and has filed her application for protection from removal, Sullivan Engen Dec. ¶ 4. Petitioner was never required to be on an ankle monitor or any other form of intensive supervision. Ropero Cano Dec. ¶ 12.

On July 3, 2025, as the government told her to do, Petitioner went to San Francisco Immigration Court for a routine hearing before Immigration Judge ("IJ") Patrick O'Brien, where the government orally moved to dismiss her case. Although the government did not offer an explanation for why it sought to dismiss her case, its new practice is to seek dismissal in order to initiate fast-track "expedited removal" proceedings—even for people like Petitioner who are statutorily ineligible for them. *See Make the Road N.Y. v. Noem*, No. 1:25-cv-00190-JMC, Plaintiffs' Mem. in Support of Mot. to Postpone the Date of Agency Action, Dkt. 50-1 at 11 (D.D.C. June 10, 2025) (citing multiple instances in which government sought expedited removal for people who had been present for more than two years). IJ O'Brien did not grant the motion to dismiss. Instead, the judge gave Petitioner time to respond and set a further hearing for July 31, 2025, ominously adding, "but I probably won't see you that day."

Indeed, minutes after Petitioner exited the courtroom, a group of roughly four DHS agents, some of whom were masked to conceal their identities, arrested her before she could leave the courthouse, violently separating her from her loved ones who were accompanying her in court. Declaration of Ariel Koren ("Koren Dec.") ¶¶ 10-12; Declaration of Matthew Bridges ("Bridges Dec.") ¶¶ 5-7. They did not present a warrant or tell Petitioner why they were arresting her. Bridges

Dec. ¶ 6.

   The agents took Petitioner to the San Francisco ICE office, located on a different floor of the same building. Koren Dec. ¶ 12. At 12:48 p.m., Counsel for Petitioner—who had been in communication with Ariel Koren and Matthew Bridges, Petitioner's friends who accompanied to her immigration court hearing—was able to speak briefly to Petitioner via Ms. Koren's phone, and obtained consent to represent her *pro bono* in connection with his habeas petition and a separate release request before ICE. Sullivan Engen Dec. ¶ 6. Counsel filed by email a Notice of Entry of Appearance before ICE along with a request for Petitioner's immediate release, which included a summary of Petitioner's medical conditions. *Id.* ¶ 7. Petitioner has serious medical conditions that require monitoring and frequent medication, described in detail below. At 1:30 p.m., Counsel for Petitioner sent a follow-up email attaching the newly-filed habeas petition, requesting that Petitioner not be transferred out of the Northern District of California. *Id.* At the time the habeas petition was filed, Petitioner was in Respondents' physical custody in this District. *See generally* Koren Dec., Bridges Dec. (detailing contact with Petitioner at the ICE office in San Francisco until roughly 2:25 p.m.).

   During the hours that followed, while Petitioner remained in San Francisco, ICE representatives refused to speak with Counsel for Petitioner regarding the release request or Petitioner's medical conditions. Sullivan Engen Dec. ¶ 8. ICE refused to disclose whether they intended to transfer her. Bridges Dec. ¶ 8. ICE has not, to date, acknowledged any understanding of Petitioner's medical conditions or intent to provide appropriate medication or care. At approximately 2:30 p.m., an ICE officer removed Petitioner from the room in which she was communicating with Ms. Koren and Mr. Bridges, without disclosing where she was being taken. Koren Dec. ¶ 24; Bridges Dec. ¶ 12.

   At 3:00 p.m., Counsel for Petitioner spoke on the phone to the Civil Chief of the U.S. Attorney's Office for the Northern District of California. Sullivan Engen Dec. ¶ 9. Counsel informed the Civil Chief that the habeas petition had been filed and a Motion for TRO would be forthcoming. *Id.* Counsel provided a copy of the petition by email to the Civil Chief. *Id.*

   Counsel's repeated efforts to speak directly to ICE before the end of the day were

unsuccessful. Around 3:30 p.m., Ms. Koren and Mr. Bridges were told that the building was now closed and no one would attend to them. Koren Dec. ¶ 26; Bridges Dec. ¶ 15. It is unknown whether Petitioner remains in a temporary cell at the ICE building in San Francisco, or whether she has been transferred to a detention facility outside of this District. Either way, she has no access to the medications she must take every eight hours, and she is experiencing physical withdrawal symptoms. Bridges Dec. ¶ 14; Ropero Cano Dec. ¶ 6.

