Abby Sullivan Engen (SBN 270698)
asullivanengen@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 244-4312

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Frescia Anthuane GARRO PINCHI,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br><br>Respondents. | CASE NO.   25-cv-05632<br><br>**DECLARATION OF MATTHEW BRIDGES** |

I, Matthew Bridges, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could testify truthfully to those facts. Where I do not have personal knowledge, I believe and am informed for the following information to be true.

2. I, alongside Ms. Ariel Koren, accompanied the Petitioner in this case, Ms. Frescia Anthuane Garro Pinchi, to her second Immigration Court hearing with IJ Patrick O'Brien on July 3, 2025. This hearing took place in Courtroom 3, on the 4th floor of 630 Sansome St., San Francisco, California.

3. I was present in the courtroom when the government attorney moved to dismiss the case of Ms. Garro Pinchi. I witnessed her express verbal opposition to the motion to dismiss her case in front of the judge, citing fear of returning to her country of origin, Peru.

4. The government gave no reason for the dismissal, and the judge provided Ms. Garro Pinchi with a continuance to July 31, 2025, to present evidence as to why her case should not be dismissed. The Judge made comments alluding to the likelihood of her detention, stating that she would probably not be able to attend the continued hearing in his courtroom.

5. I witnessed Ms. Garro Pinchi, along with another female respondent from courtroom 3, as they were violently detained in the 4th floor hallway of the courtroom by approximately five ICE agents despite both of their cases being continued by the judge.

6. ICE agents did not present warrants for arrest of either individual, nor did they provide any explanation for why they were each being arrested. During the arrest I told the ICE officials that both respondents had pending asylum applications on file and were each issued continuances by the Judge.

7. ICE agents stated to me that this was a "normal" process, before taking both Ms. Garro Pinchi and the other woman to the 6th floor for processing.

8. In the hours that followed, I witnessed repeated instances of ICE interfering with Ms. Garro Pinchi and the other detainee's access to their legal counsel. With respect to Ms. Garro Pinchi, I witnessed the following:

   a. ICE officers refused to provide contact information for Ms. Garro Pinchi's specific deportation officer despite multiple requests by myself and Ms. Koren.

   b. ICE officers refused to provide a direct phone number to Ms. Garro Pinchi's counsel, Ms. Abby Sullivan Engen, in order for Ms. Sullivan Engen to speak directly with ICE officials overseeing her detention.

   c. Despite knowing we were on the phone with Ms. Garro Pinchi's attorney, ICE officers refused to provide details to myself or Ms. Koren regarding her location or whether she would be transferred to a detention facility.

   d. Ms. Garro Pinchi told Ms. Koren and me that she was forced to sign a document she understood to be related to requesting bond, without being provided a written translation of the document. She asked to speak with her lawyer before signing, but according to Ms. Garro Pinchi, the officers persisted and forced her to sign.[1]

9. Because of ICE's refusal to allow Ms. Garro Pinchi a phone call with her attorney, Ms. Koren called Ms. Sullivan Engen from the visitation room.

10. I was able to access a printer at a business nearby, and when I returned I presented Ms. Sullivan Engen's Form G-28, Notice of Entry of Appearance, along with her request to

---

[1] Over the course of the day I had the opportunity to speak to the other detainee as well. This detainee told me the same thing: that she had been forced to sign a document in English, without the opportunity to speak with a lawyer.

DECLARATION OF MATTHEW BRIDGES
CASE NO. 25-cv-05632

release Ms. Garro Pinchi. I presented these documents to an ICE officer whom I recognized as one of the officers who conducted arrests that morning in the 4th floor hallway.

11. The officer appeared reluctant to receive the documents and signaled that he would not afford them any serious consideration. To paraphrase, when I told him that Ms. Garro Pinchi was filing a petition in federal court, and that she should not be transferred out of San Francisco, he stated that was "not our responsibility."

12. At approximately 2:30 PM, Ms. Koren and I were inside the visitation room with Ms. Garro Pinchi, when the ICE officers abruptly ended our visit, without disclosing where they were taking Ms. Garro Pinchi next.

13. I was speaking to the other female detainee from that morning, in the same visitation room where Ms. Koren was speaking with Ms. Garro Pinchi, and due to ICE's refusal to provide her direct access to counsel, I was forced to relay information to this detainee's counsel through my personal cell phone. It was in the midst of this informal legal consultation, at approximately 2:40 pm that visitation was abruptly cut and both detainees were forced to leave the room, without any information provided by ICE or security guards on where they were going next.

14. Between the hours of approximately 10:30 am, and 2:40 pm, during intermittent presence in the visitation room with Ms. Koren and Ms. Garro Pinchi, I witnessed multiple signs of the serious psychological and physical impacts that Ms. Garro Pinchi suffered due to her detention:

   a. I witnessed her, from behind the glass, enter into heightened states of anxiety and panic, including a period of approximately 20 minutes where she put her head down on the table.

DECLARATION OF MATTHEW BRIDGES
CASE NO. 25-cv-05632

b. As time passed without access to her psychiatric medications, which she takes every eight hours for anxiety and depression, she became increasingly and visibly unwell, breaking out into sweats and bouts of hyperventilation.

c. Ms. Koren and I witnessed Ms. Garro Pinchi speak with a loved one via a call on Ms. Koren's personal cell phone. Ms. Garro Pinchi expressed extreme distress about how detention would impact her ability to provide for her daughter and additional family members in Peru, who are completely dependent on her financial support.

15. Shortly after this, at approximately 3:00 pm, I briefly left the building to print documents. When I returned at approximately 3:20 pm, the building security guards refused entry and told me that the building was closed for the day.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 4, 2025.

_____
Matthew Bridges

DECLARATION OF MATTHEW BRIDGES
CASE NO. 25-cv-05632