UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA GARRO PINCHI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-05632-RMI (RFL)<br><br>**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Re: Dkt. No. 4 |

　　　　Before the Court is Petitioner-Plaintiff Frescia Garro Pinchi's *Ex Parte* Motion for Temporary Restraining Order. (Dkt. No. 4.) Petitioner-Plaintiff filed her Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi. On July 3, 2025, minutes after Petitioner-Plaintiff exited the San Francisco Immigration Courthouse after the government asked to orally dismiss her immigration case, she was detained by Immigration and Customs Enforcement ("ICE") agents. The evidence submitted by Petitioner-Plaintiff indicates that the agents did not present her with a warrant or inform her of the reason for her arrest. Now, Petitioner-Plaintiff requests that this Court (1) order Respondents to immediately release her from their custody and enjoin Respondents from re-detaining her absent further order of the Court; (2) in the alternative, order Respondents to immediately release her from their custody and enjoin Respondents from re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required;

1

and (3) prohibit the government from transferring her out of this District and/or removing her from the country until these habeas proceedings have concluded. For the following reasons, the Court **GRANTS** Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order.

I.  BACKGROUND

According to the declarations submitted by Petitioner-Plaintiff, she was born in Peru. DHS's records indicate that she came to the United States on April 14, 2023, seeking asylum. When she arrived in the United States, she was briefly detained, but was released on her own recognizance after it was determined that she was not a flight risk. She was given a notice to appear for later removal proceedings. Since that point, Petitioner-Plaintiff has applied for asylum, and has attended all of her required immigration hearing dates over the last two years. She has no criminal history, and works full time.

On July 3, 2025, Petitioner-Plaintiff appeared at the San Francisco Immigration Court. The DHS attorney orally moved to dismiss her case, which Plaintiff-Petitioner opposed. The Immigration Judge gave Petitioner-Plaintiff time to file a response and continued the hearing until July 31, 2025. At the hearing, the Immigration Judge stated that he believed Petitioner-Plaintiff's case was being dismissed for the purpose of putting her in expedited removal proceedings.

When Plaintiff-Petitioner exited the building, she was arrested by ICE agents. It appears that the agents did not have a warrant, nor did they communicate the reason for Petitioner-Plaintiff's arrest.

Petitioner-Plaintiff has serious medical conditions that require ongoing monitoring and care. She recently underwent a surgical operation, which requires medication to prevent recurrence of symptoms that could be potentially life-threatening. She also suffers from generalized anxiety disorder, clinical depression, and post-traumatic stress disorder, which require medication every eight hours. If Petitioner-Plaintiff does not take her medication, she may suffer from physiological symptoms, including inability to breathe. Additionally, Petitioner-Plaintiff has asthma, which can intensify when her anxiety is exacerbated. Petitioner-

Plaintiff has also been diagnosed with helicobacter pylori—a bacterial infection of the stomach—that requires her to observe a strict dietary regimen, as well as gastritis.

## II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No.* 70, 415 U.S. 423, 439 (1974)). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner-Plaintiff's attorney has set out specific facts showing that immediate and

irreparable injury, loss, or damage may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California on July 3, 2025, and July 4, 2025, regarding the habeas petition and motion for temporary restraining order.  (Dkt. No. 5-3 at 4.)

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in her favor.  *Weber*, 767 F.3d at 942.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.*

at 335—require that Petitioner-Plaintiff be immediately released from custody, and that she be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.  Petitioner-Plaintiff has a substantial private interest in remaining out of custody, which would allow her to live at home, work, obtain necessary medical care, and continue to provide for her family.  *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against.  And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-Plaintiff has consistently appeared for her immigration hearings for more than two years and she does not have a criminal record.  *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of preliminary relief.  The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained."  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Those risks are present here.  As previously described, Petitioner-Plaintiff has serious medical conditions that are likely to be exacerbated in detention.  Without her medication, Petitioner-Plaintiff faces a serious risk to her health.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor.  "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*,

422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff faces the danger of significant health consequences and deprivation of her liberty. Yet the comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

This Court therefore joins a series of other district courts that have recently granted temporary restraining orders barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g.*, *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025). Although Petitioner filed her motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to her situation. Her liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain her without the required hearing is low. *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).

Petitioner's immediate release is required to return her to the status quo. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to the Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of

the status quo).

Accordingly, the Court hereby **GRANTS** Petitioner-Plaintiff's Motion for a Temporary Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

### IV.   ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents-Defendants are **ORDERED** to immediately release Petitioner-Plaintiff from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker. This Order shall remain in effect until **Monday, July 14, 2025, at 5:00 p.m.**

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order **SHALL** be served on Respondents-Defendants such that they receive actual notice as soon as practicable, and Petitioner-Plaintiff shall file proof of such service by no later than **Monday, July 7, 2025, at 5:00 p.m.** Respondents shall provide a status report confirming Petitioner-Plaintiff's release by **Monday, July 7, 2025, at 5:00 p.m.**

Respondents-Defendants are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **Monday, July**

**14, 2025, at 1:00 p.m.** why a preliminary injunction should not issue. Respondents-Defendants shall file a response to Petitioner-Plaintiff's motion by no later than **Wednesday, July 9, 2025, at 5:00 p.m.** No reply shall be filed.

**IT IS SO ORDERED.**

Dated: July 4, 2025, at 9:57 p.m.

RITA F. LIN
United States District Judge