1 | CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
2 | PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
3 | ELIZABETH D. KURLAN (CABN 255869)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7298
Facsimile: (415) 436-6748
elizabeth.kurlan@usdoj.gov

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRESCIA GARRO PINCHI, | Case No. 5:25-cv-5632-PCP |
| Petitioner, | **RESPONDENTS' RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KRISTI NOEM, Secretary of the United States Department of Homeland Security, *et al.*, | Date: July 14, 2025<br>Time: 1:00 p.m.<br>Location: Courtroom 8, 4th Floor |
| Respondents. | |
| | The Honorable P. Casey Pitts |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1
II. FACTUAL AND LEGAL BACKGROUND .......................................................................2
    A.  Factual and Procedural Background ..........................................................................2
    B.  Detention of Noncitizens Under 8 U.S.C. § 1226(a) .................................................3
III. LEGAL STANDARD .............................................................................................................4
IV. ARGUMENT ...........................................................................................................................5
    A.  Petitioner's Detention Was Lawful Under Section 1226(a). .....................................5
    B.  Petitioner Fails to Show Irreparable Harm. ...............................................................8
    C.  Neither the Balance of Equities nor Public Interest Favors Petitioner. .....................9
V.  CONCLUSION .....................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Abel v. United States*,
　362 U.S. 217 (1960) ............................................................................................................. 3, 6

*Anderson v. United States*,
　612 F.2d 1112 (9th Cir. 1980) ................................................................................................. 5

*Carlson v. Landon*,
　342 U.S. 524 (1952) ....................................................................................................... 3, 6, 8

*Demore v. Kim*,
　538 U.S. 510 (2003) ....................................................................................................... 3, 8, 9

*Diaz v. Kaiser*,
　No. 25-cv-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) ............................................ 7

*Disney Enters., Inc. v. VidAngel, Inc.*,
　869 F.3d 848 (9th Cir. 2017) .................................................................................................. 4

*Drakes Bay Oyster Co. v. Jewell*,
　747 F.3d 1073 (9th Cir. 2014) ................................................................................................ 9

*Earth Island Inst. v. Carlton*,
　626 F.3d 462 (9th Cir. 2010) .................................................................................................. 5

*Garcia v. Google*, Inc.,
　786 F.3d 733 (9th Cir. 2015) .............................................................................................. 4, 5

*Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*,
　950 F.2d 1401 (9th Cir. 1991) ................................................................................................ 8

*Jennings v. Rodriguez*,
　583 U.S. 281 (2018) ....................................................................................................... 4, 5, 6

*Jorge M.F. v. Jennings*,
　534 F. Supp. 3d 1050 (N.D. Cal. 2021) .................................................................................. 7

*Marin All. For Med. Marijuana v. Holder*,
　866 F. Supp. 2d 1142 (N.D. Cal. 2011) .................................................................................. 8

*Meneses v. Jennings*,
　No. 21-cv-7193-JD, 2021 WL 4804293 (N.D. Cal. Oct. 14, 2021) ........................................ 8

*Nken v. Holder*,
　556 U.S. 418 (2009) ................................................................................................................ 9

*Ortega v. Bonnar*,
　415 F. Supp. 3d 963 (N.D. Cal. 2019) .................................................................................... 7

*Preminger v. Principi*,
    422 F.3d 815 (9th Cir. 2005) ................................................................................................ 9

*Prieto-Romero v. Clark*,
    534 F.3d 1053 (9th Cir. 2008) .............................................................................................. 5

*Reno v. Flores*,
    507 U.S. 292 (1993) ......................................................................................................... 6, 8

*Rodriguez Diaz v. Garland*,
    53 F.4th 1189 (9th Cir. 2022) ....................................................................................... passim

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) .............................................................................................. 5

*Stanley v. Univ. of S. California*,
    13 F.3d 1313 (9th Cir. 1994) ................................................................................................ 5

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .............................................................................................. 9

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................................................ 4

*U.S. Philips Corp. v. KBC Bank N.V.*,
    590 F.3d 1091 (9th Cir. 2010) .............................................................................................. 5

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .............................................................................................................. 9

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................................. 4

*Wong Wing v. United States*,
    163 U.S. 228 (1896) .......................................................................................................... 3, 6

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) .............................................................................................................. 8

**Statutes**

8 U.S.C. § 1225 ............................................................................................................................ 2

8 U.S.C. § 1226 .................................................................................................................... 4, 5, 6

