Bree Bernwanger (SBN 331731)
bbernwanger@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Neil K. Sawhney (SBN 300130)
nsawhney@aclunc.org
Lauren M. Davis (SBN 357292)
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Abby Sullivan Engen (SBN 270698)
asullivanengen@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 244-4312

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| FRESCIA GARRO PINCHI,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br><br>Respondents. | Case No. 5:25-cv-5632-PCP<br><br>**PETITIONER'S CONSOLIDATED SUPPLEMENTAL BRIEF AND REPLY TO RESPONDENTS' RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  July 14, 2025<br>Time:  1:00 p.m.<br>Location:  Courtroom 8, 4th Floor<br><br>The Honorable P. Casey Pitts |

Petitioner Frescia Garro Pinchi files this consolidated supplemental brief to (1) respond to the government's section 1226(a) argument, and (2) address the relevance of expedited removal under 8 U.S.C. § 1225, pursuant to this Court's July 10, 2025 order.

**I.      Section 1226(a) did not—and could not—authorize Ms. Garro Pinchi's unconstitutional re-arrest and re-detention.**

Framing this case as "a facial challenge [to] Section 1226(a)," the government spends most of its opposition arguing that 8 U.S.C. § 1226(a) *generally* complies with the Constitution. Opp. 5-8. But that is beside the point. The question here is whether the government had any lawful basis to *re*-arrest and *re*-detain Ms. Garro Pinchi—who the government determined did *not* pose a danger to the community or flight risk warranting detention—at her immigration court hearing on July 3, 2025. Because the government identifies nothing in section 1226(a) that could authorize that *re*-detention, Ms. Garro Pinchi is likely to succeed on the merits of her challenge.[1]

To start, the only legitimate (and constitutional) justifications for immigration detention are danger and flight risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). When immigration agents released Ms. Garro Pinchi from their custody on her own recognizance shortly after her April 2023 entry, they necessarily determined that she was neither a danger to the community nor a flight risk. Pet. ¶ 54; *see* 8 C.F.R. § 1236(c)(8) ("Any [authorized] officer … may … release [a noncitizen] not described in section 236(c)(1) of the Act … provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."); *see also, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). But nothing about Ms. Garro Pinchi's circumstances changed between the government's initial determination and her immigration-court appearance on July 3, 2025 to justify re-detention. In fact, the government does not even *try* to argue that Ms. Garro Pinchi is now a flight risk or danger to the community. For good reason: if

---

[1] The Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention, including mandatory detention. *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

anything, her conduct in the past two years—her court attendance, pursuit of a credible asylum claim, full compliance with supervision requirements, full-time employment, community ties, and lack of criminal history—only further *confirm* the government's conclusion that she is not a danger or a flight risk. Mem. 15, 17; *see also* Order at 11-12, *Singh v. Andrews*, 1:25-cv-00801-KES-SKO (E.D. Cal. July 11, 2025) ("*Singh* Order") (attached as Exhibit A).

Instead, the government argues that Ms. Garro Pinchi's rights were not violated because section 1226(a) allows her to seek release through a bond hearing. Opp. 6-7. But that entirely misses the mark. A post-detention bond hearing cannot remedy the government's violation here: its unconstitutional *re-arrest* and *re-detention* of Ms. Garro Pinchi without *any* individualized rationale. For this reason, the government's cited authorities are inapplicable. *See* Opp. 6 (*citing, e.g.*, *Reno v. Flores*, 507 U.S. 292, 309 (1993); *Abel v. United States*, 362 U.S. 217, 233-34 (1960); *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Those cases facially affirm the constitutionality of the INA's procedures for people lawfully in detention; they say nothing about whether those procedures could somehow cure the government's *unlawful* revocation of someone's release and subsequent detention. *See Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (finding post-detention bond hearing insufficient process; respondents "misapprehend[ed] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

The government's primary case, *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), is likewise inapposite. There was no dispute in *Rodriguez Diaz* about the legality of the petitioner's detention; an immigration judge made an individualized determination, based on the petitioner's criminal history and gang affiliation, that he should be detained under section 1226(a) without bond because he was a danger to the community. *See id.* at 1194-95. The due process challenge there solely targeted the length of detention; the petitioner contended his prolonged detention entitled him to a *second* bond hearing. *Id.* at 1198. Ms. Garro Pinchi's claim is categorically different: she contends her re-detention was unlawful from *its inception*. That meaningfully changes the due process calculus. ICE detained the petitioner in *Rodriguez Diaz* after a series of criminal arrests and convictions; moreover, by the time he filed his habeas petition, he had received a removal order.

*See id.* at 1194. In contrast, Ms. Garro Pinchi has no criminal history, no indicia of flight risk, and no removal order; indeed, she is still pursuing credible claims for relief. The government does not even suggest that any change to her individual circumstances justifies her re-detention. Her private interest and the risk of erroneous deprivation are thus not comparable to *Rodriguez Diaz.*

Instead, this case is on all fours with this District's decisions applying well-established procedural due process rights of prisoners on conditional release to noncitizens released from immigration custody. *See* Mem. 18-19 (collecting cases). Respondents attempt to distinguish this case law by asserting that, unlike those petitioners, Ms. Garro Pinchi "had not previously been detained." Opp. 7. This is plainly inaccurate. In April 2023, she was arrested, detained, and released based on immigration agents' finding that she posed neither a flight risk nor danger. Pet. ¶ 54; 8 C.F.R. § 1236(c)(8). It would defy logic to hold that Ms. Garro Pinchi, who has *never* been determined *by anyone* to be a flight risk or danger, is entitled to fewer procedural rights than noncitizens who were the subjects of such determinations. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019) (noncitizen whose bond was vacated entitled to pre-detention hearing); *Jorge M.F.*, 534 F. Supp. 3d at 1054-55 (same for noncitizen whose bond was overturned).

