1

2

3

4                UNITED STATES DISTRICT COURT

5               NORTHERN DISTRICT OF CALIFORNIA

6

7   FRESCIA GARRO PINCHI,                Case No. 5:25-cv-05632-PCP

8              Plaintiff,
                                         **ORDER GRANTING PRELIMINARY**
9        v.                              **INJUNCTION**

10  KRISTI NOEM, et al.,

11             Defendants.

12          On July 3, 2025, Frescia Anthuane Garro Pinchi, an asylum-seeker from Peru who has

13  lived in California for more than two years, was detained by officers from Immigration and

14  Customs Enforcement (ICE), a division of the Department of Homeland Security (DHS), as she

15  was leaving immigration court in San Francisco. Ms. Garro Pinchi filed a petition for a writ of

16  habeas corpus and a motion for a temporary restraining order seeking release from detention. On

17  July 4, 2025, this Court issued a temporary restraining order requiring the government to release

18  Ms. Garro Pinchi and enjoining it from re-detaining her without notice and a pre-arrest hearing

19  before a neutral decisionmaker. That temporary restraining order remains in effect until July 28,

20  2025. Before the Court is Ms. Garro Pinchi's request to convert the temporary restraining order

21  into a preliminary injunction. For the following reasons, the preliminary injunction is granted.

22                              **BACKGROUND**

23          Ms. Garro Pinchi is a 27-year-old woman from Peru. On April 14, 2023, she entered the

24  United States from Mexico. She was briefly detained by DHS officers and then released on her

25  own recognizance "for humanitarian reasons," according to DHS records. She was not required to

26  post a bond and was not subject to any conditions of supervision. Ms. Garro Pinchi was given a

27  Notice to Appear (NTA) for removal proceedings in immigration court. The NTA charged her

28  with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States

United States District Court
Northern District of California

1    without being admitted or paroled, or who arrives in the United States at any time or place other

2    than as designated by the Attorney General."

3        In April 2024, Ms. Garro Pinchi applied for asylum, withholding of removal, and relief

4    under the Convention Against Torture, claiming that she fears persecution if she returns to Peru.

5    Since arriving in the United States, Ms. Garro Pinchi has attended all of her immigration court

6    hearings, complied with all of the requirements the government has imposed on her, and never

7    been arrested. She has no criminal history before or since her arrival. In the United States, Ms.

8    Garro Pinchi has maintained full-time employment at a company where she was recently

9    recognized as employee of the month. She has become an active member of her church

10    community in San José and has made friends with students and coaches at the boxing gym where

11    she takes classes. Ms. Garro Pinchi is the sole financial provider for her mother, seven-year-old

12    daughter, and other relatives in Peru who rely on her completely. Ms. Garro Pinchi's mother is

13    diabetic and depends on Ms. Garro Pinchi to pay for her medical treatment.

14        Ms. Garro Pinchi suffers from several serious medical conditions. She recently underwent

15    an operation for a tumor, which requires ongoing monitoring and medication to prevent

16    recurrence. She also requires medication every eight hours to treat her generalized anxiety

17    disorder, clinical depression, and post-traumatic stress disorder. Additionally, she suffers from

18    asthma, gastritis, and Helicobacter pylori, a bacterium that infects the stomach and is a major

19    cause of stomach cancer and peptic ulcers, which requires a strict dietary regimen prescribed by a

20    doctor.

21        On July 3, 2025, Ms. Garro Pinchi attended a routine hearing in immigration court in San

22    Francisco. During that hearing, the government orally moved to dismiss her pending removal

23    proceedings. The government has stated that it did so with the intent to instead pursue expedited

24    removal proceedings under 8 U.S.C. § 1225. The immigration judge gave Ms. Garro Pinchi an

25    opportunity to respond to DHS's motion and set a further hearing for July 31, 2025.

26        As Ms. Garro Pinchi exited the courtroom, she was arrested by a group of ICE agents,

27    some of whom were wearing masks to conceal their identities. Only after she was detained and

28    removed to a separate holding room did the agents serve her with a warrant authorizing her arrest

United States District Court
Northern District of California

and explain the reasons for her detention.

Hours later, Ms. Garro Pinchi filed a petition for a writ of habeas corpus and a motion for a temporary restraining order. The following day, this Court issued a temporary restraining order requiring the government to release Ms. Garro Pinchi and enjoining it from re-detaining her without notice and a pre-detention hearing before a neutral decisionmaker. That order was to remain in effect until 5 p.m. on July 14. Ms. Garro Pinchi was released from detention on July 5. On July 14, before the temporary restraining order expired, the Court held a hearing at which it heard argument on whether a preliminary injunction should issue. At that hearing, the Court extended the temporary restraining order until 5 p.m. on July 28, 2025. *See* Fed. R. Civ. P. 65(b)(2) (authorizing 14-day extension).

