1  KEKER, VAN NEST & PETERS LLP
   ERIN E. MEYER - # 274244
2  emeyer@keker.com
   JULIA L. ALLEN - # 286097
3  jallen@keker.com
   CLAIRE C. BONELLI - # 317735
4  cbonelli@keker.com
   ELLEN WATLINGTON - # 336422
5  ewatlington@keker.com
   JACQUIE P. ANDREANO - # 338354
6  jandreano@keker.com
   KAYLA CROWELL - # 349061
7  kcrowell@keker.com
   633 Battery Street
8  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
9  Facsimile:    415 397 7188

10 Attorneys for Plaintiffs-Petitioners

11 *[ADDITIONAL COUNSEL ON NEXT PAGE]*

BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
NEIL K. SAWHNEY - # 300130
nsawhney@aclunc.org
LAUREN M. DAVIS - # 357292
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

ABBY SULLIVAN ENGEN - # 270698
asullivanengen@centrolegal.org
JESSE NEWMARK - # 247488
jessenewmark@centrolegal.org
NIKOLAS DE BREMAEKER (Pro Hac Vice
Forthcoming)
ndebremaeker@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 437-1863

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRESCIA GARRO PINCHI, JUANY GALO SANTOS, and JOSE TELETOR SENTE, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs-Petitioners,<br><br>    v.<br><br>SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; KRISTI NOEM, Secretary of the United States Department of Homeland Security; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement, acting in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>        Defendants-Respondents. | Case No. 5:25-cv-5632-PCP<br><br>**NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS**<br><br>Date:    November 20, 2025<br>Time:    10:00 am<br><br>Date Filed: July 3, 2025 |

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1

JUDY RABINOVITZ (pro hac vice forthcoming)
jrabinovitz@aclu.org

2

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor

3

New York, NY 10004
Telephone: (212) 549-2660

4

5

Attorneys for Plaintiffs-Petitioners

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 20, 2025, at 10:00 a.m., or as soon as this matter may be heard, in the Courtroom of the Honorable P. Casey Pitts at the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose, California 95113, Plaintiffs Frescia Garro Pinchi, Juany Galo Santos, and Jose Waldemar Teletor Sente (collectively, "Plaintiffs") hereby move this Court for an Order granting Plaintiffs' motion to stay or postpone, pursuant to the Administrative Procedure Act, 5 U.S.C. § 705, the Department of Homeland Security's policy of re-arresting and re-detaining certain noncitizens in removal proceedings in the absence of any individualized determination that they had become a flight risk or a danger to the public.

This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Points and Authorities, the supporting Declarations of Frescia Garro Pinchi, Juany Galo Santos, Jose Teletor Sente, Jordan Weiner, Shira Levine, Lisa Knox, Natalia Santanna, Bill Ong Hing, Jacqueline Marie Brown, Martha Ruch, Salam Maklad, Gabriela Vargas Plasencia, David Colon Solano, Maidel Arostegui Castellon, Carolina Ortiz Calderon, Keymaris Alvarez-Miranda, and Erin E. Meyer, and the Exhibits attached thereto, the Proposed Order filed herewith, the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court. This motion is also supported by the Amended Complaint and Amended Petition for Writ of Habeas Corpus, Dkt. No. 45, as well as Plaintiffs' Motion for Provisional Class Certification and the supporting papers filed contemporaneously herewith.

Dated: October 16, 2025                           KEKER, VAN NEST & PETERS LLP


                                                  By:   /s/ Erin E. Meyer
                                                  ERIN E. MEYER JULIA L. ALLEN
                                                  CLAIRE C. BONELLI
                                                  ELLEN WATLINGTON
                                                  JACQUIE P. ANDREANO
                                                  KAYLA CROWELL

                                                  Attorneys for Plaintiffs-Petitioners

1

2   Dated: October 16, 2025                         AMERICAN CIVIL LIBERTIES UNION
                                                    FOUNDATION OF NORTHERN

3

4                                        By:    */s/ Bree Bernwanger*
                                                BREE BERNWANGER
5                                               MICHELLE (MINJU) Y. CHO
                                                NEIL K. SAWHNEY
6                                               LAUREN M. DAVIS

7                                               Attorneys for Plaintiffs-Petitioners

8   Dated: October 16, 2025                         CENTRO LEGAL DE LA RAZA

9

10                                       By:    */s/ Abby Sullivan Engen*
                                                ABBY SULLIVAN ENGEN
11                                              JESSE NEWMARK
                                                NIKOLAS DE BREMAEKER
12
                                                Attorneys for Plaintiffs-Petitioners
13

14  Dated: October 16, 2025                         AMERICAN CIVIL LIBERTIES UNION
                                                    FOUNDATION
15

16                                       By:    */s/ Judy Rabinovitz*
                                                JUDY RABINOVITZ
17
                                                Attorneys for Plaintiffs-Petitioners
18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. I

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

   A.   DHS had a long-standing policy of not re-detaining previously released
        noncitizens absent an individualized determination of changed
        circumstances. ............................................................................................ 2

   B.   DHS has instituted a new policy of arbitrarily re-detaining previously
        released noncitizens without any individualized consideration of flight risk
        or danger. .................................................................................................... 4

   C.   DHS has not provided a reasoned basis for this drastic change in policy. ...... 6

III. LEGAL STANDARD .................................................................................................. 7

IV.  ARGUMENT .............................................................................................................. 8

   A.   Plaintiffs are likely to succeed on the merits. ............................................. 8

        1.   The Re-Detention Policy is a reviewable final agency action. .......... 8

        2.   DHS's Re-Detention Policy violates the APA because it is arbitrary
             and capricious. ...................................................................................... 12

        3.   The Re-Detention Policy violates the APA because it contravenes
             the Fourth Amendment. ........................................................................ 18

        4.   The Re-Detention Policy violates the APA because it exceeds
             DHS's statutory authority and is contrary to law. ............................... 19

   B.   Absent a stay, Plaintiffs are likely to experience irreparable harm. .............. 21

   C.   The balance of the equities and the public interest strongly favors a stay........... 23

V.   CONCLUSION........................................................................................................... 24

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

**Federal Cases**

4

*Al Otro Lado, Inc. v. McAleenan,*
5      394 F. Supp. 3d 1168 (S.D. Cal. 2019) ............................................................9, 10

6    *Alejandro v. Olson,*
      No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348 (S.D. Ind. Oct. 11, 2025) ....................13
7

8    *All. For the Wild Rockies v. Pena,*
      865 F.3d 1211 (9th Cir. 2017) .............................................................................8

9
     *Almendarez-Torres v. United States,*
10      523 U.S. 224 (1998) ...........................................................................................20

11   *Amadei v. Nielsen,*
      348 F. Supp. 3d 145 (E.D.N.Y. 2018) .............................................................9, 10
12

13   *Aracely v. Nielsen,*
      319 F. Supp. 3d 110 (D.D.C. 2018) .......................................................................9

14   *Bennet v. Spear,*
15      520 U.S. 154 (1997) ...............................................................................9, 10, 11

16   *Bermeo Sicha v. Bernal,*
      No. 1:25-CV-00418-SDN, 2025 WL 2494530 (D. Me. Aug. 29, 2025) .................................3
17

18   *Camara v. Mun. Ct.,*
      387 U.S. 523 (1967) ..........................................................................................19

19
     *Carlson v. Landon,*
20      342 U.S. 524 (1952) ..........................................................................................20

21   *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.,*
      524 F. Supp. 3d 919 (N.D. Cal. 2021) ...................................................................16
22

23   *Chalk v. U.S. Dist. Ct.,*
      840 F.2d 701 (9th Cir. 1988) .............................................................................22

24   *Clark v. Martinez,*
25      543 U.S. 371 (2005) ..........................................................................................20

26   *Cmty. Legal Servs. in East Palo Alto v. U.S. Dep't of Health and Human Servs.,*
      780 F. Supp. 3d 897 (N.D. Cal. 2025) .....................................................................8
27

28   *Cordero Pelico v. Kaiser,*
      No. 25-cv-07286-EMC, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025) ..........................*passim*

iv

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

*Ctr. for Biological Diversity v. Haaland*,
  58 F.4th 412 (9th Cir. 2023) ...................................................................................9

*Davis v. Michigan Dep't of Treasury*,
  489 U.S. 803 (1989).............................................................................................21

*Demore v. Kim*,
  2002 WL 34705774 (U.S. Aug. 29, 2002).............................................................3

*Demore v. Kim*,
  538 U.S. 510 (2003).............................................................................................17

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)......................................................................................... *passim*

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) .............................................................................23

