1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
BENJAMIN MOSS
Senior Counsel
DAVID KIM
Senior Litigation Counsel
NANCY N. SAFAVI (TXBN 24042342)
Senior Trial Attorney
JESSICA D. STROKUS
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-8779
Email: Jessica.D.Strokus@usdoj.gov
*Counsel for Defendants*

CRAIG H. MISSAKIANA (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Assistant United States Attorney
Chief, Civil Division
DOUGLAS JOHNS (CABN 314798)
Assistant United States Attorney
  60 South Market Street, Suite 1200
  San Jose, California 95113
  Tel: (415) 846-8947
  Email: Douglas.Johns@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| FRESCIA GARRO PINCHI; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 5:25-cv-05632-PCP<br><br>**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION [ECF NO. 45]**<br><br>Hearing Date:  January 15, 2026<br>Hearing Time: 10:00 a.m.<br>Location:       Courtroom 8<br>                    4th Floor<br><br>Hon. P. Casey Pitts<br>United States District Judge |

1

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION TO DISMISS ........................................................................................ vii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

LEGAL BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................................. 4

    I.     Plaintiffs' claims are not justiciable under Article III. ............................................ 4

    II.    Section 1252 bars this Court's review of Plaintiffs' challenge to
         mandatory detention under § 1225(b)(2)(A)............................................................ 6

    III.   Section 1225(b) provides a lawful basis for detention of non-admitted
         aliens, consistent with the INA's structure. .......................................................... 10

    IV.   Plaintiffs identify no final agency action, and their claim of an alleged
         policy shift fails even assuming APA review. ....................................................... 15

    V.    Plaintiffs' constitutional claims are unsupported by the statutory scheme
         and established precedent. ....................................................................................... 18

    VI.   Habeas cannot supply the programmatic relief Plaintiffs seek............................. 20

CONCLUSION............................................................................................................................ 22

CERTIFICATE OF SERVICE

1
2

## **TABLE OF AUTHORITIES**

### **CASES**

3

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ...................................................................................8

4
5

*Alvarez v. ICE,*
    818 F.3d 1194 (11th Cir. 2016)...........................................................................8

6
7

*Am. Immigr. Lawyers Ass'n v. Reno,*
    199 F.3d 1352 (D.C. Cir. 2000) ..........................................................................9

8
9

*Arizona v. United States,*
    567 U.S. 387 (2012) ..........................................................................................16

10
11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..........................................................................................20

12

*Bennett v. Spear,*
    520 U.S. 154 (1997) ..........................................................................................15

13
14

*Board of Regents v. Roth,*
    408 U.S. 564 (1972) ..........................................................................................19

15
16

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016) ............................................................................................6

17

*Carlson v. Landon,*
    342 U.S. 524 (1952) ..........................................................................................19

18
19

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................................................5

20
21

*Clark v. Martinez,*
    543 U.S. 371 (2005) ..........................................................................................14

22
23

*Clark v. Smith,*
    967 F.2d 1329 (9th Cir. 1992) ...........................................................................17

24

*Demore v. Kim,*
    538 U.S. 510 (2003) .............................................................................15, 18, 19, 20

25
26

*Dep't of Homeland Sec. v. Thuraissigiam,*
    591 U.S. 103 (2020) ..............................................................................4, 10, 13, 15

27
28

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

*Food & Drug Admin. v. Wages & White Lion Invs., LLC,*
  604 U.S. 542 (2025) ....................................................................................18

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),*
  528 U.S. 167 (2000) ......................................................................................6

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ....................................................................................21

*Heckler v. Chaney,*
  470 U.S. 821 (1985) ...............................................................................16, 18

*J.E.F.M. v. Lynch,*
  837 F.3d 1026 (9th Cir. 2016) .......................................................................7

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) ............................................................................ *passim*

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ......................................................................................5

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ....................................................................................15

*M.M.V. v. Garland,*
  1 F.4th 1100 (D.C. Cir. 2021) ........................................................................9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ......................................................................................17

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
  538 U.S. 803 (2003) ......................................................................................6

*Nettles v. Grounds,*
  830 F.3d 922 (9th Cir. 2016) (en banc)....................................................21, 22

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ......................................................................................16

*Ohio Forestry Ass'n v. Sierra Club,*
  523 U.S. 726 (1998) ......................................................................................6

*Ortega-Lopez v. Barr,*
  978 F.3d 680 (9th Cir. 2020)........................................................................12

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

*Pinson v. Carvajal*,
   69 F.4th 1059 (9th Cir. 2023)................................................................21

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ..............................................................................20

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ..............................................................................14

*Reno v. American-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) .................................................................................7

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004) ..............................................................................21

*Ruiz v. Mukasey*,
   552 F.3d 269 (2d Cir. 2009) ....................................................................8

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ................................................................................17

*Shell v. Burlington N. Santa Fe Ry. Co.*,
   941 F.3d 331 (7th Cir. 2019) ................................................................12

*Sissoko v. Rocha*,
   509 F.3d 947 (9th Cir. 2007)....................................................................8

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ..............................................................................13

*Tazu v. Att'y Gen. U.S.*,
   975 F.3d 292 (3d Cir. 2020)......................................................................9

*Torres v. Barr*,
   976 F.3d 918 (9th Cir. 2020) (en banc)............................................12, 13

*United States v. Gambino-Ruiz*,
   91 F.4th 981 (9th Cir. 2024)................................................................12, 13

*United States v. Wilson*,
   503 U.S. 329 (1992) ..............................................................................11

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981) .................................................................................5

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ...................................................................................19

*Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*,
  48 F.4th 1298 (11th Cir. 2022) ....................................................................12

*Wilkinson v. Dotson*,
  544 U.S. 74 (2005) ....................................................................................20

