ERIN E. MEYER - # 274244
emeyer@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
CLAIRE C. BONELLI - #317735
cbonelli@keker.com
ELLEN WATLINGTON - # 336422
ewatlington@keker.com
JACQUIE P. ANDREANO - # 338354
jandreano@keker.com
KAYLA CROWELL - # 349061
kcrowell@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400

Attorneys for Plaintiffs-Petitioners

*[ADDITIONAL COUNSEL ON NEXT PAGE]*

BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
NEIL K. SAWHNEY - # 300130
nsawhney@aclunc.org
LAUREN M. DAVIS - # 357292
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

ABBY SULLIVAN ENGEN- # 270698
asullivanengen@centrolegal.org
JESSE NEWMARK - # 247488
jessenewmark@centrolegal.org
NIKOLAS DE BREMAEKER (admitted pro hac vice)
ndebremaeker@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 437-1863

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRESCIA GARRO PINCHI, JUANY GALO SANTOS, and JOSE TELETOR SENTE, on behalf of themselves and others similarly situated,<br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; KRISTI NOEM, Secretary of the United States Department of Homeland Security; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement, acting in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendants-Respondents. | Case No. 5:25-cv-5632-PCP<br><br>**REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS AND RIGHTS**<br><br>Date:        December 9, 2025<br>Time:        10:00 a.m.<br>Dept:        Courtroom 8 - 4th Floor<br>Judge:      Hon. P. Casey Pitts<br><br>Date Filed:  July 3, 2025 |

3368852

JUDY RABINOVITZ (admitted pro hac vice)
jrabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660

OSCAR SARABIA ROMAN - # 341385
osarabia@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Ste 7th Floor
San Francisco, CA 94104
Telephone: (916) 813-7891


Attorneys for Plaintiffs-Petitioners

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     RESPONSE TO EVIDENTIARY OBJECTIONS ..............................................2

III.    ARGUMENT.........................................................................................................3

        A.      Plaintiffs have Article III standing and their claims are not moot. .........3

        B.      The INA does not deprive this Court of jurisdiction. ..............................4

        C.      Plaintiffs have met their burden to show likelihood of success on the
                merits.........................................................................................................6

                1.      The Re-Detention Policy is reviewable under the APA. ...........6

                        a.      The Re-Detention Policy is "final agency action." ..........6

                        b.      The Re-Detention Policy is not the type of agency decision
                                committed to agency discretion by law. ..........................8

                        c.      The availability of habeas relief or claims for damages does
                                not preclude judicial review of the Re-Detention Policy.................9

                2.      The Re-Detention policy violates the APA. ..............................9

                        a.      The Re-Detention Policy is arbitrary and capricious. ......................9

                        b.      Defendants' post hoc rationale that Plaintiffs' re-detention is
                                governed by § 1225(b)(2) is irrelevant and wrong. .......................11

                        c.      The Re-Detention Policy violates the Fourth Amendment............13

                        d.      The Re-Detention policy exceeds DHS's statutory authority........14

        D.      The remaining equitable factors weigh in Plaintiffs' favor. ................14

IV.     CONCLUSION....................................................................................................15

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abramski v. United States*,
573 U.S. 169 (2014) (Scalia, J., dissenting)................................................................13

*Al Otro Lado, Inc. v. Mayorkas*,
2021 WL 3931890 (S.D. Cal. Sept. 2, 2021), *aff'd in relevant part* 138 F.4th
1102 (9th Cir. 2025)......................................................................................................8

*Al Otro Lado v. McAleenan*,
394 F. Supp. 3d 1168 (S.D. Cal. 2019)......................................................................7, 8

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) .....................................................................................5

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
370 F. Supp. 3d 1 (D.D.C. 2019).................................................................................10

*Am. Wild Horse Pres. Campaign v. Perdue*,
873 F.3d 914 (D.C. Cir. 2017).....................................................................................10

*Amadei v. Nielsen*,
348 F. Supp. 3d 145 (E.D.N.Y. 2018) ...........................................................................6

*Aracely R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018)...............................................................................7

*Bankamerica Corp. v. United States*,
462 U.S. 122 (1983)....................................................................................................13

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .........................................................................................3

*Biden v. Texas*,
597 U.S. 785 (2022).......................................................................................................8

*Bonilla v. Lynch*,
840 F.3d 575 (9th Cir. 2016) .........................................................................................9

*Bowen v. Massachusetts*,
487 U.S. 879 (1988).......................................................................................................9

*Burch v. Regents of Univ. of Cal.*,
433 F. Supp. 2d 1110 (E.D. Cal. 2006).........................................................................2

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

*California v. Ross*,
  362 F. Supp. 3d 727 (N.D. Cal. 2018) ..................................................................................8

*Ctr. for Taxpayer Rights, et al. v. Internal Revenue Serv.*,
  2025 WL 3251044 (D.D.C. Nov. 21, 2025) ...........................................................................7

*Demirel v. Fed. Det. Ctr. Pa.*,
  No. 25-5488 (E.D. Pa. Nov. 18, 2025), ECF 11-1................................................................12

*DHS v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)........................................................................................................4, 8, 11

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) .............................................................................................15

*Doe v. Trump*,
  784 F. Supp. 3d 1297 (N.D. Cal. 2025) ...............................................................................15

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)..............................................................................................................10

*Faizyan v. Casey*,
  2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) ........................................................................5

