ERIN E. MEYER - # 274244
emeyer@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
CLAIRE C. BONELLI - #317735
cbonelli@keker.com
ELLEN WATLINGTON - # 336422
ewatlington@keker.com
JACQUIE P. ANDREANO - # 338354
jandreano@keker.com
KAYLA CROWELL - # 349061
kcrowell@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400

Attorneys for Plaintiffs-Petitioners

*[ADDITIONAL COUNSEL ON NEXT PAGE]*

BREE BERNWANGER - # 331731
bbernwanger@aclunc.org
MICHELLE (MINJU) Y. CHO - # 321939
mcho@aclunc.org
NEIL K. SAWHNEY - # 300130
nsawhney@aclunc.org
LAUREN M. DAVIS - # 357292
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

ABBY SULLIVAN ENGEN - # 270698
asullivanengen@centrolegal.org
JESSE NEWMARK - # 247488
jessenewmark@centrolegal.org
NIKOLAS DE BREMAEKER (admitted pro hac vice)
ndebremaeker@centrolegal.org
CENTRO LEGAL DE LA RAZA
3400 E. 12th Street
Oakland, CA 94601
Telephone: (510) 437-1863

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FRESCIA GARRO PINCHI, JUANY GALO SANTOS, and JOSE TELETOR SENTE, on behalf of themselves and others similarly situated,

Plaintiffs-Petitioners,

v.

SERGIO ALBARRAN, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; KRISTI NOEM, Secretary of the United States Department of Homeland Security; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement, acting in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Defendants-Respondents.

Case No. 5:25-cv-5632-PCP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: January 22, 2026
Time: 10:00 a.m.
Dept: Courtroom 8 - 4th Floor
Judge: Hon. P. Casey Pitts

Date Filed: July 3, 2025

JUDY RABINOVITZ (admitted pro hac vice)
jrabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660

OSCAR SARABIA ROMAN - # 341385
osarabia@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Ste 7th Floor
San Francisco, CA 94104
Telephone: (916) 813-7891

Attorneys for Plaintiffs-Petitioners

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

A. Defendants' Re-Detention Policy ..... 1

B. Plaintiffs ..... 3

C. Claims for Relief ..... 4

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Plaintiffs' claims are justiciable under Article III ..... 5

B. The INA does not bar this Court's review. ..... 6

1. 8 U.S.C. § 1252(b)(9) ..... 6

2. 8 U.S.C. § 1252(g) ..... 7

3. 8 U.S.C. § 1252(e)(3) ..... 8

C. Defendants' incorrect re-interpretation of the detention statutes does not require dismissal of any of Plaintiffs' claims. ..... 10

D. Plaintiffs adequately allege that the Re-Detention Policy is final agency action, and that it violates the APA because it is arbitrary and capricious. ..... 14

1. Plaintiffs adequately allege the Re-Detention Policy is "final agency action." ..... 14

2. Plaintiffs adequately allege the Re-Detention Policy is arbitrary and capricious. ..... 17

E. Plaintiffs adequately allege violations of their constitutional rights ..... 19

1. Individual Plaintiffs adequately allege their re-detention violates due process. ..... 20

2. Plaintiffs adequately allege their detention would violate the Fourth Amendment. ..... 23

F. Plaintiffs' habeas claims are proper. ..... 24

V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*389 Orange St. Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ....................20

*Abramski v. United States*,
573 U.S. 169 (2014) (Scalia, J., dissenting)....................13

*Al Otro Lado, Inc. v. Mayorkas*,
No. 17-cv-02366-BAS-KSC, 2021 WL 3931890 (S.D. Cal. Sept. 2, 2021), *aff'd in relevant part* 138 F.4th 1102 (9th Cir. 2025)....................16

*Al Otro Lado, Inc. v. McAleenan*,
394 F. Supp. 3d 1168 (S.D. Cal. 2019)....................14, 15

*Alvarez v. ICE*,
818 F.3d 1194 (11th Cir. 2016) ....................8

*Amadei v. Nielsen*,
348 F. Supp. 3d 145 (E.D.N.Y. 2018) ....................14

*Aracely R. v. Nielsen*,
319 F. Supp. 3d 110 (D.D.C. 2018)....................14

*Arizona v. U.S.*,
567 U.S. 387 (2012)....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Bankamerica Corp. v. United States*,
462 U.S. 122 (1983)....................13

*Barco Mercado v. Francis*,
No. 25-CV-6582 (LAK), --- F. Supp. 3d ---, 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025) ....................10

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ....................5

*Bautista Pico v. Noem*,
No. 25-cv-08002-JST, 2025 WL 3295382 (N.D. Cal. Nov. 26, 2025)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Bennet v. Spear*,
520 U.S. 154 (1997)....................................................................................................14

*Bermeo Sicha v. Bernal*,
2025 WL 2494530 (D. Me. Aug. 29, 2025)..............................................................2

*Bonilla v. Lynch*,
840 F.3d 575 (9th Cir. 2016) ..............................................................................17

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*,
524 F. Supp. 3d 919 (N.D. Cal. 2021) ...................................................................18

*Chavez Rivera v. Albarran*,
No. 3:25-cv-10474-BLF, 2025 WL 3496778 (N.D. Cal. Dec. 5, 2025)..................................20

*Clark v. Smith*,
967 F.2d 1329 (9th Cir. 1992) ............................................................................17

*Ctr. for Taxpayer Rights, et al. v. Internal Revenue Serv.*,
No. 25-0457(CKK), 2025 WL 3251044 (D.D.C. Nov. 21, 2025) ...........................................14

*Demore v. Kim*,
538 U.S. 510 (2003).............................................................................................13, 22

*Dep't of Homeland Sec. v. Thuraissigiam*,
591 U.S. 103 (2020)...............................................................................................13

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020)........................................................................................ *passim*

*Doe v Albarran*,
No. 25-cv-08744-VC, 2025 WL 3141224 (N.D. Cal. Nov. 10, 2025) ....................................19

*Dos Santos v. Noem*,
2025 WL 2370988 (D. Mass. Aug. 14, 2025) ............................................................2

*East Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ...............................................................................9

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016)...............................................................................................17

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)...............................................................................................18

*Faizyan v. Casey*,
No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) ........................8

*Flaxman v. Ferguson*,
151 F.4th 1178 (9th Cir. 2025) ............................................................................6

*Gagnon v. Scarpelli*,
411 U.S. 778 (1973)....................20

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022)....................25

*Gonzalez v. I.C.E.*,
No. CV 31-04416 BRO, 2014 WL 12605369 (C.D. Cal., Oct. 24, 2014)....................5

*Gonzalez v. U.S. Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020)....................5, 7, 24

*Guerra v. Noem*,
No. 1:25-cv-1341, 2025 WL 3204289 (W.D. Mich. Nov. 17, 2025)....................8

*Guerrero Orellana v. Moniz*,
No. 25-cv-12664-PBS, 2025 WL 3033769 (D. Mass. Oct. 30, 2025)....................8

*Heckler v. Cheney*,
470 U.S. 821 (1985)....................17

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)....................21

*Home Depot U. S. A., Inc. v. Jackson*,
587 U.S. 435 (2019)....................9

*Ibarra-Perez v. United States*,
154 F.4th 989 (9th Cir. 2025)....................7

*Ingle v. Cir. City.*,
408 F.3d 592 (9th Cir. 2005)....................20

*J.A.M. v. Streeval*,
No. 4:25-cv-342 (CDL), 2025 WL 3050094 (M.D. Ga. Nov. 1, 2025)....................8

*J.A.M.C. v. Albarran*,
No. 25-cv-09649-WHO, 2025 WL 3268816 (N. D. Cal. Nov. 24, 2025)....................20

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016)....................7

*Jackson v. Indiana*,
406 U.S. 715 (1972)....................21

*Jennings v. Rodriguez*,
583 U.S. 281 (2018).................... *passim*

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)....................4

*Leiva Flores v. Albarran*,
No. 25-cv-09302-AMO, 2025 WL 3228306 (N.D. Cal. Nov. 19, 2025) ....22

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
989 F. Supp. 2d 981 (C.D. Cal. 2013), *aff'd*, 827 F.3d 1192 (9th Cir. 2016)....20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....5, 16

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)....16

*M.M.V. v. Garland*,
1 F.4th 1100 (D.C. Cir. 2021)....9

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....21

*Mendoza-Linares v. Garland*,
51 F.4th 1146 (9th Cir. 2022) ....9

*Morrissey v. Brewer*,
408 U.S. 471 (1972)....20

*Mosqueda v. Noem*,
No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) ....8

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....18

*Munoz Materano v. Arteta*,
No. 25 Civ. 6137 (ER), 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025) ....19

*Nat'l Urb. League v. Ross*,
489 F. Supp. 3d 939 (N.D. Cal. 2020), *order clarified*, 491 F. Supp. 3d 572 (N.D. Cal. 2020)....18

