1   ERIN E. MEYER - # 274244
    emeyer@keker.com
2   JULIA L. ALLEN - # 286097
    jallen@keker.com
3   CLAIRE C. BONELLI - #317735
    cbonelli@keker.com
4   ELLEN WATLINGTON - # 336422
    ewatlington@keker.com
5   JACQUIE P. ANDREANO - # 338354
    jandreano@keker.com
6   KAYLA CROWELL - # 349061
    kcrowell@keker.com
7   MICHAELA FIRMAGE - # 366184
    mfirmage@keker.com
8   KEKER, VAN NEST & PETERS LLP
    633 Battery Street
9   San Francisco, CA 94111
    Telephone: (415) 391-5400
10
    Attorneys for Plaintiffs
11
    [ADDITIONAL COUNSEL ON NEXT PAGE]
12

    BREE BERNWANGER - # 331731
    bbernwanger@aclunc.org
    MICHELLE (MINJU) Y. CHO - # 321939
    mcho@aclunc.org
    NEIL K. SAWHNEY - # 300130
    nsawhney@aclunc.org
    LAUREN M. DAVIS - # 357292
    ldavis@aclunc.org
    AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN
    CALIFORNIA
    39 Drumm Street
    San Francisco, CA 94111
    Telephone: (415) 621-2493

    ABBY SULLIVAN ENGEN - # 270698
    asullivanengen@centrolegal.org
    JESSE NEWMARK - # 247488
    jessenewmark@centrolegal.org
    NIKOLAS DE BREMAEKER (admitted pro
    hac vice)
    ndebremaeker@centrolegal.org
    CENTRO LEGAL DE LA RAZA
    3400 E. 12th Street
    Oakland, CA 94601
    Telephone: (510) 437-1863

13

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA

16

SAN JOSE DIVISION

17

18   FRESCIA GARRO PINCHI, JUANY GALO
     SANTOS, and JOSE TELETOR SENTE, on
19   behalf of themselves and others similarly
     situated,
20
                    Plaintiffs,
21
          v.
22   SERGIO ALBARRAN, Field Office Director
     of the San Francisco Immigration and
23   Customs Enforcement Office; KRISTI
     NOEM, Secretary of the United States
24   Department of Homeland Security; TODD
     LYONS, Acting Director of United States
25   Immigration and Customs Enforcement,
     acting in their official capacities; U.S.
26   DEPARTMENT OF HOMELAND
     SECURITY; U.S. IMMIGRATION AND
27   CUSTOMS ENFORCEMENT,
28                 Defendants.

Case No. 5:25-cv-5632-PCP

**MOTION TO COMPEL COMPLETION
OF THE ADMINISTRATIVE RECORD
AND FOR EXTRA-RECORD
DISCOVERY**

Date:     April 10, 2026
Time:     11:00 a.m.
Dept:     Courtroom 8 - 4th Floor
Judge:    Hon. P. Casey Pitts

Date Filed:  July 3, 2025

1

JUDY RABINOVITZ (admitted pro hac vice)
jrabinovitz@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2660

OSCAR SARABIA ROMAN - # 341385
osarabia@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Ste 7th Floor
San Francisco, CA 94104
Telephone: (916) 813-7891

2

3

4

5

6

7

8    Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on April 10, 2026 at 11:00 a.m. or as soon as this matter

3

may be heard, in the Courtroom of the Honorable Judge P. Casey Pitts at the Robert F. Peckham

4

Federal Building & United States Courthouse, 280 South 1st Street, San Jose, California 95113,

5

Plaintiffs Frescia Garro Pinchi, Juany Galo Santos, and Jose Teletor Sente (collectively,

6

"Plaintiffs") hereby move the Court for an Order granting Plaintiffs' Motion to Compel

7

Completion of the Administrative Record and for Extra-Record Discovery.

8

This motion is based upon this Notice of Motion and Motion, the incorporated

9

Memorandum of Points and Authorities, the supporting declaration of Bree Bernwanger, the

10

Proposed Order filed herewith, the papers, evidence, and records on file in this action, and any

11

other written or oral evidence or argument as may be presented at or before the time this motion

12

is heard by the Court.

13

14

15

Dated: March 6, 2026                     KEKER, VAN NEST & PETERS LLP

16

                                    By:    */s/ Erin E. Meyer*

17                                         ERIN E. MEYER
                                           JULIA L. ALLEN
18                                         CLAIRE C. BONELLI
                                           ELLEN WATLINGTON
19                                         JACQUIE P. ANDREANO
                                           KAYLA CROWELL
20
                                           Attorneys for Plaintiffs-Petitioners
21

Dated: March 6, 2026                     AMERICAN CIVIL LIBERTIES UNION
22                                         FOUNDATION OF NORTHERN

23

24                                         */s/ Bree Bernwanger*
                                           BREE BERNWANGER
25                                         MICHELLE (MINJU) Y. CHO
                                           NEIL K. SAWHNEY
26                                         LAUREN M. DAVIS

27                                         Attorneys for Plaintiffs-Petitioners

28

1

2

Dated: March 6, 2026                    CENTRO LEGAL DE LA RAZA

3

4                                       /s/ Abby Sullivan Engen
                                        ABBY SULLIVAN ENGEN
                                        JESSE NEWMARK
5                                       NIKOLAS DE BREMAEKER

6                                       Attorneys for Plaintiffs-Petitioners

7  Dated: March 6, 2026                 AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
8

9                                       /s/ Judy Rabinovitz
                                        JUDY RABINOVITZ
10                                      OSCAR SARABIA ROMAN

11                                      Attorneys for Plaintiffs-Petitioners

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD FOR EXTRA-RECORD
DISCOVERY
Case No. 5:25-cv-5632-PCP

6011953

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL BACKGROUND......................................................................3

III.  ARGUMENT ........................................................................................................4

    A.    Defendants should be compelled to complete the CAR. ..........................4

        1.    Defendants applied the wrong standard in compiling the CAR. ................6

        2.    The CAR excludes documents and materials that were plainly
            before the agency. .......................................................................8

        3.    Defendants failed to produce a privilege log. ...........................................11

    B.    The Court should compel extra-record discovery for the Re-Detention
        Policy. ......................................................................................................12

        1.    Extra-record discovery is appropriate to determine if the agency
            considered all factors and explained its decision. ....................................12

        2.    Extra-record discovery is warranted because the agency relied on
            documents not in the record...........................................................14

        3.    Extra-record discovery is appropriate because the decision to
            implement the Re-Detention Policy was made in bad faith.......................15

        4.    The Court should grant extra-record discovery. .......................................17

IV.   CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alharwin v. McCament*,
    No. CV 17-3444-GW(AFMx), 2018 WL 6265080 (C.D. Cal. July 19, 2018)..........................5