This arrest is part of a new, nationwide DHS strategy of sweeping up people who attend their immigration court hearings, detaining them, and unlawfully seeking to re-route them to fast-track deportations. Pet. ¶ 4. Since mid-May, DHS has implemented a coordinated practice of leveraging immigration detention to strip people like Petitioner of their substantive and procedural rights and pressure them into deportation. *Id.* DHS is aggressively pursuing this arrest and detention campaign at courthouses throughout the country, including Northern California. Pet. ¶¶ 47-50. At the San Francisco Immigration Court, where Petitioner was arrested, dozens of people have been arrested in the last month after attending their routine immigration hearings.[1] Pet. ¶ 48.

Immigration detention is civil, and thus is permissible for only two reasons: to ensure a noncitizen's appearance at immigration hearings and to prevent danger to the community. But DHS did not arrest and detain Petitioner—who demonstrably poses no risk of absconding from immigration proceedings or danger to the community—for either of these reasons. Instead, as part of its broader enforcement campaign, DHS detained Petitioner to strip her of her procedural rights, force her to forfeit her application for relief, and pressure her into fast-track removal.

This "coordinated operation" is "aimed at dramatically accelerating deportations" by arresting people at the courthouse and placing them into expedited removal.[2] Pet. ¶ 41. The first

---

[1] Sarah Ravani, *ICE Arrests Two More at S.F. Immigration Court, Advocates Say*, S.F. Chron., June 12, 2025, https://www.sfchronicle.com/bayarea/article/sf-immigration-court-arrests-20374755.php; Margaret Kadifia, *Immigrants Fearful as ICE Nabs at Least 15 in S.F., Including Toddler*, Mission Local, June 5, 2025, https://missionlocal.org/2025/06/ice-arrest-san-francisco-toddler/; Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, S.F. Standard, May 27, 2025, https://sfstandard.com/2025/05/27/undercover-ice-agents-make-arrests-san-francisco-court/.

[2] Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Wash. Post, May 23, 2025, https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump;

step of the operation typically takes place inside the immigration court. Pet. ¶ 42. When people arrive in court for their master calendar hearings, DHS attorneys orally file a motion to dismiss the proceedings—without any notice to the affected individual. *Id.* Although DHS regulations do not permit such motions to dismiss absent a showing that the "[c]ircumstances of the case have changed," 8 C.F.R. § 239.2(a)(7), (c), DHS attorneys are not conducting any case-specific analysis of changed circumstances before filing these motions to dismiss. Pet. ¶ 42.

The next step takes place outside the courtroom. Pet. ¶ 45. ICE officers, in consultation with DHS attorneys and officials, station themselves in courthouse waiting rooms, hallways, and elevator banks. *Id.* When an individual exits their immigration hearings, ICE officers—typically masked and in plainclothes—immediately arrest the person and detain them. *Id.* The officers execute these arrests regardless of how the IJ rules on the government's motion to dismiss. *Id.* Once the person is detained, DHS attorneys often unilaterally transfer venue to a "detained" immigration court where they renew their motion to dismiss and seek to place individuals in expedited removal. Pet. ¶ 48.

Petitioner will suffer serious and ongoing harm every day she remains in detention. Petitioner's medical conditions include:

    a.  She recently underwent an operation for a vaginal tumor which continues to be monitored, requiring medication to prevent recurrence, which would be life-threatening. Ropero Cano Dec. ¶ 4.

    b.  She has generalized anxiety disorder, clinical depression, and post-traumatic stress disorder, which require medication every 8 hours. *Id.* ¶ 5. Without access to her medication, she suffers from physiological symptoms, including physical trembling and inability to breathe. *Id.* ¶¶ 5-6.

    c.  She has helicobacter pylori, a bacterium that infects the stomach, requiring a strict dietary regimen prescribed by a medical doctor. *Id.* ¶ 7.

---

*see also* Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times, May 30, 2025, https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html (updated June 1, 2025).

d.  She has gastritis and underwent an appendectomy last year. *Id.* ¶ 8.

e.  She suffers from asthma, which intensifies when her anxiety disorder is
    exacerbated. *Id.* ¶ 9.