8 U.S.C. § 1226(a) ............................................................................................................ 1, passim

8 U.S.C. § 1229b ........................................................................................................................... 2

**Regulations**

8 C.F.R. § 236(c)(9) ................................................................................................................. 6

8 C.F.R. § 1003.19(e) ........................................................................................................... 4, 6

8 C.F.R. § 1236.1(c)(8) ............................................................................................................ 1

## I.     INTRODUCTION

Petitioner Frescia Garro Pinchi was lawfully detained by officers with the United States Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") following service of an arrest warrant notifying her of its intent to detain her pursuant to 8 U.S.C. § 1226(a), which grants the Attorney General the discretion to detain noncitizens "pending a decision on whether the alien is to be removed from the United States." Section 1226(a) detainees may be released on bond if they can demonstrate before the immigration judge ("IJ") "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). The Supreme Court and the Ninth Circuit have repeatedly upheld the constitutionality of immigration detention for noncitizens during removal proceedings under 8 U.S.C. § 1226(a), including a noncitizen's ability to seek review of her detention before an IJ. Significantly, the Ninth Circuit specifically held that "Section 1226(a) offers *substantial* procedural protections to detained persons" and those "procedures do not violate due process." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1193 (9th Cir. 2022) (emphasis added).

Therefore, Petitioner is unlikely to succeed on the merits of her claim that the Constitution requires more in her case, particularly when the Court order granting her ex parte motion for temporary restraining order ("TRO) prevented DHS from carrying out its lawful detention authority and preempted the extensive procedural protections in Section 1226(a). The Ninth Circuit's decision in *Rodriguez Diaz* controls the outcome in this case and Petitioner is not entitled to notice beyond an arrest warrant before DHS can detain her pursuant to Section 1226(a), or a "pre-detention" hearing before an IJ—the procedural protections available under Section 1226(a) provide constitutionally adequate protection against the risk of an erroneous deprivation of liberty. Here, DHS served Petitioner with a warrant notifying her of her detention under Section 1226(a), which is all that due process requires given the agency's broad detention authority under the statute. Moreover, Petitioner is only entitled to a review of the custody determination after her arrest and detention, and her claims to the contrary are premature and not ripe for review.

Similarly, Petitioner has not met her burden of demonstrating a likelihood of irreparable harm absent a preliminary injunction. Petitioner also fails to show that it is in the public interest to prevent the

RESPONDENTS' OPPOSITION TO PI
5:25-CV-5632 PCP                                                    1

Executive from exercising its enforcement authority under the Immigration and Nationality Act ("INA"). If Petitioner is re-arrested under Section 1226(a), she could promptly challenge her detention at that time. The Constitution does not grant Petitioner the extra protection of an additional hearing before she is even arrested again. Accordingly, the Court should deny the motion for a preliminary injunction.

## II.     FACTUAL AND LEGAL BACKGROUND

### A.     Factual and Procedural Background

Petitioner Frescia Garro Pinchi is a native and citizen of Peru. *See* Declaration of Anthony Lazalde Jr. ("Lazalde Decl.") ¶ 6. On April 14, 2023, Petitioner entered the United States without inspection, admission, or parole. Lazalde Decl. ¶ 6. Petitioner was apprehended by DHS officers shortly after she unlawfully crossed the United States/Mexico border, and Petitioner admitted that she is a citizen of Peru who did not have the necessary documents to enter, pass through, or remain in the United States. *Id.* ¶¶ 6–7. Petitioner was taken into custody but released on her own recognizance the same day, April 14, 2023. *Id.* ¶ 9. Petitioner was served with a Notice to Appear ("NTA"), which is the charging document used to commence removal proceedings before the immigration court. *Lazalde* Decl. ¶ 9, Ex. 1. The NTA charged Petitioner with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.* The NTA advised Petitioner to appear before an IJ in San Francisco, California on June 5, 2023. Ex. 1 (NTA).

Petitioner appeared at subsequent master calendar hearings, and she submitted an asylum application on April 26, 2024. Lazalde Decl. ¶ 10. On July 3, 2025, Petitioner attended her master calendar hearing in immigration court in San Francisco. *Id.* ¶ 11. At that hearing, DHS orally moved to dismiss the pending removal proceedings under 8 U.S.C. § 1229b and, instead, pursue expedited removal proceedings under 8 U.S.C. § 1225. Lazalde Decl. ¶ 11. The IJ gave Petitioner thirty days to respond to DHS's motion to dismiss, and the judge continued the hearing to July 31, 2025. *Id.* ¶ 12.