Nor do Respondents address Ms. Garro Pinchi's substantive due process claim, which is an independent basis for the injunction she seeks, and thus Respondents waive any response. The Fifth Amendment prohibits civil detention that seeks to "incarcerate for other reasons," aside from preventing flight risk and danger to the community. *Demore*, 538 U.S. at 532–33; *see also Zadvydas*, 533 U.S. at 690; *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1983 (N.D. Cal. 2024) (substantive due process analysis requires "considering the extent to which [detention] serves [legitimate government] purposes"). Here, as discussed, Respondents do not claim that Ms. Garro Pinchi is a flight risk or danger to the community. Nor could they credibly do so, given her lack of criminal history and her impeccable conduct since she was released on her own recognizance. Her detention is thus unlawful "*regardless* of the fairness of the procedures used to implement [it]." *Cf. Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (emphasis added); *see also Mahdawi v. Trump*, -- F. Supp. 3d --, 2025 WL 1243135, at *11 (D. Vt. Apr. 30, 2025), *stay denied at* 136 F.4th 443 (2d Cir. 2025) (1226(a) detention without legitimate justification likely violated due process).

**II.    Ms. Garro Pinchi is not subject to expedited removal under 8 U.S.C. § 1225.**

Respondents have conceded that Ms. Garro Pinchi is not in expedited removal proceedings. Opp. 5-7. And Respondents' apparent *intent* to place Ms. Garro Pinchi in expedited removal, Opp. 2, lacks a legal basis because Ms. Garro Pinchi is statutorily ineligible for two independent reasons. *First*, she has not been charged with a ground of inadmissibility covered by the statute. *Compare* 8 U.S.C. § 1225(b)(1)(A)(i) (listing inadmissibility grounds that can serve as basis for expedited removal order) *with* Declaration of Anthony D. Lazalde ("Lazalde Decl.") ¶ 9 & Ex. 1 (listing Ms. Garro Pinchi's inadmissibility charge). *Second*, she "has been physically present in the United States continuously for" over two years. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *see also* Lazalde Decl. ¶ 6 & Ex. 1 (alleging Ms. Garro Pinchi entered the United States on April 14, 2023).

By statute, expedited removal can be applied only to noncitizens who are determined inadmissible on one of two grounds: 8 U.S.C. § 1182(a)(6)(C) or § 1182(a)(7). 8 U.S.C. § 1225(b)(1)(A)(i); *see also* "Designating Aliens for Expedited Removal," 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025) (stating that "the full scope of [DHS'] statutory authority" allows DHS to apply expedited removal only to noncitizens determined inadmissible under sections 212(a)(6)(C) or (a)(7) of the INA who have not been admitted or paroled into the United States and who have not shown two years of continuous presence before the inadmissibility determination). Ms. Garro Pinchi has been charged with inadmissibility only under § 1182(a)(6)(A)(i), which is not listed in the statute as a valid basis for an expedited removal order. *See* Lazalde Decl., Ex. 1 (charging Ms. Garro Pinchi with inadmissibility under "212(a)(6)(A)(i)," the INA provision codified at 8 U.S.C. § 1182(a)(6)(A)(i)). Because she has not been charged with an inadmissibility ground covered by the expedited removal statute, she is not subject to expedited removal.

Even if Ms. Garro Pinchi were to be charged with a covered inadmissibility ground, she would be ineligible for expedited removal because she has been physically present in the United States for more than two years. DHS has statutory authority to apply expedited removal only to noncitizens who have been in the United States for less than two years. 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *see also* 90 Fed. Reg. at 8139. Ms. Garro Pinchi has undisputedly been in the United States for more than two years—since "on or about April 14, 2023." *See* Lazalde Decl.

¶ 6 & Ex. 1. She is thus independently ineligible for expedited removal on that basis alone.

Although Ms. Garro Pinchi is not subject to expedited removal under 8 U.S.C. § 1225, it is likely that an immigration court would find her subject to *mandatory detention* under Respondents' new interpretation of § 1225's detention authority. In *Matter of Q. Li*, the Board of Immigration Appeals ("BIA") held that noncitizens who are apprehended "while arriving" in the United States, including after entering the country without inspection, are subject to the expedited removal statute's mandatory detention provision regardless of whether they have *actually* been placed in expedited removal proceedings. 29 I&N Dec. 66, 70 (BIA 2025) ("As [a noncitizen] arrested without a warrant while arriving in the United States, the respondent's continued detention is mandated by section 235(b) of the INA, 8 U.S.C. § 1225(b), regardless of whether DHS elected to pursue expedited removal under section 235(b)(1) [8 U.S.C. § 1225(b)(1)] or place her directly in full removal proceedings pursuant to section 235(b)(2)(A) [8 U.S.C. § 1225(b)(2)(A)]."). People mandatorily detained under 8 U.S.C. § 1225 are not entitled to a bond hearing. *See* 8 U.S.C. § 1225(b); *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

This raises an independent reason why Respondents' argument on the merits—that 8 U.S.C. § 1226(a) bond procedures provide all the protections Ms. Garro Pinchi needs—fails. Because immigration courts are bound by BIA decisions, it is highly unlikely that, as someone who was initially apprehended at the border, Ms. Garro Pinchi could receive a section 1226(a) bond hearing at all. *See Matter of Q. Li*, 29 I&N Dec. at 69-70; Lazalde Decl. ¶¶ 6-7 & Ex. 1; *see also Singh* Order at 6-7. Thus, even if section 1226(a) offered a constitutionally sufficient process for Ms. Garro Pinchi to challenge her re-detention (and it does not), this Court's intervention is necessary to ensure that she does not lose her opportunity for a hearing altogether.