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that [1] [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ANALYSIS

### I.    Ms. Garro Pinchi is likely to succeed on the merits.

Ms. Garro Pinchi is likely to succeed on the merits of her claim that the Due Process Clause entitles her to a hearing before she may be re-detained.[1]

---

[1] Ms. Garro Pinchi also brings a substantive due process challenge to her detention, arguing that because dangerousness and flight risk are the only two legitimate reasons for immigration detention and neither rationale supports her detention, the government has no legitimate purpose

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. It is firmly established that these protections extend to noncitizens present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guarantied by [the Fifth Amendment], and that even aliens shall not … be deprived of life, liberty, or property without due process of law."); *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an

---

for detaining her. Because granting a preliminary injunction enjoining the government from detaining Ms. Garro Pinchi without a pre-detention hearing obviates the threat of any imminent deprivation of her substantive due process rights, the Court need not address her substantive due process claim at this preliminary stage of the proceedings.

individual from custody creates "an implicit promise," upon which that individual may rely, that

their liberty "will be revoked only if [they] fail[] to live up to the … conditions [of release]."

*Morrissey*, 408 U.S. at 482. "[T]he liberty [of a person released from government custody] is

valuable and must be seen as within the protection of the [Due Process Clause]." *Id.*

Thus, even when ICE has the initial discretion to detain or release a noncitizen pending

removal proceedings, after that individual is released from custody she has a protected liberty

interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250,

at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar

to the present case and finds Petitioner raised serious questions going to the merits of his claim

that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*,

No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No.

20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969

("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a

noncitizen released from immigration detention] have a liberty interest in remaining out of custody

on bond.").

Applying these principles, it is clear that Ms. Garro Pinchi has a protected liberty interest

in remaining out of custody. During the more than two years since she entered the United States

and was initially detained and released by ICE, Ms. Garro Pinchi has found a job and provided for

her family. She has built community at work, at church, and at her boxing gym. She has

undertaken treatment for multiple serious health conditions. These extensive relations of support

and interdependence underscore the high stakes of her liberty.

To determine what procedures are constitutionally sufficient to protect a liberty interest,

the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022).[2] The *Mathews* test balances

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to a procedural due process
challenge to detention under section 1226(a), explaining that "*Mathews* remains a flexible test that
can and must account for the heightened governmental interest in the immigration detention
context." 53 F.4th at 1207. Although the Ninth Circuit "assumed without deciding" that *Mathews*
applied, it noted that other circuits have applied *Mathews* in considering due process challenges to
immigration detention, *see, e.g.*, *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-*

United States District Court
Northern District of California

three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Ms. Garro Pinchi's constitutional right to a hearing before a neutral decisionmaker prior to any future detention.

As explained above, Ms. Garro Pinchi has a substantial private interest in remaining out of custody. She has an interest in remaining in her home, continuing her employment, providing for her family, obtaining necessary medical care, maintaining her relationships in the community, and continuing to attend her church. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Ortega*, 415 F. Supp. 3d 963 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community); *Morrissey*, 408 U.S. at 482.

The government contends that Ms. Garro Pinchi has "the same liberty interest as every other noncitizen in removal proceedings" under section 1226(a) and argues that such a liberty interest is insufficient to warrant a pre-detention hearing because *Rodriguez Diaz* held that the procedures provided under section 1226(a) are constitutionally adequate notwithstanding the

---

*Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020); and that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings*, see, e.g.*, *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). *See also Doe v. Becerra*, 704 F. Supp. 3d 1006, 1016 (N.D. Cal. 2023) (discussing the applicability of *Mathews* to due process challenges to immigration detention), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

absence of any pre-detention hearing. But contrary to the government's representations, the Ninth Circuit did not hold in *Rodriguez Diaz* that noncitizens facing removal under section 1226(a) have no due process right to a pre-detention hearing. It held only that a noncitizen detained under section 1226(a) does not have a right to a *second* bond hearing when the only changed material condition since their first bond hearing is the duration of their detention. Because the question presented here was not presented in *Rodriguez Diaz*, the court had no opportunity to address it.