*Doe v. Trump*,
  784 F. Supp. 3d 1297 (N.D. Cal. 2025) ..........................................................23, 24

*Dos Santos v. Noem*,
  No. 1:25-CV-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025)................3

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) .................................................................................8

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016).......................................................................................12, 13

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009).......................................................................................13, 14

*Franklin v. Mass.*,
  505 U.S. 788 (1992).............................................................................................8

*Garro Pinchi v. Noem*,
  No. 5:25-CV-05632-PCP, 2025 WL 2084921 (N.D. Cal. July 24, 2025)...............17

*Grand Canyon Tr. v. Pub. Serv. Co. of N.M.*,
  283 F. Supp. 2d 1249 (D.N.M. 2003) ....................................................................9

*Matter of Guerra*,
  24 I. & N. Dec. 37 (BIA 2006) ...............................................................................2

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) .................................................................16, 17, 22

*Hyppolite v. Noem*,
  No. 25-CV-4304 (NRM), 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).................14

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

*I.N.S. v. Nat'l Ctr. for Immigrants' Rts. Inc.*,
   502 U.S. 183,194 (1991) ................................................................................................20

*Immigrant Defs. Law Ctr. v. Noem*,
   145 F.4th 972 (9th Cir. 2025) ...................................................................................7, 23

*J.L. v. Cissna*,
   341 F. Supp. 3d 1048 (N.D. Cal. 2018) .......................................................................10

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ................................................................................................2, 13

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) .......................................................................................22

*Lopez Benitez v. Francis*,
   No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) ..................7, 13

*Lopez v. Sessions*,
   No. 18 Civ. 4189 (RWS), 2018 WL 2932726 (S.D.N.Y. June 12, 2018) ...................10, 18

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .....................................................................................................11

*Maklad v. Murray*,
   No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376 (E.D. Cal. Aug. 8, 2025) ................11

*Martinez v. Hyde*,
   No. 25-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025) ................................7

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ..................................................................................21, 24

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...................................................................................................12, 14

*Munoz Materano v. Arteta*,
   No. 25-cv-6137, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025) ...................................19

*Nat'l Urb. League v. Ross*,
   489 F. Supp. 3d 939 (N.D. Cal. 2020), *order clarified*, 491 F. Supp. 3d 572
   (N.D. Cal. 2020) .......................................................................................................16, 18

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1164 (N.D. Cal. 2015) ..........................................................................22

*Ortega v. Bonnar*,
   415 F. Supp. 3d 963 (N.D. Cal. 2019) .............................................................................3

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

*Pablo Sequen v. Kaiser*,
   No. 25-cv-06487-PCP, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025) ...................................7

*R.I.L-R v. Johnson*,
   80 F. Supp. 3d 164 (D.D.C. 2015) ...................................................................................11

*Ramirez v. U.S. Immigr. & Customs Enf't*,
   310 F. Supp. 3d 7 (D.D.C. 2018) .......................................................................................9

*Riley v. California*,
   573 U.S. 373 (2014) ........................................................................................................18

*Romero v. Hyde*,
   No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025) .................................14, 19

*Rubenstein v. Brownell*,
   206 F.2d 449 (D.C. Cir. 1953), *aff'd*, 346 U.S. 929 (1954)....................................................21

*San Francisco Herring Ass'n v. Dep't of the Interior*,
   946 F.3d 564 (9th Cir. 2019) ...........................................................................................10

*Saravia v. Sessions*,
   280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F. 3d 1137 (9th Cir. 2018)...........................................................2, 18

*Singh v. Andrews*,
   No. 1:25-cv-00801-KIS-SKO (HC), 2025 WL 1918679 (E.D. Cal. July 11, 2025) ................................................................................................................................7

*Matter of Sugay*,
   17 I. & N. Dec. 637 (BIA 1981) .............................................................................2, 3, 9, 23

*Thakur v. Trump*,
   787 F. Supp. 3d 955 (N.D. Cal. 2025) ..........................................................................12, 16

*U.S. v. Cisneros*,
   No. 19-CR-00280-RS-5, 2021 WL 5908407 (N.D. Cal. Dec. 14, 2021) .................................3

*U.S. v. Kordosky*,
   No. 88-CR-52-C, 1988 WL 238041 (W.D. Wis. Sep. 12, 1988)..........................................21

*United States v. Holmes*,
   452 F.2d 249 (7th Cir. 1971) (Stevens, J.)........................................................................18, 21

*United States v. Witkovich*,
   353 U.S. 194 (1957)...........................................................................................................20

*Valdez v. Joyce*,
   No. 25 Civ. 4627 (GBD), 2025 WL 1707737 (S.D.N.Y. June 18, 2025)..................................7

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

*Valencia Zapata v. Kaiser*,
   No. 25-CV-07492-RFL, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025) ..........................14, 17

*Vasquez Perdomo v. Noem*,
   148 F.4th 656 (9th Cir. 2025) ...................................................................................................23

*Velesaca v. Decker*,
   458 F. Supp. 3d 224 (S.D.N.Y. 2020)......................................................................................22

*Warsoldier v. Woodford*,
   418 F. 3d 989 (9th Cir. 2005) ...................................................................................................21

*Wash. v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) ..................................................................................................22

*Williams v. Dart*,
   967 F.3d 625 (7th Cir. 2020) ....................................................................................................18

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)....................................................................................................16, 17, 20, 21

*Zepeda v. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983) ....................................................................................................23

**Federal Statutes**

5 U.S.C. § 704....................................................................................................................................8

5 U.S.C. § 705.................................................................................................................................1, 7

5 U.S.C. § 706........................................................................................................................8, 18, 19

8 U.S.C. § 1182..................................................................................................................................1

8 U.S.C. § 1225 ..................................................................................................................... *passim*

8 U.S.C. § 1226 ..................................................................................................................... *passim*

8 U.S.C. § 1229a ...............................................................................................................................1

8 U.S.C. § 1252..........................................................................................................................20, 21

Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) ................................................................13

**Regulations**

8 C.F.R. § 212.5 .................................................................................................................................2

8 C.F.R. § 235.3 .................................................................................................................................2

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

8 C.F.R. § 236.1 ...........................................................................................1, 2, 3, 19, 20,

8 C.F.R. § 1003.19 .........................................................................................................2

8 C.F.R. § 1236.1 ...........................................................................................................2

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)....................................................................13

**Constitutional Provisions**

Fourth Amendment ................................................................................................. *passim*

Fifth Amendment ............................................................................................9, 14, 16, 20

**Other Authorities**

H.R. Rep. No. 104-469, 1996 WL 168955 (Leg. Hist.) (1996)......................................20

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

For decades, the Department of Homeland Security ("DHS") had a settled policy, grounded in relevant statutes, constitutional principles, and a basic sense of fairness: once the government determines that a noncitizen is not a flight risk or a danger to the community and chooses to release them from custody, that release will not be revoked absent a material change in circumstances. This rule ensured consistency, transparency, and the rule of law in the government's exercise of its civil immigration detention authority.

Around May 2025, the Defendants in this case abruptly discarded this decades-old policy. Without notice, explanation, or any claim of changed circumstances, the agency began re-arresting and re-detaining individuals in the proposed Class[1] who had already been deemed safe to release. People who had complied with every condition of supervision were suddenly seized without warning at their hearings or ICE check-ins.

This "Re-Detention Policy" violates the most basic tenets of the Administrative Procedure Act ("APA"). Agencies must offer reasoned explanations for policy changes, acknowledge departures from past practice, and account for reliance interests and legal constraints on their authority. Defendants did none of these things. They acted arbitrarily and capriciously, and in so doing also exceeded their statutory authority and violated bedrock constitutional principles. DHS's unexplained reversal cannot stand, and immediate relief is necessary to preserve Plaintiffs' rights and prevent further irreparable harm.

The Court should stay the policy's implementation under 5 U.S.C. § 705 to preserve the status and rights of Plaintiffs and the proposed Class.

---

[1] The proposed Class includes all noncitizens in the jurisdiction of the San Francisco ICE Field Office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a, including any § 1229a proceedings that have been dismissed where the dismissal is not administratively final; and (4) are not subject to detention under 8 U.S.C. § 1226(c) (the "Class"). The proposed Class also includes one subclass, which includes all members of the Class whose release from DHS custody was or will be on bond, conditional parole, or on their own recognizance under 8 U.S.C. § 1226(a) and/or 8 C.F.R. § 236.1 (the "Bond/RoR Subclass"). Plaintiffs' Motion for Provisional Class Certification is filed concurrently herewith.

## II.    FACTUAL BACKGROUND

### A.    DHS had a long-standing policy of not re-detaining previously released noncitizens absent an individualized determination of changed circumstances.