## STATUTES

5 U.S.C. § 701(a)(2) ....................................................................................16

5 U.S.C. § 704 ..........................................................................................15

8 U.S.C. § 1182(a)(6)(A)(i) ............................................................................2

8 U.S.C. § 1182(a)(9)(A)(i) ...........................................................................11

8 U.S.C. § 1182(d)(5)(A) ................................................................4, 11, 13, 20

8 U.S.C. § 1225 ....................................................................................*passim*

8 U.S.C. § 1225(a)(1) ...........................................................................3, 10, 12

8 U.S.C. § 1225(b) ................................................................................*passim*

8 U.S.C. § 1225(b)(2) .............................................................................*passim*

8 U.S.C. § 1225(b)(2)(A) .........................................................................*passim*

8 U.S.C. § 1225(c)(1) ..................................................................................11

8 U.S.C. § 1226 ...................................................................................*passim*

8 U.S.C. § 1227 ..........................................................................................13

8 U.S.C. § 1229a ..................................................................................*passim*

8 U.S.C. § 1231(a) ......................................................................................19

8 U.S.C. § 1252(b)(9) ...........................................................................1, 6, 7, 8

8 U.S.C. § 1252(e)(3) .............................................................................1, 9, 10

8 U.S.C. § 1252(f)(1) ...........................................................................1, 21, 22

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

8 U.S.C. § 1252(g) ..................................................................................1, 8, 9

## REGULATIONS

8 C.F.R. § 1.2 ...............................................................................................10

8 C.F.R. § 1001.1 .........................................................................................10

8 C.F.R. § 235.1(f) .........................................................................................3

8 C.F.R. § 235.1(f)(2) ...................................................................................10

8 C.F.R. § 235.3(b)(3) .........................................................................4, 11, 13

8 C.F.R. § 235.3(c) ..............................................................................4, 11, 13

## ADMINISTRATIVE DECISIONS

*Matter of E-R-M- & L-R-M-,*
    25 I. & N. Dec. 520 (BIA 2011)..............................................................4

*Matter of Lemus,*
    25 I. & N. Dec. 734 (BIA 2012)..........................................................4, 10

*Matter of M-S-,*
    27 I. & N. Dec. 509 (A.G. 2019)......................................................11, 13

*Matter of Q. Li,*
    29 I. & N. Dec. 66 (BIA 2025).................................................3, 4, 11, 13

*Matter of Valenzuela-Feliz,*
    26 I. & N. Dec. 53 (BIA 2012)...............................................................12

*Matter of Yajure Hurtado,*
    29 I. & N. Dec. 216 (BIA 2025).....................................................4, 11, 12

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

## <u>NOTICE OF MOTION TO DISMISS</u>

PLEASE TAKE NOTICE that on January 15, 2026, at 10:00 a.m., before the Honorable P. Casey Pitts of the United States District Court for the Northern District of California, in Courtroom 8 of the 4th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st St Street, San Jose, California, Defendants will move this Court to dismiss all claims in this case.

Defendants' motion is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The bases for dismissal are set forth in full in the following Memorandum of Points and Authorities.

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

This action should be dismissed in its entirety. Plaintiffs challenge the agency's lawful exercise of mandatory detention authority, asserting that it has adopted a new "Re-Detention Policy" and is now impermissibly invoking 8 U.S.C. § 1225(b)(2)(A) to detain certain aliens who entered without inspection. But the dispute does not concern any dramatic departure in agency policy; it concerns the statutory line Congress has drawn for nearly three decades. For all that time, the immigration laws have treated aliens who have not been admitted—including those who entered without inspection—as "applicants for admission" governed by § 1225, while reserving § 1226's discretionary framework for admitted, deportable aliens. Plaintiffs recast the straightforward application of that structure as an "about-face," but the agency decisions and guidance they cite simply implement the statute Congress enacted. Their contrary theory would collapse the line between applicants for admission and admitted aliens, dilute the mandatory terms of § 1225(b)(2)(A), and convert routine, case-specific detention decisions into a program-level policy challenge.

Congress, meanwhile, has sharply limited judicial interference in this sphere. Multiple provisions—8 U.S.C. §§ 1252(b)(9), 1252(g), 1252(e)(3), and 1252(f)(1)—channel or bar the very type of programmatic, classwide relief Plaintiffs seek. And independent of those limits, Plaintiffs face the threshold Article III obstacles that accompany speculative, forward-looking challenges: they identify no imminent re-detention, no ripe dispute over a concrete application of § 1225(b)(2)(A), and no live controversy in light of the preliminary injunction that already affords their requested protection. Those defects reinforce that this suit cannot proceed.

Even if the Court could reach the merits, Plaintiffs identify no reviewable defect in

DHS's conduct. Their APA theory fails because they point to no final agency action and no record of decision to review; the actions they challenge reflect the statute's operation, not administrative rulemaking. The constitutional claims add no independent foothold, as immigration detention during removal proceedings is a longstanding and permissible feature of the system the Supreme Court has repeatedly upheld. Finally, habeas is a remedy for individualized custody disputes; it does not authorize the sweeping, classwide redesign of detention authority that Plaintiffs attempt to obtain through it.

For all these reasons, Plaintiffs' claims fail as a matter of law, and the Class Action Complaint and Amended Petition for Writ of Habeas Corpus should be dismissed.