*Flynt Distrib. Co., Inc. v. Harvey*,
  734 F.2d 1389 (9th Cir. 1984) ................................................................................................2

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ..............................................................................................3, 4

*Heckler v. Chaney*,
  470 U.S. 821 (1985)................................................................................................................9

*Ibarra-Perez v. United States*,
  154 F.4th 989 (9th Cir. 2025) .................................................................................................4

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ................................................................................................5

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018)...............................................................................................4, 5, 11, 12

*Kidd v. Mayorkas*,
  2021 WL 1612087 (C.D. Cal. Apr. 26, 2021) ........................................................................7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)........................................................................................................3, 7, 8

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990)............................................................................................................7, 8

*Maher v. Roe*,
432 U.S. 464 (1977)..................................................................................................15

*Maklad v. Murray*,
2025 WL 2299376 (E.D. Cal. Aug. 8, 2025)...............................................................6

*Martinez-Serrano v. INS.*,
94 F.3d 1256 (9th Cir. 1996) ......................................................................................5

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2021) ....................................................................................14

*Mosqueda v. Noem*,
2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) ..............................................................5

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..............................................................................................10, 11

*Munoz Materano v. Arteta*,
2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025)...........................................................14

*Nava v. Dep't of Homeland Sec.*,
435 F. Supp. 3d 880 (N.D. Ill. 2020) ..........................................................................8

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)...................................................................................................7, 8

*O'Shea v. Littleton*,
414 U.S. 488 (1974)...................................................................................................14

*Ortega v. Kaiser*,
2025 WL 2243616 (N.D. Cal. Aug. 6, 2025) ..............................................................5

*Pablo Sequen v. Albarran*,
2025 WL 2935630 (N.D. Cal. Oct. 15, 2025).............................................3, 4, 11, 12

*Pinchi v. Noem*,
792 F. Supp. 3d 1025 (N.D. Cal. 2025) ...............................................................10, 11

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) .....................................................................................4

*R.I.L-R v. Johnson*,
80 F. Supp. 3d 164 (D.D.C. 2015)...............................................................................9

*Ramirez v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 7 (D.D.C. 2018)..................................................................................8

*Reno v. American-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999)......................................................................................................5

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

*Rodriguez v. Kaiser*,
  2025 WL 2855193 (E.D. Cal. Oct. 8, 2025) ...............................................................................5

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943) ....................................................................................................................10

*Singh v. Andrews*,
  2025 WL 1918679 (E.D. Cal. July 11, 2025) ...........................................................................11

*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2007) .....................................................................................................5

*Matter of Sugay*,
  17 I. & N. Dec. 637 (BIA 1981) ..............................................................................................6, 8

*Tazu v. Att'y Gen. U.S.*,
  975 F.3d 292 (3d Cir. 2020) .......................................................................................................5

*United States Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980) ...................................................................................................................4

*United States v. Lopez*,
  913 F.3d 807 (9th Cir. 2019) ......................................................................................................2

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) .................................................................................................................13

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) .................................................................................................................14

**Federal Statutes**

5 U.S.C. § 701 ..............................................................................................................................8

5 U.S.C. § 706 ............................................................................................................................14

8 U.S.C. § 1225 ................................................................................................................ *passim*

8 U.S.C. § 1226 ................................................................................................................ *passim*

8 U.S.C. § 1231 ..........................................................................................................................14

8 U.S.C. § 1252 .................................................................................................................4, 5, 13

**Rules**

Fed. R. Evid. 401 .........................................................................................................................2

**Regulations**

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)..........................................................................13

**Other Authorities**

1 McCormick On Evid. § 185.2 (9th ed.) ..............................................................................2

3 Federal Evidence § 6:6 (4th ed.)........................................................................................2

H.R. Rep. No. 104-469, pt. 1 (1996).................................................................................13

H.R. Rep. No. 104-828 (1996)...........................................................................................13

Overview, Hearsay Handbook 4th § 2:1...............................................................................2

## I.    INTRODUCTION

Defendants' opposition is remarkable for what it does not say. Defendants do not dispute that, since May 2025, they have embarked on a sweeping and unprecedented campaign to re-arrest and re-detain noncitizens whom the government previously released pending removal proceedings—without any assessment that they pose a flight risk or danger. Nor do they dispute that this campaign is a radical departure from decades of settled policy and practice, which permitted the revocation of release only after an individualized finding of materially changed circumstances. And they do not contest that the target of Defendants' policy are the countless noncitizens, like Plaintiffs, who attended their immigration hearings or check-ins, complied with their supervision conditions, and built stable and law-abiding lives in the community—and who now stare down the imminent risk of arbitrary arrest and indefinite detention.

Rather than defend the Re-Detention Policy on the merits, Defendants attempt to evade judicial review altogether. They baselessly argue that Plaintiffs—one of whom was re-detained pursuant to the challenged policy and would still be in detention if this Court had not issued a preliminary injunction ordering her release—lack Article III standing. They assert that various INA provisions deprive this Court of jurisdiction, even though controlling precedent holds that these bars do not apply to challenges to detention. Most tellingly, Defendants contend that their policy is not a "final agency action" subject to the APA at all, because it was neither written nor "formally promulgated." This position, if accepted, would create an easy template to shield policies from review, eviscerating the APA's protections against arbitrary and capricious action.