*Nava v. Dep't of Homeland Sec.*,
435 F. Supp. 3d 880 (N.D. Ill. 2020) ....16

*Nettles v. Grounds*,
830 F.3d 922 (9th Cir. 2016) (en banc) ....25

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)....16

*Orozco Acosta v. Albarran*,
No. 3:25-cv-09601, 2025 WL 3114454 (N.D. Cal. Nov. 6, 2025) ....20

*Ortega v. Bonnar*,
415 F. Supp. 3d 963 (N.D. Cal. 2019) ....................2

*Ortega v. Kaiser*,
No. 25-cv-05259-JST, 2025 WL 2243616 (N.D. Cal. Aug. 6, 2025)....................8

*Pablo Sequen v. Albarran*,
--- F. Supp. 3d ---, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025) .................... *passim*

*Pablo Sequen v. Albarran*,
No. 25-cv-06487-PCP, 2025 WL 3283283 (N.D. Cal. Nov. 25, 2025)....................6, 11

*Pablo Sequen v. Kaiser*,
No. 25-CV-06487-PCP, 2025 WL 3275602 (N.D. Cal. Nov. 24, 2025)....................24

*Paz Hernandez v. Wofford*,
No. 1:25-cv-00986-KES-CDB (HC), 2025 WL 2420390 (E.D. Cal. Aug. 21, 2025) ....................22

*Pinson v. Carvajal*,
69 F.4th 1059 (9th Cir. 2023) ....................25

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) ....................6

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ....................6

*Preiser v. Rodriguez*,
411 U.S. 475 (1973)....................25

*Ramirez Ovando v. Noem*,
No. 1:25-cv-03183-RBJ, 2025 WL 3293467 (D. Colo. Nov. 25, 2025) ....................15

*Ramirez v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 7 (D.D.C. 2018)....................16

*Reno v. American-Arab Anti-Discrimination Committee*,
525 U.S. 471 (1999)....................7

*Rodriguez v. Kaiser*,
No. 1:25-cv-0111- KES-SAB (HC), 2025 WL 2855193 (E.D. Cal. Oct. 8, 2025) ....................8

*Rojas v. Albarran*,
No. 25-cv-08172-PCP, 2025 WL 2772695 (N.D. Cal. Sept. 25, 2025) ....................20

*Ruiz v. Mukasey*,
552 F.3d 269 (2d Cir. 2009)....................7

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) ........ 25

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 4

*Sanchez v. Mayorkas*,
593 U.S. 409 (2021) ........ 11

*Saravia v. Sessions*,
280 F.Supp.3d 1168 (N.D. Cal. 2017) ........ 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ........ 12

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2007) ........ 7

*Matter of Sugay*,
I. & N. Dec. 637 (BIA 1981) ........ 14, 15

*Tazu v. Att'y Gen. U.S.*,
975 F.3d 292 (3d Cir. 2020) ........ 8

*Thakur v. Trump*,
787 F. Supp. 3d 955 (N.D. Cal. 2025) ........ 18

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ........ 5

*Torres v. Barr*,
976 F.3d 918 (9th Cir. 2020) ........ 13

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) ........ 6

*United States v. Brignoni-Ponce*,
422 U.S. 873 (1975) ........ 23

*United States v. Cisneros*,
2021 WL 5908407 (N.D. Cal. Dec. 14, 2021) ........ 2

*United States v. Gambino-Ruiz*,
91 F. 4th 981 (9th Cir. 2024) ........ 13

*United States v. Holmes*,
452 F.2d 249 (7th Cir. 1971) ........ 23

*Valencia Zapata v. Kaiser*,
2025 WL 2741654 (N.D. Cal. Sept. 26, 2025) ........ 20, 22

*Wilkinson v. Dotson*,
544 U.S. 74 (2005) ........ 25

*Young v. Harper*,
520 U.S. 143 (1997) ........ 20

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ........ 19, 21, 22, 23

**Federal Statutes**

5 U.S.C. § 701(a)(2) ........ 16

8 U.S.C. § 1101(a)(13) ........ 11

8 U.S.C. § 1225 ........ 12, 14, 15

8 U.S.C. § 1225(b) ........ *passim*

8 U.S.C. § 1225(e) ........ 8, 9

8 U.S.C. § 1226 ........ 11, 13, 15

8 U.S.C. § 1226(a) ........ *passim*

8 U.S.C. § 1226(c) ........ 11, 12, 13, 22

8 U.S.C. § 1229a ........ 3, 11

8 U.S.C. § 1229a(a)(1) ........ 11

8 U.S.C. § 1252 ........ *passim*

8 U.S.C. § 1252(a) ........ 9. 11, 12

8 U.S.C. § 1252(b) ........ 6, 7, 8

8 U.S.C. § 1252(e) ........ 8, 9

8 U.S.C. § 1252(f)(1) ........ 25

8 U.S.C. § 1252(g) ........ 7, 8

28 U.S.C. § 1331 ........ 4

28 U.S.C. § 2241 ........ 4

Administrative Procedure Act ........ *passim*

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ........ 12

Immigration and Nationality Act ........ *passim*

Laken Riley Act, Pub. L. 119–1, 139 Stat. 3 (2025) ........ 12

**Rules**

Fed. R. Civ. P. 8(a)(2) ........ 4

Fed. R. Civ. P. 12(b)(1) ........ 4

Fed. R. Civ. P. 12(b)(6) ........ 4

**Regulations**

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ........ 13

**Constitutional Provisions**

U.S. CONST. amend. IV ........ *passim*

U.S. CONST. amend. V ........ 4, 19, 23

**Other Authorities**

H.R. Rep. No. 104-469, pt. 1 (1996) ........ 12

H.R. Rep. No. 104-828 (1996) ........ 12

## I. INTRODUCTION

In May 2025, without providing notice or rationale, Defendants began a campaign of arbitrarily re-arresting and re-detaining noncitizens whom the government had already released pending removal proceedings. These noncitizens had trusted in the government's promise that, so long as they complied with their requirements of release, they would remain free while pursuing relief in their immigration cases. Relying on the government's word, they established lives in the United States—having and raising children, obtaining employment, and becoming integral members of their communities. Still, without any regard for its decades-long prior policy, the government created and began to carry out a new policy of re-arresting and re-detaining non-citizens who had been doing everything the government asked of them. In doing so, the government has upended the lives of those subject to its Re-Detention Policy, inflicting harms of both detention itself and widespread, and rational, fear of imminent detention.

This Court should deny Defendants' Motion to Dismiss ("MTD") (ECF 66). First, Plaintiffs indisputably have standing, and their claims are ripe and not moot. Second, nothing in the Immigration and Nationality Act ("INA") deprives this Court of jurisdiction to grant the relief that Plaintiffs seek. Third, Defendants' Re-Detention Policy constitutes final agency action and is arbitrary and capricious under the Administrative Procedure Act ("APA"). Fourth, Plaintiffs have adequately alleged due process and Fourth Amendment violations. Last, Plaintiffs' individual habeas claims are proper and fall within the traditional core of habeas relief.[1]

## II. BACKGROUND

### A. Defendants' Re-Detention Policy

For nearly half a century, immigration officials adhered to a policy of not re-detaining noncitizens who were previously released pending removal proceedings, absent an individualized determination that there has been a material change as to whether the individual posed a flight risk or a danger to the community. First Amended Complaint ("Am. Compl.") (ECF 38) ¶¶ 41-42.

[1] Plaintiffs acknowledge the Court has severed the individual habeas claims from the class action. *See* Order Granting Motion to Sever (ECF 84). However, Plaintiffs understand that they should respond to all of the arguments in Defendants' Motion to Dismiss, notwithstanding that the individual habeas claims are no longer pending in the class action.

In 1981, the Board of Immigration Appeals explained the government could not re-detain an individual absent such a change in circumstances. *Id.* ¶ 42. Federal officials have repeatedly reiterated that policy, *Id.* ¶ 43, and courts have repeatedly acknowledged DHS's prior practice. *See, e.g.*, *United States v. Cisneros*, 2021 WL 5908407, at *3-4 (N.D. Cal. Dec. 14, 2021); *Bermeo Sicha v. Bernal*, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025); *Dos Santos v. Noem*, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019).