*Am. Fed'n of Labor & Cong. Of Industrial Organizations v. Dep't of Labor*,
    349 F.R.D. 243 (D.D.C. 2025)..................................................................................................14

*Animal Def. Council v. Hodel*,
    840 F.2d 1432 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989)...............................13

*Bermeo Sicha v. Bernal*,
    No. 1:25-cv-00418-SDN, 2025 WL 2494530 (D. Me. Aug. 29, 2025)......................................2

*Camp v. Pitts*,
    411 U.S. 138 (1973)................................................................................................................13

*Center for Environmental Health v. Perdue*,
    No. 18-cv-01763-RS, 2019 WL 3852493 (N.D. Cal. May 6, 2019) ........................................11

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) *abrogated on other grounds by Califano v. Sanders*, 430
    U.S. 99 (1977)........................................................................................................................12

*DeMore v. Kim*,
    No. 01-1491, 2002 WL 34705774 (U.S. Aug. 29, 2002) ....................................................1, 9

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)................................................................................................15, 16, 17

*Dos Santos v. Noem*,
    No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).................................2

*Earth Island Inst. v. Evans*,
    256 F. Supp. 2d 1064 (N.D. Cal. 2003) .................................................................................15

*Gill v. Dep't of Justice*,
    No. 14-cv-03120-RS (KAW), 2015 WL 9258075 (N.D. Cal. Dec. 18, 2025) ........................8

*Hispanic Affairs Project v. Acosta*,
    901 F.3d 378 (D.C. Cir. 2018)...............................................................................................14

*J.L. v. Cissna*,
    No. 18-cv-04914-NC, 2019 WL 2223803 (N.D. Cal. May 22, 2019)..................................6, 8

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ................................................................. *passim*

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006)................................4, 5, 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..................................................................................................12

*National TPS Alliance v. Noem*,
No. 25-cv-05687-TLT(SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025)..............15, 16, 17

*Ortega v. Bonnar*,
415 F. Supp. 3d 963 (N.D. Cal. 2019) .......................................................................1, 2

*Portland Audubon Soc. v. Endangered Species Comm.*,
984 F.2d 1534 (9th Cir. 1993) ................................................................................5, 9

*Pub. Power Council v. Johnson*,
674 F.2d 791 (9th Cir. 1982) ...........................................................................10, 14, 15

*Regents of University of California v. DHS*,
No. C17-05211 WHA, 2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) ............................10, 11

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) ...................................................................................13

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017) .................................................................1, 9, 18

*Sharks Sports & Entertainment LLC v. Federal Transit Administration*,
No. 18-cv-04060-LHK (SVK), 2020 WL 511998 (N.D. Cal. Jan. 31, 2020) ....................5, 7

*Singh v. Andrews*,
803 F. Supp. 3d 1035 (E.D. Cal. 2025)........................................................................7

*Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*,
961 F. Supp. 1276 (W.D. Wis. 1997) ..........................................................................17

*Stellacom, Inc. v. United States*,
783 F. Supp. 647 (D.D.C. 1992)................................................................................10

*Matter of Sugay*,
17 I. & N. Dec. 637 (B.I.A. 1981) ............................................................................ *passim*

*Sweet v. Devos*,
495 F. Supp. 3d 835 (N.D. Cal. 2020) .........................................................................14

*Tenneco Oil Co. v. Dep't of Energy*,
    475 F. Supp. 299 (D. Del. 1979) ............................................................................ 14

*Thompson v. U.S. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ................................................................................... 4

*United States v. Cisneros*,
    No. 19-cr-00280-RS-5, 2021 WL 5908407 (N.D. Cal. Dec. 14, 2021) .................... 2

*WildEarth Guardians v. Bernhardt*,
    507 F. Supp. 3d 1219 (C.D. Cal. 2020) ................................................................... 5

*Winnemem Wintu Tribe v. U.S. Forest Service*,
    No. 2:09-cv-01072-KJM-KJN, 2014 WL 3689699 (E.D. Cal. July 24, 2014) ....... 11

**Federal Statutes**

8 C.F.R. § 242.2(e) ....................................................................................................... 1, 9

5 U.S.C. § 706 ................................................................................................................... 4

8 U.S.C. § 1225 ......................................................................................................... *passim*

8 U.S.C. § 1226(a) ......................................................................................................... 7, 9

8 U.S.C. § 1226(b) ................................................................................................... 1, 9, 18

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ................................................ *passim*

Immigration and Nationality Act § 235 ........................................................................ 6, 7

Immigration and Nationality Act § 212(d)(5) .................................................................... 6

**Other Authorities**

Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A.*
    *Migrant Crackdown*, The Wall Street Journal (June 9, 2025),
    https://www.wsj.com/us-news/protests-losangeles-immigrants-trump-f5089877 ................ 17

MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD FOR EXTRA-RECORD
DISCOVERY
Case No. 5:25-cv-5632-PCP

6011953

## I.    INTRODUCTION

Defendants have produced a Certified Administrative Record ("CAR") that contains only a policy memo issued two months after the policy change at issue in this action occurred and a handful of public legal decisions. Further, despite the declarations from class members, immigration experts, and former immigration judges, along with news articles documenting Defendants' new Re-Detention Policy, Defendants continue to insist that no such policy exists. Plaintiffs therefore respectfully request that the Court issue an order compelling Defendants to complete the CAR and permitting Plaintiffs to obtain extra-record discovery relevant to the actual agency action at issue here: the decision to reverse longstanding agency policy and authorize DHS officials to re-detain noncitizens in removal proceedings without any material change in circumstances.

For decades, immigration officials adhered to a policy of not re-detaining noncitizens who were previously released pending removal proceedings, absent an individualized determination that there had been a material change as to whether the individual posed a flight risk or a danger to the community. This policy was well-established. In 1981, the Board of Immigration Appeals explained that the government could not re-detain an individual released on bond absent such a change in circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981). Fourteen years later, ICE's predecessor agency reiterated this policy. *See DeMore v. Kim*, No. 01-1491, 2002 WL 34705774 at *57 (U.S. Aug. 29, 2002) (stating that "[w]hen an alien has been released from INS custody under bond, such bond can be revoked by the district director pursuant to 8 C.F.R. § 242.2(e) but only based upon 'a change of circumstances'"). And in the years since, DHS has repeatedly represented to federal courts that "in practice, [it] follow[ed] *Matter of Sugay* . . . where a previous release determination was made by DHS" such that "DHS generally only re-arrest[ed] an alien pursuant to § 1226(b) after a material change in circumstances[.]" Dkt. 48-1 at 6; *See also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (describing "the government's view that the DHS has . . . discretionary authority to re-arrest [a noncitizen] in the event of material changed circumstances"). Federal courts have repeatedly acknowledged DHS's prior practice and policy.