Furthermore, Petitioner is the sole financial provider for her mother and seven-year-old daughter in Peru, as well as several other relatives. *Id.* ¶¶ 13-14. Petitioner's mother has diabetes and depends on Petitioner in order to afford her medical treatment. *Id.* Petitioner fears her mother and daughter cannot survive without Petitioner's financial support. *Id.*

Prior to her detention, Petitioner had developed a community in the San Francisco Bay Area, including a close-knit community of neighbors, a church she attends weekly, and a boxing studio where she takes classes and has developed friendships with students and coaches. *Id.* ¶ 15. She obtained full-time employment, has close relationships with her coworkers, and was recognized last month as employee of the month. *Id.* ¶ 14.

## ARGUMENT

To warrant a TRO, a movant must show (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and that (4) "an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting the analysis for issuing a temporary restraining order and a preliminary injunction is substantially the same). Even if the movant raises only "serious questions" as to the merits of their claims, the court can grant relief if the balance of hardships tips "sharply" in their favor. *All. for the Wild Rockies*, 632 F.3d at 1135. All factors here weigh decisively in Petitioner's favor.

## I.    PETITIONER IS LIKELY TO SUCCEED ON THE MERITS.

### A.  Petitioner's detention violates substantive due process because she is neither a flight risk nor a danger to the community.

The Due Process Clause applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*,

533 U.S. at 693. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

To comply with substantive due process, the government's deprivation of an individual's liberty must be justified by a sufficient purpose. Therefore, immigration detention, which is "civil, not criminal," and "nonpunitive in purpose and effect," must be justified by either (1) dangerousness or (2) flight risk. *Zadvydas*, 533 U.S. at 690; *see Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). When these rationales are absent, immigration detention serves no legitimate government purpose and becomes impermissibly punitive, violating a person's substantive due process rights. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (detention must have a "reasonable relation" to the government's interests in preventing flight and danger); *see also Mahdawi v. Trump*, No. 2:25-CV-389, 2025 WL 1243135, at *11 (D. Vt. Apr. 30, 2025) (ordering release from custody after finding petitioner may "succeed on his Fifth Amendment claim if he demonstrates *either* that the government acted with a punitive purpose *or* that it lacks any legitimate reason to detain him").

The Supreme Court has recognized that noncitizens may bring as-applied challenges to detention, including so-called "mandatory" detention. *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

Petitioner, who has no criminal record and who is diligently pursuing her immigration case, is neither a danger nor a flight risk. Therefore, her detention is both punitive and not justified by a legitimate purpose, violating her substantive due process rights. Indeed, when Respondents chose to release Petitioner from custody in 2023, that decision represented their finding that she was neither dangerous nor a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Nothing has transpired since to disturb that finding.

*First*, because Petitioner had no criminal history, and has had no intervening criminal history or arrests since her release, Ropero Cano Dec. ¶¶ 11-12, there is no credible argument that she is a danger to the community.

*Second*, as to flight risk, the question is whether custody is reasonably necessary to secure a person's appearance at immigration court hearings and related check-ins. *See Hernandez*, 872 F.3d at 990-91. There is no basis to argue that Petitioner, who was arrested by Respondents *while appearing in immigration court* for a master calendar hearing, is a flight risk. To the contrary, Petitioner has diligently appeared at every court hearing she has been ordered to attend timely updated Respondents every time he has moved to a new address. Ropero Cano Dec. ¶¶ 12. Moreover, Petitioner has a viable path toward immigration relief and a pathway to lawful permanent residence, further mitigating any risk of flight. *See* Sullivan Engen Dec. ¶ 4; *see also Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) (holding that there is not a legitimate concern of flight risk where plaintiffs have bona fide asylum claims and desire to remain in the United States). Over a year prior to her arrest, Petitioner had filed her application for asylum. Sullivan Engen Dec. ¶ 4. She has every intention of continuing to pursue this application. And, until her unlawful arrest and detention, Petitioner was gainfully employed, working a full-time schedule and receiving praise for her work. Ropero Cano Dec. ¶ 14.

In sum, Petitioner's actions since Respondents first released her confirm that she is neither a danger nor flight risk. Indeed, her ongoing compliance and community ties compel the conclusion that she is even *less* of a danger or flight risk than when she was originally released. Accordingly,

Petitioner's ongoing detention is unconstitutional, and substantive due process principles require her immediate release.

**B. The government violated procedural due process by depriving Petitioner of the opportunity to contest her arrest and detention before a neutral decisionmaker.**

Noncitizens living in the United States like Petitioner have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (holding that re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding the same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).