After Petitioner left the immigration courtroom, DHS officers approached Petitioner and informed her that she would be taken into custody. Lazalde Decl. ¶¶ 13–14. The officers served Petitioner with a Form I-200, Warrant for Arrest of Alien, notifying her of its intent to place her into detention under 8 U.S.C. § 1226(a). Lazalde Decl. ¶ 14, Ex. 2 (Form I-200). The warrant noted that

Petitioner was provided notice of its contents in Spanish. Ex. 2. DHS also filed a Form I-830 notifying the immigration court of Petitioner's detention. Lazalde Decl. ¶ 15, Ex. 3 (Form I-830). DHS subsequently transferred Petitioner to the Mesa Verde Processing Center in Bakersfield, California, where she was detained pursuant Section 1226(a). Lazalde Decl. ¶ 14.

On July 3, 2025, Petitioner filed a Petition for Writ of Habeas Corpus asserting seven claims for relief: substantive and procedural due process violations under the Fifth Amendment; unlawful arrest in violation of the Fourth Amendment; violation of the Administrative Procedure Act ("APA"); violation of the right to access courts and petition for redress under the First and Fifth amendments; and expedited removal in violation of the Fifth Amendment. Dkt. No. 1 (Petition) ¶¶ 68–108. The habeas petition seeks Petitioner's immediate release from custody, an order prohibiting her re-detention without a hearing to contest that re-detention before a neutral decisionmaker, and an order prohibiting DHS from placing her in expedited removal proceedings. Dkt. No. 1 at 8. Petitioner also filed an ex parte motion for TRO reiterating her claims and seeking the same relief on an emergent basis. Dkt. No. 4 (Ex Parte Motion for TRO). On July 4, 2025, the Honorable Rita F. Lin, acting as the Duty Judge, granted the TRO and ordered Petitioner's release from custody. Dkt. No. 6. On July 5, 2025, DHS released Petitioner from custody pursuant to the Order. Lazalde Decl. ¶ 16.

### B. Detention of Noncitizens Under 8 U.S.C. § 1226(a)

For nearly a century, the immigration laws have authorized immigration officials to charge aliens as removable from the country, to arrest aliens subject to removal, and to detain aliens for removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 523–26 (2003); *Abel v. United States*, 362 U.S. 217, 232–37 (1960) (discussing longstanding administrative arrest procedures in deportation cases). The Supreme Court has repeatedly recognized that "detention during deportation proceedings is a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523 (2003); *accord id.* at 523 n.7 ("prior to 1907 there was no provision permitting bail for any aliens during the pendency of their deportation proceedings"); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure."). Indeed, removal proceedings "'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

RESPONDENTS' OPPOSITION TO PI
5:25-CV-5632 PCP                             3

The detention of a noncitizen[2] pending removal proceedings is governed by 8 U.S.C. § 1226. *See Rodriguez Diaz*, 53 F.4th at 1196 (citing, *e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281 (2018)). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)). "'Except as provided in [Section 1226(c)]' the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.*

By regulation, a detainee has specific procedural rights while detained under Section 1226(a). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The alien will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Rodriguez Diaz*, 53 F.4th 1196 (quoting 8 C.F.R. § 236.1(c)(8)) (internal citation omitted). Thereafter, "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Id.* (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)).

## III.  LEGAL STANDARD

The standard for issuing a temporary restraining order and issuing a preliminary injunction are substantially identical. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Either is an "extraordinary remedy" that the Court should award only upon a clear showing that the party is entitled to such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary injunctions are "never awarded as of right." *Winter*, 555 U.S. at 24.

A petitioner seeking preliminary injunctive relief must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Garcia v. Google*, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Alternatively, plaintiff can show that there are "'serious questions going to the merits' and the 'balance of hardships tips sharply towards' [petitioner], as long as the second and third *Winter* factors are [also] satisfied." *Disney*

*Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). Petitioner's burden is aptly described as a "heavy" one. *Earth Island Inst.*, 626 F.3d at 469.

The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). A preliminary injunction may not be used to obtain "a preliminary adjudication on the merits," but only to preserve the status quo pending final judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Accordingly, where a petitioner seeks mandatory injunctive relief—seeking to alter the status quo—"courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* and is particularly disfavored." *Stanley*, 13 F.3d at 1320 (internal quotations and alteration omitted). A mandatory injunction "should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Anderson*, 612 F.2d at 1115. A party seeking a mandatory injunction "must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia*, 786 F.3d at 740 (emphasis in original).