## CONCLUSION

For the foregoing reasons, this Court should issue a preliminary injunction enjoining the government from detaining Ms. Garro Pinchi during the pendency of these proceedings unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before the San Francisco Immigration Court, that she is a flight risk or danger to the community such that her physical custody is required.

1

2    Date:    July 14, 2025

3

4

5

6

7

8

9

10

11

12

13

14    Date:    July 14, 2025

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ Bree Bernwanger
Bree Bernwanger (SBN 331731)
bbernwanger@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Neil K. Sawhney (SBN 300130)
nsawhney@aclunc.org
Lauren M. Davis (SBN 357292)
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Attorneys for Petitioner*

Respectfully submitted,

/s/ Abby Sullivan Engen
Abby Sullivan Engen (SBN 270698)
asullivanengen@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 244-4312

*Attorney for Petitioner*

Exhibit A

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                          EASTERN DISTRICT OF CALIFORNIA

8

9    HARMAN SINGH,                          No.  1:25-cv-00801-KES-SKO (HC)

10                  Petitioner,

11          v.                              ORDER GRANTING PRELIMINARY
                                            INJUNCTION
12   TONYA ANDREWS, Administrator of
     Golden State Annex Detention Facility,   Doc. 5
13   POLLY KAISER, Acting Field Office
     Director of the San Francisco Immigration
14   and Customs Enforcement Office, TODD
     LYONS, Acting Director of United States
15   Immigration and Customs Enforcement,
     KRISTI NOEM, Secretary of the United
16   States Department of Homeland Security,
     and PAMELA BONDI, Attorney General of
17   the United States,

18                  Respondents.

19

20          Petitioner Harman Singh is a 19-year old asylum seeker who has been in immigration

21   removal proceedings since January 2024.  He remained out of custody for over seventeen months

22   after the Department of Homeland Security ("DHS") determined that he did not pose a danger to

23   the community and was not a flight risk.  *See* Doc. 11-1, Ex. 1 at 6–7; 8 C.F.R. § 1236.1(c)(8).

24   During that time, petitioner established ties in his community, was employed as a warehouse

25   worker pursuant to a valid work authorization, volunteered at his temple, and appears to have

26   checked in with immigration authorities as requested.

27          On May 27, 2025, petitioner appeared at the San Francisco Immigration Court for a

28   scheduled hearing in his immigration case.  At the hearing, the government orally moved to

                                            1

dismiss petitioner's pending removal case; the government indicates that it did so with the intent of placing petitioner in expedited removal proceedings.  The Immigration Judge did not grant the government's oral motion to dismiss petitioner's case and, instead, set a schedule for the government to file a written motion to dismiss and for petitioner to respond.  However, when petitioner walked out of the Immigration Court on May 27, Immigration and Customs Enforcement ("ICE") agents arrested him.  The record indicates that the agents did not present petitioner with a warrant or inform him of the reason for his arrest, nor did the government bring petitioner before the San Francisco Immigration Judge for a bond hearing on the detention.  Instead, agents transported petitioner later that day to a detention facility in Kern County, in the Eastern District of California, where he has been held since May 27.

Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Doc. 1, and a Motion for Temporary Restraining Order ("Motion"), Doc. 5, seeking his release from detention.  The Court set a briefing schedule on the Motion.  Doc. 10.  The government filed an opposition, Doc. 11, and petitioner filed a reply, Doc. 13.  The Court held a hearing on July 10, 2025.  The Court indicated at the hearing that it intended to convert petitioner's Motion into a motion for preliminary injunction, given the parties' extensive briefing of the issues, and no party objected.  The standard is the same, and the government had notice and opportunity to respond through a written opposition and through oral argument at the July 10, 2025 hearing.  *See* Docs. 10, 11.  As there is no benefit in additional briefing, petitioner's Motion is converted to a motion for preliminary injunction.

For the reasons stated below, and as ordered at the July 10 hearing, the Court grants petitioner's Motion and orders that the government release petitioner immediately and not re-detain him unless it proves by clear and convincing evidence at a bond hearing before the San Francisco Immigration Court that petitioner is a flight risk or danger to the community.

## I.    Background

Petitioner is a nineteen-year-old citizen of India and identifies as a devout Sikh.  Pet. ¶¶ 55, 77; Doc. 5-2 at ¶¶ 2, 6.  He sought asylum based on his belief that, due to his political activism in India on behalf of the Sikh community, he was in danger should he return to his

country of origin.  Pet. ¶¶ 55, 77; *see* Doc. 5-2 at ¶ 3.