Even assuming *arguendo* that the post-detention bond hearing provided under section 1226(a) provides constitutionally sufficient process for those noncitizens who have never previously been detained and released by DHS, Garro Pinchi's circumstance is different. Her release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and Ms. Garro Pinchi has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).[3] "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Ms. Garro Pinchi was apprehended by ICE officers when she crossed the border into the United States on April 14, 2023. ICE then released her on her own recognizance. As ICE was not authorized to release Ms. Garro Pinchi if she was a danger to the community or a flight risk, the Court must infer from Ms. Garro Pinchi's release that ICE determined she was neither.[4] Ms. Garro

---

[3] Ms. Garro Pinchi notes that the Form I-213 that the government submitted in the briefing on this motion indicates that she was released "for humanitarian reasons," which might suggest she was released pursuant to 8 C.F.R. § 212.5(b). That regulation similarly provides that noncitizens may be released only if they "present neither a security risk nor a risk of absconding."

[4] The government insists that, prior to Ms. Garro Pinchi's detention at the San Francisco courthouse on July 3, 2025, she "had not previously been detained, had not been released, and was not subject to any condition of release. She was encountered and then released without detention by ICE." This is a distinction without a difference. When she arrived in the United States, Ms. Garro Pinchi was apprehended by ICE agents, taken into custody for a period lasting many hours,

United States District Court
Northern District of California

Pinchi's release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention.[5] Accordingly, Ms. Garro Pinchi's private interest in retaining her liberty is significant.

Turning to the second *Mathews* factor, it is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, "[the petitioner] has not received any bond or custody … hearing," "the risk of an erroneous deprivation [of liberty] is high" because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention. *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up). Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government has offered no evidence—including in the proceedings before this Court—that her detention would serve either purpose. Indeed, the evidence before the Court suggests the government may have difficulty establishing such a basis. Ms. Garro Pinchi was detained after more than two years of attending

---

and then released on her own recognizance. The government offers no explanation for why this period of detention should be considered something other than a restriction of her liberty and why the cessation of that detention should be considered something other than release.

[5] Although *Rodriguez Diaz* noted that the liberty interests of noncitizens may be limited in ways that those of citizens could not because of the government's countervailing interest in immigration enforcement, it reaffirmed the longstanding principle that noncitizens have liberty interests protected by the Fifth Amendment. 53 F.4th at 1205–07. And it is clear that the liberty interests at stake here differ from those considered in *Rodriguez Diaz*. The petitioner in *Rodriguez Diaz* had been transferred directly into ICE custody after serving a term of imprisonment in state prison following a state felony conviction. While that petitioner retained a liberty interest in being released from detention, as the Ninth Circuit acknowledged, that interest was markedly different from the liberty interest possessed by an immigrant like Ms. Garro Pinchi whom ICE has permitted to develop an out-of-custody life in the United States over a period of more than two years.

1    every required immigration hearing and despite her deep community ties and lack of any criminal

2    record. Under these circumstances, there is a significant risk that even the two-day curtailment of

3    liberty that Ms. Garro Pinchi already suffered upon her re-detention by ICE was not justified by

4    any valid interest. Providing her with the procedural safeguard of a pre-detention hearing will have

5    significant value in helping ensure that any future detention has a lawful basis.

6        The government asserts that any infringement of Ms. Garro Pinchi's liberty interests can

7    be adequately addressed if she requests a post-detention bond hearing after she has been re-

8    detained under section 1226(a). While the government contends such a hearing would be provided

9    in a timely fashion, there is significant reason to doubt its contention. The government is unable to

10    provide *any* timeline for when such a hearing would take place. In addition, Ms. Garro Pinchi

11    continues to face the threat that the government will place her in expedited removal proceedings,

12    despite serious questions as to the lawfulness of such a decision, and that in those proceedings she

13    will be provided very limited procedural protections or opportunities for judicial review. Further,

14    DHS's policies regarding detention pending removal and the procedures it will afford noncitizens

15    in such proceedings are in flux and uncertain. Given the inadequacy and unreliability of the

16    government's proposed post-detention procedural safeguards, there is a substantial risk not only

17    that the period between her arrest and any bond hearing will have served no valid government

18    purpose but also that she will continue to be detained without a bond hearing in the absence of any

19    valid purpose.

20        More fundamentally, there is no countervailing government interest—the third and final

21    *Mathews* factor—that supports conducting a bond hearing only after Ms. Garro Pinchi has been

22    detained, rather than in advance thereof. In the proceedings before this Court, the government has

23    articulated no legitimate interest that would support arresting Ms. Garro Pinchi without a pre-

24    detention hearing. Since DHS's initial determination more than two years ago that Ms. Garro

25    Pinchi should be released on her own recognizance, she has continued to demonstrate that she

26    poses neither a flight risk nor a danger to the community. She has diligently attended every

27    required hearing in immigration court and has complied with every demand made of her by ICE.