The statutory scheme that authorizes U.S. Immigration and Customs Enforcement ("ICE") to detain noncitizens in removal proceedings also governs their release from custody. 8 U.S.C. § 1226 governs the detention of noncitizens "already in the country pending the outcome of removal proceedings[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018), and authorizes DHS or an immigration judge to release noncitizens on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2); 8 C.F.R. § 236.1(c)(8). 8 U.S.C. § 1225(b)(1) applies to noncitizens referred to removal proceedings from expedited removal; § 1225(b)(2) applies to other noncitizens placed in removal proceedings while actively "seeking admission" to the United States. Both subsections of § 1225 permit release only on humanitarian parole. 8 C.F.R. §§ 235.3(c), 212.5.

In deciding to release a noncitizen under any of these authorities, an immigration officer or immigration judge must determine that the individual does not pose a danger to the community and is likely to appear at future proceedings. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8), 1003.19(h)(3), 212.5(b); *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Thus, "[r]elease" of a noncitizen "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F. 3d 1137 (9th Cir. 2018).

For more than 40 years, immigration officials have adhered to a policy of not re-detaining noncitizens who have been released pending removal proceedings, absent an individualized determination that there has been a material change as to whether the person poses a flight risk or danger to the community. Am. Compl. ¶ 41.[2] Indeed, in 1981, the Board of Immigration Appeals made clear that the government was prohibited from re-arresting and re-detaining a noncitizen released by an immigration judge on bond "absent a change of circumstance" warranting detention. *Matter of Sugay,* 17 I. & N. Dec. 637, 640 (BIA 1981). Federal immigration officials

---

[2] "Am. Compl." refers to the Amended Complaint and Amended Petition for Writ of Habeas Corpus, at Dkt. No. 45.

reiterated this policy on numerous occasions. For example, the head of the Immigration and Naturalization Service (ICE's predecessor) stated in a 1995 memorandum that: "[w]hen a [] [noncitizen] has been released from INS custody under bond, such bond can be revoked by the district director . . . but only based upon 'a change of circumstances.' . . . As such, INS must be able to justify any revocation decision, future detention or release condition." *Demore v. Kim*, 2002 WL 34705774 (U.S. Aug. 29, 2002), (No. 01-1491), Joint Appendix at 57.

DHS and its predecessor agencies applied this rule not only to noncitizens released on bond, but also to those released with supervisory conditions, or released on their own recognizance ("RoR"). Am. Compl. ¶ 44. Indeed, DHS previously represented to a court in this District that "DHS follows *Matter of Sugay* in situations where a bond determination has been made by an immigration judge, and also where a previous release determination was made by DHS" and thus "only re-arrests" a noncitizen "after a material change in circumstances." Meyer Decl.[3], Ex. A at 1. Since then, courts have repeatedly acknowledged DHS's prior practice. *See, e.g.*, *U.S. v. Cisneros*, No. 19-CR-00280-RS-5, 2021 WL 5908407, at *3-4 (N.D. Cal. Dec. 14, 2021); *Bermeo Sicha v. Bernal*, No. 1:25-CV-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025); *Dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019).

DHS also communicated its prior policy to members of the proposed Bond/RoR Subclass who were released on their own recognizance. *See, e.g.*, Meyer Decl., Ex. B (Order of RoR). For example, in the case of Ms. Galo Santos, her RoR order sets forth specific conditions for her release, such as attending "any hearing or interview" required by ICE or EOIR, complying with state and federal laws, and reporting to supervision appointments. *Id.* at 1. The document states that "[f]ailure to comply with the conditions of this order ***may*** result in revocation of your release and your arrest and detention by [DHS]." *Id.* (emphasis added). The RoR order also provides ICE officers only two options for cancelling the order: the noncitizen "failed to comply with the conditions of release" or the noncitizen "was taken into custody for removal." *Id.*

Immigration practitioners, including a former immigration judge, likewise confirm that for

---

[3] All declarations shall be referred to as "[Last Name] Decl." throughout.

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

decades, DHS has had a policy of not re-arresting and re-detaining noncitizens who were previously released pending removal proceedings, absent a material change in their circumstances. Hing Decl. ¶¶ 3, 5, 7 (no client re-detained without intervening change in circumstances over a 51-year career); Levine Decl. ¶¶ 7, 20 (same over 10-year career as practitioner and then immigration judge); Knox Decl. ¶¶ 5, 8-12 (same over 14-year career); Santanna Decl. ¶ 4 (same over 13-year career); Brown Decl. ¶¶ 3-5 (same over 20-year career); Ruch Decl. ¶ 4 (same over 10-year career).

Countless noncitizens released pending removal proceedings have relied on the government's policy against indiscriminate re-arrest and re-detention to plan their lives. Noncitizens who are released establish a life and community in the United States, often for years, while their immigration proceedings are pending. *See* Garro Pinchi Decl. ¶¶ 5-8, 11; Galo Santos Decl. ¶¶ 9-13; Teletor Sente Decl. ¶¶ 5-6, 9; Maklad Decl. ¶¶ 7-9; Arostegui Castellon Decl. ¶¶ 4, 5-7,14; Alvarez-Miranda Decl. ¶¶ 3-5; Colon Solano Decl. ¶ 4; Vargas Plasencia Decl. ¶¶ 6-8; Valencia Zapata Decl. ¶¶ 5-9; Ortiz Calderon Decl. ¶¶ 7-13; Ruch Decl. ¶¶ 5, 8 (discussing clients); Knox Decl. ¶¶ 14-16 (same); Santanna Decl. ¶¶ 6-7, 12 (same). So long as they complied with their legal obligations to attend immigration proceedings and avoid criminal activity, noncitizens could confidently litigate their right to remain in the United States, access and consult with legal representatives, seek work authorization and employment, enter into leases, invest in their education, develop community ties, participate in religious life, and grow and take care of their families—all while free of the fear of being re-detained. Am. Compl. ¶ 47; Knox Decl. ¶¶ 14-16; Brown Decl. ¶¶ 5-7.

**B.    DHS has instituted a new policy of arbitrarily re-detaining previously released noncitizens without any individualized consideration of flight risk or danger.**

In or around mid-May 2025, DHS abruptly reversed its decades-long policy of not re-detaining previously released non-citizens absent a material change in their individualized circumstances. DHS instead adopted a policy that authorizes and encourages re-arrest and re-detention of previously released noncitizens without any individualized assessment of a person's circumstances *at all*, including whether they are a flight risk or danger to the community (the

"Re-Detention Policy"). Am. Compl. ¶ 48. Pursuant to this new policy, ICE has undertaken an unprecedented campaign of re-detaining individuals in removal proceedings with no lawful basis for doing so. Am. Compl. ¶ 50; Hing Decl. ¶ 5; Weiner Decl. ¶¶ 7-8, 13, 18; Levine Decl. ¶¶ 12-13; Knox Decl. ¶ 5, 8.

In particular, ICE has engaged in a "coordinated operation" of re-arresting people while they attend immigration court for their regular removal proceedings or attend scheduled check-ins with ICE or ISAP, its private contractor. Am. Compl. ¶ 52; Weiner Decl. ¶¶ 11, 25.[4] ICE re-arrests and re-detains these persons without providing any notice and without conducting any individualized analysis of whether their circumstances have changed such that re-arrest and re-detention would be warranted. *See* Am. Compl. ¶ 51; Levine Decl. ¶¶ 12-15, Weiner Decl. ¶¶ 13, 18; Hing Decl. ¶ 7; Maklad Decl. ¶ 14; Arostegui Castellon Decl. ¶¶ 4-9. Since May 2025, dozens of people, including Plaintiff Garro Pinchi, have been re-detained at the San Francisco Immigration Court following their routine immigration hearings or at their regular ICE and ISAP check-ins. *See, e.g.,* Garro Pinchi Decl. ¶¶ 12-20; Maklad Decl. ¶¶ 12-22; Arostegui Castellon Decl. ¶¶ 8-12; Alvarez-Miranda Decl. ¶¶ 8-14; Colon Solano Decl. ¶¶ 6-9; Vargas Plasencia Decl. ¶¶ 12-28; Valencia Zapata Decl. ¶¶ 12-22; Ortiz Calderon Decl. ¶¶ 14-24; Weiner Decl. ¶¶ 10-17.[5] Non-citizens re-arrested under DHS's new policy, including the named Plaintiffs, overwhelmingly lack criminal history and have a proven compliance record with immigration check-ins and court appearances. Am. Compl. ¶ 65; Weiner Decl. ¶ 18; Garro Pinchi Decl. ¶¶ 3, 8; Galo Santos Decl. ¶ 14; Teletor Sente Decl. ¶¶ 7-8; Ortiz Calderon Decl. ¶¶ 8, 30. Nonetheless, under DHS's new policy, they face arbitrary re-arrest and re-detention without any consideration or determination regarding their individualized circumstances.