## FACTUAL BACKGROUND

Plaintiffs Frescia Garro Pinchi, Juany Galo Santos, and Jose Waldemar Teletor Sente are nationals of Peru, Honduras, and Guatemala, respectively. Ex. 1 (Decl. of Deportation Officer Michael Silva Regarding Frescia Garro Pinchi and Juany Galo Santos) ¶¶ 7, 17; Ex. 2 (Decl. of Deportation Officer Michael Silva Regarding Jose Waldemar Teletor Sente), ¶ 7. Each alien entered the United States without inspection or admission and was charged as removable under 8 U.S.C. § 1182(a)(6)(A)(i). Ex. 1 ¶¶ 7, 9, 17, 19; Ex. 2 ¶ 7, 8. DHS served each with a Notice to Appear and placed them in removal proceedings under 8 U.S.C. § 1229a before the San Francisco Immigration Court. Ex. 1 ¶¶ 9, 11, 19, 21; Ex. 2 ¶¶ 8, 10.

On July 3, 2025, after a scheduled master-calendar hearing, U.S. Immigration and Customs Enforcement ("ICE") executed a previously issued arrest warrant for Ms. Garro Pinchi and transferred her to the Mesa Verde ICE Processing Center. Ex. 1 ¶¶ 8, 12, 13. She was released two days later pursuant to a temporary restraining order. *Id.* ¶ 15. Neither Ms. Galo Santos nor Mr. Teletor Sente have been taken into custody since their initial encounters with

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

immigration officials. *Id.* ¶ 20; Ex. 2 ¶ 9. None of the named plaintiffs has a criminal record alleged in the pleadings.

The Class Action Complaint asserts that these enforcement actions reflect a broader "Re-Detention Policy." ECF 45 ¶ 6. Plaintiffs allege that DHS and ICE have begun treating all aliens who entered without inspection as subject to mandatory detention under 8 U.S.C. § 1225(b)(2), rather than discretionary custody under 8 U.S.C. § 1226. *See id.* ¶¶ 90–95. They attribute this asserted shift to internal DHS guidance and the Board of Immigration Appeals' decision in *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025). *Id.* ¶¶ 91, 92. Plaintiffs contend that these sources represent a new agency interpretation requiring "re-detention" of previously released individuals. *See id.* ¶¶ 87–96. But the plain language of § 1225(b)(2) requires the detention of all applicants for admission—including aliens who are present without admission and have been placed in § 1229a removal proceedings—as reflected in longstanding statutes and regulations, and predates the alleged guidance. *See infra* Argument III.

Plaintiffs seek declaratory and injunctive relief under the INA, the APA, and the Fifth Amendment, including a classwide order restricting DHS's application of § 1225(b)(2) to such individuals, and writs of habeas corpus prohibiting DHS from detaining such individuals under its § 1225(b)(2) authority unless a custody hearing is first held. ECF 45, Prayer for Relief.

## LEGAL BACKGROUND

Federal immigration law distinguishes between two basic categories of aliens: those who have been "admitted" to the United States and those who have not. Under 8 U.S.C. § 1225(a)(1), "an alien present in the United States who has not been admitted" is deemed an "applicant for admission." That term includes individuals encountered at a port of entry and those present in the interior without lawful admission. *See* 8 C.F.R. § 235.1(f); *Dep't of Homeland Sec. v.*

*Thuraissigiam*, 591 U.S. 103, 140 (2020); *Matter of Lemus*, 25 I. & N. Dec. 734, 743 (BIA 2012).

Since Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, detention of applicants for admission has been governed by 8 U.S.C. § 1225(b). That statute, in relevant part, directs that when an immigration officer determines an alien seeking admission is not "clearly and beyond a doubt entitled to be admitted," the individual "shall be detained" for removal proceedings under 8 U.S.C. § 1229a, unless paroled under 8 U.S.C. § 1182(d)(5)(A). *See* 8 U.S.C. § 1225(b)(2)(A); 8 C.F.R. § 235.3(b)(3), (c).

The Supreme Court has described § 1225(b)(2) as a "catchall provision" for applicants for admission not processed through expedited removal and has recognized that it mandates detention during removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). The Board of Immigration Appeals recently applied that understanding, including in *Matter of Q. Li*, 29 I. & N. Dec. at 68, and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which ruled that aliens present without admission or parole who are placed directly into § 1229a removal proceedings are detained under § 1225(b)(2)(A), and immigration judges lack authority to redetermine the custody of such aliens.

Within this statutory framework, DHS may place an alien who entered without inspection into either expedited removal proceedings under § 1225(b)(1) or removal proceedings before an immigration judge under § 1229a. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520 (BIA 2011). In both contexts, detention authority arises under § 1225(b).

## ARGUMENT

### I.    Plaintiffs' claims are not justiciable under Article III.

Federal courts may adjudicate only actual, ongoing "cases" or "controversies" within the

meaning of Article III. That constitutional limitation requires a concrete and particularized injury that is fairly traceable to the challenged conduct and likely to be redressed by a judicial order. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs' claims fail in that respect, where they identify no concrete injury, seek to litigate hypothetical future enforcement actions, and challenge an alleged policy that has already been enjoined and whose asserted effects no longer present a live dispute.

### Standing

All three named Plaintiffs are presently at liberty. Their asserted injury is a prospective fear that DHS might re-detain them at some future time pursuant to an alleged "Re-Detention Policy." A speculative, attenuated risk is not a concrete, imminent injury in fact. *See Lujan*, 504 U.S. at 560–61; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–14 (2013) (threatened injury must be "certainly impending" or at least present a substantial risk). Nor does the Court's preliminary-injunction ruling ensure jurisdiction, since preliminary findings are not binding at final judgment. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Even on the fuller record now, Plaintiffs have not identified any non-hypothetical plan to re-detain any named Plaintiff, and thus fail to show the requisite imminence.