Defendants' few merits arguments fare no better. They do not even pretend that they provided a reasoned explanation, assessed reliance interests, or considered constitutionally protected liberty interests when they abruptly reversed settled agency policy and practice. Nor do Defendants meaningfully respond to Plaintiffs' Fourth Amendment arguments. Instead, their arguments largely boil down to an assertion that the Re-Detention Policy is compelled by § 1225(b)(2) of the INA. But this Court has already rejected Defendants' position and concluded, like numerous courts across the country, that re-detention of people like Ms. Garro Pinchi is governed by § 1226(a), not § 1225(b)(2)—just like the government told her when it initially

1

3368852

released her from detention. Simply put, Defendants' post-hoc misreading of the statute cannot erase the arbitrary and capricious nature of the Re-Detention Policy, nor can it square the policy with Plaintiffs' constitutional rights. This Court should stay the policy under the APA to protect Plaintiffs and the proposed class members from irreparable harm and to preserve their rights.

## II.      RESPONSE TO EVIDENTIARY OBJECTIONS

Defendants' objections should be overruled. First, hearsay evidence is permissible in a motion for preliminary relief when it "serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). Second, Defendants object to 16 declarations—including an authenticating declaration—but largely fail to identify the specific testimony to which they object. Opp. [1] 3-4; *see Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (overruling evidentiary objections "to the[] documents in their entirety based on the argument that they 'contain' hearsay").

In any event, Defendants' objections fail on the merits. First, each challenged declaration is relevant because it shows the existence of the Re-Detention Policy "is slightly more probable than" without that evidence. 1 McCormick On Evid. § 185.2 (9th ed.); *see* Fed. R. Evid. 401 (evidence is relevant if it is probative and material). Second, the foundation and speculation objections to the immigration attorneys' declarations—each reasonably based on knowledge gained through years of representing clients in immigration proceedings—are meritless. *See* 3 Federal Evidence § 6:6 (4th ed.) (a lay witness's "position" or "responsibilities" may provide a valid basis for their personal knowledge). Finally, hearsay "qualifies as competent evidence if it has a degree of reliability and trustworthiness and is of a type that reasonable persons would rely upon," Overview, Hearsay Handbook 4th § 2:1, such as knowledge obtained in an attorney-client relationship. As for the noncitizen declarations, much of the hearsay from judges, ICE, or others is offered not to prove the truth of the matters asserted, but to aver the statements were made and explain their effect on the listener. *See United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).

---

[1] "Opp." refers to Respondents' Opposition to Motion to Stay Effective Date of Agency Action or Preserve Status or Rights (ECF 67).

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852

### III.    ARGUMENT

#### A.    Plaintiffs have Article III standing and their claims are not moot.

Defendants' standing objections are meritless. To start, Ms. Garro Pinchi indisputably has standing: When she filed this action, she had been re-detained pursuant to the challenged Re-Detention Policy—and she still would be in detention if not for this Court's order releasing her from custody absent a pre-deprivation hearing. Garro-Pinchi Decl. (ECF 48-2) ¶¶ 13-23; ECF 33 at 1-3; *see, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (standing assessed at time complaint is filed); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (same).

Ms. Garro Pinchi's standing is sufficient to establish this Court's jurisdiction. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). But the other named plaintiffs have likewise established Article III standing to seek injunctive relief. Far from asserting a "speculative, attenuated risk" of re-detention, Opp. 8, Ms. Galo Santos and Mr. Teletor Sente have demonstrated that they remain subject to the imminent risk of being arbitrarily re-arrested and re-detained at their upcoming immigration hearings and ICE check-ins—just as hundreds of others in similarly situated circumstances have been in recent months. Teletor Sente Decl. (ECF 48-4) ¶¶ 11-15; Galo Santos Decl. (ECF 48-3) ¶¶ 14-15; *see generally* Stay Mot.[2] 4-6. Tellingly, Defendants do not disclaim plans to re-detain Ms. Galo Santos and Mr. Teletor Sente, which highlights the imminent threat that Plaintiffs and proposed class members face.

Finally, this Court's preliminary injunction ordering Ms. Garro Pinchi's release does not moot this class action. The Court's preliminary injunction is by definition impermanent, and it does not fully resolve Plaintiffs' claims and requested relief. *See Pablo Sequen v. Albarran*, 2025 WL 2935630, at *4 (N.D. Cal. Oct. 15, 2025) (rejecting similar mootness argument because preliminary injunction neither "provide[d] all the relief requested by [the plaintiff]", nor "fully adjudicate[d] [her] claims"). Moreover, "there is no question" Ms. Galo Santos's and Mr. Teletor Sente's "claims present a live case or controversy within the scope of this Court's Article III

---

[2] "Stay Mot." refers to Notice of Motion and Motion to Stay Effective Date of Agency Action or Preserve Status or Rights (ECF 48).

3368852

jurisdiction." *Id.* And the class claims are not moot because they are inherently transitory and capable of repetition, yet evading review. Class Cert. Reply[3] 13–14; *see also, e.g., United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011). Plaintiffs' claims are therefore justiciable.

### B.    The INA does not deprive this Court of jurisdiction.

This Court has jurisdiction to grant Plaintiffs the relief they seek. None of the INA provisions Defendants cite command otherwise.

First, neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) applies here. Section 1252(b)(9), which channels judicial review of removal orders into a single petition for review to the court of appeals, is a "targeted" and "narrow" provision that "is certainly not a bar where, as here, the parties are not challenging any removal proceedings." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*"). It does not apply to claims "challenging the legality of detention," like this one. *Gonzalez v. ICE*, 975 F.3d 788, 810 (9th Cir. 2020). And "[§] 1252(g) is similarly narrow"; it covers only challenges to three discretionary actions not at issue here: the decision to "commence proceedings," "adjudicate cases," or "execute removal orders," not "all claims arising from deportation proceedings." *Regents*, 591 U.S. at 19. The statute preserves jurisdiction over "purely legal questions … even if the answer to that legal question forms the backdrop against which the Attorney General will later exercise discretionary authority." *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (emphasis added). Courts also retain jurisdiction over "general collateral challenges to unconstitutional practices and policies," like this suit. *Id.* at 998.

Defendants argue that the INA bars Plaintiffs' claims because detention "arises from" unreviewable actions. *See* MTD[4] at 7-9. But the Supreme Court has squarely foreclosed this broad reading, holding that "[§] 1252(g) does not sweep in any claim that can technically be said to arise from the three listed actions," and applied the same analysis to § 1252(b)(9). *Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018) (emphasis added) (holding that "interpreting 'arising

---

[3] Plaintiffs' Reply in Support of Motion for Provisional Class Certification is filed concurrently herewith.

[4] "MTD" refers to Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint and Amended Petition (ECF 66).

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852

from' [in § 1252(b)(9)] in th[e] extreme way [the government proposes] … [would] lead[] to results that no sensible person would have intended").

Defendants' cases do not help them. In *Jennings*, (MTD at 7), the Court explicitly held that § 1252(b)(9) did not bar a challenge to detention during removal proceedings. 583 U.S. 281, 292-95; *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (detention challenges are "collateral to…the removal process" and outside scope of § 1252(b)(9)). The Supreme Court's decision in *AADC*, (MTD at 7), does not even mention detention, let alone apply § 1252(g) to a detention claim. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). *Sissoko v. Rocha*, (MTD at 8), embraces the expansive reading of "arising from" that the Supreme Court later rejected in *Jennings*, and by its terms applies § 1252(g) only to "the[e] limited context" of a *Bivens* claim for false arrest. *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007). Defendants' out-of-circuit cases are also inapposite; unlike this case, they concern detention at the commencement of proceedings or for the purpose of executing a removal order. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (detention at commencement of proceedings); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020) (detention to execute removal order). Indeed, courts in this circuit repeatedly have held that neither § 1252(b)(9) nor § 1252(g) bars challenges to re-detention pending removal proceedings. *See, e.g., Faizyan v. Casey*, 2025 WL 3208844, at *2–3 (S.D. Cal. Nov. 17, 2025); *Rodriguez v. Kaiser*, 2025 WL 2855193, at *3–4 (E.D. Cal. Oct. 8, 2025); *Mosqueda v. Noem*, 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Ortega v. Kaiser*, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).

Second, 8 U.S.C. § 1252(e)(3) does not require Plaintiffs to file their claims in the District of Columbia. Plaintiffs do not challenge the implementation of any provision of 8 U.S.C. § 1225(b). *See* Class Cert. Reply 11. And Plaintiffs certainly do not challenge the expedited removal process set forth in § 1225(b)(1), which is the only statute § 1252(e) covers. *Id.* Third, Defendants mention 8 U.S.C. § 1252(f)(1) only in their introduction and thus waive the issue. *See Martinez-Serrano v. INS.*, 94 F.3d 1256, 1259 (9th Cir. 1996). In any event, § 1252(f)(1), which bars certain classwide injunctions, has no bearing here, where Plaintiffs do not seek classwide injunctive relief. *See* Class Cert. Reply 7–8.

3368852

### C.    Plaintiffs have met their burden to show likelihood of success on the merits.

### 1.    The Re-Detention Policy is reviewable under the APA.

#### a.    The Re-Detention Policy is "final agency action."

Plaintiffs' APA claims target a single agency action: Defendants' policy of re-arresting and re-detaining previously released noncitizens without any material change in individual circumstances rendering them a flight risk or danger to the community. Defendants do not dispute that, for the last 40 years, DHS followed a policy of re-detaining noncitizens only after such a material change in circumstances. *See, e.g., Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); Meyer Decl. (ECF 48-1), Ex. A at 1 (explaining that, pursuant to *Matter of Sugay*, DHS "only re-arrests" a noncitizen "after a material change in circumstances").

Nor do Defendants dispute that DHS now re-detains and seeks to re-detain proposed class members without any consideration of flight risk or danger. Defendants have repeatedly conceded on the record that habeas petitioners challenging their re-detention under this policy were re-detained without any finding of materially changed circumstances. *See* Weiner Decl. (ECF 48-5) ¶¶ 18-19; Meyer Decl. (ECF 48-1), Ex. C at 11:7-13; *Maklad v. Murray*, 2025 WL 2299376, at *3 (E.D. Cal. Aug. 8, 2025). ("[T]he government conceded that there were no changes in circumstances since the original determination that Ms. Maklad does not pose a flight risk or a danger to the community."). These facts, borne out over six months of documented and consistent agency action, establish that the new Re-Detention Policy is "final agency action."