Then, in May 2025, DHS abruptly abandoned its longstanding policy and began carrying out a new policy of arbitrarily re-arresting and re-detaining noncitizens without consideration of their individualized circumstances. Am. Compl. ¶ 48. In the subsequent months, Defendants arbitrarily re-detained dozens of noncitizens within the jurisdiction of the San Francisco ICE Field Office without explanation. *Id.* ¶ 51. For example, on July 3, 2025, Plaintiff Garro Pinchi was re-arrested by masked ICE agents waiting outside the immigration courtroom where she had just appeared for a hearing. Defendants, who had initially released Ms. Garro Pinchi soon after her entry into the country upon determining she was neither a flight risk or danger, re-detained her despite the fact that there had been no change in circumstances to justify altering their original determination. *Id.* ¶¶ 74-75. Instead, they re-detained her as part of their massive push to detain and deport as many noncitizens as possible, without regard to those noncitizens' constitutional or statutory rights. *Id.* ¶¶ 54-64. Without this Court's intervention, Plaintiff Garro Pinchi may well have remained detained.

Noncitizens, like Plaintiffs, who were released pending their removal proceedings, previously understood that so long as they complied with their requirements of release and avoided criminal activity, they could remain free of detention while litigating their right to remain in the United States. Am. Compl. ¶ 47. In reliance on this longstanding policy, noncitizens, including Plaintiffs, established lives in the United States: they sought work authorization and employment, signed leases, invested in their education, developed community ties, participated in religious life, and grew and took care of their families. *Id.*

Defendants' arbitrary change in policy has resulted in the arrest and detention of at least forty putative class members (at a minimum) and has resulted in many more being placed in imminent danger of re-arrest and re-detention. Am. Compl. ¶¶ 58, 65.

**B. Plaintiffs**

Plaintiffs Garro Pinchi, Teletor Sente, and Galo Santos have pending removal proceedings in immigration court and are subject to Defendants' Re-Detention Policy. They have complied with their conditions of release and built significant community ties in the United States.

Plaintiff Frescia Garro Pinchi is pursuing asylum based on her fear of persecution in Peru. Am. Compl. ¶¶ 14, 66. After she entered the United States without inspection in 2023, DHS released Ms. Garro Pinchi on her own recognizance and placed her into removal proceedings under 8 U.S.C. § 1229a. *Id.* ¶ 66. In doing so, agents determined she was not a danger or a flight risk. *Id*. She has fully complied with the conditions of her release and has no criminal history. *Id.* Ms. Garro Pinchi attended a master calendar hearing at the San Francisco Immigration Court on July 3, 2025. *Id.* ¶ 69. Pursuant to Defendants' Re-Detention Policy, ICE agents arrested Ms. Garro Pinchi after she exited the courtroom. *Id.* ¶ 71. Ms. Garro Pinchi was released following this Court's preliminary injunction requiring her release. *Id.* ¶ 73. Ms. Garro Pinchi remains at risk of arbitrary re-detention absent final court intervention. *Id.* ¶ 71.

Plaintiff Jose Teletor Sente is pursuing asylum based on his fear of violence in Guatemala. Am. Compl. ¶ 16. After entering the United States without inspection in 2019, Mr. Teletor Sente was placed in removal proceedings under 8 U.S.C. § 1229a and released on his own recognizance. *Id.* Mr. Teletor Sente has fully complied with the conditions of his release and has no criminal history. *Id.* Mr. Teletor Sente is subject to ICE and ISAP check-ins. *Id.* ¶ 80. Mr. Teletor Sente is at risk of being re-detained under Defendants' Re-Detention Policy, despite his compliance with his terms of release and his lack of criminal history. *Id.* ¶ 82.

Plaintiff Juany Galo Santos is pursuing asylum based on her fear of violence and persecution in Honduras. Am. Compl. ¶ 76. After entering the United States without inspection in December 2023, she was placed in removal proceedings under 8 U.S.C. § 1229a and released on her own recognizance. *Id.* Since her release, she has fully complied with the conditions of her

release and has no criminal history. *Id.* ¶ 77. Ms. Galo Santos has an upcoming ICE check-in on January 16, 2026 and a master calendar hearing on February 19, 2026. *Id*. Pursuant to Defendants' Re-Detention Policy, she risks being re-detained. *Id*.

### C. Claims for Relief

Plaintiffs raise seven claims for relief. Their First, Second, Third, and Fourth claims raise class-wide APA claims pursuant to 28 U.S.C. § 1331 and the APA. Am. Compl. ¶¶ 12, 112-31. Specifically, Plaintiffs allege on behalf of themselves and the proposed class that the Re-Detention Policy violates the APA because it is arbitrary and capricious, *id.* ¶¶ 112-118 (First Claim), violates the INA, *id.* ¶¶ 119-121 (Second Claim), violates the *Accardi* doctrine, *id.* ¶¶ 122-126 (Third Claim), and violates the Fourth Amendment, *id.* ¶¶ 127-31 (Fourth Claim). Plaintiffs do not bring a class-wide claim that the Re-Detention Policy violates the Fifth Amendment.

Plaintiffs' Fifth, Sixth, and Seventh claims raise claims for the three individual Plaintiffs only, pursuant to 28 U.S.C. § 2241 (habeas corpus) and the U.S. Constitution. *Id.* ¶¶ 12, 132-145. Specifically, Plaintiffs bring individual claims that Defendants' Re-Detention Policy violates their substantive due process rights, *id.* ¶¶ 132-136 (Fifth Claim), their procedural due process rights, *id.* ¶¶ 137-139 (Sixth Claim), and the Fourth Amendment, *id.* ¶¶ 140-145 (Seventh Claim). The Court has severed these claims from the class action, ECF 84, and they will be litigated separately in each plaintiff's individual habeas action.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court, while a motion under Rule 12(b)(6) tests the legal sufficiency of a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). Under both rules, courts must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).[2] To survive a motion to dismiss at the pleading stage, a plaintiff need only allege enough facts to make the claim plausible on its face. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*,

[2] To the extent the Rule 12(b)(1) motion mounts a factual attack on jurisdiction, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

### A. Plaintiffs' claims are justiciable under Article III.

As Plaintiffs have already explained, Defendants' Article III arguments are baseless and should be rejected. *See* ECF 74 at 3-4; ECF 75 at 12-14.

To start, Plaintiffs have standing. Courts assess a plaintiff's standing at the time the complaint is filed. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020). Here, at the time she filed this action, Ms. Garro Pinchi was re-detained pursuant to the challenged Re-Detention Policy. Am. Compl. (ECF 38) ⁋⁋ 70-72, 74. And she *still* would be in detention if not for this Court's order temporarily releasing her from custody. *Id.* ⁋ 73; *see* ECF 6, 33. Ms. Garro Pinchi's Article III injury is enough to establish this Court's jurisdiction. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("standing is satisfied if at least one named plaintiff meets the requirements"). In any event, Ms. Galo Santos and Mr. Teletor Sente have likewise established Article III standing to seek injunctive relief, because they faced, and continue to face, the imminent risk of being arbitrarily re-arrested and re-detained at their upcoming immigration hearings and ICE check-ins pursuant to Defendants' Re-Detention Policy. Am. Compl. ⁋⁋ 77-81.[3] Tellingly, Defendants have never disclaimed their plans to re-detain Ms. Galo Santos and Mr. Teletor Sente—and indeed maintain that they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)—highlighting the imminent threat that Plaintiffs and proposed class members face.

Plaintiffs' claims are ripe for essentially the same reasons. *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (explaining that "the ripeness inquiry merges almost completely with standing."). A case is ripe if it "present[s] 'concrete legal issues,

[3] Although standing is assessed as of the time the action was filed, "[t]he standing of a later-added plaintiff is determined as of the date of the amended complaint which brought him into the action." *Gonzalez v. I.C.E.*, No. CV 31-04416 BRO (FFMx), 2014 WL 12605369, at *3 (C.D. Cal., Oct. 24, 2014).

presented in actual cases, not abstractions.'" *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 839 (9th Cir. 2024) (citations omitted). Here, Plaintiffs challenge a policy that they were actively or imminently subject to and harmed by at the time of filing—and that challenged policy has tangible real-world impact. Simply put, there is no risk that this case presents "hypothetical or speculative disputes" or "abstract disagreements." *Flaxman v. Ferguson*, 151 F.4th 1178, 1184 (9th Cir. 2025).

Finally, Defendants' vague mootness arguments should be rejected. ECF 66 at 6. First, this Court's preliminary injunction ordering Ms. Garro Pinchi's release does not moot this class action, because it "is temporary in nature" and does not fully resolve Plaintiffs' claims and requested relief. *See Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 3283283, at *16 (N.D. Cal. Nov. 25, 2025). Second, Ms. Galo Santos and Mr. Teletor Sente remain subject to imminent re-arrest and re-detention, so their claims remain live. Last, the class claims here are not moot because they are inherently transitory and capable of repetition, yet evading review. *See* ECF 75 at 13–14; *see also, e.g., U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011); *Pablo Sequen*, 2025 WL 3283283, at *16. Plaintiffs' claims are plainly justiciable.

### B. The INA does not bar this Court's review.

This Court has jurisdiction to grant Plaintiffs the relief they seek. None of the INA provisions Defendants cite command otherwise.