*See, e.g.*, *United States v. Cisneros*, No. 19-cr-00280-RS-5, 2021 WL 5908407, at *3-4 (N.D. Cal. Dec. 14, 2021); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega*, 415 F. Supp. 3d at 968.

Then, in May 2025, DHS abruptly abandoned its longstanding policy and began carrying out a new policy of arbitrarily re-arresting and re-detaining noncitizens without consideration of their individualized circumstances (the "Re-Detention Policy"). In subsequent months, Defendants arbitrarily re-detained dozens of noncitizens—if not more—within the jurisdiction of the San Francisco ICE Field Office alone. For example, on July 3, 2025, Plaintiff Garro Pinchi was re-arrested by masked ICE agents waiting outside the immigration courtroom where she had just appeared for a hearing, despite the fact that there had been no change in circumstances to justify her re-arrest. Defendants' arbitrary change in policy has resulted in the arrest and detention of at least forty class members and has resulted in many more being placed in imminent danger of re-arrest and re-detention. *See* Dkt. 85 at 6.

Despite this seismic shift in DHS's policy around re-detention, Defendants have continued to assert that there is "nothing to see here" and that no Re-Detention Policy exists. *See e.g.*, Dkt. 108 at 2 ("Defendants dispute that any such policy exists."). Defendants have instead repeatedly attempted to make this case about their post-hoc interpretation of 8 U.S.C. § 1225, which they claim *justifies* their indiscriminate re-arrest of noncitizens regardless of whether there has been a change in their individual circumstances. Defendants' latest attempt to rewrite the policy at issue comes in the form of the CAR, which contains a total of six documents: (1) a memorandum related to their post-hoc reinterpretation of § 1225 issued months after the implementation of the Re-Detention Policy; and (2) five legal decisions that Defendants purportedly considered in preparing the memorandum.

This is plainly deficient. In litigation challenging federal agency action under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* ("APA"), the defendant agency must prepare, certify, and lodge an administrative record for the *agency action* at issue. As this Court has already made clear, the agency action that Plaintiffs challenge "is DHS's policy of re-

1   detaining noncitizens whom it previously released without first making an individualized

2   determination that their material circumstances have changed . . . *without regard to the statutory*

3   *authority DHS invokes* to justify it[.]" Dkt. 85 at 43-44 (emphasis added). In providing a CAR

4   solely for their post hoc reinterpretation of § 1225, Defendants have produced a record that *post-*

5   *dates* the policy and plainly omitted documents and materials that were before the agency when it

6   decided to implement the Re-Detention Policy months before the July 8 Memo. Because the CAR

7   is deficient on its face, the Court should grant Plaintiffs' motion to compel its completion.

8          Plaintiffs also request this Court compel extra-record discovery. While APA actions are

9   generally limited to the administrative record, extra-record discovery is permitted: "(1) if

10  admission is necessary to determine 'whether the agency has considered all relevant factors and

11  has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3)

12  'when supplementing the record is necessary to explain technical terms or complex subject

13  matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*,

14  395 F.3d 1019, 1030 (9th Cir. 2005). Because Defendants have (1) failed to produce a CAR upon

15  which this Court can adequately evaluate compliance with APA requirements, (2) relied on

16  documents not in the record, and (3) offered their interpretation of § 1225 as an explanation in

17  bad faith, extra-record discovery is warranted.

18  **II.     PROCEDURAL BACKGROUND**

19         On February 3, 2026, consistent with the Court's orders, the parties filed a stipulation in

20  which Defendants agreed to "produce the complete CAR on or before February 5, 2026,

21  consistent with the Court's interpretation of Civ. L. R. 16-5." Dkt. 102 (emphasis omitted). On

22  February 5, 2026, Defendants filed a document titled "United States Immigration and Customs

23  Enforcement Administrative Record for July 8, 2025, Memorandum: Interim Guidance Regarding

24  Detention Authority for Applicants for Admission." Dkt. 105 (the "CAR"). The CAR contains a

25  total of *six* documents. *Id.* Along with the CAR, Defendants filed a "Certification of

26  Administrative Record" signed by Liana J. Castano, Assistant Director for Field Operations for

27  Enforcement and Removal Operations within DHS and ICE. Dkt. 105-1. Ms. Castano's

28  certification states that the "documents listed in the accompanying Administrative Record Index

1  and contained in the files annexed hereto, constitute to the best of my knowledge and belief, a

2  true and complete copy of all non-privileged documents and materials considered by ICE in

3  issuing the July 8, 2025 Broadcast Email titled *Interim Guidance Regarding Detention Authority*

4  *for Applicants for Admission.*" *Id.* at 2.

5          On February 12, 2025, Plaintiffs' counsel met and conferred with Defendants. During this

6  conversation, Plaintiffs' counsel raised their concerns regarding the completeness of the CAR,

7  including that the materials provided in the CAR include only documents related to the July 8

8  Memo, which issued months *after* the re-detentions at issue in this case began. Declaration of

9  Bree Bernwanger ISO Motion to Compel Completion of the Administrative Record and for Extra-

10  Record Discovery ("Bernwanger Dec.") at ¶ 2. Defendants' counsel represented that the CAR

11  was complete and included all documents pertinent to this matter. *Id.* at ¶ 3. Defendants

12  confirmed that they would not produce further record documents absent a motion to compel, and

13  specifically that if Plaintiffs sought documents from the period of May to July 2025, they would

14  have to move to compel. *Id.* at ¶ 3.

## III.    ARGUMENT

### A.    Defendants should be compelled to complete the CAR.

17          Because Defendants have collected a CAR for an agency action that post-dates the Re-

18  Detention Policy and have omitted documents from the record, completion of the CAR is

19  warranted. In an APA lawsuit, "the court shall review the whole record or those parts of it cited

20  by a party." 5 U.S.C. § 706. The "whole administrative record" is "'not necessarily those

21  documents that the *agency* has compiled and submitted as 'the' administrative record.'"

22  *Thompson v. U.S. Dep't of Labor,* 885 F.2d 551, 555 (9th Cir. 1989) (*quoting Exxon Corp. v.*

23  *Dep't of Energy,* 91 F.R.D. 26, 33 (N.D. Tex. 1981)) (emphasis in original). Rather, "[t]he

24  'whole' administrative record . . . consists of all documents and materials directly or *indirectly*

25  considered by agency decision-makers and includes evidence contrary to the agency's position."