Accordingly, the Supreme Court has repeatedly held that individuals released from custody on bond, parole, or other forms of conditional release have a protected interest in their ongoing liberty, because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. "By whatever name, the[ir] liberty is valuable and must be seen within the protection of the [Due Process Clause]." *Id.* This liberty interest also applies to noncitizens, including those who have been conditionally released from immigration custody. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Petitioner thus has a protected liberty interest in her freedom from physical custody.

Once a petitioner has established a protected liberty interest, as Petitioner has done here, courts in this circuit apply the *Mathews* test to determine what procedural protections are due. *See Johnson v. Ryan*, 55 F.4th 1167, 1179-80 (9th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Under that test, the court weighs: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Id.* In this case, the factors weigh heavily in favor of releasing Petitioner and prohibiting

his re-detention without a custody hearing at which the government bears the burden of proof.

*First*, the private interest affected in this case is profound. When considering this factor, courts look to "the degree of potential deprivation." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015) (citing *Mathews*, 424 U.S. at 341). The degree of deprivation here is high. Petitioner, who has several serious medical conditions—including requiring medication every eight hours—and has a full-time job on which multiple family members rely for their survival, has been completely deprived of her physical liberty and hidden in an undisclosed location. Petitioner's detention has ripped from her the "free[dom] to be with family and friends and to form the . . . enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Cutting someone off from the "core values of unqualified liberty"—for Petitioner, the ability to monitor and care for her medical needs, wake up in her own home, and to work to support herself and her family members—creates a "grievous loss." *Id*. Moreover, because Petitioner faces *civil detention*, "[her] liberty interest is arguably greater than the interest of the parolees in *Morrissey*." *See Ortega*, 415 F. Supp. 3d at 970. As someone in civil detention, therefore, "it stands to reason that [Petitioner] is entitled to protections at least as great as those afforded to a[n] . . . individual . . . accused but not convicted of a crime." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

*Second*, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (quoting *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)); *see also Diep v. Wofford*, No. 1:24-cv-01238, 2025 WL 6047444, at *5 (E.D. Cal. Feb. 25, 2025). Respondents grabbed Petitioner by surprise as she left her immigration court hearing, detaining her with no notice and no opportunity to contest her re-detention before a neutral arbiter. In such circumstances, when Respondents have provided *no* procedural safeguards, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5. This is especially true here, where there is no change in Petitioner's circumstances suggesting that Petitioner now poses a flight risk or danger to the community. Her re-detention instead appears to be motivated instead by Respondents' new arrest quotas and practice of leveraging detention to

secure dismissal of ongoing proceedings under Section 240 of the Immigration and Nationality Act, to initiate expedited removal. Pet. ¶¶ 43-54. Neither constitutes a lawful justification to re-detain a person who does not pose a flight risk or danger to the community.

Because the private interest in freedom from immigration detention is substantial, due process also requires that in cases like this one, the government bears the burden of proving "by clear and convincing evidence that the [noncitizen] is a flight risk or danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011); *see Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024) (holding that government properly bore burden by clear and convincing evidence in court-ordered bond hearing); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (ordering pre-deprivation bond hearing in which government bears burden by clear and convincing evidence).

*Third*, the government's interest in detaining Petitioner without first providing notice and submitting to a custody hearing is minimal. Immigration courts routinely conduct custody hearings, which impose a "minimal" cost to the government. *See Doe*, 2025 WL 691664, at *6; *A.E.*, 2025 WL 1424382, at *5. Petitioner has an impeccable record of attending her immigration proceedings and strong community ties in the Bay Area; there is no reason to believe that between the date of her release and the custody hearing she requests, her compliance will change or she will flee. Indeed, courts regularly hold that the government's interest in re-detention without a custody hearing is low when the petitioner "has long complied with [her] reporting requirements." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3-*4 (N.D. Cal. June 14, 2025) (granting TRO prohibiting re-detention of noncitizen without a pre-deprivation bond hearing); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3-*4 (N.D. Cal. Mar. 1, 2021) (same); *Ortega*, 415 F. Supp. 3d at 970 (granting habeas petition ordering the same); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4-*5 (S.D.N.Y. June 18, 2025) (granting habeas petition and immediately releasing petitioner who had been detained without process, who had "voluntarily attended his scheduled immigration court proceedings" and "established ties" through his work and volunteering with the church).