## IV. ARGUMENT

### A. Petitioner's Detention Was Lawful Under Section 1226(a).

Congress enacted a multi-layered statute that provides for the civil detention of aliens pending removal. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008). Where an individual falls within this scheme affects whether his detention is discretionary or mandatory, as well as the kind of review process available. *Id*. at 1057. The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C. § 1226. *See Rodriguez Diaz*, 53 F.4th at 1196 (citing, *e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281 (2018)). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1226(a)). "'Except as provided

in [§ 1226(c)]' the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.*[1]

By regulation, a detainee has specific procedural rights while detained under § 1226(a). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The alien will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Rodriguez Diaz*, 53 F.4th 1196 (quoting 8 C.F.R. § 236.1(c)(8)) (internal citation omitted). Thereafter, "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Id.* (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "On top of this, an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)).

Section 1226(a) does not, however, provide for a pre-detention hearing. *See generally* 8 U.S.C. § 1226; 8 C.F.R. § 236(c)(9). Rather, "an ICE officer makes the initial custody determination," which the noncitizen can later request to have reviewed by an IJ. *Rodriguez Diaz*, 53 F.4th at 1196. The Supreme Court has long upheld the constitutionality of immigration detention without pre-detention hearings. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 309 (1993) (rejecting procedural due process claim that "the INS procedures are faulty because they do not provide for automatic review by an immigration judge of the initial deportability and custody determinations"); *Abel v. United States*, 362 U.S. 217, 233-34 (1960) (noting the "impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation"); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States,* 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid.").

Instead of being guaranteed *pre*-detention IJ review, noncitizens detained under Section 1226(a) are provided with multiple avenues to seek review of their detention *once they are in custody*—a process

---

[1] Section 1226(c), which mandates the detention of noncitizens who have committed certain offenses, is not at issue here.

that the Ninth Circuit has held is constitutionally sufficient. *See Rodriguez Diaz*, 53 F.4th at 1213. Petitioner's detention here under Section 1226(a) without a pre-detention hearing was thus not unlawful— to the contrary, it was expressly sanctioned by statute.

Petitioner asserts that she was not served a warrant for her arrest. But a warrant was issued prior to her arrest and served on her promptly, after she was moved to a holding room to deescalate the situation attending her arrest. Lazalde Decl. ¶ 13 & Ex. 2.

All individuals facing detention under Section 1226(a) have, like Petitioner, a liberty interest in remaining un-detained. Petitioner's interest, however, is no greater than any noncitizen in removal proceedings subject to Section 1226(a). Prior to her current detention, Petitioner had not previously been detained, had not been released on bond, and was not subject to any condition of release. She was encountered and then released without detention by ICE. Lazalde Decl. ¶¶ 7, 9. The authorities cited by Petitioner and the Court addressing whether a petitioner is entitled to a pre-detention hearing before re-detention, therefore, are inapposite: those cases analyzed the noncitizens' liberty interest in remaining out of custody following an initial period of detention followed by the revocation or cancellation of a bond.[2] *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050 (N.D. Cal. 2021). Unlike the petitioners in those pre-detention cases, Petitioner was not previously detained and then released on bond; rather, her status was like any other noncitizen in removal proceedings: she is simply subject to the "default" custody authority of Section 1226(a).[3] Thus, she cannot argue that she has a heightened liberty interest—she has the same liberty interest as every other noncitizen in removal proceedings. Congress has authorized ICE to arrest and detain these individuals under Section 1226(a) without pre-detention process other than an arrest warrant. This

---

[2] In addition, unlike the Petitioners in those cases, at the time of the filing of her petition, Petitioner was *in custody*, not in pre-detention status.

[3] In addition, these district court pre-detention cases were decided before the Ninth Circuit clarified the law in the area of detention under Section 1226(a). These non-binding decisions have been eroded by *Rodriguez Diaz*'s holdings that noncitizens in removal proceedings have lessened liberty interests, and that the existing procedures to challenge detention under § 1226(a) and its regulations are constitutionally adequate. And the post-*Rodriguez Diaz* decisions cited in the Court's ex parte order do not mention *Rodriguez Diaz* at all. *See* Dkt. No. 6 at 6; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025). Moreover, these decisions were both TROs decided before the government had any chance to respond. *See* 2025 WL 1676854. The TRO issued in this matter is distinguishable for the same reasons.