Petitioner arrived in the United States in January 2024.  Pet. ¶ 56; Doc. 5-2 at ¶ 3.  After entry, he was briefly detained by DHS agents and then released after agents determined that he had no criminal history, was not a danger to the community, and did not pose a flight risk.[1]  Pet. ¶ 56; Doc. 5-2 at ¶ 4; Doc. 11-1, Ex. 1 at 6–7; 8 C.F.R. § 1236.1(c)(8).  DHS did not require him to post a bond or wear an ankle monitor.  Pet. ¶ 56.  DHS provided petitioner with a notice to appear for removal proceedings.  *Id.*

In May 2024, petitioner applied for asylum and withholding of removal under the Convention Against Torture.  *Id.* ¶ 59; *see* Doc. 5-2 at ¶¶ 5, 6.  He also initiated the process for obtaining special immigrant juvenile status ("SIJS"), which if obtained, would exempt him from removability under 8 U.S.C. § 1182(a)(6)(A)(i) and allow him to apply for lawful permanent residency.  Pet. ¶ 60.  Petitioner indicates that, since January 2024, he has attended every immigration check-in and hearing.  Doc. 5-2 at ¶ 4; Pet. ¶¶ 57–58.  Petitioner has also maintained a clean criminal record.  Doc. 5-2 at ¶ 2; *see* Doc. 11-1, Ex. 1 at 6; Doc. 11-1, Ex. 4 at 21–22.  Pursuant to a valid work authorization, petitioner has worked full-time at a warehouse.  Doc. 5-2 at ¶ 5; Pet. ¶¶ 62, 76.  Petitioner states that, since his arrival, he has also participated actively in the Sikh temple in his community.  Doc. 5-2 at ¶ 6; Pet. ¶ 77.

---

[1] As petitioner argues, by releasing him, DHS necessarily determined under 8 C.F.R. § 1236.1(c)(8) that he was not a flight risk.  Doc. 5-2 at ¶ 4; Doc. 5-1 at 7; Pet. ¶¶ 1, 56.  The government argues that DHS never affirmatively made such a finding, *see* Doc. 11 at 21, but that argument is inconsistent with the terms of § 1236.1(c)(8) and petitioner's release.  "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).  DHS, at least implicitly, made a finding that petitioner was not a flight risk when it released him.  *Valdez v. Joyce*, 25 Civ. 4627 (GBD), 2025 WL 1707737, at *3 & n.6 (S.D.N.Y. June 18, 2025) ("[T]he present allegation by ICE that Petitioner is at risk of flight is directly at odds with the contrary Department of Homeland Security ("DHS") decision to release Petitioner on his own recognizance . . . . Respondents' [argument that] Petitioner was [only] released because DHS had no place to incarcerate him . . . has no basis in law.").  Additionally, as discussed below, the government does not cite any new facts indicating that petitioner, who was arrested *immediately after appearing in immigration court* for a hearing on his case, should now be considered a flight risk.  *See* Pet. ¶¶ 57–59, 61, 75.

On May 27, 2025, petitioner appeared for a master calendar hearing before an immigration judge at the San Francisco Immigration Court.  Doc. 5-2 at ¶ 7.  Without prior notice to petitioner, the government orally moved to dismiss petitioner's case.  *Id.* ¶ 7; Pet. ¶ 64.  The government's subsequent filings indicate that, upon the dismissal of the petitioner's immigration case, the government intended to put him into expedited removal proceedings.  *See, e.g.*, Doc. 11-1, Ex. 3 at 13–14.  Petitioner's attorney objected to the government's oral motion, and the immigration judge did not grant it.  Doc. 5-2 at ¶ 7.  The immigration judge directed the government to file a written motion to which petitioner would have ten days to respond.  *Id.*; Pet. ¶ 65.  Petitioner states that the immigration judge further noted that petitioner had filed an asylum application that reasonably stated eligibility for relief.  Pet. ¶ 65.

Notwithstanding the immigration judge having just set a briefing schedule on the government's motion to dismiss the case, ICE agents approached petitioner when he exited the courtroom, and, after confirming his identity, arrested him.  Doc. 5-2 at ¶¶ 8–9.  The present record indicates that the ICE agents did not have a warrant and did not tell him why he was being arrested.  *Id.*  The agents took him to the San Francisco ICE office, and later that day, to a detention facility located in Kern County, in the Eastern District of California.  *Id.*; Pet. ¶¶ 67–68.

On May 28, 2025, the government filed a written motion to dismiss petitioner's immigration case, along with a motion to transfer venue to the Adelanto Immigration Court.  Pet. ¶ 69; Doc. 1-4, Ex. 4. The motion stated that the government sought to dismiss the proceedings "because the circumstances of [petitioner's] case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the Government."  Doc. 1-4, Ex. 4 at 2–3 (quoting 8 C.F.R. § 239.2(a)(7)).  The motion contained no explanation of how the circumstances had changed but stated that the government intended to pursue expedited removal.  *See id.*

On May 30, 2025, the San Francisco immigration judge denied the motion to dismiss because he had "reviewed [petitioner's] application and [found] a 'reasonable possibility that [petitioner] may be eligible for [asylum].'"  Doc. 1-5, Ex. 5 at 3 (quoting *C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019)).  The immigration judge also found that "it would be an inefficient

1    use of judicial resources to dismiss these proceedings in order to place [petitioner] in expedited

2    removal[,] [where petitioner could then] make a credible fear claim (that he has already made,

3    and the Court has already reviewed) to then be placed back in these proceedings." *Id.*  The

4    government indicates that the San Francisco immigration judge no longer had jurisdiction to issue

5    that ruling, as petitioner's case had been transferred to the Adelanto Immigration Court.  On

6    June 11, 2025, at a hearing before an immigration judge at the Adelanto Immigration Court, the

7    government again orally moved to dismiss petitioner's case, which was granted.  Pet. ¶ 72;

8    Doc. 1-6, Ex. 6.

9           In his Motion, petitioner asserts that he should be immediately released from custody and

10    the government should be enjoined from re-detaining him unless and until this Court orders

11    otherwise, or alternatively, unless the government demonstrates at a pre-deprivation bond hearing

12    before the San Francisco Immigration Court that he is a flight risk or danger to the community.