28    She has no criminal record and has become a deeply valued member of her community, attending

church weekly, making friends at her gym, and developing close relationships with coworkers at a company where she was recently named employee of the month. *See Jorge M.F.*, 2021 WL 783561, at *3 (cleaned up) ("Any potential government concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of Petitioner-Plaintiff's strong family ties and his continued employment as a driller, as well as his actions in posting a bond and complying with the conditions of release."). The government does not claim that any material circumstances have changed that would warrant reassessment of Ms. Garro Pinchi's risk of flight or dangerousness, and it has articulated no other reason for her detention.

Instead, the government contends that Ms. Garro Pinchi should be detained solely so that the propriety of her release pending the completion of removal proceedings can be evaluated in a post-detention bond hearing. In the government's view, this is the only existing means through which ICE can make such a determination. But whether or not the government's existing regulations and practices provide for pre-detention bond hearings, due process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.

Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a neutral decisionmaker. "In immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (cleaned up). Indeed, it is likely that the cost to the government of detaining Ms. Garro Pinchi pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing.

In short, each of the *Mathews* factors favors Ms. Garro Pinchi. She has therefore shown a likelihood of success on the merits of her claim that the Due Process Clause entitles her to a bond hearing before an immigration judge prior to any re-arrest or detention.

**II.    Irreparable harm**

Ms. Garro Pinchi is also likely to suffer immediate and irreparable harm in the absence of

preliminary injunctive relief. She faces the risk of immediate re-detention by ICE, likely in violation of her constitutional rights and with potentially devastating consequences for her economic livelihood, her family, and her health.

The likely unconstitutional deprivation of liberty that Ms. Garro Pinchi faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir.) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up). Ms. Garro Pinchi is out of ICE custody only because of a court order, and the government has given no assurance that she will not face immediate re-detention in the absence of an injunction. "[I]t follows inexorably from our conclusion" that Ms. Garro Pinchi's re-detention without a pre-detention hearing before a neutral decisionmaker is "likely unconstitutional," that she has "carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

Further, Ms. Garro Pinchi is likely to suffer dire material consequences if re-detained. The Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Id*. Ms. Garro Pinchi is the sole financial provider for her seven-year-old daughter, her mother, and other disabled relatives in Peru. Her mother has diabetes and depends on Ms. Garro Pinchi to afford insulin. Ms. Garro Pinchi's detention would thus cause an immense burden on her family. Detention also poses a significant threat to Ms. Garro Pinchi's health. She suffers from several serious medical conditions that would likely be exacerbated by detention. She requires regular medication to prevent the recurrence of a tumor, for which she recently underwent surgery, and to treat her anxiety disorder, clinical depression, and post-traumatic stress disorder. She also requires a strict dietary regimen to control a dangerous stomach bacterium. The likely consequences of Ms. Garro Pinchi's detention—which would prevent her from providing for her family and sever her from existing

United States District Court
Northern District of California

1    medical care—are grave and irreparable.

2    **III.    Balance of equities and public interest**

3          The final two *Winter* factors, the balance of the equities and public interest, merge in light

4    of the fact that the government is the opposing party. These factors also weigh heavily in favor of

5    granting a preliminary injunction. "[T]he public has a strong interest in upholding procedural

6    protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the

7    public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned

8    up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020)

9    (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir.

10   2020)) ("It is always in the public interest to prevent the violation of a party's constitutional

11   rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest

12   concerns are implicated when a constitutional right has been violated, because all citizens have a

13   stake in upholding the Constitution."). As other courts in this district have concluded under similar

14   circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and

15   potentially prolonged ICE detention, putting her family's financial survival and her already

16   precarious health at risk—while the potential harm to the government is minimal. The only

17   potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately

18   demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is

19   necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*,

20   2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally

21   cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat.

22   Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with … a conflict between minimally costly

23   procedures and preventable human suffering, [the Court has] little difficulty concluding that the

24   balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9

25   (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

26                                **CONCLUSION**

27          For the foregoing reasons, the Court grants Ms. Garro Pinchi's request for a preliminary

28   injunction. The government may not re-detain Ms. Garro Pinchi during the pendency of these

                                          12

proceedings without providing her with a pre-detention bond hearing before a neutral immigration judge. Ms. Garro Pinchi may not be detained unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.

**IT IS SO ORDERED.**

Dated: July 24, 2025

P. Casey Pitts
United States District Judge