---

[4] *See also, e.g.,* Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Wash. Post (May 23, 2025), https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump/; Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times (May 30, 2025), https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html.

[5] Sarah Ravani, *ICE Arrests Two More at S.F. Immigration Court, Advocates Say*, S.F. Chron. (June 12, 2025), https://www.sfchronicle.com/bayarea/article/sf-immigration-court-arrests-20374755.php.

The Re-Detention Policy has significant consequences for Plaintiffs and the proposed Class. Plaintiffs and proposed Class members face immediate risk of being re-arrested and re-detained indefinitely the next time they are summoned for a scheduled immigration court hearing or check-in. Am. Compl. ¶ 97; Levine Decl. ¶ 12. Plaintiffs and the proposed Class may be detained for weeks, months, or even years on end and are often taken far away from their communities, leaving behind homes, jobs, and families who need them. *See, e.g.*, Ruch Decl. ¶ 8 (client lost job and apartment due to detention); Ortiz Calderon Decl. ¶ 22 (transferred to a detention center in Hawaii). The no-notice nature of these re-detentions also means that Plaintiffs and the proposed Class have: lost access to vital medication, *see, e.g.*, Weiner Decl. ¶ 21; Garro Pinchi Decl. ¶ 15; suffered adverse consequences at work, *see, e.g.*, Ruch Decl. ¶ 8; Weiner Decl. ¶¶ 22-24; lost significant wages, *see, e.g.*, Valencia Zapata Decl. ¶ 28, Vargas Plasencia Decl. ¶ 32; and had their cars towed, *see* Vargas Plasencia Decl. ¶ 33. Those Plaintiffs and proposed Class members who have not yet been unlawfully re-detained now suffer extreme anxiety and fear about attending their scheduled immigration hearings and appointments, knowing that they risk being re-arrested and ripped away from their families and communities. Am. Compl. ¶¶ 99-103; Garro Pinchi Decl. ¶¶ 22-23; Teletor Sente Decl. ¶¶ 11-15; Galo Santos Decl. ¶¶ 14-15.

**C.    DHS has not provided a reasoned basis for this drastic change in policy.**

DHS never provided any reasoning for its abrupt change prior to instituting the Re-Detention Policy. Instead, ICE simply began re-detaining noncitizens with no explanation. Only after individuals who were re-detained under the new policy began to file habeas petitions did Defendants put forth any purported explanation. But the Defendants' claimed reasoning is both deficient and inconsistent. At first, in responding to habeas petitions, Defendants claimed a myriad of bases for re-detention, including the administration's general policy preferences, the increased availability of bedspace in detention facilities, or simply that they had categorical authority to detain noncitizens under the INA. Am. Compl. ¶¶ 88-89; Meyer Decl., Ex. C at 14:10-13 ("[O]ur position is that . . . the Government's interest is simply because, under the statute, it has authority to detain her."); *id.*, Ex. D at 29:14-18 ("They identified the changed circumstance of now the availability of bed space and the change with respect to guidelines

issued. . .”). But in numerous cases over the last several months, this Court and others have found these rationales legally insufficient. *See, e.g.,* Order, Dkt. No. 33; *Valdez v. Joyce*, No. 25 Civ. 4627 (GBD), 2025 WL 1707737, at *3 n.6 (S.D.N.Y. June 18, 2025); *Singh v. Andrews,* No. 1:25-cv-00801-KIS-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025); *Martinez v. Hyde*, No. 25-11613-BEM, 2025 WL 2084238, at *1 (D. Mass. July 24, 2025) (describing government's inability to identify documents substantiating detention where authority was "plainly uncertain").

In light of these court decisions, Defendants have now advanced a new post-hoc legal position in response to individual habeas cases: They have re-interpreted the INA's detention statutes and now claim—for the first time—that 8 U.S.C. § 1225(b)(2) mandates detention of all noncitizens in removal proceedings who entered the United States without inspection, regardless of how long they have resided in the country, their individual flight risk or danger, or whether DHS previously deemed them subject to 8 U.S.C. § 1226(a) and released them accordingly. Am. Compl. ¶ 90. Courts, including this one, have overwhelmingly held that Defendants' new position is without merit. *See*, *e.g.*, *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025). In any event, these shifting post-hoc rationales are not evidence of reasoned decision making, much less consideration of the important reliance and constitutional interests at stake.

## III.    LEGAL STANDARD

The APA authorizes district courts to issue a stay of agency action "to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. A request to stay agency action in order to preserve the movants' status or rights under Section 705 is governed by the preliminary injunction factors. *Immigrant Defs. Law Ctr. v. Noem*, 145 F.4th 972, 983-84 (9th Cir. 2025). Under that framework, "[a] plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is

7

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

in the public interest." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) (citation omitted). Alternatively, under the "sliding scale" variant of the preliminary injunction standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. For the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (cleaned up).

Plaintiffs need only show a likelihood of success on one claim to demonstrate likelihood of success in support of preliminary relief. *See, e.g.*, *Cmty. Legal Servs. in East Palo Alto v. U.S. Dep't of Health and Human Servs.*, 780 F. Supp. 3d 897, 918 (N.D. Cal. 2025).

## IV.    ARGUMENT

### A.    Plaintiffs are likely to succeed on the merits.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Mass.*, 505 U.S. 788, 796 (1992). Under the APA, an agency's action is subject to judicial review if it is "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. A court "shall" set aside final agency action if, among other reasons, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "in excess of statutory . . . authority[.]" 5 U.S.C. § 706(2)(A)–(C).

Plaintiffs are likely to succeed on the merits of their claims. As a threshold matter, the Re-Detention Policy is a reviewable final agency action. Additionally, it violates the APA for three independent reasons. ***First***, the policy is arbitrary and capricious both because the agency has offered no reasoned explanation for its change, and because it has failed to consider important aspects of the problem. ***Second***, the policy is contrary to constitutional rights under the Fourth Amendment's prohibition on unreasonable seizures. ***Finally***, the Re-Detention Policy exceeds Defendants' statutory authority under 8 U.S.C. § 1226 and is not in accordance with law.

### 1.    The Re-Detention Policy is a reviewable final agency action.

The Re-Detention Policy is a "final agency action." 5 U.S.C. § 704. Agency action is final

8

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

under two conditions: (1) "the action must mark the consummation of the agency's decisionmaking process——it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). Importantly, "agency action . . . need not be in writing to be final and judicially reviewable[.]" *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206 (S.D. Cal. 2019) (quoting *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015)); *see also Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018); *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018); *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 20-21 (D.D.C. 2018). A contrary rule "would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing." *Grand Canyon Tr. v. Pub. Serv. Co. of N.M.*, 283 F. Supp. 2d 1249, 1252 (D.N.M. 2003). Instead, courts "look to whether the action amounts to a definitive statement of the agency's position or has a direct and immediate effect on the day-to-day operations of the subject party[.]" *Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023).

Prior to May 2025, federal immigration authorities adhered to a policy of not re-arresting and re-detaining noncitizens in the proposed Class absent an individualized determination of a material change in their circumstances, such that they had become a flight risk or a danger to the community. *See, e.g., Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) ("[W]here a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance[.]"); Meyer Decl., Ex. A at 1 (explaining that the federal government followed *Matter of Sugay* with respect to bond determinations made by an immigration judge and "also where a previous release determination was made by DHS"); Hing Decl. ¶¶ 5, 7; Brown Decl. ¶¶ 5, 6; Knox Decl. ¶ 5; Levine Decl. ¶ 16; Weiner Decl. ¶ 27. This approach complied with foundational Fourth and Fifth Amendment constitutional principles. *See infra* Sections IV.A.2.b., IV.A.3.

Although DHS has never issued an official statement on its policy change, DHS's behavior proves that it has been operating under the Re-Detention Policy since at least May 2025, when it abruptly broke from its prior practice and began to summarily re-arrest individuals

9
NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1   without any basis in or individualized analysis of their circumstances. *See Amadei*, 348 F. Supp.

2   3d at 166 ("[A] defendant agency's behavior [is] relevant to inferring the existence of a policy.").

3   Since then, ICE has arrested over 100[6] noncitizens within the jurisdiction of the San Francisco

4   ICE Field Office, at least 40[7] of whom Plaintiffs have confirmed were deemed not to be a flight

5   risk or danger upon their initial release and whose circumstances had not changed in the interim.