### Ripeness

Even accepting Plaintiffs' allegations as true, their asserted injuries remain speculative. Plaintiffs claim that DHS has adopted a "Re-Detention Policy" under which certain aliens previously released from custody may again be detained suddenly and without notice. But all of the named Plaintiffs are not currently in custody and allege only a fear of future re-detention. Whether that occurs depends on a series of contingent, individualized events: if and when DHS initiates any future enforcement action against them, the posture of their removal proceedings at

5

that time, and the outcome of any ensuing custody determinations. Courts consistently decline to

adjudicate such abstract, policy-level disputes divorced from any concrete application. *See Ohio*

*Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733–37 (1998); *Nat'l Park Hospitality Ass'n v.*

*Dep't of the Interior*, 538 U.S. 803, 807–12 (2003). Because Plaintiffs have not shown any

concrete, imminent injury traceable to current agency action, their claims reflect only a

disagreement over potential enforcement decisions.

### Mootness

The preliminary injunction already affords Plaintiffs the protection they sought by

barring any re-detention under the challenged framework, and Plaintiffs identify no imminent

plan to detain them again. Their individual claims thus seek relief they have already obtained.

That does not present a live controversy. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–

66 (2016). Nor do the usual exceptions apply. The Government has not "ceased" a challenged

policy to avoid review—it denies that such a policy exists—and there is no reasonable

expectation that the same Plaintiffs will again face re-detention. *See Friends of the Earth, Inc. v.*

*Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–92 (2000). And because no class has been

certified, class allegations cannot preserve jurisdiction. *Sosna v. Iowa*, 419 U.S. 393, 399–402

(1975).

## II.    Section 1252 bars this Court's review of Plaintiffs' challenge to mandatory detention under § 1225(b)(2)(A).

Congress has sharply limited judicial interference in the Executive's administration of

immigration laws, particularly those governing the removal scheme. Multiple statutory

provisions—8 U.S.C. § 1252(b)(9), (g), and (e)(3)—independently foreclose this Court's

jurisdiction over Plaintiffs' claims. Each bar alone would warrant dismissal; taken together, they

close every potential avenue of review.

6

*8 U.S.C. § 1252(b)(9)*

Section 1252(b)(9) first provides that "judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" shall occur only through the petition-for-review process in the appropriate court of appeals. 8 U.S.C. § 1252(b)(9). The Supreme Court has described this as an "unmistakable 'zipper' clause," consolidating "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien" into a single proceeding in the courts of appeals. *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999); 8 U.S.C. § 1252(b)(9). Together with § 1252(a)(5), which declares the petition for review "the sole and exclusive means for judicial review" of removal orders, these provisions reflect Congress's intent that "*any* issue—whether legal or factual—arising from any removal-related activity be reviewed *only* through the PFR process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016).

Plaintiffs' claims fall squarely within this channeling rule. They challenge DHS's authority to detain them pending their § 1229a removal proceedings—a quintessential "action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). As the Supreme Court explained in *Jennings*, § 1252(b)(9) may encompass challenges to "the decision to detain [an alien] in the first place or to seek removal." 583 U.S. at 294. Plaintiffs' theory—that the Government's statutory basis for detention is unlawful—directly contests the "decision to detain them in the first place." *Id.* That is precisely the type of claim Congress required to be heard, if at all, through the petition-for-review process after final agency action.

The Ninth Circuit and other courts have repeatedly applied § 1252(b)(9) to foreclose district-court jurisdiction over claims intertwined with removal proceedings. *See J.E.F.M.*, 837 F.3d at 1035 ("§§ 1252(a)(5) and (b)(9) channel review of all claims, including policies-and-

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

practices challenges, through the PFR process whenever they 'arise from' removal proceedings"); *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (only actions "unrelated to any removal action or proceeding" fall within district-court jurisdiction). Because Plaintiffs' claims arise from DHS's actions in managing and executing their ongoing removal cases, § 1252(b)(9) divests this Court of jurisdiction.

Nor do Plaintiffs lack a forum. Congress preserved judicial review of "constitutional claims or questions of law" through petitions for review. 8 U.S.C. § 1252(a)(2)(D). *See Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (§ 1252(b)(9) is "a judicial channeling provision, not a claim-barring one"). Thus, dismissal here merely respects Congress's chosen procedural route; it does not foreclose ultimate review in the proper court.

### 8 U.S.C. § 1252(g)

Section 1252(g) likewise strips jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The Supreme Court held in *AADC* that this provision applies to the "three discrete actions" mentioned in the statute, 525 U.S. at 482, and courts have consistently recognized that detention decisions are a "specification" of the decision to commence or execute removal proceedings. *Id.* at 485 n.9.

Multiple courts of appeals agree that detention pending removal "arises from" the Government's discretionary decision to commence or execute proceedings and is therefore barred from review. *See, e.g.*, *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (recognizing that an alien's detention arises from the decision to commence proceedings); *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (§ 1252(g) bars challenges to ICE's "decision to take [plaintiff]

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

into custody and to detain him during removal proceedings"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020) ("re-detention for removal attacks a key part of executing [an alien's] removal order," and detention "does not fall within some other part of the deportation process" (internal quotation marks omitted)).

Plaintiffs' "re-detention" theory fits comfortably within this line of cases. Each detention flows directly from DHS's continuing exercise of its authority to manage and execute removal proceedings against individuals who entered without inspection and remain applicants for admission. Review of those custody decisions would require this Court to second-guess the timing, manner, and scope of enforcement actions integral to the removal process—precisely what § 1252(g) forbids.

### 8 U.S.C. § 1252(e)(3)

Even if the Court were to somehow accept Plaintiffs' characterization of a "Re-Detention Policy" as a written directive implementing § 1225(b)(2), jurisdiction would still lie exclusively in the United States District Court for the District of Columbia. Section 1252(e)(3) channels to that court alone any action challenging a determination under § 1225(b) or "its implementation," limiting review to whether § 1225(b) or an implementing "regulation," "written policy directive," "written policy guideline," or "written procedure" is unlawful. 8 U.S.C. § 1252(e)(3)(A)(i)–(ii). As the D.C. Circuit explained in *M.M.V. v. Garland*, § 1252(e)(3) applies broadly to implementation challenges, not solely to determinations under § 1225(b)(1). 1 F.4th 1100, 1109 (D.C. Cir. 2021).