Defendants do not meaningfully contest that Plaintiffs meet the APA's standard. Opp. 11 (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) without elaboration). For good reason: The policy is neither tentative nor interlocutory, and it imposes severe legal consequences on a vast set of noncitizens. Stay Mot. 8-11. Instead, hiding behind the fact that the Re-Detention Policy is neither written nor formally promulgated, they seek to evade judicial review altogether. This Court should reject that sleight of hand. Agency action need not be formally issued or written down to be "final." *See, e.g., Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018) ("[N]umerous courts have found that a plaintiff can satisfy the finality requirement without offering evidence of a formal or official statement regarding the agency's position." (collecting

6

3368852

cases)); *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018) ("Despite Defendants' assertions to the contrary, agency action need not be in writing to be judicially reviewable as a final action.")); *see also Ctr. for Taxpayer Rights, et al. v. Internal Revenue Serv.*, 2025 WL 3251044, at *17-18 (D.D.C. Nov. 21, 2025) (finding IRS's unwritten policy of sharing private data with ICE to be "final agency action" (citation omitted)). "A contrary rule would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing." *Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1206-07 (S.D. Cal. 2019).

Here, although unwritten, DHS's dramatic shift in practice, the agency's admissions on the record, and the testimony of affected individuals and practitioners prove that around May 2025, Defendants implemented a policy subjecting proposed class members to re-detention without any change in circumstances related to flight risk or danger. Stay Mot. 8-11. Such evidence suffices to show the existence of an unwritten yet *final* policy. *See, e.g., Al Otro Lado*, 394 F. Supp. 3d at 1208 ("[E]xtensive allegations of alleged turnbacks of asylum seekers by CBP officers at POEs along U.S.-Mexico border based on assertions of lack of capacity [] plausibly point to the existence of an unwritten policy.").

Rather than grapple with this evidence, Defendants mischaracterize the Re-Detention Policy as an unreviewable "aggregation of individual enforcement actions and resource judgments[.]" Opp. 11. Yet Defendants have made clear that the agency is not in fact making any individualized enforcement decisions. Instead, they are applying a single across-the-board policy to re-detain proposed class members absent any consideration of their flight risk or danger. Where the evidence shows not a "constellation of disparate but equally suspect practices, [] but instead reflects an agency-wide practice or custom from which legal consequences will flow," then APA review is available. *Kidd v. Mayorkas*, 2021 WL 1612087, at *8 (C.D. Cal. Apr. 26, 2021).

The Re-Detention Policy is not like the "programmatic" agency actions the Supreme Court found unreviewable in *Lujan* and *Norton*. Opp. 12. In those cases, the plaintiffs attempted to package a slew of different Bureau of Land Management ("BLM") policies and practices into a single APA claim. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (plaintiff stitched together various BLM practices, ranging from "failure to revise land use plans" to "failure to

7

3368852

provide required public notice of decisions," as a single alleged agency action); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) (plaintiff claimed that various "[g]eneral deficiencies in compliance" with a broad statutory mandate constituted a single failure to act by the BLM). Here, Plaintiffs challenge a single, cohesive Re-Detention Policy, which—in a reversal from 40 years of the prior policy—authorizes the re-detention of noncitizens without a material change in their circumstances with respect to flight risk or danger. And Plaintiffs cite the onslaught of re-detentions without changed circumstances, not to challenge any particular individual's re-detention, but as examples of "concrete action[s] applying the [policy] to the claimant[s'] situation in a fashion that harms or threatens to harm [them]." *Lujan*, 497 U.S. at 891. Courts regularly distinguish this kind of claim from the claims rejected in *Lujan* and *Norton*. *See Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 3931890, at *9 (S.D. Cal. Sept. 2, 2021), *aff'd in relevant part* 138 F.4th 1102 (9th Cir. 2025) (finding "the record does not contain a grab bag of miscellaneous CBP practices which have been merged under an amorphous and broad programmatic umbrella," in contrast to *Lujan*); *Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 902-03 (N.D. Ill. 2020) ("Because Plaintiffs challenge the adoption of an alleged policy that allows Defendants to violate a specific statutory provision, as well as specific applications of that policy, their APA claim is . . . distinguishable from . . . *Lujan*[.]"); *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018) (distinguishing claims "that many people were injured in similar ways by the same type of agency action" from the claims rejected in *Lujan* and *Norton*).

**b.    The Re-Detention Policy is not the type of agency decision committed to agency discretion by law.**

Defendants do not cite a single decision rejecting APA review of an immigration arrest or detention policy under 5 U.S.C. § 701(a)(2). Courts regularly subject policies on immigration enforcement discretion to APA review. *See, e.g., Biden v. Texas*, 597 U.S. 785, 798–807 (2022); *Regents*, 591 U.S. at 17–19; *Al Otro Lado*, 394 F. Supp. 3d at 1210-11. Defendants' assertion that there is no "meaningful standard" against which to review the Re-Detention Policy also fails; the government's practice dating back to *Matter of Sugay* constraining its power to re-detain except in the case of changed circumstances provides the "standard to apply." *See California v. Ross*,

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852

362 F. Supp. 3d 727, 745 (N.D. Cal. 2018) ("In searching for a meaningful standard. . .[c]ourts may consider. . .other statutes and regulations, established agency policies, or judicial decisions." (internal quotation omitted)). Moreover, to the extent § 1225 is at issue (as Defendants claim), this Court can also look to the statute itself and agency practice applying § 1225 for a meaningful standard. Finally, Plaintiffs bring both "legal and constitutional" challenges to Defendants' Re-detention Policy, which courts under § 701(a)(2) are "not precluded from reviewing" regardless of the agency's discretion. *See Bonilla v. Lynch*, 840 F.3d 575, 587 (9th Cir. 2016).[5]

### c. The availability of habeas relief or claims for damages does not preclude judicial review of the Re-Detention Policy.