#### 1. 8 U.S.C. § 1252(b)(9)

Section 1252(b)(9) is a "targeted" and "narrow" provision that channels judicial review of all claims related to a ***removal order*** into a single petition for review to the court of appeals. It does not apply "where, as here, the parties are not challenging any removal proceedings." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("*Regents*"). Defendants argue that § 1252(b)(9) bars Plaintiffs' claims because, in their view, detention is an action taken in service of removal. MTD at 7. But Plaintiffs have not been ordered removed and may never be ordered removed. Requiring them to wait to raise their detention claims in the context of a removal order that may never come would strip those claims of any meaningful review. For precisely this

reason, in *Jennings*, the Supreme Court rejected the reading of § 1252(b)(9) that Defendants advance here, holding that applying the statute to bar a detention challenge "[would] lead[] to results that no sensible person would have intended." *Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018); *see also Gonzalez*, 975 F.3d at 810 (holding that § 1252(b)(9) does not apply to claims "challenging the legality of detention"). *Ruiz v. Mukasey* does not hold otherwise; there, the court did not address the scope of § 1252(b)(9) and held only that the statute allowed for district-court jurisdiction over the denial of an immigration application that was "unrelated to any removal actions or proceedings." 552 F.3d 269, 274 & n.3 (2d Cir. 2009). Because detention is likewise "collateral to the removal process," § 1252(b)(9) does not apply here. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016).

**2. 8 U.S.C. § 1252(g)**

"Section 1252(g) is similarly narrow." *Regents*, 591 U.S. at 19. It covers only challenges to three discretionary actions not at issue here: the decision to "commence proceedings," "adjudicate cases," or "execute removal orders," not "all claims arising from deportation proceedings." *Id*. The statute also preserves jurisdiction over "purely legal question[s] … even if the answer to that legal question forms the backdrop against which the Attorney General later will exercise discretionary authority." *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025). Courts similarly retain jurisdiction over "general collateral challenges to unconstitutional practices and policies," like this suit. *Id.* at 998. Defendants are wrong that the statute somehow covers detention; the Supreme Court has rejected that argument and held that § 1252(g) ***does not*** "sweep in any claim that can technically be said to arise from the three listed actions," such as detention claims. *Jennings*, 583 U.S. at 293-94.

Defendants' cases are inapposite. MTD at 7. The Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999), does not even mention detention, let alone apply § 1252(g) to a detention claim. *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007), applied § 1252(g) only to "th[e] limited context" of a *Bivens* claim for false arrest, and its broad read of the statute's ambit has since been foreclosed by the Supreme Court's decision in *Jennings*. Defendants' out-of-circuit cases are also unavailing; unlike this case, they

concern detention at the commencement of proceedings or for the purpose of executing a removal order. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) (detention at commencement of proceedings); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020) (detention to execute removal order). In contrast, courts in this circuit have repeatedly held that neither § 1252(b)(9) nor § 1252(g) bars challenges to re-detention pending removal proceedings. *See, e.g.*, *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *2–3 (S.D. Cal. Nov. 17, 2025); *Rodriguez v. Kaiser*, No. 1:25-cv-0111- KES-SAB (HC), 2025 WL 2855193, at *3–4 (E.D. Cal. Oct. 8, 2025); *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025).

**3. 8 U.S.C. § 1252(e)(3)**

Plaintiffs' claims do not fall within the ambit of 8 U.S.C. § 1252(e)(3)'s channeling provision for two reasons. First, Plaintiffs do not challenge the implementation of 8 U.S.C. § 1225(b) ***at all.*** Second, § 1252(e)(3) applies only to challenges to expedited removal, which this case does not involve.

As a threshold matter, this case does not challenge the implementation of any provision of § 1225(b). According to Defendants' own exhibits, they initially released all three individual Plaintiffs under § 1226(a), *see* ECF 68-1 ¶¶ 8, 18; ECF 68-2 ¶ 9, and Defendants have conceded that Plaintiff Garro Pinchi was subject to § 1226(a) at the time of her re-detention. *See* ECF 20. Although Defendants now seek to justify their new Re-Detention Policy by invoking § 1225(b)(2), for the reasons explained below, that statute does not apply to people like Plaintiffs and the putative class, who were previously detained and released but now face re-detention while living in the United States. Courts have repeatedly held that challenges to such re-detention do not challenge the implementation of § 1225(b)(2) and thus fall outside of § 1225(e)'s ambit. *See, e.g.*, *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL 3033769, at *6 (D. Mass. Oct. 30, 2025); *Guerra v. Noem*, No. 1:25-cv-1341, 2025 WL 3204289, at *3 (W.D. Mich. Nov. 17, 2025); *J.A.M. v. Streeval*, No. 4:25-cv-342 (CDL), 2025 WL 3050094, at *1 (M.D. Ga. Nov. 1, 2025).

Second, § 1252(e)(3) applies only to claims challenging the expedited removal system, which is codified at § 1225(b)(1), and which has no application to this case. The scope of § 1252(e) is plain on the statute's face; it is titled "Judicial review of orders under section ***1225(b)(1)***." 8 U.S.C. § 1252(e) (emphasis added); *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1156–57 (9th Cir. 2022) (holding that § 1252(e) applies only to expedited removal policies); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 667 (9th Cir. 2021) (same).

This is the only interpretation of § 1252(e) consistent with the text and structure of § 1252 as a whole. *Cf. Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Section 1252(e) is the corollary statute to § 1252(a)(2)(A), which ***expressly applies only to § 1225(b)(1)***. Section 1252(a)(2)(A) provides the general rules setting limits on judicial review of expedited removal issues, whereas § 1252(e) is the source of exceptions to those general rules. Section 1252(e) can thus be understood only in relation to § 1252(a)(2)(A); it serves no purpose other than providing the exceptions to § 1252(a)(2)(A)'s limits on judicial review of expedited removal.

For example, § 1252(a)(2)(A)(i) states that individual determinations under § 1225(b)(1) are unreviewable "except as provided in subsection (e)." Section 1252(e)(2) then sets forth the exceptions to § 1252(a)(2)(A)(i) by listing specific determinations made under § 1225(b)(1) that remain reviewable in habeas corpus actions. Similarly, §§ 1252(a)(2)(A)(ii) and (iv) set forth the general rule that ***policies*** invoking and implementing § 1225(b)(1) are unreviewable, "except as provided in subsection (e)." Section 1252(e)(3) then provides the exception that certain "[c]hallenges on validity of the system" remain justiciable. Section 1252(e)(3) exists only to set forth the exceptions to the rules in §§ 1252(a)(2)(A)(ii) and (iv). And §§ 1252(a)(2)(A)(ii) and (iv) expressly apply only to § 1225(b)(1)—***not*** § 1225(b)(2). The venue provision at § 1225(e)(3)(A) thus applies only to the limited set of justiciable cases challenging § 1225(b)(1) that § 1252(e)(3) permits. *M.M.V. v. Garland*, *see* MTD at 9, does not hold otherwise; there, the plaintiffs challenged expedited removal policies under § 1225(b)(1), which are not at issue here. 1 F.4th 1100, 1109 (D.C. Cir. 2021). Because § 1252(e)(3) does not apply to Plaintiffs' claims,

venue is proper in this District.

### C. Defendants' incorrect re-interpretation of the detention statutes does not require dismissal of any of Plaintiffs' claims.

Defendants spend multiple pages of their motion arguing that their re-interpretation of § 1225(b)(2) ***justifies*** the Re-Detention Policy, but they do not explain how this requires dismissal of ***any*** of Plaintiffs' claims. *Compare* MTD at 10-15 *with* Am. Compl. ¶¶ 30-35. They cannot make such an argument, because Plaintiffs do not challenge § 1225(b) at all. Instead, Plaintiffs challenge a broad Re-Detention Policy, which Plaintiffs allege Defendants adopted ***before*** they developed their post-hoc § 1225(b) rationale, without considering reliance and liberty interests. *See Regents*, 591 U.S. at 23-24 (rejecting post hoc explanations and requiring consideration of reliance interests and legal constraints). This Court should reject Defendants' inaccurate attempt to characterize Plaintiffs' APA action against the policy as a statutory challenge to § 1225(b).

In any event, as district courts have concluded at least 350 times, Defendants' new interpretation of § 1225(b)(2)—the mandatory detention statute that Defendants now claim applies here—is incorrect. *See Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), --- F. Supp. 3d ---, 2025 WL 3295903 (S.D.N.Y. Nov. 26, 2025) (listing 350 decisions rejecting Defendants' position, and only 12 decisions adopting it). This Court, too, has already held that § 1225(b)(2) does not apply to noncitizens like Plaintiffs and members of the proposed class. *See Pablo Sequen v. Albarran*, --- F. Supp. 3d ---, 2025 WL 2935630, at *7-10 (N.D. Cal. Oct. 15, 2025). Instead, this Court held that individuals like Plaintiff Garro Pinchi, who at the time of her most recent apprehension and detention was residing in the country after having entered without inspection, are subject to non-mandatory detention under § 1226(a). *Id.* at *8 (citing, *inter alia*, *Jennings*, 583 U.S. at 289 (contrasting "[noncitizens] seeking admission into the country" subject to § 1225(b), with "[noncitizens] already in the country pending the outcome of removal proceedings" subject to § 1226(a)). Defendants offer no reason to revisit this Court's analysis.