26  *Id.* (*quoting Exxon,* 91 F.R.D. at 33) (emphasis in original). "[A] complete administrative record

27  should include all materials that might have influenced the agency's decision and not merely

28  those on which the agency relied in its final decision." *People of State of Cal. ex rel. Lockyer v.*

1   *U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *2 (N.D. Cal. Mar. 16, 2006).

2   The administrative record is thus not limited to "documents that literally passed before the eyes of

3   the final agency decision maker[.]" *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219,

4   1223 (C.D. Cal. 2020) (internal quotation marks omitted). "An incomplete record must be viewed

5   as a 'fictional account of the actual decisionmaking process.'" *Portland Audubon Soc. v.*

6   *Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (*quoting Home Box Office, Inc.*

7   *v. Fed. Commc'n Comm'n*, 567 F. 2d 9, 54 (D.C. Cir. 1977).

8       "There is a presumption that the administrative record submitted by Defendants is

9   complete" but "Plaintiffs can rebut [that presumption] with clear evidence to the contrary."

10  *Lockyer*, 2006 WL 708914 at *2. "Plaintiffs need not show bad faith or improper motive to rebut

11  the presumption." *Id.* Courts in this district have repeatedly held that "the plaintiff can rebut the

12  presumption of completeness by showing that the agency applied the wrong standard in

13  compiling the record, including where the face of the record certification provided by the agency

14  reveals an error." *Sharks Sports & Entertainment LLC v. Federal Transit Administration*, No. 18-

15  cv-04060-LHK (SVK), 2020 WL 511998 at *2 (N.D. Cal. Jan. 31, 2020). The presumption of

16  completeness can also be rebutted where the administrative record excludes documents that were

17  clearly before the agency. *See Portland Audubon Soc.*, 984 F.2d at 1548 ("When it appears the

18  agency has relied on documents or materials not included in the record, supplementation is

19  appropriate."); *see also Lockyer*, 2006 WL 708914 at *2; *WildEarth Guardians*, 507 F. Supp. 3d

20  at 1223.

21      Here, Defendants have both applied the wrong standard in compiling the CAR and have

22  plainly excluded documents that were before the agency. The Court should therefore compel

23  Defendants to complete[1] the administrative record.

---

24  [1] Although courts have sometimes referred to completion and supplementation interchangeably,

25  "[c]ompleting the record refers to including materials which were actually considered by the
    agency, yet omitted from the administrative record, whereas supplementing the record refers to
    including materials which were not considered by the agency, but which are necessary for the

26  court to conduct a substantial inquiry." *WildEarth Guardians*, 507 F. Supp. 3d at 1222 n.3
    (quoting *Bruce v. Azar*, 389 F. Supp. 3d 716, 724 n.5 (N.D. Cal. 2019); *see also Alharwin v.*

27  *McCament*, No. CV 17-3444-GW(AFMx), 2018 WL 6265080 at *4 (C.D. Cal. July 19, 2018)
    ("A different standard applies when plaintiffs argue not that the record is incomplete, but rather

28  that the court should review *extra-record* materials which all parties agree were *not* before the

5

6011953

1    **1.    Defendants applied the wrong standard in compiling the CAR.**

2        The CAR produced by the Defendants reveals a fundamental error: it identifies the wrong

3    agency action. The declaration of Ms. Castano explicitly states that the CAR submitted by

4    Defendants is a "true and complete copy of all non-privileged documents and materials

5    considered by ICE **in issuing the July 8, 2025 Broadcast Email** titled *Interim Guidance*

6    *Regarding Detention Authority for Applicants for Admission*." Dkt. 105-1 at 2 (emphasis added).[2]

7    But the July 8, 2025 Interim Guidance Regarding Detention Authority for Applicants for

8    Admission ("July 8 Memo") is not the agency action at issue in this case. The policy that

9    Plaintiffs challenge "is DHS's policy of re-detaining noncitizens whom it previously released

10   without first making an individualized determination that their material circumstances have

11   changed. Plaintiffs challenge that policy without regard to the statutory authority DHS invokes to

12   justify it[.]" Dkt. 85 at 43. Thus, the complete administrative record must "include[] all

13   documents and materials directly or indirectly considered by [DHS and ICE] decision-makers in

14   coming to" the Re-Detention Policy. *J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 2223803 at

15   *2 (N.D. Cal. May 22, 2019).

16       The July 8 Memo has little to do with DHS's policy regarding re-detention of noncitizens

17   without consideration of their individual circumstances. Rather, it describes DHS's new legal

18   position that "section 235 of the Immigration and Nationality Act (INA), rather than section 236,

19   is the applicable immigration detention authority for all applicants for admission." Dkt. 105 at 2.

20   Based on this novel interpretation, DHS instructs that all noncitizens who are "present in the

21   United States who ha[ve] not been admitted or who arrive[] in the United States, whether or not at

22   a designated port of arrival" are "subject to detention under INA § 235(b) and may not be

23   released from ICE custody except by INA §212(d)(5) parole." *Id.* But the July 8 Memo makes

24   clear that this new interpretation is a "prohibition[] on *release* once an alien enters ICE custody

25   agency when it rendered its decision."). Here, because Defendants have taken the position that the
     Re-Detention Policy does not exist, Plaintiffs seek both completion of the CAR and

26   supplementation in the form of extra-record discovery.

27   [2] As discussed further below, even if the July 8 Memo were the appropriate agency action, the
     six-document CAR nonetheless plainly excludes documents that were before the agency in

28   issuing that memo.

1  upon initial arrest or re-detention" and that it "does *not* impose an affirmative requirement on ICE

2  to immediately identify and arrest all aliens who may be subject to INA § 235 detention." *Id.* at 3

3  (emphasis added). Indeed, the July 8 Memo requires ERO and HIS to "consult with OPLA prior

4  to rearresting an alien on this basis." *Id.* Thus, Defendants' own memo explicitly states that it is

5  *not* a justification or explanation for re-arresting and re-detaining noncitizens without

6  consideration of their individual circumstances. To the extent that the memo mentions re-

7  detention at all, it references a process for consulting with OPLA about re-detention—yet

8  Defendants included *no documents* about that process, what standards OPLA set for conducting

9  re-arrests, what guidance was provided, or what the agency considered in developing that process.

10  Defendants' production of a CAR that is limited *solely* to materials considered by ICE in issuing

11  its legal re-interpretation of § 1225 is plainly insufficient.