In similar cases, courts in this Circuit regularly hold that re-detaining noncitizens without

a pre-deprivation hearing in which the government bears the burden of proof violates due process, and issue TROs granting petitioners the emergency relief Petitioner seeks here. *See Doe*, 2025 WL 691664, at *8 (granting TRO over one month after petitioner's initial detention); *see also, e.g.*, *Diaz*, 2025 WL 1676854, at *3-*4; *Garcia v. Bondi*, No. 3:25-CV-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025); *Jorge M. F.*, 2021 WL 783561, at *4; *Romero v. Kaiser*, No. 22-CV-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

In short, Respondents violated Petitioner's due process rights when they detained her without notice and without a custody hearing before a neutral arbiter. Here, only an order releasing Petitioner and enjoining re-detention—unless Respondents provide Petitioner with a custody hearing where the government bears the burden of proof—would return the parties to the "last uncontested status which preceded the pending controversy." *Doe v. Noem*, __ F. Supp. 3d __, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *see also Valdez*, 2025 WL 1707737, at *4-*5 (ordering petitioner's immediate release as remedy for procedural due process violation).

For the foregoing reasons, Petitioner is likely to succeed on the merits of her claims. But even if the Court disagrees, she presents at least "serious question[s] going to the merits," alongside a "balance of hardships" tipping decidedly in her favor. *All. for the Wild Rockies*, 632 F.3d at 1135. Indeed, the constitutional concerns delineated above are of the weightiest order and beyond colorable. This Court should therefore enter the requested TRO.

## II.    PETITIONER WILL CONTINUE TO SUFFER SERIOUS AND IRREPARABLE INJURY ABSENT A TRO.

Without a temporary restraining order, Petitioner will suffer immense irreparable injury. Indeed, she faces such injury every hour he remains in detention, both in reckless disregard for her medical fragility and in violation of her Fifth Amendment rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994-95 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further

showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). And the unlawful deprivation of physical liberty is the quintessential irreparable harm. *See Hernandez*, 872 F.3d at 994 (holding that plaintiffs were irreparably harmed "by virtue of the fact that they [we]re likely to be unconstitutionally detained for an indeterminate period of time"); *see also, e.g.*, *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (recognizing that "[a]ny amount of actual jail time is significant, and has exceptionally severe consequences for the incarcerated individual" (cleaned up)).

As a result of her arrest and detention, Petitioner is also suffering additional ongoing irreparable harms. She has serious medical conditions that require ongoing care. She thus also faces a "likelihood of irreparable injury to [her] health and safety" in detention, which separately constitutes irreparable harm. *Bent v. Barr*, 445 F. Supp. 3d 408, 419 (N.D. Cal. 2020) (granting TRO releasing medically-vulnerable Petitioner from immigration detention during COVID-19 pandemic).

## III. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH STRONGLY IN PETITIONER'S FAVOR.

When the government is the party opposing the request for emergency relief, the balance of the equities and the public interest merge. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 991 (9th Cir. 2020) (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)). Here, the balance of equities overwhelmingly favors Petitioner, who faces irreparable injury in the form of threat to her health and life, ongoing constitutional violations and continued additional suffering if the TRO is not granted. *See* Section II, *supra*; *Hernandez*, 872 F.3d at 996 (when "[f]aced with … preventable human suffering, … the balance of hardships tips decidedly in plaintiffs' favor") (internal citation omitted).

The public interest likewise weighs strongly in Petitioner's favor. As another California district court recently concluded, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M. F.*, 2021 WL 783561, at *3). More fundamentally, "[i]t is always in the public interest to prevent

the violation of a party's constitutional rights." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citing *Padilla v. Immigr. & Customs Enf't* , 953 F.3d 1134, 1147-48 (9th Cir. 2020) (internal quotation marks omitted)).

## SECURITY

No security is necessary here. Courts "may dispense with the filing of a bond when," as here, "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). It is also proper to waive the bond requirement in cases raising constitutional claims, because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996). Finally, Petitioner's showing of a high likelihood of success on the merits supports the court's waiving of bond in this case. *See, e.g.*, *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985).

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests the Court grant a TRO to restore the *status quo ante* that (1) immediately releases her from Respondents' custody and enjoins Respondents from re-detaining her absent further order of this Court; (2) in the alternative, immediately releases her from Respondents' custody and enjoins Respondents from re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required; and (3) prohibits the government from transferring her out of this District and/or removing her from the country until these habeas proceedings have concluded.

Respectfully submitted,

Date:   July 4, 2025

*/s/ Abby Sullivan Engen*
Abby Sullivan Engen (SBN 270698)
CENTRO LEGAL DE LA RAZA

*Attorney for Petitioner*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28