RESPONDENTS' OPPOSITION TO PI
5:25-CV-5632 PCP                        7

general authority has never been enjoined, nor has it been analyzed according to the three *Mathews* factors. *Cf. Demore v. Kim*, 538 U.S. 510, 522 (2003) (upholding constitutionality of detention under 8 U.S.C. § 1226(c)); *Zadvydas v. Davis*, 533 U.S. 678 (2001) (upholding the constitutionality of detention under 8 U.S.C. § 1231(a)). This petition, which is tantamount to a facial challenge of Section 1226(a)— has no likelihood of success on the merits.

The government recognizes that any form of detention will implicate an individual's liberty interests, and that Petitioner, like virtually everyone subject to detention, has personal reasons for wanting to remain out of custody. Congress has determined that the Executive Branch may detain noncitizens in removal proceedings without a pre-detention hearing, while permitting those individuals to seek review of their detention from an IJ once in custody. This Court cannot rewrite the statute to impose additional procedural requirements on this constitutionally sufficient framework. *See Rodriguez Diaz*, 53 F.4th at 1193–94.

### B. Petitioner Fails to Show Irreparable Harm.

In addition to his failure to show a likelihood of success on the merits, Petitioner does not meet her burden of showing she will be irreparably harmed in the absence of a preliminary injunction. Petitioner primarily claims injury if she is not afforded a hearing before she is arrested again based on the alleged deprivation of constitutional rights.

The injury that Petitioner asserts from her future potential detention is insufficient because it is well established that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; see also, e.g., Flores, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. Again, even if Petitioner were re-arrested, she would have the opportunity to promptly seek review of that detention in front of an IJ. Petitioner therefore cannot show that any injury she might suffer from the specific absence of a pre-detention hearing is "irreparable.

Finally, the alleged infringement of Petitioner's constitutional rights is insufficient when—as here—Petitioner fails to demonstrate "'a sufficient likelihood of success on the merits of [her] constitutional claims to warrant the grant of a preliminary injunction.'" *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) (quoting *Assoc'd Gen. Contractors of Cal., Inc. v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991)); *see also Meneses v. Jennings*, No. 21-

cv-7193-JD, 2021 WL 4804293, at *5 (N.D. Cal. Oct. 14, 2021) (denying TRO where petitioner "assume[d] a deprivation to assert the resulting harm"). Given her undisputed status as a noncitizen in removal proceedings, Petitioner cannot establish that lawfully authorized detention would cause her irreparable harm.

### C. Neither the Balance of Equities nor Public Interest Favors Petitioner.

When the government is a party, the last two factors that Petitioner must establish to obtain a preliminary injunction merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, for the same reasons that Petitioner's arrest and detention were lawful under Section 1226(a), Petitioner has not shown that a preliminary injunction barring her re-arrest without a pre-detention hearing is in the public interest.

Indeed, Petitioner's motion ignores the public interest in application of immigration laws that the Supreme Court has long upheld. *See*, *e.g.*, *Demore*, 538 U.S. at 523; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the court "should give due weight to the serious consideration of the public interest" in enacted laws). Petitioner's claimed harm to herself and her family cannot outweigh this public interest in application of the law, particularly since courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). Recognizing the availability of a preliminary injunction under such circumstances would permit any noncitizen in removal proceedings who was lawfully detained under Section 1226(a) to petition a federal district court for additional review, circumventing the comprehensive statutory scheme that Congress enacted.

Moreover, Petitioner's reliance on her assumed constitutional entitlement to pre-detention hearing does not save her argument. While it is "always in the public interest to protect constitutional rights," if, as here, the Petitioner has not shown a likelihood of success on the merits of that claim, that public interest does not outweigh the competing public interest in enforcement of existing laws. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). The public and governmental interest in upholding the existing processes and permitting Petitioner to be re-detained without additional burdensome processes, while allowing Petitioner to then challenge her detention once she is in custody, is significant.

RESPONDENTS' OPPOSITION TO PI
5:25-CV-5632 PCP                                          9

## V. CONCLUSION

For the foregoing reasons, the Court should deny the preliminary injunction.

Dated: July 9, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*s/ Elizabeth D. Kurlan*
ELIZABETH D. KURLAN
Assistant United States Attorney

Attorneys for Respondents