13    Doc. 5-1 at 21.

14    **II.    Statutory Framework**

15           Petitioner's removal proceedings before the San Francisco Immigration Judge were

16    governed by section 240 of the Immigration and Nationality Act ("section 240 proceedings").

17    Pet. ¶ 29.  Section 240 proceedings provide important statutory protections, including hearings

18    before an Immigration Judge.  *See* 8 U.S.C. § 1229a(a)(1), (a)(4).   The government apparently

19    now intends to pursue expedited removal of petitioner pursuant to 8 U.S.C. § 1225(b)(1).  *See*

20    Doc. 1-4, Ex. 4 at 2–3.  In contrast to section 240 proceedings, expedited removal takes place

21    outside of the immigration court.  Noncitizens in expedited removal proceedings can be removed

22    by an immigration officer "without further hearing or review . . . ."  8 U.S.C. § 1225(b)(1)(A)(i).[2]

23    ///

24    ///

---

[2] However, if a noncitizen in expedited removal expresses a fear of persecution or intent to seek
asylum, the immigration officer must refer the noncitizen to an asylum officer for a credible fear
interview.  8 U.S.C. § 1225(b)(1)(A)(ii).  If the asylum officer determines that a noncitizen has a
credible fear of persecution, then the noncitizen will receive "full consideration" of his asylum
claim in section 240 proceedings.  8 C.F.R. § 208.30(f).  The noncitizen "shall be detained for
further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).

### III.    Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

### IV.    Discussion

#### a.    Administrative Exhaustion

As an initial matter, the government argues that petitioner failed to exhaust his administrative remedies because he could have, according to the Government, sought a bond hearing before the Immigration Court pursuant to 8 U.S.C. § 1226(a) after he was detained. Doc. 11 at 16–17. It is not clear that the Immigration Court would find petitioner entitled to a § 1226(a) bond hearing, given the uncertain basis for the government's arrest and detention of petitioner on May 27. Although the government obtained the dismissal of petitioner's section 240 proceedings only on June 11, 2025, *see* Doc. 1-4, Ex. 4 at 2–3, it asserted at the July 10 hearing that it placed petitioner into expedited removal proceedings as of May 27, 2025. The government also states that petitioner nonetheless currently remains in section 240 proceedings because he has appealed the Adelanto Immigration Judge's order granting the motion to dismiss to the Board of Immigration Appeals, and that he remains eligible for a bond hearing pursuant to § 1226(a) pending that appeal. Doc. 11 at 16–17.

While the parties seem to agree that petitioner is not *currently* in expedited removal

6

1    proceedings, *see* Doc. 11 at 10, 14; Doc. 13 at 7, the government nonetheless argues that he was

2    in expedited removal proceedings after it arrested him on May 27 (which would not authorize a

3    § 1226(a) bond hearing).  The government appears to point to 8 C.F.R. § 239.2(a) as authority for

4    cancelling petitioner's notice to appear, *see* Doc. 11 at 13 & n.4, but that regulation states that an

5    officer may cancel the notice to appear only "prior to jurisdiction vesting with the Immigration

6    Court." 8 U.S.C. § 239.2(a).  Yet, as the government acknowledged at the July 10 hearing, here

7    jurisdiction *had* already vested with the Immigration Court.  In fact, petitioner had just left his

8    Immigration Court hearing when agents arrested him.  While a separate subsection of the

9    regulation, 8 C.F.R. § 239.2(c), authorizes government counsel to move to dismiss a pending

10   immigration proceeding, the government made such a motion in petitioner's case but did not wait

11   for the San Francisco Immigration Judge's ruling.  It arrested petitioner on May 27 while its

12   motion to change petitioner's status was pending with the immigration judge.

13          It also appears likely that an immigration judge evaluating a request for a bond hearing

14   under § 1226(a) would consider any such request to be subject to the decision in *Matter of Q. Li*,

15   29 I & N Dec. 66 (B.I.A. 2025).  There, the Board of Immigration Appeals held that a noncitizen,

16   like petitioner, "who is arrested and detained without a warrant while arriving in the United

17   States, whether or not at a port of entry, and subsequently placed in removal proceedings, is

18   detained under [8 U.S.C. § 1225(b)], and is ineligible for any subsequent release on bond under [8

19   U.S.C. § 1226(a)]." *Id.* at 69.  This appears to be the case even when the noncitizen was paroled

20   into the United States and released by DHS. *See id.*  The Court need not decide whether

21   petitioner's detention is under § 1225(b) or § 1226(a), because given *Matter of Q. Li*, the