6        For example, immigration agents released Ms. Garro Pinchi in 2023 on her own

7   recognizance. Garro Pinchi Decl. ¶ 3. Thereafter, she attended immigration court, filed an

8   application for asylum, and had no criminal record. *Id.* at ¶¶ 8, 21; Am. Compl. ¶ 68. DHS issued

9   her a release order suggesting that she would remain at liberty unless she violated its conditions—

10  which she did not. Am. Compl. ¶ 67. Yet ICE re-detained her outside of her July 3, 2025

11  immigration hearing without any individualized basis for doing so. Am. Compl. ¶ 71; Garro

12  Pinchi Decl. ¶¶ 12-13.

13       The fact that DHS has executed this policy against Ms. Garro Pinchi and countless others

14  "plausibly point[s] to the existence of an unwritten policy." *Al Otro Lado*, 394 F. Supp. 3d at

15  1208. That fact also demonstrates that the policy is neither "tentative [n]or interlocutory." *Bennet*,

16  520 U.S. at 177–78. Because DHS has "execute[d] on the directive . . . its decisionmaking

17  processes are clearly consummated." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946

18  F.3d 564, 579 (9th Cir. 2019); *see also J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1067 (N.D. Cal.

19  2018) (executing new guidance regarding the Special Immigration Juvenile (SIJ) statute against

20  pending SIJ applications showed consummation of agency's decisionmaking); *Lopez v. Sessions*,

21  No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *7-8 (S.D.N.Y. June 12, 2018) (detaining

22  noncitizen in violation of required procedure marked the consummation of the agency's

23  decisionmaking).

24  [6] *See, e.g.,* JunYao Yang, *Tracking Where and When ICE Arrests Happen in San Francisco*,
    Mission Local (June 9, 2025), https://missionlocal.org/2025/06/sf-ice-arrests-tracker/ ("Since late

25  May, U.S. Immigration and Customs Enforcement officers have arrested over 100 people in San
    Francisco."); *see also* Notice of Motion and Motion for Provisional Class Certification, Section

26  IV.A.1, at 9-10 (explaining why this number is likely an undercount).

27  [7] This number includes the 33 habeas clients represented by Jordan Weiner, *see* Weiner Decl. ¶
    11, Plaintiff Garro Pinchi, and the relevant individuals and clients of the practitioners who have

28  filed declarations in support of this motion.

1       Defendants have also repeatedly conceded, in connection with habeas cases challenging

2   these re-detentions, that DHS has not been conducting individualized analyses prior to re-

3   detention. *See* Weiner Decl. ¶¶ 18-19; *see also, e.g., Maklad v. Murray,* No. 1:25-CV-00946 JLT

4   SAB, 2025 WL 2299376, at *3 (E.D. Cal. Aug. 8, 2025) ("[T]he government conceded that [prior

5   to her re-detention] there were no changes in circumstances since the original determination that

6   Ms. Maklad does not pose a flight risk or a danger to the community."). Instead, DHS has

7   justified these re-detentions with a grab bag of unrelated rationales, including increased "bed

8   space," its "categorical authority under the INA," and when those failed, a novel interpretation of

9   8 U.S.C. § 1225(b)(2), which have all been rejected by courts around the country. *See* Am.

10  Compl. ¶¶ 88-90. Indeed, in this case, the government's position was "not . . . that there is a

11  change in circumstances" but that "under the statute, it has [] authority to detain [Ms. Garro

12  Pinchi]." *See* Meyer Decl., Ex. C at 11:7-13, 14:10-13. The fact that the government admits these

13  re-detentions were not warranted by a finding of changed circumstances confirms that it is

14  operating under a different policy than in decades prior. *See R.I.L-R*, 80 F. Supp. 3d at 175

15  (determining that an unwritten policy existed where Defendants had "essentially conceded" its

16  existence on the record).

17      Finally, the Re-Detention Policy clearly constitutes final agency action because significant

18  "legal consequences" for Plaintiffs and proposed Class members "flow" directly from the Re-

19  Detention Policy. *Bennet*, 520 U.S. at 177–78. These individuals have had their lives upended

20  after being re-detained, despite having done everything required of them under the law and their

21  conditions of release. *See, e.g., R.I.L-R*, 80 F. Supp. 3d at 184 (impermissible detention pursuant

22  to DHS's policy caused "profound and immediate consequences" for affected asylum seekers

23  under the second *Bennet* factor). And those that haven't yet been re-detained live in fear that their

24  re-detention is imminent, knowing that even appearing at their immigration proceedings is likely

25  to result in their re-detention. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990)

26  (agency action is reviewable "to the extent that, a specific 'final agency action' has an actual or

27  immediately threatened effect."). DHS's months-long implementation of its sweeping new

28  campaign proves that this policy is final and ripe for review.

11

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

### 2.     DHS's Re-Detention Policy violates the APA because it is arbitrary and capricious.

"[The APA] requires agencies to engage in 'reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary [and] capricious." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 16 (2020) (cleaned up). "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem[.]" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the Re-Detention Policy is arbitrary and capricious for two reasons: First, DHS never provided any contemporaneous explanation for its shift in policy. Second, there is no evidence that DHS ever considered the many important factors related to its change in policy, including noncitizens' reliance interests in DHS's prior course of action and the agency's duty to avoid infringing on their constitutionally protected liberty interests.

#### a.     The Re-Detention Policy is arbitrary and capricious because DHS did not provide a reasoned basis for its drastic change in policy.

When an agency changes course, it is required to provide a "reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *see also State Farm*, 463 U.S. at 42. ("[A]n agency changing its course . . . is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance."). At a minimum, "the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy." *See Encino Motorcars*, 579 U.S. at 221 (cleaned up). Additionally, the court's review of agency action is limited to "the grounds that the agency invoked when it took the action." *Regents*, 591 U.S. at 20. Courts may not consider "post hoc rationalizations" and "convenient litigating positions" offered after the policy was implemented. *Id.* at 23–24; *see also Thakur v. Trump*, 787 F. Supp. 3d 955, 982 (N.D. Cal. 2025) (rejecting post hoc rationalizations).

When DHS began operating under the Re-Detention Policy around May 2025, it provided no reasoned basis for having abandoned the agency's long-standing practice to only re-detain in the event of changed circumstances. In fact, it provided no analysis whatsoever. Instead, without

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

warning or explanation, the agency "simply disregard[ed the prior] rules . . . on the books." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). For noncitizens released on conditional parole under 8 U.S.C. § 1226(b), like Ms. Garro Pinchi, this meant DHS disregarded prior representations in their RoR orders suggesting they would remain at liberty if they complied with their conditions of release. Am. Compl. ¶ 67. This fact alone is sufficient to find the Re-Detention Policy arbitrary and capricious. *See Encino Motorcars*, 579 U.S. at 221 ("[W]here the agency has failed to provide [a] minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." (cleaned up)); *see also Regents*, 591 U.S. at 29 (finding the government's decision to terminate the deferred action portion of DACA arbitrary and capricious where it did so "without any consideration whatsoever" (quoting *State Farm*, 463 U.S. at 51)).

Since its implementation, Defendants have continued to provide no reasoned explanation for the change in policy. Their most recent purported statutory justification—that 8 U.S.C. § 1225(b)(2) now mandates detention for ***everyone*** who entered the country without inspection—is a post hoc rationale with no basis in the law. It is difficult to overstate how dramatically DHS's new interpretation of § 1225(b)(2) departs from the statute's text, the agency's own regulations, and the agency's prior practice. The statute's text is clear: § 1225(b)(2) applies to, and mandates detention of, only arriving aliens at the border who are actively "seeking admission." *See*, *e.g.*, *Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("seeking admission" means "seeking lawful entry"); *Cordero Pelico*, 2025 WL 2822876, at *10; *Lopez Benitez*, 2025 WL 2371588, at *5.

Regulations have been in place since Congress enacted § 1226(a) that make clear it is this section that applies to noncitizens present in the country after an entry without inspection. *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (interim regulation explaining application); *see also Jennings*, 583 U.S. at 289, 303 ("§ 1226 applies to aliens already present in the United States."). Congress confirmed this longstanding interpretation earlier this year, when it amended subsection (c) of § 1226, which mandates detention for noncitizens with certain criminal histories or who raise certain terrorism concerns. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). In the amendment, Congress extended § 1226(c) to cover noncitizens who are present without

13

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

admission or parole *and* who were arrested for certain property crimes. *See* § 1226(c)(1)(E).