By explicitly channeling review of such programmatic challenges to the removal system into the D.C. court, Congress deprived all other courts of jurisdiction over such suits. *See Am. Immigr. Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1358–59 (D.C. Cir. 2000). Here, Plaintiffs

9

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION [CASE NO. 5:25-CV-5632-PCP]

1    purport to challenge an alleged "July 8 Memo" said to alter DHS's implementation of

2    § 1225(b)(2). If that allegation were correct—and the Government disputes it—then § 1252(e)(3)

3    would channel any such challenge exclusively to the D.C. court, not this Court. This suit

4    therefore cannot proceed in the Northern District of California.

5    **III.    Section 1225(b)(2) provides a lawful basis for detention of non-admitted aliens,
6    consistent with the INA's structure.**

7         The INA establishes a defined framework: aliens who have not been admitted (i.e.,

8    arriving aliens and aliens present in the United States without admission or parole) are treated as

9    "applicants for admission," and their detention is governed by 8 U.S.C. § 1225. By contrast,

10   § 1226 governs the detention of aliens who have been admitted to, and are deportable from, the

11   United States. That framework is not new; Congress codified it nearly three decades ago.

12        As defined in § 1225(a)(1), the term "applicant for admission" includes aliens "present in

13   the United States who ha[ve] not been admitted" and aliens "who arrive[] in the United States."

14   By its plain terms, that definition encompasses both arriving aliens and those who entered

15   without inspection and remain in the United States despite not having been lawfully admitted.

16   *See Thuraissigiam*, 591 U.S. at 108–09, 140; *Matter of Lemus*, 25 I. & N. Dec. at 743; *see also* 8

17   C.F.R. §§ 1.2, 1001.1 (defining the term "arriving alien" as "an applicant for admission coming

18   or attempting to come into the United States at a port-of-entry, or an alien seeking transit through

19   the United States at a port-of-entry, or an alien interdicted in international or United States

20   waters and brought into the United States by any means, whether or not to a designated port-of-

21   entry, and regardless of the means of transport"). Federal regulations accordingly direct that a

22   person present without admission be processed for removal under § 1225(b) or § 1229a. 8 C.F.R.

23   § 235.1(f)(2). Thus, anyone physically present in the United States who has never been admitted

24   is, by statute, an applicant for admission governed by § 1225.

25
26
27
28

10

Under § 1225(b)(2)(A), when an immigration officer determines that an applicant for admission is "not clearly and beyond a doubt entitled to be admitted," the alien "shall be detained" for removal proceedings under § 1229a. As the Supreme Court explained in *Jennings*, § 1225(b)(2) operates as the catchall detention authority for applicants not processed under § 1225(b)(1). 583 U.S. at 287. The implementing regulations mirror that design: aliens placed in § 1229a proceedings "shall be detained" under § 1225(b), unless paroled pursuant to § 1182(d)(5)(A). 8 C.F.R. § 235.3(b)(3), (c).

When DHS elects to place an applicant for admission into § 1229a removal proceedings, rather than expedited removal under § 1225(b)(1), § 1225(b)(2)(A) governs detention. *Jennings*, 583 U.S. at 287. That processing decision does not change the alien's statutory classification: individuals who have not been admitted remain "applicants for admission," and their detention continues to fall under § 1225, as opposed to § 1226. The Attorney General has confirmed that §§ 1225 and 1226 govern distinct classes of aliens, not overlapping ones. *Matter of M-S-*, 27 I. & N. Dec. 509, 516 (A.G. 2019). Subsequent Board decisions have applied that distinction consistently. *See Matter of Q. Li*, 29 I. & N. Dec. 66, 68–71 (BIA 2025); *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220–21 (BIA 2025). Nothing in § 1225(b)(2) restricts its reach to arriving aliens; when Congress intended for a rule to apply only to "arriving aliens," it has taken care to use that specific term or similar phrasing. *See, e.g.*, 8 U.S.C. §§ 1182(a)(9)(A)(i), 1225(c)(1).

Plaintiffs seek to limit § 1225(b)(2)(A) to individuals "actively attempting to effect a lawful entry into the country," ECF 45 ¶ 95, but the statutory text and structure say otherwise. Congress used the present participle "seeking," denoting an ongoing status rather than a momentary event. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) (verb tense is

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

significant to meaning). Courts interpret that usage to mark continuing action. *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022); *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019). Further, in immigration law, an application for admission is "a continuing one." *Matter of Valenzuela-Felix*, 26 I. & N. Dec. 53, 56 (BIA 2012).[1] The Supreme Court has used "applicants for admission" and "aliens seeking admission" interchangeably when discussing § 1225(b). *Jennings*, 583 U.S. at 287–89. And in *Matter of Yajure Hurtado*, the Board rejected the notion that extended residence within the United States removes one from that status, reasoning that remaining without admission cannot erase the continuing legal consequence of entry without inspection. 29 I. & N. Dec. at 220–21, 228. Plaintiffs' interpretation is thus inconsistent with the statute's grammar, structure, and interpretive history.