Finally, Defendants claim that Plaintiffs "have another remedy available" in habeas or damages, Opp. 13, but the availability of other general remedies does not preclude judicial review under the APA. *See Bowen v. Massachusetts*, 487 U.S. 879, 904–905 (1988). "Congress intended by that provision simply to avoid duplicating previously established special statutory procedures for review of agency actions." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 185 (D.D.C. 2015). But Congress has "never manifested an intent to require those challenging an unlawful, nationwide detention policy to seek relief through habeas rather than the APA." *Id.* at 186.

### 2. The Re-Detention policy violates the APA.

### a. The Re-Detention Policy is arbitrary and capricious.

The Re-Detention Policy is arbitrary and capricious for at least three independent reasons: Defendants (1) provided no reasoned explanation for their radical departure from their prior practice, (2) failed to consider the reliance interests in their former policy, and (3) failed to consider proposed class members' liberty interests under the Fifth Amendment. Stay Mot. 12-18.

Notably, Defendants offer no evidence, or even argument, that they provided a reasoned analysis, assessed reliance interests, or considered liberty interests when DHS adopted the Re-Detention Policy, essentially conceding these errors. They argue instead that there is no final agency action, and thus it could not have been arbitrary and capricious. For the reasons stated

---

[5] Contrary to Defendants' suggestion, the exception in *Heckler v. Chaney* is inapplicable. *See* Opp. 9 (citing 470 U.S. 821, 831-32 (1985)). As explained, Plaintiffs challenge an overarching enforcement policy, not any one decision *not* to prosecute.

9

3368852

above, the Re-Detention Policy is final agency action. *See supra* III.C.1.a.

Defendants also appear to argue that the APA's reasoned decision-making requirement can be avoided if an agency is silent on the reason for acting, thus avoiding a "record disclosing the[se] grounds." Opp. 13. Unsurprisingly, Defendants cite no case for their perverse logic. Two of the three cases they cite support the opposite conclusion—that administrative silence following a change in position is per se arbitrary and capricious. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books."); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change . . .").[6]

Contrary to Defendants' claim, courts regularly apply the change-in-position doctrine even where the agency created little to no record of its decision. *See, e.g., Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 28 (D.D.C. 2019) (deeming agency action arbitrary and capricious because "there [was] no indication in the record that, prior to issuing the denial letters [], the Department acknowledged that it changed its practices" and "to this day, the Department has not acknowledged that it changed its practices in this regard"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 927–28 (D.C. Cir. 2017) ("The Service's failure even to acknowledge its past practice and formal policies…let alone to explain its reversal of course…was arbitrary and capricious."). Defendants' argument would create absurd results, where silence offers more protection from APA review than providing a reasoned explanation.

Defendants' arguments that the policy is not arbitrary and capricious for failing to consider the liberty interests of previously released noncitizens—because non-citizens have no liberty interest in "immunity from detention" or a "constitutional entitlement to continued release"—are similarly unavailing. Opp. 20. A prior release of a noncitizen does not guarantee future liberty. But it does create an interest in that liberty that cannot be revoked absent a finding that the individual violated their conditions for release. *Pinchi v. Noem*, 792 F. Supp. 3d 1025,

---

[6] Defendants' third case, *SEC v. Chenery Corp.*, predates the APA and simply holds that an agency's action cannot be judged on explanations supplied after the fact. 318 U.S. 80, 87 (1943).

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852

1032 (N.D. Cal. 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Numerous courts, including this one, have recognized as much since DHS implemented its Re-Detention Policy. *See, e.g., Pinchi*, 792 F. Supp. 3d at 1032; *Singh v. Andrews*, 2025 WL 1918679, at *6 (E.D. Cal. July 11, 2025). And because Defendants failed to consider proposed class members' liberty interests before adopting the Re-Detention Policy, they have failed to "consider an important aspect of the problem" in violation of the APA. *State Farm*, 463 U.S. at 43.

Finally, Defendants' point that immigration detention during the removal process is constitutionally permissible under *Demore* and *Jennings* is similarly beside the point. Opp. 20. Plaintiffs do not allege any detention is unconstitutional with respect to their arbitrary and capricious claim; only that Defendants failed to consider Plaintiffs' liberty interests when they adopted the Re-Detention Policy.

At bottom, Defendants tried to tacitly abandon their former policy, without regard for the immense reliance interests or the liberty interests that individuals like the named Plaintiffs have in the promise that they would not be re-detained unless they violated their conditions of release, or became a flight risk or danger. Under the APA, that is unlawful.

### b.    Defendants' post hoc rationale that Plaintiffs' re-detention is governed by § 1225(b)(2) is irrelevant and wrong.