Defendants nonetheless insist that § 1225(b)(2)(A)'s plain language requires the detention of Plaintiffs and the proposed class because all "applicants for admission" are "seeking admission" and because "seeking" denotes an ongoing status. MTD at 10-11. But, as this Court

explained in *Pablo Sequen*, the present-tense term “seeking admission” does not apply to inadmissible noncitizens like the Plaintiffs who are “simply residing in the country.” 2025 WL 2935630, at *8. Rather, it applies only to those noncitizens who are “arriving and seeking admission.” *Id.* (citation omitted). Defendants’ proffered interpretation cannot be squared with the definition of “admission” in the INA, which states that “admission” refers only to a “lawful entry … after inspection and authorization by an immigration officer.” 8 U.S.C. § 1101(a)(13). People like Plaintiffs, who are in removal proceedings in the U.S., are not seeking a “lawful entry,” and thus cannot be “seeking admission” as that term is defined by statute. *See Sanchez v. Mayorkas*, 593 U.S. 409, 413-15 (2021) (recognizing that “admission and status are separate concepts in immigration law” such that a grant of asylum does not confer “admission”).

In fact, it is Defendants who ignore the statute’s plain language. In arguing that § 1225(b)(2) covers all inadmissible noncitizens who are not included in § 1225(b)(1), MTD at 11, Defendants disregard § 1226, which provides that DHS “may” arrest and detain a noncitizen “pending a decision on whether the alien is to be ***removed*** from the United States”—i.e., pending removal proceedings—while also permitting the noncitizen’s release “on bond” or other conditions. 8 U.S.C. § 1226(a) (emphasis added). The word “removed” is significant because, unlike the prior version of the statute, which applied only to individuals “[p]ending a determination of ***deportability***,” *see* 8 U.S.C. § 1252(a)(1) (1994) (emphasis added), “removed” applies both to individuals facing charges of deportability ***or***, like Plaintiffs and the putative class, inadmissibility. *See* 8 U.S.C. § 1229a(a)(1) (providing that removal proceedings may decide “the inadmissibility ... of [a noncitizen]”). Thus, Congress clearly intended § 1226(a) to apply to people like the Plaintiffs who are in removal proceedings based on charges of inadmissibility.

This is reenforced by the plain language of 1226(c), which ***expressly*** carves out from 1226(a)’s authorization of discretionary detention broad categories of inadmissible noncitizens. *See* 8 U.S.C. §§ 1226(c)(1)(A), (D), (E)(i) (mandating detention of noncitizens inadmissible on certain criminal or national security grounds). *See Jennings*, 583 U.S. at 288 (describing § 1226(a) as the “default rule” providing for discretionary detention of noncitizens inside the country, and § 1226(c) as a limited exception). Section 1226(c) is thus the exception that proves the rule: that is, unless

they have the required criminal history, Section 1226(a) generally affords bond to people arrested in the U.S. for a removal proceeding, including individuals like Plaintiffs who are "inadmissible" for having entered without inspection. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (the fact that Congress has created specific exceptions to the statute "proves" that the statute applies generally).

Just last year, Congress confirmed this plain reading when it enacted the Laken Riley Act ("LRA"), Pub. L. 119–1, 139 Stat. 3 (2025). The LRA added a new ground of mandatory detention to Section 1226(c) that specifically targets people, like Plaintiffs, who entered the country without inspection and, unlike Plaintiffs, are also charged with, arrested for, convicted of, or admit to committing an additional list of crimes. *See* 8 U.S.C. § 1226(c)(1)(E). The LRA thus confirms Congress's understanding that § 1226(a) generally applies to people, like Plaintiffs, who entered the country without inspection and are placed in removal proceedings. Otherwise, there would have been no need for Congress to specifically exclude certain entrants from release on bond.

In short, Section 1226(a)—not Section 1225—is the general detention authority for noncitizens, like Plaintiffs, who are "already in the country" and are detained "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289.

Resisting this conclusion, Defendants seek support in the changes Congress sought to make in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). MTD at 12-13. But they fail here as well. Before IIRIRA, noncitizens in the interior of the United States were subject to discretionary detention under prior 8 U.S.C. § 1252(a)(1), regardless of whether they had been formally admitted. In enacting IIRIRA, Congress expressly stated that the new § 1226(a) merely "restates" that prior discretionary framework. H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996). Had Congress intended a dramatic expansion of mandatory detention for millions of inadmissible noncitizens residing inside the country, it would have said so. The executive branch has also treated noncitizens like Plaintiffs as subject to discretionary detention under § 1226(a) since then. In 1997, just months after IIRIRA's passage, the Executive explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled ... will be eligible for bond

and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That contemporaneous interpretation, mirroring § 1226(a)(2), "is powerful evidence that interpreting the Act in [this] way is natural and reasonable[.]" *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (similar).

Instead, Congress resolved the "problem" Defendants allege—the disparity between the "procedural rights" of those who entered without inspection and those who sought entry lawfully, MTD at 12—by amending the statutes governing those procedural rights. Congress eliminated "exclusion proceedings" that previously applied to non-citizens at ports of entry who had not yet entered the country and put all non-admitted noncitizens "on equal footing … in immigration proceedings" that extended more procedural protections to admitted noncitizens than noncitizens without admission. *Torres v. Barr*, 976 F.3d 918, 927-28 (9th Cir. 2020) (describing changes). The cases Defendants cite, which do not address detention, merely interpret the concept of "admissibility" that these amendments adopted, and do not address the detention statutes at all. *See United States v. Gambino-Ruiz*, 91 F. 4th 981, 988-90 (9th Cir. 2024) (interpreting inadmissibility statute); *Torres*, 976 F.3d at 928 (same).

Finally, the canon that the specific governs the general supports Plaintiffs, not Defendants. *See* MTD at 14. Section 1225(b)(2) is clear that it covers only noncitizens who meet three specific criteria: (1) applicants for admission, who (2) are not covered by § 1225(b)(1), and (3) who are "seeking admission," as "admission" is defined in the INA. *See Pablo Sequen*, 2025 WL 2935630, at *8. Section 1226, which has no language limiting its scope to people who have been admitted, covers ***everyone else.*** Section 1225(b)(2) thus does not apply here.[4]

[4] Although Plaintiffs do not raise a constitutional avoidance argument as to Defendants' incorrect interpretation of § 1225(b)(2), Defendants' assertion that the Supreme Court has upheld "similar" detention regimes vastly overstates the precedent they cite. *Dep't of Homeland Sec. v. Thuraissigiam* did not involve a detention challenge at all. 591 U.S. 103, 139-40 (2020). And in *Demore v. Kim*, the Court upheld § 1226(c) because that statute covered people with criminal histories that were related to flight risk and danger to the community. 538 U.S. 510, 527-28 (2003). Nothing in *Demore* endorses Defendants' breathtaking new argument that the INA requires the detention without bond of ***every inadmissible noncitizen present in the U.S.***, regardless of their criminal history or attendance at court proceedings.

### D. Plaintiffs adequately allege that the Re-Detention Policy is final agency action, and that it violates the APA because it is arbitrary and capricious.

Conspicuously, Defendants never argue that Plaintiffs' allegations are insufficient to state claims under the APA. Instead, as they have repeatedly done in this case, Defendants improperly attempt to hide behind § 1225 instead of addressing the alleged APA violations. This Court should find that Plaintiffs' allegations are sufficient to establish "final agency action" for purposes of their APA claims, and that the Re-Detention Policy is arbitrary and capricious.

#### 1. Plaintiffs adequately allege the Re-Detention Policy is "final agency action."

Plaintiffs have sufficiently alleged that the Re-Detention Policy constitutes final agency action. *See* Am. Compl. ¶¶ 41-64. The Re-Detention Policy is neither tentative nor interlocutory, and it imposes severe legal consequences on a vast set of noncitizens. *See Bennet v. Spear*, 520 U.S. 154, 177–78 (1997). Despite Defendants' claims to the contrary, Plaintiffs need not allege a written or formally promulgated policy for the agency action at issue to be "final." *See, e.g., Amadei v. Nielsen*, 348 F. Supp. 3d 145, 165 (E.D.N.Y. 2018) (noting that "numerous courts have found that a plaintiff can satisfy the finality requirement without offering evidence of a formal or official statement regarding the agency's position," and collecting cases); *Aracely R. v. Nielsen*, 319 F. Supp. 3d 110, 138 (D.D.C. 2018) ("Despite Defendants' assertions to the contrary, agency action need not be in writing to be judicially reviewable as a final action."); *see also Ctr. for Taxpayer Rights, et al. v. Internal Revenue Serv.*, No. 25-0457(CKK), 2025 WL 3251044, at *17-18 (D.D.C. Nov. 21, 2025) (finding IRS's unwritten policy of sharing private data with ICE to be "final agency action"). A requirement that a policy be written down or formally issued to be final "would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing." *Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp. 3d 1168, 1206-07 (S.D. Cal. 2019).