12          Rather, as this Court has already acknowledged, DHS's re-interpretation of § 1225(b)(2)

13  is merely a "post hoc rationalization for the re-detention policy," that Defendants implemented

14  months earlier. Dkt. 85 at 51. Indeed, Ms. Garro Pinchi was one of many noncitizens who were

15  re-arrested and re-detained, without any change in their flight risk or danger, *before* the July 8

16  Memo was issued. Dkt. 45 at ¶ 68. And at the time, the government argued—as it did with regard

17  to other noncitizens it detained before the July 8 Memo— that Ms. Garro Pinchi was re-arrested

18  pursuant to § 1226(a), not § 1225(b). Dkt. 20 at 2 (explaining that when Ms. Garro Pinchi was re-

19  detained, she was provided with "a Form I-200, Warrant for Arrest of Alien, notifying her of its

20  intent to place her into detention under 8 U.S.C. § 1226(a)"); *id.* at 4-8 (arguing throughout that

21  Ms. Garro Pinchi was detained pursuant to §1226(a)); *see also, e.g.*, *Singh v. Andrews*, 803 F.

22  Supp. 3d 1035, 1041 (E.D. Cal. 2025) (Petitioner was re-detained on May 27, 2025 without any

23  material change in individual circumstances). Simply put, the July 8 Memo cannot and does not

24  explain the abrupt change in policy, beginning in May 2025, that led to the re-detention of dozens

25  of class members.

26          Because Defendants' CAR concerns only the July 8 Memo and not the Re-Detention

27  Policy, the agency plainly applied the wrong standard. *See Sharks Sports*, 2020 WL 511998 at *3

28  (holding that presumption of completeness was overcome where certification applied the wrong

standard by collecting documents the agency "relied" on, but not all information the agency directly or indirectly considered); *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 WL 9258075 at *6 (N.D. Cal. Dec. 18, 2025) (finding that plaintiffs had sufficiently rebutted the presumption of completeness where "[d]efendants certified an administrative record that, on its face, appears to contain less than all documents and materials directly or indirectly considered by the agency in making its decision") (citing cases). Defendants must produce a complete CAR related to the actual Re-Detention Policy at issue. *See J.L.*, 2019 WL 2223803 at *3 (finding that CAR was incomplete "[o]n the face of the certification" where it identified the wrong agency action and requiring Defendants to "produce all relevant, non-privileged documents").

Accordingly, Defendants must supplement the CAR to cover the relevant time period and relevant agency action: DHS's change in policy on *re*-detention. At a minimum, this means Defendants must produce (1) documents and communications pertaining to the agency's re-detention policies (*i.e.*, DHS and its component agencies' standard for the circumstances in which a noncitizen in removal proceedings could be re-detained) from January to May 2025, including everything the agency directly or indirectly considered related to re-detention during that time; and (2) the documents discussed below in Part III(A)(2).

### 2.     The CAR excludes documents and materials that were plainly before the agency.

In addition to addressing the wrong policy, the CAR excludes documents and materials that were plainly before the agency when it made its decision to implement the Re-Detention Policy. Again, the CAR includes a total of *six* documents: the July 8 Memo itself, along with Westlaw printouts of two federal court decisions, one BIA decision, and two decisions issued by the Attorney General. Dkt. 105. This paltry record excludes several categories of key documents that Plaintiffs know were before the agency.

First, the CAR omits documents and materials related to DHS's prior policy of not re-detaining noncitizens unless there was a material change in their individual circumstances related to flight risk or danger. These documents were plainly before the agency when it made its decision to reverse that policy. For example, DHS has previously represented that "[i]n practice,

DHS follow[ed] *Matter of Sugay* . . . where a previous release determination was made by DHS"
such that, prior to enacting the Re-Detention Policy, "DHS generally only re-arrest[ed] an alien
pursuant to § 1226(b) after a material change in circumstances[.]" Dkt. 48-1 at 6; *see also*
*Saravia*, 280 F. Supp. 3d at 1197 ("According to government counsel, DHS has incorporated [the
*Matter of Sugay*] holding into its practice, requiring a showing of changed circumstances both
where the prior bond determination was made by an immigration judge and where the previous
release decision was made by a DHS officer."). Yet the CAR does not include *Matter of Sugay,*
nor does it include any communications, memoranda, training documents, or other material
created by DHS or its sub-agencies discussing, implementing, or training its employees regarding
its decades-long policy of following *Matter of Sugay*. Similarly, the CAR does not include the
1995 INS Memorandum which restated DHS's policy regarding bond revocation or any
documents, communications, memoranda, or other material regarding that policy (the "1995 INS
Memorandum"). *See DeMore*, 2002 WL 34705774 at *57 (stating that "[w]hen an alien has been
released from INS custody under bond, such bond can be revoked by the district director pursuant
to 8 C.F.R. § 242.2(e) but only based upon 'a change of circumstances'"). Moreover, as the Court
acknowledged, "DHS indicated in its orders releasing noncitizens pursuant to § 1226(a) that such
release could be revoked only if '[t]he alien failed to comply with the conditions of release'
(which would constitute a material change in circumstances)[.]" Dkt. 85 at 5; *see also* Dkt. 68-1
at 14 (Exhibit C – Order of Release on Recognizance). But again, the CAR includes *zero*
documentation or materials that discuss, explain, or memorialize DHS's previously stated practice
and policy.

These are DHS documents that plainly might have influenced the agency's decision and
were before the agency pertaining to the merits of its decision to abandon its prior policy. Thus,
all documents, memorandum, and communications regarding DHS's prior policy of not re-
detaining a noncitizen absent a material change in their individual circumstances should be
included in the CAR. *See Lockyer*, 2006 WL 708914, at *2 (holding that "Forest Service
documents" that related directly to a prior rule were "therefore at least indirectly considered in the
decision-making process" for the new rule and were to be included to complete the record)

1   (citation omitted); *Portland Audubon Soc.*, 984 F. 2d at 1548 (the "whole record" for purposes of

2   the APA includes "everything that was before the agency pertaining to the merits of its

3   decision").[3]

4         Second, the CAR omits any documents explaining *how* or *why* DHS arrived at its Re-

5   Detention Policy. It "strains credulity to suggest that the Acting Secretary of DHS decided to

6   rescind a [decades-long prior policy]" relating to re-arrests and re-detentions "without consulting

7   one advisor or subordinate within DHS" or receiving input from DOJ, the White House, or

8   anyone else. *Regents of University of California v. DHS*, No. C17-05211 WHA, 2017 WL

9   4642324 at *8 (N.D. Cal. Oct. 17, 2017) (ordering that Defendants complete the administrative

10   record with "all emails, letters, memoranda, notes, media items, opinions, and other materials

11   directly or indirectly considered in the final agency decision to rescind DACA") *see also Pub.*

12   *Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982) ("It strains the Court's imagination

13   to assume that the administrative decision-makers reached their conclusions without reference to

14   a variety of internal memoranda, guidelines, directives, and manuals" ) (quoting *Tenneco Oil Co.*

15   *v. Dep't of Energy*, 475 F. Supp. 299, 317 (D. Del. 1979)). Yet the CAR contains no

16   communications, emails, meeting minutes, or memoranda regarding this decision. Defendants

17   must therefore complete the CAR with all emails, communications, meeting minutes, notes,

18   memoranda, or other materials that the agency directly or indirectly considered in arriving at its

19   Re-Detention Policy.[4]

20   [3] *See also Stellacom, Inc. v. United States*, 783 F. Supp. 647, 655-56 (D.D.C. 1992) (finding that

21   an agency's "near thirty-year practice of excluding all agency client billings from the calculation of annual receipts save the commission are not facts outside of the administrative record; rather, it

22   is material well within the SBA's own knowledge and which the SBA should have considered when it undertook the rulemaking at issue here").