22   Immigration Court might well conclude that petitioner is detained pursuant to § 1225(b).  And

23   because, as a statutory matter, § 1225(b) "mandate[s] detention" and does not allow for release on

24   bond, *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018), any bond request pursuant to that statute

25   would be futile. *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541–42 (9th Cir. 2004)

26   ("Exhaustion of remedies is not required when resort to such remedies would be futile.").  The

27   ///

28   ///

                                                      7

1    Court therefore waives any exhaustion requirement.[3]

2        **b.  Preliminary Injunction**

3        The government argues that petitioner's requested relief would constitute a mandatory

4    injunction, which is subject to a higher standard than a prohibitory injunction. *Marlyn*

5    *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A

6    prohibitory injunction prohibits a party from taking action and preserves the status quo pending a

7    determination of the action on the merits." *Id.* at 879 (internal citations omitted). In other words,

8    a prohibitory injunction "freezes the positions of the parties until the court can hear the case on

9    the merits." *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). A mandatory injunction, on the other

10    hand, "orders a responsible party to 'take action.'" *Marlyn Nutraceuticals*, 571 F.3d at 879

11    (quoting *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484 (1996)). Although subject to a higher

12    standard, a mandatory injunction is permissible when "extreme or very serious damage will

13    result" that is "not capable of compensation in damages," and the merits of the case are not

14    "doubtful." *Id.* (internal citations and quotation marks omitted).

15        The requested relief does not appear to be a mandatory injunction, as it can be understood

16    as merely prohibiting the government from disrupting the status quo ante, which is "the last,

17    uncontested status which preceded the pending controversy." *Id.* (quoting *Regents of the Univ. of*

18    *Cal. v. Am. Broad. Cos.,* 747 F.2d 511, 514 (9th Cir. 1984)). In similar detention cases, other

19    courts have considered the last uncontested status to be the moment prior to an unlawful

20    detention. *See Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D.

21    Cal. July 4, 2025); *Kuzmenko v. Phillips*, No. 2:25-CV-00663-DJC-AC, 2025 WL 779743, at *2

22    (E.D. Cal. Mar. 10, 2025); *see also Doe v. Noem*, No. 2:25-CV-01103-DAD-AC, 2025 WL

23    1134977, at *3 (E.D. Cal. Apr. 17, 2025) (last uncontested status was the moment prior to

24    unlawful termination of international student's SEVIS record). Nevertheless, the Court will

---

26    [3] The government also argues that petitioner failed to exhaust because he appealed the Adelanto
     Immigration Judge's order granting the motion to dismiss the section 240 proceedings. *See* Doc.
27    11 at 17. But petitioner's Motion—the only matter currently under consideration—challenges his
     detention, not the merits of the removal proceedings. *See* Doc. 5 at 21. It thus appears that there
28    are no administrative remedies that he could have exhausted prior to filing the petition.

1    assume, without deciding, that the relief requested is a mandatory injunction, as it would not

2    change the result.  *See Hernandez v. Sessions*, 872 F.3d 796, 999 (9th Cir. 2017) ("Because the

3    nature of [the requested relief] is subject to [some dispute], we assume without deciding that the

4    requirement is mandatory."); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664,

5    at *2 (E.D. Cal. Mar. 3, 2025).

6            The higher standard for a mandatory injunction is met.  "First, unlawful detention

7    certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in

8    damages."  *Hernandez*, 872 F.3d at 999.  Second, as discussed below, the result reached here is

9    not doubtful, given the facts of petitioner's case.  Other district courts in this circuit have

10   similarly barred the government from detaining without a bond hearing noncitizens who have

11   already been released from custody.  *See Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. Nov.

12   22, 2019); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855 (N.D. Cal. June 14, 2025);

13   *Pinchi*, 2025 WL 1853763, at *3.  The Court therefore turns to the *Winter* factors.

14                        **1.  Likelihood of Success on the Merits**

15           Petitioner is likely to succeed on the merits.  The Due Process Clause of the Fifth

16   Amendment prohibits governmental deprivation of life, liberty, or property without due process

17   of law.  U.S. Const. amend. V.  While noncitizens are not entitled to all the protections of the

18   Constitution, they are entitled to the protections of the Due Process Clause.  *Zadvydas*, 533 U.S.

19   678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States,

20   including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

21   The Due Process Clause thus applies to petitioner, a noncitizen who has been present in the

22   United States for seventeen months and has established numerous ties to the community.

23           The government seems to dispute this conclusion.  It argues that petitioner is an applicant

24   for admission to the United States and "has only those rights regarding admission that Congress

25   has provided by statute."  Doc. 11 at 19 (quoting *DHS v. Thuraissigiam*, 591 U.S. 103, 139–40

26   (2020)).  This is because Congress possesses "plenary power to make rules for the admission of"

27   noncitizens.  *Id.* (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)).  Therefore, the

28   government argues, petitioner's "due process rights are limited to whatever statutory rights

1    Congress provides." *Id.*

2         *Thuraissigiam* held that a petitioner who was stopped at the border did not have any due

3    process rights *regarding admission into* the United States. *Thuraissigiam*, 591 U.S. at 107.