These amendments would have been wholly superfluous if § 1225(b)(2) already mandated

detention for such noncitizens solely because of their presence without admission or parole. *See*,

*e.g.*, *Cordero Pelico*, 2025 WL 2822876, at *9; *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL

2403827, at *11-12 (D. Mass. Aug. 19, 2025); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-

RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025). In the nearly 30 years that §

1225(b)(2) and § 1226 have been on the books, DHS—following Congress's lead—has never

interpreted § 1225(b)(2) to mandate detention of noncitizens who entered without inspection, like

the proposed Class members. DHS's new interpretation of § 1225(b)(2) thus neither explains nor

offers legal cover to the Re-Detention Policy. *See Hyppolite v. Noem*, No. 25-CV-4304 (NRM),

2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) (collecting cases rejecting new interpretation).

Even if this were a legitimate reading of the statute—and it is not—Defendants failed to consider

both the profound reliance interests of people released under their prior, longstanding,

interpretation of the detention statutes, as well as the Fourth and Fifth Amendment guardrails

against arbitrary detention.

### b.    *The Re-Detention Policy is also arbitrary and capricious because DHS failed to consider at least two key aspects of the problem.*

The Re-Detention Policy is also arbitrary and capricious for the independent reason that

the agency did not consider "important aspect[s] of the problem" before it. *State Farm*, 463 U.S.

at 43. Specifically, in adopting the Re-Detention Policy, DHS failed to consider both: (1) the

reliance interests that the prior policy had engendered; and (2) the agency's obligations to

comport with constitutional due process.

*First*, when an agency changes or rescinds a prior policy, it is "required to assess whether

there were reliance interests, determine whether they were significant, and weigh any such

interests against [any] competing policy concerns." *Regents*, 591 U.S. at 33; *see also Fox

Television Stations*, 566 U.S. at 516 (an agency is required to provide reasons "for disregarding

facts and circumstances that underlay or were engendered by the prior policy"). As already

explained, for decades, DHS had a policy of not re-detaining members of the proposed Class after

their release unless they did something, such as commit a crime or miss an immigration hearing, that could warrant their re-detention on the basis of flight risk or danger. Plaintiffs and proposed Class members have structured their lives in reliance on this policy. *See, e.g., Cordero Pelico*, 2025 WL 2822876, at *8 (acknowledging that release on conditional parole created reliance interests in petitioners' continued freedom); Knox Decl. ¶¶ 14-16. For example, they have obtained jobs,[8] signed leases,[9] started relationships or married,[10] purchased cars,[11] enrolled in school,[12] established medical care,[13] and built faith communities[14]—investments in their lives that they understood could not be taken away absent a change in circumstances. The reliance interests extend to others in the community as well. Plaintiffs and proposed Class members care for their own children,[15] help family and neighbors with childcare,[16] contribute to bills and rent of shared homes,[17] and financially support loved ones in their home countries.[18]

      Defendants' total failure to consider these significant reliance interests created by their prior policy is fatal to the Re-Detention Policy. The Supreme Court recently addressed a similar situation in *Regents*. There, plaintiffs challenged the government's attempted termination of Deferred Action for Childhood Arrivals ("DACA") under the APA, claiming it was invalid in part because the government ignored the significant reliance interests involved: "DACA recipients have enrolled in degree programs, embarked on careers, started businesses, purchased homes, and even married and had children, all in reliance on the DACA program." *Regents*, 591 U.S. at 31. The Supreme Court agreed, finding the government's action was arbitrary and capricious because

---

[8] *E.g.,* Maklad Decl. ¶ 8, Arostegui Castellon Decl. ¶ 5, Teletor Sente Decl. ¶ 5, Solano Decl. ¶ 4, Vargas Plasencia Decl. ¶ 7, Valencia Zapata Decl. ¶ 8, Ortiz Calderon Decl. ¶ 11.

[9] *E.g.,* Arostegui Castellon Decl. ¶ 5, Teletor Sente Decl. ¶ 9, Solano Decl. ¶ 4, Valencia Zapata Decl. ¶ 6, Ortiz Calderon Decl. ¶ 7.

[10] *E.g.,* Maklad Decl. ¶¶ 7, 9, Arostegui Castellon Decl. ¶ 6, Ortiz Calderon Decl. ¶ 10.

[11] *E.g.,* Teletor Sente Decl. ¶ 5, Vargas Plasencia Decl. ¶ 33, Valencia Zapata Decl. ¶ 9.

[12] *E.g.,* Maklad Decl. ¶ 8, Arostegui Castellon Decl. ¶ 5, Vargas Plasencia Decl. ¶ 36.

[13] *E.g.,* Maklad Decl. ¶ 21, Arostegui Castellon Decl. ¶ 11, Garro Pinchi Decl. ¶ 11, Ortiz Calderon Decl. ¶¶ 12-13.

[14] *E.g.,* Maklad Decl. ¶ 8, Arostegui Castellon Decl. ¶ 5, Solano Decl. ¶ 4, Garro Pinchi Decl. ¶ 7, Ortiz Calderon Decl. ¶ 8.

[15] *E.g.,* Teletor Sente Decl. ¶¶ 5, 9, Galo Santos Decl. ¶¶ 2-3, 9-13.

[16] *E.g.,* Alvarado-Miranda Decl. ¶ 5.

[17] *E.g.,* Alvarado-Miranda Decl. ¶ 5, Garro Pinchi Decl. ¶ 7, Valencia Zapata Decl. ¶ 6, Ortiz Calderon Decl. ¶ 7.

[18] *E.g.,* Teletor Sente Decl. ¶¶ 5, 9, Solano Decl. ¶ 4, Garro Pinchi Decl. ¶ 6, Valencia Zapata Decl. ¶ 17, Ortiz Calderon Decl. ¶ 11.

15

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1  nowhere in its sparsely explained memoranda revoking DACA did it address those reliance

2  interests or any "policy alternatives" that could have accommodated them. *Id.* at 33. The same is

3  true here. Plaintiffs and proposed Class members have similar reliance interests in DHS's prior

4  policy—including in their education, careers, homes, and relationships—which they also

5  reasonably believed could last years as they completed their immigration proceedings absent any

6  material change in circumstances. As in *Regents*, when DHS broke from its prior practice, it

7  entirely "failed to address" those legitimate reliance interests or consider any policy alternatives

8  that could have mitigated the resulting harm. *Id.* at 32-33; *see also Thakur,* 787 F. Supp. 3d at 983

9  (government's complete failure to consider reliance interests held by grant recipients and the

10  public before terminating grant funding was likely arbitrary and capricious); *Centro Legal de la*

11  *Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 971 (N.D. Cal. 2021) (government's

12  complete failure to consider reliance interests of noncitizens when it dispensed with long-standing

13  pathway for relief was arbitrary and capricious).

14      ***Second***, the Re-Detention Policy is arbitrary and capricious because, in adopting it, DHS

15  failed to acknowledge or consider Plaintiffs' and proposed Class members' constitutionally

16  protected liberty interests under the Due Process clause of the Fifth Amendment.[19] As courts have

17  recognized, an agency's "constitutional and statutory obligations are 'important aspects' of the

18  problem before them." *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 982 (N.D. Cal. 2020),

19  *order clarified*, 491 F. Supp. 3d 572 (N.D. Cal. 2020) (citing *Oregon Nat. Resources Council v.*

20  *Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)).

21      The Due Process Clause of the Fifth Amendment prohibits the government from depriving

22  individuals of their life, liberty, or property, without due process of law. U.S. Const. amend. V. In

23  particular, "[f]reedom from imprisonment . . . lies at the heart of the liberty that Clause protects."

24  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "These protections apply to all 'persons' within the

25  United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary,

26  or permanent[.]" *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). For this

27

28

---

[19] As discussed below, Defendants also failed to consider the limitations on unreasonable search and seizures under the Fourth Amendment. *See infra* Section IV.A.3.

reason, courts have long held that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Id.* at 981.

Specifically, individuals who have been released from immigration custody have a liberty interest in their continued freedom. *See Cordero Pelico*, 2025 WL 2822876, at *7. Under the Due Process clause, the release itself creates an "'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Garro Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Additionally, due process requires that civil, non-punitive detention bear a reasonable relation to a permissible purpose. *Zadvydas*, 533 U.S. at 691. In the context of immigration detention, the Supreme Court has only recognized two permissible purposes: preventing danger to the community and ensuring the appearance of noncitizens at immigration proceedings. *Zadvydas*, 533 at 690–692 (2001); *Demore v. Kim*, 538 U.S. 510, 519–20, 527–28 (2003).

Immigration officials in the United States are well-aware of these due process constraints. Indeed, DHS's prior policy incorporated these constraints with respect to re-arrests and re-detentions: the agency "only re-arrest[ed]" a noncitizen "after a material change in circumstances" warranting a finding that the person is a flight risk or a danger to society. Meyer Decl., Ex. A at 1; *see also* Hing Decl. ¶¶ 5, 7; Knox Decl. ¶¶ 5, 8, 10-12; Levine Decl. ¶ 7.