That reading also conflicts with the broader statutory design Congress enacted in 1996. Before IIRIRA, the statutory scheme afforded greater procedural rights to aliens who evaded inspection than to those who sought entry lawfully. *See Ortega-Lopez v. Barr*, 978 F.3d 680, 682

---

[1] This understanding aligns with Ninth Circuit decisions interpreting the INA's use of "application for admission," as distinct from the statute's broader definition of "applicant for admission." *See United States v. Gambino-Ruiz*, 91 F.4th 981, 988–90 (9th Cir. 2024); *Torres v. Barr*, 976 F.3d 918, 925–26 (9th Cir. 2020) (en banc). *Torres* and *Gambino-Ruiz* addressed a specific question not presented here: determining when, in certain atypical circumstances, an alien has made an "application for admission" for purposes of 8 U.S.C. §§ 1182(a)(7) and 1225(b)(1)(A)(iii). In *Torres*, the court held that residents in the Commonwealth of the Northern Mariana Islands (CNMI) had not made such an application at the moment the INA became applicable there because they had lawfully entered CNMI before federal immigration laws took effect; *Gambino-Ruiz* applied that reasoning to reject extending the phrase "at the time of application for admission" over a multi-year period in that transition context. *See Gambino-Ruiz*, 91 F.4th at 988–90; *Torres*, 976 F.3d at 925–26. Nothing in either decision limits § 1225(a)(1)'s broader definition of "applicant for admission," which encompasses any alien present without having been admitted or paroled.

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

(9th Cir. 2020) (quoting *Torres*, 976 F.3d at 928); *see also* H.R. Rep. No. 104-469, pt. 1, at 225–29 (1996). IRIRA abolished that disparity by replacing "entry" with "admission" and defining all non-admitted individuals as applicants for admission. IIRIRA § 302. Reading § 1225(b)(2) to exclude aliens present without admission would restore the very anomaly Congress abolished and create an incentive to circumvent inspection. *See United States v. Gambino-Ruiz*, 91 F.4th 981, 988–90 (9th Cir. 2024) (citing *Thuraissigiam*, 591 U.S. at 140). A 1997 interim rule distinguishing "arriving aliens" from those "present without being admitted," 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997), is not supported by the plain language of § 1225(b)(2)(A). Congress set the scope in the INA itself: applicants for admission not processed under § 1225(b)(1) are detained under § 1225(b)(2)(A) for § 1229a proceedings; aliens subject to detention pursuant to § 1225(b) may only be released from custody by a parole pursuant to § 1182(d)(5)(A). *See* 8 C.F.R. § 235.3(b)(3), (c); *Jennings*, 583 U.S. at 287–89. Plaintiffs' narrow reading would revive a statutory anomaly IIRIRA was enacted to eliminate.

Read within that broader scheme, the role of § 1226(a) is clear: it governs the discretionary detention of aliens who have been admitted to the United States and are deportable under § 1227 pending the outcome of their § 1229a proceedings. *Jennings*, 583 U.S. at 289, 303; *Matter of M-S-*, 27 I. & N. Dec. at 516; *Matter of Q. Li*, 29 I. & N. Dec. at 70. It "creates a default rule for those aliens by permitting—but not requiring—the [Secretary] to issue warrants for their arrest and detention pending removal proceedings." *Jennings*, 583 U.S. at 303. By contrast, § 1225(b)(2)(A) imposes a specific, mandatory detention directive for applicants for admission—aliens who have not been admitted—when an immigration officer determines they are "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The two provisions thus describe distinct detention authorities operating in parallel: § 1225(b) applies

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

specifically to applicants for admission, while § 1226(a) serves as a more general, permissive framework for aliens who have been admitted to the United States.

To the extent Plaintiffs suggest that § 1226(a) supersedes § 1225(b)(2)(A), that reading reverses the ordinary rule of construction that the specific governs the general. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Section 1225(b)(2)(A) is the more specific provision, directed at the discrete class of applicants for admission; § 1226(a) is the broader residual authority for admitted aliens who are deportable and subject to removal proceedings under § 1229a. Applying the general/specific canon gives effect to both: § 1225(b)(2)(A) "does not negate" § 1226(a)—which still applies to admitted aliens who are deportable—"but only in its application to the situation that [§ 1225(b)(2)(A)] covers." *A. Scalia & B. Garner, Reading Law* 185 (2012). The result is a coherent scheme in which § 1225(b)(2)(A) governs detention of applicants for admission, while § 1226(a) continues to regulate discretionary custody decisions aliens in § 1229a removal proceedings who have been admitted and are deportable.

Finally, to the extent Plaintiffs suggest that the Court should construe § 1225(b)(2) narrowly to avoid constitutional concerns, see ECF 45 ¶ 39, that invitation misstates the doctrine. The canon of constitutional avoidance "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Clark v. Martinez*, 543 U.S. 371, 385 (2005). It "is not a method of adjudicating constitutional questions by other means." *Id.* at 381. Nor may courts use the canon to "rewrite" the statutory scheme. *Jennings*, 583 U.S. at 298. Here, Congress's directive that applicants for admission "shall be detained" under § 1225(b)(2)(A) is unambiguous. *Jennings* explicitly rejected the Ninth Circuit's use of this canon, holding that § 1225(b)'s text is not ambiguous and leaves no room for

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

an implied bond hearing. *Id.* at 301. And the Supreme Court has repeatedly upheld comparable

detention frameworks as constitutionally permissible. *See Demore v. Kim*, 538 U.S. 510, 531

(2003); *Thuraissigiam*, 591 U.S. at 139–40. Because § 1225(b)(2)'s text is clear and

constitutionally valid, the canon of avoidance has no role to play, and the statute must be applied

as written.

## IV.    Plaintiffs identify no final agency action, and their claim of an alleged policy shift fails even assuming APA review.