Defendants' new interpretation of § 1225(b)(2) does not provide any cover. It was adopted after the implementation of the Re-Detention Policy, *see Regents*, 591 U.S. at 23-24 (rejecting post hoc explanations), and is wrong on the law. This Court has already held that § 1225(b)(2)—the mandatory detention statute that Defendants claim applies here—does not apply to noncitizens like the Plaintiffs and proposed class members. *See Pablo Sequen v. Albarran*, --- F. Supp. 3d ---, 2025 WL 2935630, at *7-10 (N.D. Cal. Oct. 15, 2025). Instead, this Court held that individuals like the Plaintiffs, who at the time of their most recent apprehension and detention were residing in the country after having previously entered without inspection, are subject to detention under § 1226(a). *Id.* at *8 (citing, inter alia, *Jennings*, 583 U.S. at 289 (contrasting "aliens seeking admission into the country" who are subject to § 1225(b), with "aliens already in the country pending the outcome of removal proceedings" who are subject to § 1226(a)). This

3368852

decision is in line with virtually all courts to consider this issue. *See Demirel v. Fed. Det. Ctr. Pa.*, No. 25-5488 (E.D. Pa. Nov. 18, 2025), ECF 11-1 (listing the 282 district court decisions that have held that § 1226, not § 1225, governs the detention of individuals like the Plaintiffs, as compared to the 6 decisions that have adopted Defendants' position).

Defendants argue that this reading of the statute would render § 1225(b)(2) "null and void." Opp. 17-18. Not so. Section 1225(b)(2) would continue to apply to applicants for admission who are arriving at the border and "seeking admission" and who are inadmissible on grounds other than the two inadmissibility grounds that trigger expedited removal proceedings under § 1225(b)(1). Indeed, it is Defendants' reading of the statute that would render a different detention statute, § 1226(c), superfluous. In § 1226(c), Congress created an exception from § 1226(a)'s authorization of discretionary detention, requiring the mandatory detention of a subset of individuals who are inadmissible or deportable on certain criminal or national security grounds. *See Jennings*, 583 U.S. at 289 (describing § 1226(a) as the "default rule" providing for discretionary detention of noncitizens inside the country, and § 1226(c) as a limited exception). But were § 1225(b)(2) read to impose mandatory detention for all inadmissible noncitizens, as the government argues, the provisions Congress enacted in § 1226(c) to require the mandatory detention of certain inadmissible noncitizens pending removal proceedings would have been wholly unnecessary. Likewise, Congress' recent amendments to § 1226(c) in the Laken Riley Act would also be superfluous, *see* Mot. 13-14—something Defendants do not meaningfully address.

Nonetheless, Defendants insist that the plain language of § 1225(b)(2)(A) unambiguously requires the detention of Plaintiffs and the proposed class because all "applicants for admission" are "seeking admission" and because "seeking" denotes an ongoing status. Opp. 14-16. But, as this Court explained in *Pablo Sequen*, the present-tense term "seeking admission" does not apply to inadmissible noncitizens like the Plaintiffs who are "simply residing in the country." 2025 WL 2935630, at *8. Rather, it applies only to those noncitizens who are "arriving and seeking admission." *Id.* (citation omitted) (emphasis in original).

Defendants try to find support for their reading of the statute in the changes Congress sought to make in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

12

3368852

("IIRIRA"). Opp. 17. But they fail here as well. Before IIRIRA, noncitizens in the interior of the United States were subject to discretionary detention under prior 8 U.S.C. § 1252(a)(1), regardless of whether they had been formally admitted. In enacting IIRIRA, Congress expressly stated that the new § 1226(a) merely "restates" that prior discretionary framework. H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996). Had Congress intended a dramatic expansion of mandatory detention for millions of inadmissible noncitizens residing inside the country, it would have said so.

Defendants also fail in their attempt to minimize decades of Executive practice under which noncitizens like the Plaintiffs were consistently subject to discretionary detention under § 1226(a). Opp. 19. In 1997, just months after IIRIRA's passage, the Executive explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That contemporaneous interpretation, mirroring § 1226(a)(2), "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (similar).

Finally, Defendants' insistence that their contrary interpretation of the statute is compelled by the plain language of the statute, Opp. 14-16, is undermined by the fact that it has taken the government close to 30 years to claim that this is what the statute means. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power . . . [the courts] typically greet its announcement with a measure of skepticism."). Defendants' position that Plaintiffs must be detained under § 1225(b)(2)(A) is undermined by the fact that each of the Plaintiffs here was initially released by the government under § 1226(a). Defendants choose to ignore this fact, even though it is clear on the face of their own records. *See, e.g.*, Meyer Decl. (ECF 48-1), Ex B at 1.

### c.    The Re-Detention Policy violates the Fourth Amendment.

Plaintiffs are likely to succeed on their APA claims on the independent grounds that the Re-Detention Policy violates the Fourth Amendment's proscription against unreasonable seizures

13

3368852

and is therefore contrary to constitutional rights under 5 U.S.C. § 706(2)(B). Defendants do not contest, and thus essentially concede, Plaintiffs' Fourth Amendment claims. Mot. 18-19. Defendants instead fall back on their erroneous contention that § 1225(b)(2) mandates custody for individual "applicants for admission," suggesting somehow—without any explanation or legal citation—that this excuses the Fourth Amendment violations committed under the Re-Detention Policy. Opp. at 21. But the application and enforcement of all statutes, even mandatory detention statutes, are "subject to important constitutional limitations." *Zadvydas v. Davis,* 533 U.S. 678, 695 (2001) (curbing indefinite detention under 8 U.S.C. § 1231(a)(6) to conform to due process); *see also Munoz Materano v. Arteta*, 2025 WL 2630826, at *17 (S.D.N.Y. Sept. 12, 2025) (re-detention under § 1225(b) violated the Fourth Amendment).