Plaintiffs allege that for decades, DHS has followed a policy of re-detaining noncitizens only after a material change in circumstances related to their flight risk or danger to the community. Am. Compl. ¶¶ 41-47. This policy was rooted in *Matter of Sugay*, I. & N. Dec. 637, 640 (BIA 1981), which prohibited the re-arrest of a noncitizen released on bond "absent a change

of circumstances" warranting detention. *Id.* ¶ 42. The Immigration and Naturalization Service and its successor agency, ICE, have long had a policy of applying *Matter of Sugay* to noncitizens released pursuant to agency discretion, which they have published in guidance documents and articulated in federal court. Am. Compl. ¶¶ 43-44. But around May 2025, as Plaintiffs allege, DHS reversed its prior policy and implemented the Re-Detention Policy, which permits re-arrest and re-detention without any change in circumstances related to flight risk or danger to the community. *Id.* ¶¶ 48-64. Indeed, Defendants have repeatedly conceded on the record before many courts that habeas petitioners challenging their re-detention under this policy were re-detained without any finding of materially changed circumstances. *Id.* ¶¶ 88-90.

Courts regularly hold that such a dramatic shift in practice suffices to show the existence of an unwritten yet ***final*** policy. *See, e.g., Al Otro Lado, Inc.*, 394 F. Supp. 3d at 1208 ("[E]xtensive allegations of alleged turnbacks of asylum seekers by CBP officers at POEs along U.S.-Mexico border based on assertions of lack of capacity . . . plausibly point to the existence of an unwritten policy."); *Ramirez Ovando v. Noem*, No. 1:25-cv-03183-RBJ, 2025 WL 3293467, at *20 (D. Colo. Nov. 25, 2025) (new pattern in enforcement practice likely showed final agency action). Defendants offer no support for their argument that only written policies are reviewable under the APA. *See* MTD at 15, 18.

Instead, Defendants again seek refuge in § 1225(b). MTD at 15-16. But their unsupported, post-hoc rationale that § 1225(b)(2) justifies their change in re-detention policy does not undermine Plaintiffs' allegations. Even if Defendants' re-interpretation of § 1225(b)(2) were legally sound—and, as discussed above, it is not—categorical re-detention under § 1225(b)(2) ***is*** re-detention without a material change in circumstances related to flight risk or danger. It therefore constitutes final agency action for purposes of the APA. Moreover, the Re-Detention Policy cannot be reasonably explained by the government's purported new interpretation of § 1225(b)(2), because the policy precedes this new interpretation. *See* Am. Compl. ¶¶ 90-96. This Court need not look any further than the government's proffered rationale for detaining Plaintiff Garro Pinchi: before this very Court, the government argued that Ms. Garro Pinchi was re-detained under § 1226, not § 1225. Gov. Response to OSC (ECF 20).

Next, Defendants again mischaracterize the Re-Detention Policy as an unreviewable "aggregation of individual enforcement actions and resource judgments." MTD at 15. In so doing, Defendants seek to have it both ways: Defendants argue that detention decisions are now based on their blanket re-interpretation of § 1225(b)(2) while simultaneously arguing that the sea change in detention is merely a result of individual enforcement decisions. In fact, the Re-Detention Policy is a single, cohesive policy which authorizes detention of noncitizens without a material change in their circumstances as to flight risk or danger. Am. Compl. ¶¶ 48-49. It is not a "programmatic" agency action like the ones the Supreme Court found unreviewable in *Lujan* and *Norton*. MTD at 15-16. In those cases, unlike here, the plaintiffs attempted to package a slew of different Bureau of Land Management ("BLM") policies and practices into a single APA claim. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (plaintiff stitched together various BLM practices, ranging from "failure to revise land use plans" to "failure to provide required public notice" of decisions, as a single alleged agency action); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66 (2004) (plaintiff claimed that various "[g]eneral deficiencies in compliance" with a broad statutory mandate constituted a single failure to act by the BLM).

Courts regularly distinguish claims like the ones at issue here from the claims rejected in *Lujan* and *Norton*. *See Al Otro Lado, Inc. v. Mayorkas*, No. 17-cv-02366-BAS-KSC, 2021 WL 3931890, at *9 (S.D. Cal. Sept. 2, 2021), *aff'd in relevant part* 138 F.4th 1102 (9th Cir. 2025) (finding "the record does not contain a grab bag of miscellaneous CBP practices which have been merged under an amorphous and broad programmatic umbrella," in contrast to *Lujan*); *Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880, 902-03 (N.D. Ill. 2020) ("Because Plaintiffs challenge the adoption of an alleged policy that allows Defendants to violate a specific statutory provision, as well as specific applications of that policy, their APA claim is ... distinguishable from . . . *Lujan*[.]"); *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018) (distinguishing claims "that many people were injured in similar ways by the same type of agency action" from the claims rejected in *Lujan* and *Norton*).

Defendants' argument that Plaintiffs challenge unreviewable matters committed to agency discretion under 5 U.S.C. § 701(a)(2) also fails. *See* MTD at 16-17. Because Plaintiffs bring both

"legal and constitutional" challenges to the Re-Detention Policy, courts are "not precluded from reviewing" their claims regardless of the agency's discretion. *See Bonilla v. Lynch*, 840 F.3d 575, 587 (9th Cir. 2016). None of Defendants' cases suggest otherwise. *Heckler v. Cheney* held only that an agency's decision ***not*** to take enforcement action against an individual—which is not at issue here—was an unreviewable matter of discretion. 470 U.S. 821, 832 (1985). Defendants otherwise cite cases that do not arise under the APA and stand only for the unremarkable proposition that immigration agencies have some discretion over ***individual*** enforcement decisions, which are not at issue here. MTD at 16; *see Arizona v. U.S.*, 567 U.S. 387, 396-97 (2012); *Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1992).

### 2. Plaintiffs adequately allege the Re-Detention Policy is arbitrary and capricious.

Defendants do not meaningfully address Plaintiffs' allegations that the Re-Detention Policy (1) lacks a contemporaneous, reasoned explanation (Am. Compl. ¶¶ 87-96, 116); (2) did not account for reliance interests (*id.* ¶¶ 3, 47, 87, 117); and (3) failed to consider important aspects of the problem, including the liberty interest that accrues after a conditional release (*id.* ¶¶ 2-3, 34-39, 117). Each of these sets of allegations independently states a claim that the Re-Detention Policy is arbitrary and capricious in violation of the APA.

First, Plaintiffs have adequately alleged the Re-Detention Policy is arbitrary and capricious for failure to engage in reasoned decision making. As Defendants concede, *see* MTD at 17, when an agency changes its position, it must provide a "reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). In this case, Defendants provided no explanation whatsoever, let alone a reasoned one, when they adopted the Re-Detention Policy. Am. Compl. ¶ 87. To be sure, in the following months, Defendants provided a variety of *post hoc* explanations. *Id.* ¶¶ 88-93. But "[a]n agency must defend its actions based on the reasons it gave ***when it acted***," and *post hoc* explanations from the agency or its attorneys do not suffice. *Regents*, 591 U.S. 1, 24 (2020) (emphasis added). Because Plaintiffs allege that Defendants gave ***no*** contemporaneous reason for adopting the Re-Detention Policy, they have stated a claim under the APA. *Id.* ¶¶ 88-90; *see Regents*, 591 U.S. at 23.

Second, Plaintiffs sufficiently allege that the Re-Detention Policy is arbitrary and

capricious because Defendants failed to consider reliance interests. When an agency changes or rescinds a prior policy, it is "required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against [any] competing policy concerns." *Regents*, 591 U.S. at 33; see also *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) (an agency must provide reasons "for disregarding facts and circumstances that underlay or were engendered by the prior policy"). As Plaintiffs explain, noncitizens like them relied on their release to "pursue[] relief from removal, grow[] their families, invest[] in their education, and develop[] extensive community and family ties." Am. Compl. ¶ 3. As the Supreme Court held in *Regents*, a change in agency policy that fails to consider exactly these interests is arbitrary and capricious. *Regents*, 591 U.S. at 30; *see also Thakur v. Trump*, 787 F. Supp. 3d 955, 983 (N.D. Cal. 2025) (failure to consider reliance interests before terminating grant funding was likely arbitrary and capricious); *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 971 (N.D. Cal. 2021) (same, for failure to consider reliance interests of noncitizens before terminating pathway for immigration relief).