23   [4] Even assuming that the July 8 Memo were the relevant policy at issue (as explained above, it *post-dates* the relevant policy), the CAR likewise contains no communications, meeting minutes,

24   memoranda, or any other materials related to DHS's decision to revisit its legal interpretation of §1225 or re-detain noncitizens based on that interpretation. Defendants appear to ask this Court to

25   believe that the novel interpretation of § 1225 set forth in the July 8 Memo simply sprouted from Todd Lyons's head fully formed. Not only is that implausible, but it is directly contradicted by

26   the July 8 Memo itself, which explains that DHS came to its re-interpretation of § 1225 "*in coordination with the Department of Justice* (DOJ)[.]" Dkt. 105 at 2. Thus, to the extent

27   Defendants insist that the July 8 Memo is the only policy at issue, they must complete the CAR with all emails, communications, meeting minutes, notes, memoranda, or other material

28   considered in arriving at the July 8 Memo.

Defendants do not contest the underlying *facts* of this case: that since May 2025, they have re-detained scores of noncitizens who posed no flight risk or danger to the community. Their *legal* argument that no change in re-detention policy precipitated this sea change does not grant them license to submit a deficient administrative record. *See Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-cv-01072-KJM-KJN, 2014 WL 3689699 at *12 (E.D. Cal. July 24, 2014) (requiring defendant to supplement the administrative record despite agency's insistence that a certain project was "non-existent," because "[i]t is for the court to determine whether final agency action has occurred, not the agency itself"). To the extent Defendants continue to assert that their re-interpretation of § 1225 is the only agency action that has occurred, Defendants should be compelled at a minimum to include in the administrative record all documents and materials regarding Defendants' prior policy, as well as all documents and communications considered in issuing the July 8 Memo and related to the re-detention process that memo describes (as discussed above).

### 3. Defendants failed to produce a privilege log.

To the extent that Defendants believe that any of the documents or materials identified above are privileged, this Court should order them to produce a privilege log. The certification filed by Defendants concurrently with their deficient CAR asserts that they have produced only "non-privileged documents and materials considered by ICE." Dkt. 105-1. However, Defendants produced no privilege log identifying any documents over which they claim privilege. "By withholding documents it believed to be privileged without providing a privilege log, Defendants have failed to provide the 'whole record.'" *Center for Environmental Health v. Perdue*, No. 18-cv-01763-RS, 2019 WL 3852493 at *3 (N.D. Cal. May 6, 2019). "Every court in this district considering the issue [] has required administrative agencies to provide a privilege log." *Regents*, 2017 WL 4642324 at *7 (collecting cases); *see also Perdue*, 2019 WL 3852493 at *3 ("Courts in the Northern District of California have consistently required agencies seeking to assert deliberative process privilege to produce a privilege log."). Thus, to the extent that Defendants contend that any documents are subject to the deliberative process privilege or any other privilege, they must produce a log so that Plaintiffs may evaluate any privilege claims.

**B.    The Court should compel extra-record discovery for the Re-Detention Policy.**

In addition to compelling Defendants to complete the CAR, Plaintiffs request that this Court order extra-record discovery. Extra-record discovery is permitted (1) "if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). These exceptions operate to identify and plug holes in the administrative record. *See id*.

Extra-record discovery is warranted under the first, second, and fourth *Lands Council* exceptions. *First*, because Defendants maintain there is no final agency action and have produced a CAR that relates only to their post-hoc rationalization, extra-record discovery is required to enable effective judicial review of the Re-Detention Policy. *Second*, extra-record discovery is appropriate because the agency relied on documents not included in the record, as evidenced by the lack of materials related to the decision-making process that necessarily predated the July 8 Memo. *Third*, extra-record discovery is warranted under the bad-faith exception because Defendants' decision to implement the Re-Detention Policy cannot be adequately explained by the belated July 8 Memo, and instead appears to be a politically motivated attempt to dramatically increase the number of re-arrests and re-detentions of noncitizens living in the community. Extra-record discovery beyond the CAR is therefore required to ensure that the Court may adequately assess the agency action and compliance with the APA.

**1.    Extra-record discovery is appropriate to determine if the agency considered all factors and explained its decision.**

In APA actions the court must be able to review whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[.]" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Extra-record discovery is required under the first *Lands Council* exception where "the bare record [does] not disclose the factors that were considered" by the agency decision maker, see *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) *abrogated on other grounds by Califano v.*

1  *Sanders*, 430 U.S. 99 (1977), or where "there was such a failure to explain administrative action

2  as to frustrate effective judicial review." *Camp v. Pitts*, 411 U.S. 138, 142-3 (1973); *Animal Def.*

3  *Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989).

4  Extra-record discovery under this exception facilitates judicial review by allowing a court to

5  "develop a background against which it can evaluate the integrity of the agency's analysis" and

6  "help[ing] the court understand whether the agency complied with the APA's requirement that the

7  agency's decision be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Auth. v.*

8  *Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

9       DHS has utterly "fail[ed] to explain administrative action" in this case. *Camp*, 411 U.S. at

10 142. Indeed, the CAR does not permit this Court's review of even the threshold question in the

11 Court's analysis of whether Defendants' Re-Detention Policy complies with the APA: whether

12 there was a final agency action. As discussed above, Defendants have repeatedly insisted that no

13 such action occurred. Defendants have therefore provided a CAR that relates only to a legal re-

14 interpretation that post-dates by months the policy on which this action is based.[5] But as the Court

15 has recognized, Defendants have already "confirmed that DHS's prior policy was to re-detain

16 noncitizens only after making an individualized determination of materially changed

17 circumstances and that DHS officers began departing from that practice *en masse* in May." Dkt.

18 85 at 41.