4    However, petitioner's Motion does not challenge any determination regarding his admissibility

5    into the United States; the Motion concerns only a challenge to his detention pending removal

6    proceedings. *See Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (discussing

7    *Thuraissigiam* and explaining the distinction between a challenge to admission and a challenge to

8    detention). "Although the Supreme Court has described Congress's power over the 'policies and

9    rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to

10   Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due

11   Process Clause stands as a significant constraint on the manner in which the political branches

12   may exercise their plenary authority"—through detention or otherwise. *Hernandez*, 872 F.3d at

13   990 n.17 (citing *Kleindienst*, 408 U.S. at 769; *Zadvydas*, 533 U.S. at 695). The Due Process

14   Clause protects petitioner, a person inside the United States, from unlawful detention. *See*

15   *Zadvydas*, 533 U.S. at 693.

16        "Freedom from imprisonment—from government custody, detention, or other forms of

17   physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. The

18   government argues that the federal immigration statutes provide it with discretionary authority to

19   detain and release noncitizens during removal proceedings, *see* Doc. 11 at 23, but "governmental

20   actions may [also] create a liberty interest entitled to the protections of the Due Process Clause."

21   *Doe*, 2025 WL 691664, at *5 (citing *Bd. of Pardons v. Allen,* 482 U.S. 369, 371 (1987)).

22   Furthermore, the Supreme Court has held that, even when a statute authorizes revocation of an

23   individual's freedom, the individual may retain a protected liberty interest under the Due Process

24   Clause. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (Due Process requires pre-deprivation

25   hearing before revocation of probation); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in

26   parole context). Petitioner's release from custody in January 2024 and ties to his community

27   provide him with a protected liberty interest. *See Ortega*, 415 F. Supp. 3d at 970. The Court

28   must therefore determine what process is due.

10

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d at 993 (applying *Mathews* factors in immigration detention context). "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the [Government] deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127.

First, petitioner has a substantial private interest in remaining free from detention. He has been out of custody for nearly a year-and-a-half, and during that time, has lawfully worked full-time, has become an active member of his community, and regularly volunteers at his temple. Doc. 5-2 at ¶¶ 2, 5–6. His detention denies him that freedom. *Morrissey*, 408 U.S. at 482 (explaining that private interests include the freedom to "be gainfully employed and . . . to be with family and friends and to form the . . . enduring attachments of normal life").

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States. Doc. 5-2 at ¶¶ 2, 4, 12. Nonetheless, ICE agents arrested petitioner without a warrant as he exited a courtroom following his regularly scheduled immigration hearing. *Id.* ¶¶ 7–9. Petitioner has not since been provided any procedural safeguards to determine whether his detention is justified. Thus, "the

11

1  probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL

2  1424382, at *5.

3  The government makes the general argument that petitioner and others are flight risks

4  because recent updates to DHS guidance that modify its enforcement priorities are "widely

5  known and publicized" and create "an incentive to flee or resort to desperate, dangerous

6  conduct." Doc. 11 at 20–21.  This argument is unpersuasive as it does not address facts specific

7  to petitioner.  "The law requires a change in relevant facts, not just a change in [the

8  government's] attitude." *Valdez v. Joyce*, 25 Civ. 4627 (GBD), 2025 WL 1707737, at *3 n.6

9  (S.D.N.Y. June 18, 2025).  The government's argument disregards the fact that petitioner was

10  arrested immediately after having appeared for his immigration court hearing.  Nor has the

11  government identified any new information specific to petitioner's circumstances to undermine its

12  own prior determination that petitioner did not pose a danger or a flight risk.  *See Saravia v.*

13  *Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v.*

14  *Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that

15  the noncitizen is not a danger to the community or a flight risk."); *Valdez*, at *3 & n.6 (S.D.N.Y.

16  June 18, 2025) ("[T]he present allegation by ICE that Petitioner is at risk of flight is directly at

17  odds with the contrary Department of Homeland Security ("DHS") decision to release Petitioner

18  on his own recognizance . . . .").  To the extent the government argues that the changed

19  circumstances is the new availability of more bed space in detention facilities, that does not in any

20  way address petitioner's individual circumstances.  The government's argument disregards the

21  principle that civil detention comports with due process only when a "special justification"

22  outweighs the "*individual's* constitutionally protected interest in avoiding physical restraint."

23  *Zadvydas*, 533 U.S. at 690 (emphasis added).  The risk of erroneous deprivation is therefore

24  significant in this case.

25  Third, the government's interest in detaining petitioner without a hearing is "low."

26  *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6.  In immigration court, custody

27  hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  The

28  government's interest is further diminished where a person "has consistently appeared for [his]

1  immigration hearings . . . and [] does not have a criminal record." *Pinchi*, 2025 WL 1853763, at

2  *2.

3      On balance, the *Mathews* factors show that petitioner is entitled to process, and that

4  process should have been provided before petitioner was detained.  "'[T]he root requirement' of

5  the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is

6  deprived of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

7  532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494

8  U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution

9  requires some kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme

10  Court has held that Due Process required a pre-deprivation hearing before those released on

11  parole from a criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S.

12  at 480–86.  The same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*,

13  411 U.S. 778, 782 (1973).

14      The government argues that *Morrissey* permits the arrest of someone pending the final

15  revocation of parole.  But "decisions defining the constitutional rights of prisoners establish a

16  *floor* for the constitutional rights of [noncitizens in immigration custody]," who are "most

17  decidedly entitled to *more* considerate treatment than those who are criminally detained."

18  *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *5 (D. Ariz.