Here, DHS provided no reasoned basis for its change in policy, and thus there is no evidence that DHS ever accounted for these constitutional constraints when crafting the Re-Detention Policy or considered policy alternatives that might avoid constitutional conflict. Quite the opposite, DHS has admitted in individual habeas cases challenging re-detentions under this new policy that it has *not* been considering whether an individual is a flight risk or danger, or whether they otherwise violated their conditions of release. *See*, *e.g.*, *Garro Pinchi*, 2025 WL 2084291, at *5 ("The government does not claim that any material circumstances have changed that would warrant reassessment of Ms. Garro Pinchi's risk of flight or dangerousness. . . ."); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *8 (N.D. Cal. Sept. 26, 2025) (noting that "the government admitted that it was unaware of any evidence that Petitioners

17

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

currently are flight risks or pose a danger to the community").

Because DHS does not explain how its policy can be squared with or account for these bedrock due process principles, the Re-Detention Policy is arbitrary and capricious. *See, e.g,* *Nat'l Urban League*, 489 F.Supp.3d at 981–89 (failure by the agency to consider its constitutional obligations in an accurate census was likely arbitrary and capricious).

### 3.    The Re-Detention Policy violates the APA because it contravenes the Fourth Amendment.

Plaintiffs are likely to succeed on their claim that the Re-Detention Policy is "contrary to constitutional right" because it authorizes ICE to re-arrest noncitizens based on pre-existing civil immigration charges without any change in circumstances. 5 U.S.C. § 706(2)(B). Such arrests constitute unreasonable seizures under the Fourth Amendment.

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014). And because "[i]t is axiomatic that seizures have purposes[,] [w]hen those purposes are spent, further seizure is unreasonable." *Williams v. Dart*, 967 F.3d 625, 634 (7th Cir. 2020). Applied in the immigration context, these principles mean that "[o]nce a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 3d at 1177. And "to be lawful," such a "[re]-arrest must be based on evidence that the circumstances relevant to th[e] original release decision have changed." *Saravia* 280 F. Supp. 3d at 1196; *see also Lopez v. Sessions*, No. 18-cv-4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) ("[the] finding [that the petitioner] was neither dangerous nor a flight risk is irreconcilable with the decision to re-arrest him, absent changed circumstances"); *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971) (Stevens, J.) (in criminal context, "continuing knowledge of . . . possible guilt of the offense charged in the indictment is not itself sufficient" under the Fourth Amendment to justify re-arrest). Any other rule would subject people already deemed to pose no risk of flight or danger to the community to "harassment by continual re-arrests" with no new justification. *Holmes*, 452 F.2d at 261.

The Re-Detention Policy plainly fosters such "harassment" by authorizing the surprise re-

arrest of noncitizens whom DHS agents previously determined did not pose a flight risk or danger to the community and who have fully complied with the requirements of their release. *See* Garro Pinchi Decl. ¶¶ 8, 21; Maklad Decl. ¶¶ 11-14; Arostegui Castellon Decl. ¶¶ 3-9; Ortiz Calderon Decl. ¶¶ 14-17; Weiner Decl. ¶¶ 9, 13. Defendants do not contend that any individual changed circumstances justify the re-arrests effected under the policy. *See supra* Section IV.A.2.b; *see also* Weiner Decl. ¶ 18. Nor do Defendants invoke any new charges of inadmissibility to justify the new arrests. *Id.* By allowing DHS agents to re-arrest anyone for any reason, regardless of their circumstances, the Re-Detention Policy invites the very "arbitrary invasions by government officials" that the Fourth Amendment was designed to "safeguard" against. *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967). Plaintiffs are therefore likely to succeed in their claim that the policy is "contrary to constitutional right" in violation of the APA. 5 U.S.C. § 706(2)(B). *See Munoz Materano v. Arteta*, No. 25-cv-6137, 2025 WL 2630826, at *17 (S.D.N.Y. Sept. 12, 2025) (re-arrest violated Fourth Amendment).

### 4. The Re-Detention Policy violates the APA because it exceeds DHS's statutory authority and is contrary to law.

The Re-Detention Policy also violates the APA because it is contrary to law and "in excess of [Defendants'] statutory . . . authority" to re-detain the Bond/RoR subclass under 8 U.S.C. § 1226(b). 5 U.S.C. § 706(2)(A), (C). As an initial matter, it is § 1226, and no other detention statute, that governs Defendants' authority to re-detain the subclass here. DHS already determined that members of the Bond/RoR subclass were subject to § 1226(a)—as noncitizens present in the country but who have not been admitted or paroled—and they were released from custody on bond or conditional parole, which are mechanisms exclusive to that statute. *See Cordero Pelico*, 2025 WL 2822876, at *8; *Romero*, 2025 WL 2403827, at *8. And as explained *supra*, DHS's new re-interpretation of 8 U.S.C. § 1225(b)(2) is inapplicable to the subclass, who have entered and resided in the United States and are not "seeking admission" within the ambit of the statute. *See supra* Section I.V.A.2.b.

Section 1226(b), construed to avoid serious constitutional concerns, does not authorize Defendants to re-arrest or re-detain noncitizens without an individualized determination that

19

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1  circumstances related to a noncitizen's flight risk or danger to the community have materially

2  changed. "A statute must be construed . . . to avoid . . . grave doubts [that it is unconstitutional]."

3  *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998). Accordingly, when a statute is

4  "susceptible of more than one construction," courts apply the canon of constitutional avoidance to

5  "choos[e] between them." *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (italics removed). In

6  applying this rule, the Supreme Court "ha[s] read significant limitations into . . . immigration

7  statutes in order to avoid their constitutional invalidation." *Zadvydas*, 533 U.S. at 689; *see also*

8  *United States v. Witkovich*, 353 U.S. 194, 199 (1957) (holding that "a restrictive meaning must be

9  given if a broader meaning would generate constitutional doubts").

10      As has been explained, individuals released from initial custody have well-established

11  rights under the Fourth and Fifth Amendments. *See Supra* Sections IV.A.2.b., IV.A.3. Construing

12  § 1226(b) to permit re-detention without regard to an individual's flight risk, danger to the

13  community, or compliance with conditions of release would fly in the face of these well-

14  established constitutional protections. Here, § 1226(b) is plainly susceptible to a construction that

15  would avoid these constitutional concerns. The statute states: "The Attorney General at any time

16  ***may*** revoke a bond or parole authorized under subsection (a), rearrest the [noncitizen] under the

17  original warrant, and detain the [noncitizen]." 8 U.S.C. § 1226(b) (emphasis added). As the

18  Supreme Court held in *Zadvydas*, "'may'" "does not suggest . . . unlimited discretion." *Zadvydas*,

19  533 U.S. at 697. The language allowing revocation of bond or parole "at any time" indicates *when*

20  DHS may revoke bond or parole, not that it may do so for any reason (or no reason at all). *See* 8

21  C.F.R. § 236.1(b) (clarifying that "at any time" refers to relevant period of time).

22      Jurisprudence and legislative history support this conclusion. The Supreme Court and

23  D.C. Circuit both interpreted former 8 U.S.C. § 1252(a)(1)—which § 1226(a) and (b) "restates,"

24  (*see* H.R. Rep. No. 104-469, 1996 WL 168955 (Leg. Hist.) at *229 (1996))—to authorize re-

25  detention only after an individual determination and change in circumstances. *See I.N.S. v. Nat'l*

26  *Ctr. for Immigrants' Rts. Inc.*, 502 U.S. 183,194 (1991) (interpreting use of "may" in § 1252 to

27  require "some level of individualized determination"); *Carlson v. Landon*, 342 U.S. 524, 543-47

28  (1952) (holding that "the Attorney General is not left with untrammeled discretion as to bail");

20
NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323

1  *Rubenstein v. Brownell*, 206 F.2d 449, 455 (D.C. Cir. 1953), *aff'd*, 346 U.S. 929 (1954) (§

2  1252(a)(1) did not authorize re-arrest absent flight risk or danger to the community). Congress

3  retained the language from former § 1252(a)(1) that re-detention could occur "at any time," but,

4  despite the jurisprudence limiting the agency's authority, did not amend the statute to permit re-

5  detention *for any reason*. "When Congress codifies a judicially defined concept, it is presumed,

6  absent an express statement to the contrary, that Congress intended to adopt the interpretation

7  placed on that concept by the courts." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 813

8  (1989). Because Congress did not attempt to broaden DHS's re-detention authority beyond the

9  limitations courts had recognized, "nothing in the statute's legislative history clearly demonstrates

10  a congressional intent" to do so. *Zadvydas*, 533 U.S. at 680.