Plaintiffs' APA theories fail at the threshold. For an APA challenge to be maintained,

there must be a final agency action—an action "made reviewable by statute" and "for which

there is no other adequate remedy in a court." *See* 5 U.S.C. § 704. The complaint identifies no

discrete, final agency action—no rule, order, guidance, or directive that would be subject to

judicial review. It does not specify any action that consummates a decisionmaking process by the

agency or any action that determines rights or obligations where there would be legal

consequences. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). What Plaintiffs describe as a

"policy" is neither formally promulgated nor concretely applied; it is, at most, an aggregation of

individual enforcement actions and resource judgments, each independently based on a self-

executing statutory mandate. As the Supreme Court has made clear, "it is at least entirely certain

that the flaws in [an] entire 'program'—consisting principally of the many individual actions

referenced in [a] complaint, and presumably actions yet to be taken as well—cannot be laid

before the courts for wholesale correction under the APA, simply because one of them that is

ripe for review adversely affects" a plaintiff. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93

(1990).

That is just the situation here, where Plaintiffs' request to vacate an unwritten practice

and direct ICE's future enforcement operations exemplifies the kind of programmatic oversight

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

the Supreme Court has rejected. Plaintiffs might be dissatisfied with how § 1225(b)(2)(A) operates in practice, but their disagreement does not transform statutory implementation into agency policymaking. Indeed, "[i]f courts were empowered to enter general orders compelling compliance with broad statutory mandates, they would necessarily be empowered, as well, to determine whether compliance was achieved—which would mean that it would ultimately become the task of the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004). However carefully a court might try to avoid intrusion, reading "final agency action" as loosely as Plaintiffs propose would thrust the court into managing "the manner and pace of agency compliance with [] congressional directives." *Id.* at 67.

Even setting finality aside, the enforcement decisions Plaintiffs challenge fall within the category of matters committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Enforcement and detention judgments are inherently discretionary, turning on considerations of timing, priority, and resource allocation. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) (agencies "far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities," with courts generally "defer[ring] to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute"). As the Supreme Court explained in *Heckler*, such decisions are generally unsuited to judicial review because they rest on a complex balancing of factors the agency is best positioned to evaluate. 470 U.S. at 831–32. Congress entrusted those judgments to the Executive, not to the courts, and left no judicially manageable standard for second-guessing the agency's timing or prioritization of detentions under § 1225(b)(2)(A). *See Arizona v. United States*, 567 U.S. 387,

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

396–97 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials."); *accord Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1992) ("An alien's freedom from detention is only a variation on the alien's claim of an interest in entering the country."). That structural allocation of discretion forecloses APA review of individualized enforcement or custody decisions dressed in policy terms.

Even assuming some review under the APA were available, the Class Action Complaint alleges no cognizable defect in agency decisionmaking. Plaintiffs' narrative—that DHS abruptly adopted a new "re-detention policy" without reasoned explanation—rests on a false change-in-position premise. Again, the actions they describe flow directly from the statutory framework Congress enacted in 8 U.S.C. § 1225(b)(2)(A), which mandates detention of applicants for admission not clearly entitled to enter and does not constitute a change in policy. When the Executive applies that command in individual enforcement contexts, it is executing statutory direction, not making or changing policy.

The APA's reasoned-decisionmaking requirement for a change in position applies only when an agency has, in fact, acted. As the Supreme Court explained, the "change-in-position doctrine asks two questions": first, "whether an agency changed existing policy; second, whether the agency displayed awareness that it was changing position and offer good reasons for the new policy. *FDA v. Wages & White Lion Invs., LLC* ("*White Lion*"), 604 U.S. 542, 569–70 (2025). When an agency changes its position, it obliges the agency to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). Judicial review, in turn, is confined to the grounds "upon which the record discloses that [the agency's] action was based." *SEC v.*

*Chenery Corp.*, 318 U.S. 80, 87 (1943). Here, there is no such agency "action" or record. Plaintiffs point to no promulgated decision, contemporaneous explanation, or policy reversal— only field-level enforcement choices implementing the statute's self-executing command. Without a discrete, record-supported determination to review, the case law provides no foothold for APA review.

Even if individual enforcement decisions were reviewable, they would not be arbitrary or capricious here. Ordinary enforcement under § 1225 is rationally grounded in ensuring appearance at proceedings, preventing absconding, and protecting the public—purposes Congress expressly incorporated into the INA. *See Jennings*, 583 U.S. at 285–86; *accord Demore*, 538 U.S. at 512 (detention during removal proceedings "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed"). Agencies are typically permitted to exercise their enforcement discretion, as is the case here. *See White Lion*, 604 U.S. at 585. Allegations that ICE acted abruptly or without deliberation in individual custody determinations amount only to disagreement with outcomes, not legal deficiency. *See Heckler*, 470 U.S. at 831–32.

In short, Plaintiffs have not identified a reviewable agency action under the APA or a policy that was purportedly changed requiring a rational basis. The conduct they challenge is the statute's ordinary operation, which the APA does not convert into an administrative law controversy.

## V.    Plaintiffs' constitutional claims are unsupported by the statutory scheme and established precedent.

Plaintiffs also plead constitutional theories—substantive and procedural due process and a Fourth Amendment seizure claim—but none states a claim on the facts alleged or in light of the

18

statutory scheme. Civil immigration detention is a longstanding and constitutionally permissible component of the removal process; there is no fundamental liberty interest in immunity from detention during removal proceedings, and a prior discretionary release does not create a constitutional entitlement to continued release. *See Demore*, 538 U.S. at 523–31 (upholding mandatory detention during § 1229a proceedings and rejecting due-process challenge premised on absence of individualized bond hearings under § 1226(c)); *Jennings*, 583 U.S. at 299–303, 311–12 (recognizing statutory authorization for detention under § 1225(b) and declining to impose extra-statutory bond procedures). The Due Process Clause protects only rights that are "deeply rooted in this Nation's history and tradition," and the asserted interests here—immunity from detention under generally applicable detention provisions, or a right to continued release once paroled or released—do not qualify. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) (recognizing immigration detention as a permissible means of effectuating removal).