### d.      The Re-Detention policy exceeds DHS's statutory authority

Defendants also fail to acknowledge, and therefore concede, that re-detention under § 1226 absent a determination regarding changed circumstances exceeds DHS's legal authority in violation of the APA. *See* Stay Mot. 19-21. Nor do they contest that any application of § 1226 to re-detain proposed class members in the future must be construed to avoid constitutional concerns. *Id.* Again, their only argument is that § 1225—and not § 1226—applies to the detention of proposed class members. As explained, that argument is without merit. *See supra* III.C.2.b.

### D.      The remaining equitable factors weigh in Plaintiffs' favor.

The Plaintiffs and proposed class have suffered and will continue to suffer irreparable harm absent a stay of the Re-Detention Policy. *See* Stay Mot. 21-22. These harms are not speculative. Defendants admit they will continue re-detaining proposed class members in violation of the law and Fourth Amendment rights. Because Defendants now purportedly "operate under the impression that they have authority to detain individuals" solely on the basis of § 1225(b)(2), it is "reasonable . . . to conclude" that the proposed class members will "again . . . be subjected to unlawful detention." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2021).[7]

---

[7] The cases that Defendants cite do not help them. *See* Opp. 21-22. None, including *O'Shea v. Littleton*, deal with the imminent threat of immigration detention on unlawful and unconstitutional grounds. In *O'Shea*, future harm depended on *plaintiffs'* potential violation of the law, which was entirely speculative. 414 U.S. 488, 497-98 (1974). By contrast, Plaintiffs and the proposed class are at risk of re-detention at any time under the Re-Detention Policy.

14

3368852

Defendants have not alleged any plan to scale back their unprecedented re-detentions. News reports suggest that they only continue to escalate.[8]

Defendants' argument that because this Court previously granted Ms. Garro Pinchi preliminary (but not permanent) relief, neither she nor the other Plaintiffs or proposed class members can demonstrate irreparable harm, makes no sense. Accepting Defendants' argument would punish Plaintiffs for obtaining preliminary relief for the irreparable harm suffered. *See Maher v. Roe*, 432 U.S. 464, 469 n.4 (1977) (where a regulatory "revision was made only for the purpose of interim compliance with the District Court's judgment and order" such "revision of the regulation does not render the case moot").

Additionally, for the reasons in Plaintiffs' motion, the balance of equities and public interest merge in this case, and weigh in Plaintiffs' favor. Stay Mot. 23-24. Defendants' invocation of a general interest in enforcing the country's immigration laws does not change the analysis. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059-60 (9th Cir. 2020) (holding that the Executive's inability to "effectuat[e] an Act of Congress" did not constitute irreparable injury). A stay would actually serve Defendants' stated interests by maintaining orderly immigration proceedings. *See* Levine Decl. (ECF 48-6) (former IJ describing negative impact of policy).

Defendants claim one hardship: that they "will suffer prejudice if the Court stays the implementation of the plain statutory language" of § 1225(b)(2). Opp. 23. But § 1225(b)(2) does not apply to Plaintiffs and the proposed class, and re-detention based on this post hoc justification is unlawful. "There is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Doe v. Trump*, 784 F. Supp. 3d 1297, 1313 (N.D. Cal. 2025).

## IV.    CONCLUSION

For these reasons, Plaintiffs request that the Court stay the Re-Detention Policy.

---

[8] *See, e.g.,* Hannah Workman, *Advocates decry unexpected weekend ICE check-ins that led to detentions in Stockton*, Recorder.net (Oct. 27, 2025), https://www.recordnet.com/story/news/politics/government/2025/10/27/dozens-protest-ice-detentions-at-stockton-facility-after-weekend-check-ins/86919450007/; Will Craft, Andrew Witherspoon, and Jose Olivares, *Tens of thousands of people were detained and deported during US government shutdown*, The Guardian (Nov. 21, 2025), https://www.theguardian.com/us-news/2025/nov/21/deportations-us-government-shutdown-ice-data.

15

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852

Dated: November 24, 2025                      KEKER, VAN NEST & PETERS LLP


                                     By:   /s/ Erin E. Meyer
                                           ERIN E. MEYER
                                           JULIA L. ALLEN
                                           CLAIRE C. BONELLI
                                           ELLEN WATLINGTON
                                           JACQUIE P. ANDREANO
                                           KAYLA CROWELL

                                           Attorneys for Plaintiffs-Petitioners


Dated: November 24, 2025                      AMERICAN CIVIL LIBERTIES UNION
                                              FOUNDATION OF NORTHERN CALIFORNIA


                                           /s/ Bree Bernwanger
                                           BREE BERNWANGER
                                           MICHELLE (MINJU) Y. CHO
                                           NEIL K. SAWHNEY
                                           LAUREN M. DAVIS

                                           Attorneys for Plaintiffs-Petitioners


Dated: November 24, 2025                      CENTRO LEGAL DE LA RAZA


                                           /s/ Abby Sullivan Engen
                                           ABBY SULLIVAN ENGEN
                                           JESSE NEWMARK
                                           NIKOLAS DE BREMAEKER

                                           Attorneys for Plaintiffs-Petitioners


Dated: November 24, 2025                      AMERICAN CIVIL LIBERTIES UNION
                                              FOUNDATION


                                           /s/ Judy Rabinovitz
                                           JUDY RABINOVITZ
                                           OSCAR SARABIA ROMAN

                                           Attorneys for Plaintiffs-Petitioners

16

REPLY IN SUPPORT OF MOTION TO STAY EFFECTIVE DATE OF AGENCY ACTION OR PRESERVE
STATUS AND RIGHTS
Case No. 5:25-cv-5632-PCP

3368852