Third, Plaintiffs independently state a claim that the Re-Detention Policy is arbitrary and capricious because Defendants failed to consider the liberty interest implicated in re-detention, which is an "important aspect of the problem." *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (articulating standard). As courts have recognized, an agency's "constitutional and statutory obligations are 'important aspects' of the problem before them." *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 982 (N.D. Cal. 2020), *order clarified*, 491 F. Supp. 3d 572 (N.D. Cal. 2020) (citing *Oregon Nat. Resources Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)). This requirement means an agency must consider the legal justification for all aspects of a policy change. *Regents*, 591 U.S. at 28-33 (finding DACA recission arbitrary and capricious because its legal justification failed to address all aspects of the program). Applied to this case, the Supreme Court has long held that, regardless of the nature of the original custody, persons granted conditional release accrue a liberty interest in their continued freedom. *See* Am. Compl. ¶¶ 36-37 (citing cases). Lower courts have found that such an interest is even more compelling in the immigration context. *Id.* ¶ 38. Plaintiffs' allegations

that they accrued such a liberty interest, *id.* ¶¶ 36, 38, 139, and that Defendants failed to consider it in adopting the Re-Detention Policy, *id.* ¶¶ 117, thus state a claim for relief.

Ignoring the applicable APA legal doctrine, Defendants raise irrelevant arguments which this Court can easily reject. MTD at 18. Defendants argue that because immigration detention is constitutionally permissible, it cannot be arbitrary and capricious. MTD at 18. But these are distinct inquiries, and a policy can be subject to vacatur as arbitrary and capricious under the APA without violating any substantive provision of law. *See Regents*, 591 U.S. at 16 (holding policy violated the APA where parties otherwise did not dispute its lawfulness).

**E. Plaintiffs adequately allege violations of their constitutional rights.**

Contrary to Defendants' arguments, § 1225(b)(2) does not foreclose the Plaintiffs' individual constitutional claims. As explained, § 1225(b)(2) does not apply here. *See Pablo Sequen*, 2025 WL 2935630, at *7-10. But even if § 1225(b)(2) did apply, Defendants' arguments would fail because all statutes are "subject to important constitutional limitations." *Zadvydas v. Davis,* 533 U.S. 678, 695 (2001); *see also Doe v Albarran,* No. 25-cv-08744-VC, 2025 WL 3141224, at *2 (N.D. Cal. Nov. 10, 2025) (detention statute irrelevant to constitutional inquiry); *Munoz Materano v. Arteta*, No. 25 Civ. 6137 (ER), 2025 WL 2630826, at *17 (S.D.N.Y. Sept. 12, 2025) (re-detention under § 1225(b) violated the Fourth Amendment); Order Granting Preliminary Injunction ("PI Order") (ECF 33) at 4-5.

Plaintiffs have adequately alleged violations of the Fourth and Fifth Amendments. This Court has already found that Plaintiff Garro Pinchi is likely to succeed on her procedural due process claim because "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty will be revoked only if [they] fail[] to live up to the … conditions [of release]." PI Order at 4-5 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The same analysis applies to Plaintiffs Galo Santos and Teletor Sente. Plaintiffs have similarly adequately claimed that their re-detention violates substantive due process and the Fourth Amendment.[5]

[5] Insofar as Defendants argue that Plaintiffs have not adequately stated a claim with regard to their classwide APA claim that the Re-Detention Policy is contrary to the Fourth Amendment, those arguments fail. Plaintiffs have adequately alleged both their individual constitutional claim

### 1. Individual Plaintiffs adequately allege their re-detention violates due process.

To start, Defendants do not challenge the sufficiency of Plaintiffs' allegations under the due process clause. Instead, Defendants improperly jump to attacking the merits of Plaintiffs' claim and incorrectly argue that Plaintiffs cannot state a procedural due process claim because they have no protected liberty interest. MTD at 19. That position cannot be squared with decades of Supreme Court precedent finding a liberty interest following conditional release or the dozens of decisions applying that doctrine to the immigration context—including ***in this case***.[6] *See, e.g.*, PI Order at 5; *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context); *Chavez Rivera v. Albarran*, No. 3:25-cv-10474-BLF, 2025 WL 3496778, at *2 (N.D. Cal. Dec. 5, 2025) (noncitizen had liberty interest after initial release from detention pending proceedings); *J.A.M.C. v. Albarran*, No. 25-cv-09649-WHO, 2025 WL 3268816, at *4 (N. D. Cal. Nov. 24, 2025) (same); *Orozco Acosta v. Albarran*, No. 3:25-cv-09601, 2025 WL 3114454, at *2 (N.D. Cal. Nov. 6, 2025) (same); *Pablo Sequen*, 2025 WL 2935630, at *5 (same); *Rojas v. Albarran*, No. 25-cv-08172-PCP, 2025 WL 2772695, at *2 (N.D. Cal. Sept. 25, 2025) (same).[7]

To comport with the Due Process Clause, "the nature and duration" of detention must "bear some reasonable relation to the purpose for which the individual is" detained. *Valencia*

---

(Claim Seven) and the classwide APA claim (Claim Four).

[6] Courts generally are precluded from reconsidering already-decided issues, including decisions based on issues of law in the interim relief context. *Ingle v. Cir. City.*, 408 F.3d 592, 594 (9th Cir. 2005); *see also e.g., Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 989 F. Supp. 2d 981, 989 (C.D. Cal. 2013), *aff'd*, 827 F.3d 1192 (9th Cir. 2016). As there have been no intervening changes in the controlling law, newly discovered evidence, or clear error by the court, Defendants' arguments as to Plaintiff Garro Pinchi's procedural due process rights need not be re-considered at this stage. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

[7] Defendants cite *Board of Regents v. Roth* for the proposition that Plaintiffs are not entitled to any process because procedural due process protections apply only to rights encompassed in the Constitution's protection of liberty and property. MTD at 19. However, this holding does not help Defendants because Ms. Garro Pinchi *does* have a protected liberty interest, and this Court has already found as much. PI Order at 5. The other Plaintiffs similarly have protected liberty interests. *See id.* ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.)

*Zapata v. Kaiser*, 2025 WL 2741654, at *11 (N.D. Cal. Sept. 26, 2025) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Immigration detention, which is "civil, not criminal," and "nonpunitive in purpose and effect," must be justified by either (1) dangerousness or (2) flight risk. *Zadvydas*, 533 U.S. at 690; *see Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Plaintiffs have adequately alleged both procedural and substantive due process claims.

First, in light of their established liberty interests against re-detention, Plaintiffs Garro Pinchi, Galo Santos, and Teletor Sente have adequately alleged facts supporting their procedural due process claims. *See* Am. Compl. ¶¶ 67-68, 76-78, 79-81 (describing conditional release, compliance, and reliance of each Plaintiff). In considering what process is due, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which weighs the private interest at stake, the risk of erroneous deprivation without process, and the government's interest. *See also* PI Order at 5. Defendants do not even mention *Mathews* in their motion, let alone contend that Plaintiffs' allegations as to the *Mathews* factors are insufficient to state a procedural due process claim. *See* Am. Compl. ¶¶ 66-86. They thus all but concede that Plaintiffs' procedural due process claim should move forward.

Second, Plaintiffs have adequately alleged violations of their substantive due process rights. When, as here, rationales of flight risk or danger are absent, immigration detention serves no legitimate government purpose and becomes impermissibly punitive, violating a person's substantive due process rights. *See Jackson*, 406 U.S. at 738 (1972) (detention must have a "reasonable relation" to the government's interests in preventing flight and danger).