19      Plaintiffs should not be required to simply accept Defendants' suggestion "that DHS

20 officers across the country awoke one morning in May and independently decided to start

21 violating their employer's decades-long policy." *Id.* To the extent Defendants continue to insist

22 that there has been no final agency action, extra-record discovery is appropriate to test the

---

23  [5] While the July 8 Memo is not the policy at issue, it reveals the existence of agency records that

24 are relevant to this Court's review of the Re-Detention Policy. The July 8 Memo expressly
   indicates that "[t]his change in legal interpretation may, however, warrant re-detention of a

25 previously released [non-citizen]" and that "ERO and HSI should consult with OPLA prior to
   rearresting" these individuals. Dkt. 105 at 3. However, the CAR does not include any materials

26 relating to consultations with OPLA regarding re-detention. Yet, documents and communications
   related to this practice bear directly on the agency conduct at issue in this action—re-detention of

27 previously released noncitizens absent material changes in circumstances. Accordingly, extra-
   record discovery regarding the guidance, standards, policies, or practices for re-detention that

28 followed this memo are relevant to this Court's review of agency conduct.

veracity of Defendants' position and to allow the Court to determine whether DHS appropriately considered the relevant factors and explained its decision. *See Am. Fed'n of Labor & Cong. Of Industrial Organizations v. Dep't of Labor*, 349 F.R.D. 243, 248 (D.D.C. 2025) (holding that when an agency denies an unwritten policy exists, "a court may depart from the default APA no-discovery rule") (*citing Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018). Where Plaintiffs plausibly show the existence of a de facto agency policy that differs from the formal policy articulated by an agency, "the court is free to exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy at issue.'" *Hispanic Affairs*, 901 F.3d at 385-88 (citing *Venetian Casino Resort, LLC. v. Equal Employment Opportunity Comm'n*, 530 F.3d 925, 928 (D.C. Cir. 2008)). Indeed, "meaningful review of agency conduct . . . depends utterly on the record adequately reflecting the basis for that conduct." *Sweet v. Devos*, 495 F. Supp. 3d 835, 844 (N.D. Cal. 2020).[6]

### 2. Extra-record discovery is warranted because the agency relied on documents not in the record.

Extra-record discovery is also warranted under the second *Lands Council* exception because the agency relied on documents not in the record in formulating the Re-Detention Policy. *Public Power Council*, 674 F.2d at 794. Courts permit extra-record discovery under this exception "in order to provide a record of all documents and materials directly or indirectly considered by the agency decisionmakers." *Id.* Courts routinely order extra-record discovery in cases such as this, where it is readily apparent that an agency relied on documents not included in the CAR. *See Tenneco Oil Co. v. Dep't of Energy*, 475 F. Supp. 299, 317 (D. Del. 1979) (finding agency must have relied on documents not in the CAR because "[i]t strains the Court's

---

[6] The need for extra-record discovery is especially strong here because Defendants settled on the July 8 Memo after struggling to articulate a consistent rationale in the courts. This Court recognized that it is "particularly true where, as here, an agency changes its position," that the "grounds upon which the administrative agency acted [be] clearly disclosed and adequately sustained." Dkt. 85 at 50 (quoting *Sec. & Exch. Comm'n v. Chenery*, 318 U.S. 80, 94 (1943)). Because Defendants offered several shifting explanations for the abrupt shift in enforcement activities and fail to clearly disclose the grounds upon which the administrative agency acted in implementing the Re-Detention Policy, extra-record discovery is particularly appropriate to ensure that the agency's actions are adequately evaluated. *See Am. Fed'n of Labor & Cong. Of Industrial Organizations*, 349 F.R.D. at 249 (holding that discovery is appropriate when the agency's proffered rationale post-dates the challenged agency action).

imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals").

Extra-record discovery is warranted under this exception for all the same reasons articulated in Part III(A)2. As discussed, the CAR plainly excludes key documents such as (1) "*Matter of Sugay*" and any internal materials relating to it, (2) the 1995 INS Memorandum and related materials, (3) any documents explaining how or why DHS arrived at its Re-Detention Policy; and (4) any documents explaining how or why DHS arrived at the July 8 Memo. Thus, extra-record discovery is warranted under the second *Lands Council* exception.

### 3.    Extra-record discovery is appropriate because the decision to implement the Re-Detention Policy was made in bad faith.

Finally, extra-record discovery is warranted where "plaintiffs make a showing of agency bad faith." *Lands Council*, 395 F.3d at 1029-30. Bad faith may be inferred when "the evidence tells a story that does not match the [agency's] explanation for [the] decision" and the explanation offered by the agency actually "played an insignificant role in the decisionmaking process." *Dep't of Com. v. New York*, 588 U.S. 752, 756, 782 (2019). Because evidence of bad faith "is unlikely to ever appear within the four corners of the official administrative record," *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1078 (N.D. Cal. 2003), petitioners "should proceed with discovery to develop these claims" without a "strong showing of bad faith or improper behavior." *Pub. Power Council*, 674 F.2d at 795. Here, Defendants appear to have acted in bad faith because the explanation offered—the July 8 Memo—postdates by two months the agency conduct challenged in this action. In fact, immigration officials expressed "a preordained determination" to enact sweeping policy change months before settling on the purported explanation disseminated in July. *National TPS Alliance v. Noem*, No. 25-cv-05687-TLT(SK), 2025 WL 2419266 at *2 (N.D. Cal. Aug. 21, 2025). There is thus "a significant mismatch between the decision the [agency] made and the rationale [it] provided," warranting extra-record discovery. *Commerce,* 588 U.S. at 783.

*Commerce* supports the conclusion that there is sufficient evidence of bad faith to warrant extra-record discovery. In *Commerce*, the plaintiffs challenged the Secretary of Commerce's decision to implement a citizenship question on the 2020 census as arbitrary and capricious. *Id.* at

764. The record produced by defendants revealed that while the Secretary claimed the decision was prompted by a DOJ request for improved citizenship data to better enforce the Voting Rights Act, the Secretary began exploring reinstating the citizenship question "well before" the DOJ request. *Id*. at 782-83. The Court acknowledged that while it "is hardly improper for an agency head to come into office with policy preferences," the "evidence tells a story that does not match the explanation the Secretary gave for his decision." *Id.* at 783. Rather, given the timing of the DOJ request, the Secretary's "VRA enforcement rationale—the sole stated reason—seems to have been contrived." *Id.* Accordingly, the Supreme Court upheld extra-record discovery because there was "a significant mismatch between the decision the Secretary made and the rationale he provided." *Id.* at 755; *see also Nat'l TPS All.*, 2025 WL 2419266, at *2 (permitting extra-record discovery because "Secretary of Homeland Security Kristi Noem expressed her intention to alter the TPS program even before she took office" and before she had the "opportunity to review country conditions reports.").