19  Nov. 18, 2016) *aff'd sub nom*. *Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) (cleaned up) (emphasis

20  added); *see Ortega*, 415 F. Supp. 3d at 970 ("Given the civil context [of immigration detention],

21  [petitioner's] liberty interest is arguably greater than the interest of parolees in *Morrissey*."); *see*

22  *also Zadvydas*, 533 U.S. at 690 ("[G]overnment detention violates [the Due Process] Clause

23  unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or,

24  in certain special and narrow nonpunitive circumstances, where a special justification, such as

25  harm-threatening mental illness, outweighs the individual's constitutionally protected interest in

26  avoiding physical restraint." (internal citations and quotations omitted)).  As numerous other

27  courts have concluded, petitioner is entitled to pre-deprivation process because he is faced with

28  grave harm that could be guarded with minimal cost to the government.  *See, e.g.*, *Ortega*, 415 F.

1  Supp. 3d at 970.

2         The Ninth Circuit has also held that, when there is a substantial liberty interest at stake,

3  the government should have the burden of proof by clear and convincing evidence that an

4  individual is a flight risk or danger before depriving the individual of that liberty. *See Singh v.*

5  *Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011).

6         Considering the substantial private interest at stake, the risk of erroneous deprivation

7  through the procedures used, and the government's relatively lesser interest in this case, the Court

8  finds that the Due Process Clause requires a pre-deprivation bond hearing where the government

9  bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or

10  danger to the community. Numerous district courts have reached a similar conclusion. *Pinchi*,

11  2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 2025 WL 691664, at *6; *Diaz*

12  *v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia*, 2025

13  WL 1676855, at *3; *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D.

14  Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal.

15  Aug. 23, 2020).

16         With these considerations in mind, petitioner is likely to succeed on the merits.

17                            **2. Irreparable Harm**

18         Petitioner will suffer irreparable harm without injunctive relief. "It is well established that

19  the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."

20  *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

21  "When an alleged deprivation of a constitutional right is involved, most courts hold that no

22  further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989,

23  1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure,

24  § 2948.1 (2d ed. 2004)). Unconstitutional detention isolates petitioner from his community and

25  deprives him of the ability to work and worship. Doc. 5-2 at ¶¶ 6, 11–12. "Inhibition of religious

26  practice is a clear example of such constitutional injury that cannot be adequately remedied

27  through damages." *Rouser v. White*, 707 F. Supp. 2d 1055, 1070 (E.D. Cal. 2010); *see also Elrod*

28  *v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal

1    periods of time, unquestionably constitutes irreparable injury.”).

2    ### 3.  Balance of Equities and Public Interest

3    When the government is the nonmoving party, “the last two *Winter* factors merge.”  *Baird*

4    *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Faced with a choice

5    “between [minimally costly procedures] and preventable human suffering,” as discussed above,

6    the Court concludes “that the balance of hardships tips decidedly in [petitioner’s] favor.”

7    *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

8    The public interest also weighs in petitioner’s favor.  “The public has a strong interest in

9    upholding procedural protections against unlawful detention, and the Ninth Circuit has

10    recognized that the costs to the public of immigration detention are staggering.”  *Diaz*, 2025 WL

11    1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)

12    (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

13    838 (9th Cir. 2020) (“It is always in the public interest to prevent the violation of a party’s

14    constitutional rights.”) (citing *Padilla*, 953 F.3d at 1147–48).

15    In conclusion, a preliminary injunction is warranted.

16    ### c.  Security

17    Federal Rule of Civil Procedure Rule 65(c) provides that a district court may grant a

18    preliminary injunction “only if the movant gives security in an amount that the court considers

19    proper to pay the costs and damages sustained by any party found to have been wrongfully

20    enjoined or restrained.”  Fed. R. Civ. P. 65(c).  A district court retains discretion “as to the

21    amount of security required, *if any.*” *Johnson v. Couturier,* 572 F.3d 1067, 1086 (9th Cir. 2009)

22    (internal quotation marks and citations omitted) (emphasis in the original).  Courts regularly

23    waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011);

24    *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.  The government provides no

25    evidence that it will incur costs due to petitioner’s release.  *See Zest Anchors, LLC v. Geryon*

26    *Ventures, LLC*, 2022 WL 16838806, at *4 (S.D. Cal. Nov. 9, 2022) (“[T]he party affected by the

27    injunction bears the obligation of presenting evidence that a bond is needed.”).  No security is

28    required here.

1    **V.    Conclusion and Order**

2          Accordingly, petitioner's Motion for Temporary Restraining Order, Doc. 5, is converted

3    to a Motion for Preliminary Injunction and is GRANTED.

4          Petitioner's immediate release is required to return him to the status quo ante—"the last

5    uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3;

6    *Kuzmenko*, 2025 WL 779743, at *2; *see also Valdez*, 2025 WL 1707737, at *5 (ordering

7    immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK,

8    2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-

9    01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).  The government must

10   immediately release petitioner from custody and, during the pendency of these proceedings, may

11   not re-detain him without a pre-deprivation bond hearing before the San Francisco Immigration

12   Court.  Petitioner shall not be detained unless the government demonstrates, by clear and

13   convincing evidence at any such bond hearing, that petitioner is a flight risk or danger to the

14   community such that his physical custody is required.

15         The Court's prior order to maintain the status quo pending the July 10 hearing, Doc. 10, is

16   VACATED.

17

18   IT IS SO ORDERED.

19      Dated:  <u> July 11, 2025 </u>           <u>                     </u>

20                                     UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28