11      To avoid serious constitutional concerns, § 1226(b) must be construed the same way the

12  Supreme Court construed its previous version: to authorize re-detention only upon an

13  individualized change in circumstances related to flight risk or danger to the community. The Re-

14  Detention Policy thus exceeds the scope of DHS's authority under the statute.

15      **B.    Absent a stay, Plaintiffs are likely to experience irreparable harm.**

16      The Re-Detention Policy is causing and will continue to cause irreparable harm to

17  Plaintiffs and the proposed Class due to the ongoing deprivation of their constitutional rights.

18  "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"

19  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347,

20  373 (1976)). Indeed, "[w]hen an alleged deprivation of a constitutional right is involved, most

21  courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*,

22  418 F. 3d 989, 1001-02 (9th Cir. 2005) (cleaned up). Here, Plaintiffs and the proposed class are

23  unquestionably being deprived of their Fourth Amendment right to avoid "the repeated seizure of

24  a person on the same probable cause" without a change in individual circumstances, which

25  "cannot, by any standard, be regarded as reasonable." *U.S. v. Kordosky*, No. 88-CR-52-C, 1988

26  WL 238041, at *7 n.14 (W.D. Wis. Sep. 12, 1988); *see also Holmes*, 452 F.2d at 261.

27      The Ninth Circuit has likewise recognized the "irreparable harms imposed on anyone

28  subject to immigration detention," not only because all persons have a paramount interest in their

1    "physical liberty," but because immigration detention also inflicts collateral harms including

2    "subpar medical and psychiatric care[,]" and especially "the economic burdens imposed on

3    detainees and their families as a result of detention, and the collateral harms to children of

4    detainees whose parents are detained." *Hernandez*, 872 F.3d at 995. Courts in other districts

5    likewise recognize that "deprivation of [a noncitizen's] liberty is, in and of itself, irreparable

6    harm." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 240-41 (S.D.N.Y. 2020) (cleaned up).

7            As a result of the Re-Detention Policy, Plaintiffs and members of the proposed Class have

8    experienced or will experience immigration detention and the significant harms attendant to it.

9    *See e.g.*, Garro Pinchi Decl. ¶¶ 13-23; Weiner Decl. ¶¶ 11-17, 20-24; Arostegui Castellan Decl. ¶¶

10   12-16. Many members of the proposed Class also have spouses, young children, and other

11   dependents who they fear being separated from. *See, e.g.*, Galo Santos Decl. ¶ 15; Teletor Sente

12   Decl. ¶¶ 9,14; Vargas Plasencia Decl. ¶¶ 15-17, 30; *see also, e.g.*, *Wash. v. Trump*, 847 F.3d

13   1151, 1169 (9th Cir. 2017) (identifying "separated families" as irreparable harm); *Leiva-Perez v.*

14   *Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) (similar). Others face the loss of their homes,

15   livelihoods, and communities where they have lived for many years. *See, e.g.*, Weiner Decl. ¶¶

16   11-24.

17           As a result of the Re-Detention Policy, Plaintiffs and proposed Class members are also

18   terrified to attend their regular immigration hearings and scheduled check-ins. *See e.g.*, Garro

19   Pinchi Decl. ¶¶ 22-23; Maklad Decl. ¶ 31; Arostegui Castellon Decl. ¶ 3; Teletor Sente Decl. ¶

20   12. DHS's new policy actively discourages noncitizens from appearing at their scheduled

21   immigration appointments for fear of being disappeared without notice. Knox Decl. ¶¶ 7-8.

22   Courts regularly hold that such emotional distress constitutes irreparable injury. *See, e.g.*, *Chalk v.*

23   *U.S. Dist. Ct.*, 840 F.2d 701, 709-10 (9th Cir. 1988); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164,

24   1192 (N.D. Cal. 2015).

25           Absent court intervention, DHS will continue to enforce the Re-Detention Policy to re-

26

27

28

1  arrest and re-detain Plaintiffs and proposed Class members without justification.[20] Thus Plaintiffs

2  and proposed Class members will continue to suffer irreparable harm.

3      **C.    The balance of the equities and the public interest strongly favors a stay.**

4          When, as here, the government is a party, consideration of the balance of the equities and

5  the public interest merge, and the court balances the public's interest asserted by the federal

6  government in the particular case and the hardships to the plaintiffs. *See Immigrant Defs. Law*

7  *Ctr. v. Noem*, 145 F.4th 972, 994 (9th Cir. 2025). The hardship to Plaintiffs and the proposed

8  Class absent a stay of the Re-Detention Policy is grave, as discussed above. *See* Section IV(B).

9  Moreover, Plaintiffs are not asking that the Court prevent DHS from enforcing federal

10  immigration laws. Plaintiffs merely ask the Court to temporarily stay the Re-Detention Policy:

11  DHS could follow the policy it applied for more than forty years—that of re-detaining noncitizens

12  if an individualized determination found a material change in circumstances related to flight risk

13  or danger to the community. *See, e.g.*, *Matter of Sugay,* 17 I. & N. Dec. 637, 640 (BIA 1981).

14          Unlike Plaintiffs, Defendants will suffer no material harm should this Court grant

15  Plaintiffs' requested stay. Although Defendants have inexplicably altered their previous policy,

16  "the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy

17  the irreparable harm prong." *Immigrant Defs. Law Ctr.*, 145 F. 4th at 985; *see also Doe #1 v.*

18  *Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) ("[I]f we were to adopt the government's assertion

19  that the irreparable harm standard is satisfied by the fact of executive action alone, no act of the

20  executive branch asserted to be inconsistent with a legislative enactment could be the subject of a

21  preliminary injunction. That cannot be so."). And the government has no legitimate interest in

22  carrying out a policy that violates the APA and the Constitution, as the Re-Detention Policy does.

23  *See Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (explaining that an agency "cannot

24  reasonably assert that it is harmed in any legal cognizable sense by being enjoined from

25  constitutional violations"); *see also Doe v. Trump*, 784 F. Supp. 3d 1297, 1313 (N.D. Cal. 2025)

---

[20] *See, e.g.,* Am. Compl. ¶¶ 54-64; *Vasquez Perdomo v. Noem*, 148 F.4th 656, 665 n. 2 (9th Cir. 2025); David J. Bier, *ICE Is Arresting 1,100 Percent More Noncriminals on the Streets Than in 2017*, Cato at Liberty Blog (June 24, 2025), https://www.cato.org/blog/ice-arresting-1100-percent-morenoncriminals-streets-2017.

("[T]here is no harm to the Government when a court prevents the Government from engaging in unlawful practices.").

Because "it is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres*, 695 F.3d at 1002, and the "public interest is served by compliance with the APA[,]" *Doe v. Trump*, 784 F. Supp. 3d at 1313, the balance of the equities and the public interest support a preliminary stay of agency action in this case.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and issue the requested stay of agency action.

Dated: October 16, 2025                                KEKER, VAN NEST & PETERS LLP

                                                By:     */s/ Erin E. Meyer*
                                                        ERIN E. MEYER
                                                        JULIA L. ALLEN
                                                        CLAIRE C. BONELLI
                                                        ELLEN WATLINGTON
                                                        JACQUIE P. ANDREANO
                                                        KAYLA CROWELL

                                                        Attorneys for Plaintiffs-Petitioners

Dated: October 16, 2025                                AMERICAN CIVIL LIBERTIES UNION
                                                        FOUNDATION OF NORTHERN

                                                By:     */s/ Bree Bernwanger*
                                                        BREE BERNWANGER
                                                        MICHELLE (MINJU) Y. CHO
                                                        NEIL K. SAWHNEY
                                                        LAUREN M. DAVIS

                                                        Attorneys for Plaintiffs-Petitioners

3168323

1    Dated: October 16, 2025                          CENTRO LEGAL DE LA RAZA

2
                                              By:   */s/ Abby Sullivan Engen*
3                                                    ABBY SULLIVAN ENGEN
                                                     JESSE NEWMARK
4                                                    NIKOLAS DE BREMAEKER

5                                                    Attorneys for Plaintiffs-Petitioners

6
7    Dated: October 16, 2025                          AMERICAN CIVIL LIBERTIES UNION
                                                     FOUNDATION
8
9                                             By:   */s/ Judy Rabinovitz*
                                                     JUDY RABINOVITZ
10
                                                     Attorneys for Plaintiffs-Petitioners
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS OR RIGHTS
Case No. 5:25-cv-5632-PCP

3168323