Procedurally, Plaintiffs do not plausibly allege the deprivation of a protected interest without constitutionally adequate process. Where no protected liberty interest is established, no additional process is due. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). And the INA itself provides the relevant mechanisms for custody determinations. *See* 8 U.S.C. §§ 1226(a), 1225(b), 1231(a). Plaintiffs contend that ICE has failed to conduct individualized custody review before "re-detaining" previously released aliens, but no such pre-deprivation process is required under § 1225(b)(2)(A) or § 1182(d)(5)(A). Conclusory characterizations of abrupt or arbitrary detentions cannot substitute for well-pleaded facts showing the denial of constitutionally

required procedures. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Nor do Plaintiffs plausibly allege that the decision to effectuate or resume custody under § 1225(b)(2)(A) was undertaken for any impermissible or punitive purpose. Detention of applicants for admission is a statutory consequence of that status, not punishment. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Carlson*, 342 U.S. at 533 ("Deportation is not a criminal proceeding and has never been held to be punishment."). The Amended Complaint's generalized assertions that ICE re-detains previously released aliens without notice or individualized justification do not plausibly suggest punitive motive or unconstitutional treatment, particularly where detention is expressly mandated by statute and carried out for legitimate enforcement ends.

The Fourth Amendment claim fares no better. Civil immigration detention authority in this context arises from § 1225(b)(2)(A), which mandates custody of applicants for admission pending removal proceedings, subject only to the discretionary parole authority in § 1182(d)(5)(A). Plaintiffs' account—that some re-detentions occurred after hearings or at ICE check-ins—does not negate those statutory predicates or plausibly allege that custody was unreasonable under the Fourth Amendment. On these pleadings, Plaintiffs do not state a seizure claim.

## VI.     Habeas cannot supply the programmatic relief Plaintiffs seek.

Habeas under 28 U.S.C. § 2241 is, at its "core," a vehicle to test the fact or duration of an individual's custody and, if successful, to obtain release (or a shorter period of custody). *See Preiser v. Rodriguez*, 411 U.S. 475, 484–90 (1973); *Wilkinson v. Dotson*, 544 U.S. 74, 78–82 (2005). The Ninth Circuit applies that core/non-core distinction consistently: habeas does not extend to conditions, policies, or systemwide challenges that seek to regulate how an agency

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

operates going forward. *See Nettles v. Grounds*, 830 F.3d 922, 927–34 (9th Cir. 2016) (en banc); *Pinson v. Carvajal*, 69 F.4th 1059, 1065–75 (9th Cir. 2023).

Those limits matter here for multiple reasons. First, the relief demanded is not release for any individual; it is a forward-looking decree prescribing when, where, and how the agency may arrest or detain an entire class of aliens in the future. That reflects the kind of programmatic, non-core relief the Ninth Circuit has held lies outside habeas. *Nettles*, 830 F.3d at 933–34. Second, habeas is fundamentally individualized: it requires "custody" of the petitioner, a proper respondent with immediate custody, and relief that runs to that custody. *See* 28 U.S.C. § 2241(c); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–47 (2004). Plaintiffs' theory aggregates anticipated future enforcement across many persons (some not in custody, some outside this District), seeks to bind officials beyond any immediate custodian, and asks for structural rules that extend well beyond any individual's present custody. That mismatch underscores why habeas is not the proper vehicle. Third, even if habeas might be available for an individual detainee, Congress has withdrawn jurisdiction for the classwide injunction Plaintiffs seek. Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" those statutory provisions governing inspection, detention, and removal of aliens. 8 U.S.C. § 1252(f)(1). In *Garland v. Aleman Gonzalez*, the Court held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" those detention and removal provisions. 596 U.S. 543, 550 (2022). Plaintiffs' requested decree—regulating when and how ICE may detain applicants for admission—would do exactly that, and is thus barred.

Plaintiffs may answer that habeas has historically been flexible. The Ninth Circuit's cases mark the relevant boundary: when success would not necessarily entail an individual's release

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(or shortening of custody), or when the decree would manage policy or conditions rather than redress an unlawful custody, the claim is non-core and must proceed—if at all—outside habeas. *Nettles*, 830 F.3d at 927–34; *Pinson*, 69 F.4th at 1065–75. Plaintiffs' requested order would regulate future detentions for a putative class, not terminate any identified individual custody. Habeas does not reach that far, and § 1252(f)(1) independently forecloses the classwide injunction they propose.

## CONCLUSION

The Court should dismiss the Class Action Complaint and Amended Petition under Rules 12(b)(1) and 12(b)(6), and, if any claim remains, confine the case to individualized relief consistent with 8 U.S.C. § 1252(f)(1).

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

Dated: November 14, 2025                    Respectfully Submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            DREW C. ENSIGN
                                            Deputy Assistant Attorney General

                                            BENJAMIN MOSS
                                            Senior Counsel

                                            DAVID KIM
                                            Senior Litigation Counsel

                                            NANCY N. SAFAVI
                                            Senior Trial Attorney

                                            */s/ Jessica D. Strokus*
                                            JESSICA D. STROKUS
                                            Trial Attorney
                                            Office of Immigration Litigation
                                            U.S. Department of Justice
                                            P.O. Box 878, Ben Franklin Station
                                            Washington, D.C. 20044
                                            Tel: (202) 616-8779
                                            Jessica.D.Strokus@usdoj.gov

                                            *Counsel for Defendants*

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District of California, by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Respectfully Submitted,

*/s/ Jessica D. Strokus*
JESSICA D. STROKUS
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice

*Counsel for Defendants*

MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND AMENDED PETITION
[CASE NO. 5:25-CV-5632-PCP]