Immigration authorities previously released each of the individual Plaintiffs from detention, which necessarily incorporates a determination that they did not pose a flight risk or a danger to the community. Am. Compl. ¶¶ 66, 78, 83. It is undisputed that nothing about those determinations or Plaintiffs' individual circumstances has changed. Plaintiffs have no criminal history and no intervening criminal history or arrest since their initial release from immigration

custody. *Id.* ¶¶ 75, 77, 82. Thus, there is no credible argument that Plaintiffs are a danger to the community, and the government has not argued otherwise. As to flight risk, the question is whether custody is reasonably necessary to secure a person's appearance at immigration court hearings and related check-ins. Plaintiffs have diligently complied with all supervision conditions, including attending required check-ins and immigration court hearings. *Id.* ¶¶ 75, 77, 82. In other words, Plaintiffs' actions since their initial release from immigration custody only ***further confirm*** the government's prior finding that each of them poses no flight risk or danger. Because the government cannot show that Plaintiffs' re-detention would advance the only accepted rationales for civil detention—flight risk or danger—Plaintiffs have demonstrated their re-detention would violate their substantive due process rights. *Zadyvdas*, 533 U.S. at 690.[8]

In arguing that there is no substantive due process right at stake here, Defendants rely on two cases, neither of which undermines Plaintiffs' claims. First, *Demore* involved a facial challenge to § 1226(c). 538 U.S. at 514-16. Plaintiffs do not challenge any application of § 1226(c). *See* Am. Compl. ¶ 94. Moreover, whereas a facial challenge requires a plaintiff to show that a statute is "unconstitutional in every application," an as-applied challenge, like Plaintiffs' substantive due process claims here, require a plaintiff to show only that "the application of the statute to a specific factual circumstance" is unconstitutional. *Paz Hernandez v. Wofford*, No. 1:25-cv-00986-KES-CDB (HC), 2025 WL 2420390, at * 4 (E.D. Cal. Aug. 21, 2025); *see also Valencia Zapata*, 2025 WL 2741654, at *12 (explaining that *Demore* does not disrupt the court's holding that a Plaintiff in § 1226(a) proceedings has substantive due process rights related to their detention and, in fact, the Court in *Demore* "continued to treat a noncitizen's risk of flight and danger to the community as the key touchstones for the validity of civil immigration detention."). Thus, nothing in *Demore* forecloses Plaintiffs' substantive due process arguments. Second, the government cites *Jennings v. Rodriguez* for the contention that there is statutory authorization for detention under § 1225(b). As explained, § 1225(b) does not

[8] Other courts in this district have held that similarly situated plaintiffs have demonstrated serious questions going to the merits of their substantive due process claims. *Valencia Zapata*, 2025 WL 2741654, at *11-12; *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *5 (N.D. Cal. Nov. 19, 2025); *Bautista Pico v. Noem*, No. 25-cv-08002-JST, 2025 WL 3295382, at *3 (N.D. Cal. Nov. 26, 2025).

apply here. *See infra* IV(C). But even if § 1225(b) did apply, the application and enforcement of all statutes, even mandatory detention statutes, are "subject to important constitutional limitations," including the Fifth Amendment. *Zadvydas,* 533 U.S. at 695.[9] *Jennings*, which concerned statutory interpretation, not any constitutional claims, does not disturb that well-settled principle. *See* 583 U.S. at 312.[10]

**2. Plaintiffs adequately allege their detention would violate the Fourth Amendment.**

Defendants object to Plaintiffs bringing "a Fourth Amendment seizure claim." MTD at 18. As a threshold matter, it is not clear whether they object to Plaintiffs' Fourth Claim (a class-wide claim arguing that the Re-Detention Policy violates the APA because it is contrary to the Fourth Amendment), Plaintiffs' Seventh Claim (a direct Fourth Amendment claim on behalf of the individual Plaintiffs), or both. Regardless, Plaintiffs have adequately alleged that the Fourth Amendment protects against re-arrests on the same probable cause without a material change in circumstances.

Plaintiffs allege that, under the Fourth Amendment, a person whom immigration authorities released from initial custody cannot be re-arrested without some new intervening cause. Am. Compl. ¶¶ 31-32. For a re-arrest to comply with the Fourth Amendment, the arrests must "be based on evidence that the circumstances relevant to th[e] original release decision have changed." *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1196 (N.D. Cal. 2017). That is because permitting re-arrests without new probable cause would authorize "harassment by continual rearrests." *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971). Courts have regularly applied such Fourth Amendment principles from the criminal context to the civil immigration context. *See e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (applying Fourth Amendment principles from the criminal context to "limit" the scope of immigration agents'

[9] For the same reasons, the Court should reject Defendants' identical statutory responses to Plaintiffs' Fourth Amendment claims. *See* MTD at 20.

[10] Without explanation, the government seeks to read in a requirement that Plaintiffs must allege punitive motive or unconstitutional treatment for Plaintiffs to allege substantive due process violations. MTD at 20. But that supposed requirement is untethered to the law. As explained above, a substantive due process violation exists where detention does not bear a reasonable relation to flight risk or danger. *Zadyvdas*, 533 U.S. at 690.

seizure authority); *Gonzalez*, 975 F.3d at 817 (explaining that Fourth Amendment limits on seizures apply equally to the criminal and civil immigration context).

In their APA claim brought on behalf of the putative class and Plaintiffs, Plaintiffs have alleged that the Re-Detention Policy authorizes re-arrest despite no change in circumstances, contrary to constitutional right. Am. Compl. ¶¶ 49-50. Defendants do not at all address—nor dispute—the legal authorities that establish the Fourth Amendment requires changed circumstances to effect a new seizure. Likewise, in the Fourth Amendment claim brought on behalf of the individual Plaintiffs only, the Plaintiffs have adequately alleged that they are subject to re-detention despite no change in circumstances, and thus no probable cause exists separate from the probable cause for their original detention. *Id.* ¶¶ 74-75, 77-78, 80-83. Plaintiffs Garro Pinchi, Galo Santos, and Teletor Sente have fully complied with the conditions of their release and have no criminal history. *Id.* ¶¶ 14-16. Therefore, a new seizure would be based on the same probable cause as their initial detention, violating the Fourth Amendment. *Id.* ¶¶ 31-32. These claims are adequately stated and Defendants have shown no basis on which to dismiss either.

**F. Plaintiffs' habeas claims are proper.**

Defendants' argument that habeas is an improper vehicle misapprehends the nature of Plaintiffs' claims. Plaintiffs press no classwide habeas claims in this action. Rather, each individual Plaintiff brings individual habeas claims on their own behalf, as well as non-habeas claims challenging Defendants' broader policies on behalf of the putative class. *See* Am. Compl. ¶¶ 112-145. Therefore, Defendants' argument that Plaintiffs are improperly using habeas to seek "programmatic relief" on behalf of "an entire class of aliens in the future," MTD at 21, is wrong.

As this Court has determined, no authority "bar[s] plaintiffs from joining a habeas petition challenging the fact of detention in the same action as a non-habeas claim challenging" the legality of a general policy. *Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 3275602, at *4 (N.D. Cal. Nov. 24, 2025). That is precisely how Plaintiffs have structured their claims here.

The division between Plaintiffs' non-habeas claims on behalf of the class, and the individual Plaintiffs' habeas claims only on their own behalf, is clear from the face of the Amended Complaint. *See supra* II.C. ("Claims for Relief"). Because success on the individual

Plaintiffs' habeas claims would necessarily render unlawful their prior or imminent re-detention, there is no question their claims fall within the traditional "core" of habeas relief and properly invoke this Court's habeas jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Defendants' cited authorities are inapposite. MTD at 20-22. *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc); *Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Wilkinson v. Dotson*, 544 U.S. 74 (2005), all analyzed the availability of federal habeas relief for state prisoners, and thus dealt with federalism concerns and the existence of alternative statutory remedies that are inapplicable to federal prisoners like Plaintiffs and the putative class. *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023), was a prison conditions case and thus fell outside the "core" of habeas; Plaintiffs press no conditions-of-confinement claims. *Rumsfeld*, 542 U.S. at 426, addressed the identity of the proper respondent in a habeas petition; here, Defendants do not dispute that Plaintiffs have identified the correct respondent for their individual habeas claims. Finally, *Garland v. Aleman Gonzalez* and its interpretation of 8 U.S.C. § 1252(f)(1) are irrelevant; because each individual Plaintiff's habeas claim seeks an injunction solely on behalf of themselves—"an individual [noncitizen] against whom [removal] proceedings ... have been initiated," 8 U.S.C. § 1252(f)(1)—there is no jurisdictional bar to granting relief on those claims. 596 U.S. 543, 544 (2022).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court deny Defendants' motion in full.

Dated: December 19, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Erin E. Meyer*
ERIN E. MEYER
JULIA L. ALLEN
CLAIRE C. BONELLI
ELLEN WATLINGTON
JACQUIE P. ANDREANO
KAYLA CROWELL

Attorneys for Plaintiffs-Petitioners

Dated: December 19, 2025

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN

*/s/ Bree Bernwanger*
BREE BERNWANGER
MICHELLE (MINJU) Y. CHO
NEIL K. SAWHNEY
LAUREN M. DAVIS

Attorneys for Plaintiffs-Petitioners

Dated: December 19, 2025

CENTRO LEGAL DE LA RAZA

*/s/ Abby Sullivan Engen*
ABBY SULLIVAN ENGEN
JESSE NEWMARK
NIKOLAS DE BREMAEKER

Attorneys for Plaintiffs-Petitioners

Dated: December 19, 2025

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

*/s/ Judy Rabinovitz*
JUDY RABINOVITZ
OSCAR SARABIA ROMAN

Attorneys for Plaintiffs-Petitioners