Here, there is specific, non-speculative evidence in the record to suggest that Defendants have acted in bad faith by presenting "an explanation for agency action that is incongruent with what the record reveals about the agency's priorities and decision-making process." *Commerce*, 588 U.S. at 785. As in *Commerce* and *TPS Alliance*, Defendants fail to offer a contemporaneous explanation for the agency action that indisputably began in May 2025, instead producing a (plainly deficient) administrative record for a *different* policy that post-dates the agency action. The mismatch in timing of the explanation strongly suggests that it was offered in bad faith. *See Commerce*, 588 U.S. at 283-85; *see also TPS Alliance*, 2025 WL 2419266, at *2.

The fact that the July 8 Memo postdates the May 2025 change in policy is not the only evidence of potential bad faith. Around May 2025, immigration officials expressed "a preordained determination" to enact sweeping policy change months before settling on the purported explanation in July. *National TPS Alliance*, 2025 WL 2419266 at *2; *see also Commerce*, 588 U.S. at 782-83. As detailed in Plaintiffs' Amended Complaint, in May 2025, White House Deputy Chief of Staff Stephen Miller directed high-level officials to change their approach to stops and arrests in the field in order to reach an executive-imposed "goal" of 3,000

16

immigration-related arrests per day—with "consequences for not hitting arrest targets."[7] Miller directed that agents and officers should no longer conduct targeted operations based on investigations and instead, they should "just go out there and arrest [unauthorized noncitizens]" by rounding up people in public spaces like "Home Depot" and "7-Eleven" convenience stores. Agents received instructions that arrests were "all about the numbers, not the level of criminality.[8] As in *TPS Alliance*, these public statements cast doubt on the integrity of the July 8 explanation.

In sum, Defendants' action "cannot be adequately explained in terms" of the July 8 Memo. *Commerce*, 588 U.S. at 783. Accordingly, this Court should compel extra-record discovery relating to Defendants' re-detention of noncitizens without material changes in circumstances so that it may adequately evaluate Defendants' compliance with the APA.

### 4.    The Court should grant extra-record discovery.

For the reasons set forth above, Plaintiffs respectfully request the following extra-record discovery, which is necessary under the first, second, and fourth *Lands Council* factors for Plaintiffs to adequately challenge Defendants' position that no final agency action has occurred and the bases for Defendants' actions:

1.    All documents and communications from January 1, 2025 to present regarding DHS's policies, practices, guidance, and/or standards regarding re-arrest or re-detention of noncitizens in removal proceedings.

2.    All documents and communications from Januay 1, 2025 to present that DHS considered or relied upon in developing its re-detention policies, practices, guidance, and/or standards regarding re-arrest or re-detention of noncitizens in removal proceedings;

---

[7] Elizabeth Findell, et al., *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, The Wall Street Journal (June 9, 2025), https://www.wsj.com/us-news/protests-losangeles-immigrants-trump-f5089877. News reports covering agency action may be considered when evaluating claims of bad faith and whether the "ultimate fairness in this case is served by allowing plaintiffs to conduct extra-record discovery." *Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*, 961 F. Supp. 1276, 1285 (W.D. Wis. 1997).

[8] Findell, *supra* note 7.

MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND EXTRA-RECORD DISCOVERY
Case No. 5:25-cv-5632-PCP

6011953

3.  All documents evidencing, memorializing, analyzing, discussing, explaining, or implementing DHS's prior policy and practice of following *Matter of Sugay* where a previous release determination was made by DHS such that DHS generally only re-arrested noncitizens pursuant to § 1226(b) after a material change in circumstances as described in *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

4.  All documents and communications from January 1, 2025 to the present related to *Matter of Sugay*; *Saravia v. Sessions*; or the 1995 INS Memorandum.

5.  All documents and communications discussing, analyzing, explaining, implementing, or providing guidance regarding Stephen Miller's May 2025 instruction to DHS to increase arrests within the agency;

6.  All documents and communications related to the July 8, 2025 Broadcast Email titled *Interim Guidance Regarding Detention Authority for Applicants for Admission* (the "July 8 Memo"), including but not limited to:

    a.  All documents and communications between DHS and DOJ regarding DHS's "legal position on detention and release authorities";

    b.  All documents and communications internal to DHS regarding DHS's "legal position on detention and release authorities";

    c.  All documents and communications related to consultations with OPLA regarding re-detention following the memo, including but not limited to all guidance, standards, policies, or practices for re-detention;

    d.  All documents, communications, or other materials relied upon in formulating, drafting, or implementing the July 8 Memo.

7.  Documents relating to all former or current members of the preliminarily certified class and sub-class, including:

    a.  A-files for all former or current class members or sub-class members who have been re-arrested or re-detained from January 1, 2025 to present;

    b.  All documents and communications related to the arrest or detention of any

18

former or current class member from January 1, 2025 to present, including

but not limited to Form I-200 Warrants and Form I-862 Notices to Appear;

c.    All documents and communications relating to the alleged flight risk or

danger to the community of any former or current class member from

January 1, 2025 to present, including but not limited to documents or

communications related to criminal convictions, immigration violations,

and attendance at immigration hearings and check-ins;

d.    The number of former or current class members or sub-class members who

have been arrested or detained from May 2025 to present.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to compel completion

of the CAR and for extra-record discovery.

Dated: March 6, 2026                    KEKER, VAN NEST & PETERS LLP


                              By:    /s/ Erin E. Meyer
                                     ERIN E. MEYER
                                     JULIA L. ALLEN
                                     CLAIRE C. BONELLI
                                     ELLEN WATLINGTON
                                     JACQUIE P. ANDREANO
                                     KAYLA CROWELL

                                     Attorneys for Plaintiffs

Dated: March 6, 2026                    AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF NORTHERN


                                     /s/ Bree Bernwanger
                                     BREE BERNWANGER
                                     MICHELLE (MINJU) Y. CHO
                                     NEIL K. SAWHNEY
                                     LAUREN M. DAVIS

                                     Attorneys for Plaintiffs

19

1

2
Dated: March 6, 2026                         CENTRO LEGAL DE LA RAZA

3
                                             /s/ Abby Sullivan Engen
4                                            ABBY SULLIVAN ENGEN
                                             JESSE NEWMARK
5                                            NIKOLAS DE BREMAEKER

6                                            Attorneys for Plaintiffs

7
Dated: March 6, 2026                         AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION
8

9
                                             /s/ Judy Rabinovitz
10                                           JUDY RABINOVITZ
                                             OSCAR SARABIA ROMAN
11
                                             Attorneys for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND EXTRA-RECORD DISCOVERY
Case No. 5:25-cv-5632-PCP

6011953

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

2

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that

3

concurrence in the filing of the document has been obtained from each of the other signatories to

4

this document.

5

6

/s/ Erin E. Meyer
ERIN E. MEYER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND EXTRA-RECORD
DISCOVERY
Case No. 5:25-cv-5632-PCP

6011953