UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA GARRO PINCHI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Defendants. | Case No.  25-cv-05632-PCP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD AND FOR EXTRA-RECORD DISCOVERY**<br><br>Re: Dkt. No. 118 |

In this action under the Administrative Procedure Act, a group of non-citizen plaintiffs challenge the alleged implementation of a new and unwritten "re-detention policy" under which the Department of Homeland Security (DHS) authorizes its agents to re-detain previously released non-citizens without first making individualized determinations of changed circumstances justifying such detention—that is, without determining that the non-citizens pose a flight risk or danger to the public. Plaintiffs allege that DHS began implementing the challenged policy in May 2025. Defendants deny the implementation of any re-detention policy at that time. Instead, they contend that any change in DHS agents' re-detention practices resulted from the self-executing statutory mandate of 8 U.S.C. § 1225(b)(2), which DHS interprets to require the detention of all non-citizens present in the United States without lawful admission. DHS first formalized that interpretation in an internal memorandum in July 2025. Based on their denial of any May 2025 policy change, defendants filed an administrative record that omits any documents relating to DHS's re-detention of non-citizens beginning in May 2025 and instead focuses on the agency's July 2025 interpretation of § 1225(b)(2).

Now before the Court is plaintiffs' motion to compel completion of the administrative record and for extra-record discovery. For the reasons below, the Court denies the request for

United States District Court
Northern District of California

completion of the administrative record and grants the request for extra-record discovery.

## LEGAL STANDARD

In challenges to agency action under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The "whole record" includes "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (citation modified). An agency is tasked with filing the administrative record, and the "agency's statement of what is in the record is subject to a presumption of regularity." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021). So "absent clear evidence to the contrary," a reviewing court must "presume that an agency properly designated the Administrative Record." *Id.* (citation modified).

The Ninth Circuit "ha[s], however, crafted narrow exceptions to this general rule" that permit district courts to "admit extra-record evidence: (1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Southwest Ctr. for Biological Diversity v. United States Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir.1996)). These exceptions are "narrowly construed" and the party seeking to engage in extra-record discovery bears the burden of establishing that one or more such exception applies. *Id.*

## ANALYSIS

### I.    Plaintiffs' motion to compel completion of the administrative record is denied without prejudice.

Plaintiffs first ask the Court to compel defendants to complete the current administrative record, which plaintiffs argue is plainly deficient because it (1) pertains to DHS's July 2025 memo interpreting § 1225(b)(2) rather than the alleged May 2025 re-detention policy and (2) omits any documents concerning DHS's prior policy or the process by which DHS arrived at its new re-

2

detention policy. Plaintiffs request an order for defendants "to complete the administrative record … with all non-privileged documents directly or indirectly considered by the agency in deciding to adopt the Re-Detention Policy."

As noted above, evidence that an agency "relied on documents not in the record" may rebut the usual presumption that the record submitted by the agency was properly designated. *Lands Council*, 395 F.3d at 1030 (quoting *Southwest Ctr.,* 100 F.3d at 1450). So "[w]hen it appears the agency has relied on documents or materials not included in the record," supplementation or completion of the record may be appropriate. *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Absent such completion of the record, a court's review would turn on "[a]n incomplete record," which is a "fictional account of the actual decisionmaking process." *Id.* (quoting *Home Box Office, Inc. v. Federal Commc'n Comm'n,* 567 F.2d 9, 54 (D.C. Cir. 1977)). In this circuit, courts generally find it necessary to compel completion of the record in two circumstances: (1) where "the agency applied the wrong standard in compiling the record," *Sharks Sports & Ent. LLC v. Fed. Transit Admin.*, No. 18-CV-04060, 2020 WL 511998, at *2 (N.D. Cal. Jan. 31, 2020) (collecting cases), or where plaintiffs provide clear evidence that specific materials were before the agency yet were omitted from the administrative record, *see, e.g.*, *WildEarth Guardians v. Bernhardt*, 507 F. Supp. 3d 1219, 1223 (C.D. Cal. 2020); *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 2223803, at *1 (N.D. Cal. May 22, 2019).

Plaintiffs have yet to show that completion of the administrative record is appropriate in this case. The parties' dispute about the administrative record boils down to their differing positions as to whether DHS implemented *any* May 2025 re-detention policy. Plaintiffs argue that it did and that the record must therefore contain documents related to DHS's actions in May 2025. Defendants insist that DHS did not and therefore contend that no such documents exist. As a result, defendants filed an administrative record that consists of documents related only to DHS's July 2025 memo. This is not a situation in which ordering completion of the record would be appropriate. Defendants have not applied "the wrong standard in compiling the record," for example, by only including documents that DHS directly considered but not those on which the

United States District Court
Northern District of California

agency indirectly relied. *See Sharks Sports*, 2020 WL 511998, at \*2. Rather, they applied the correct standard to the only relevant agency action they concede exists: the July 2025 memo. And because the existence of the May 2025 re-detention policy is disputed, it is not yet possible to identify specific materials that were before DHS when implementing that alleged policy but were omitted from the administrative record filed by defendants.

In these circumstances, an order to complete the administrative record would simply tell defendants to "try again." Without specific instructions as to the materials defendants must produce, such an order would do nothing to resolve the parties' dispute over the existence of the May 2025 re-detention policy and materials related to that alleged policy. The Court declines to engage in such a fruitless exercise. As discussed below, the appropriate vehicle to resolve the parties' dispute is extra-record discovery. Plaintiffs' motion to compel completion of the administrative record is therefore denied. The denial is without prejudice, however, and plaintiffs may move to compel completion of the record at a later time if the materials generated through extra-record discovery support such relief.

## II.    Plaintiffs' motion for extra-record discovery is granted.

Plaintiffs also move for extra-record discovery as to the re-detention policy. The Court agrees with plaintiffs that at least two of the circumstances the Ninth Circuit has identified as permitting extra-record discovery are present here.[1]

First, extra-record evidence "is necessary to determine whether [DHS] has considered all relevant factors and has explained its decision[s]" concerning the re-detention of non-citizens whom it previously released. *Lands Council*, 395 F.3d at 1030 (quoting *Southwest Ctr.,* 100 F.3d at 1450). To determine whether DHS sufficiently considered and explained its actions, the Court must first determine what actions DHS took and, more specifically, whether it implemented the alleged May 2025 re-detention policy. The parties dispute that threshold question, and the administrative record filed by defendants provides no answer. Extra-record discovery is

---

[1] Plaintiffs also argue that a third circumstance warranting extra-record discovery is present: bad faith. Because the first two factors apply, the Court need not address bad faith. *See J.L.*, 2019 WL 2223803, at \*3 n.2.

United States District Court
Northern District of California

therefore appropriate on this issue. Indeed, the Ninth Circuit has explained that "the relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). That is precisely what plaintiffs seek to do.

District courts regularly authorize extra-record discovery to determine whether and what agency action took place in APA cases involving disputes over the existence and scope of agency action. *See, e.g.*, *Familias Unidas por la Justicia, AFL-CIO v. United States Dep't of Lab.*, No. 2:24-CV-00637-JHC, 2024 WL 4858287, at *2 (W.D. Wash. Nov. 21, 2024), *reconsideration denied*, No. 2:24-CV-00637-JHC, 2025 WL 19037 (W.D. Wash. Jan. 2, 2025). As a court in the District of Columbia recently explained:

> [A] key question in this case is whether the alleged disclosure policy in fact exists. And, thus far, the parties' arguments and the record in this case have not clarified matters regarding the alleged policies' scope. Further, the scope of the alleged policy also impacts the scope of the harm to plaintiffs. … In such situations, a court may depart from the default APA no-discovery rule. … [T]he discovery requested here is appropriate, for it is not so much fact-finding as it is filling in gaps ... to determine what the agency actually did.

*Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Dep't of Lab.*, 349 F.R.D. 243, 248–49 (D.D.C. 2025) (citation modified), *reconsideration denied*, No. CV 25-339 (JDB), 2025 WL 1129202 (D.D.C. Mar. 19, 2025). The same reasoning applies here.

Second, to the extent the May 2025 re-detention policy exists, "[DHS] has relied on documents not in the record" in adopting that policy. *Lands Council*, 395 F.3d at 1030 (quoting *Southwest Ctr.,* 100 F.3d at 1450). As defendants conceded at the hearing on this matter, the administrative record they filed pertains only to DHS's July 2025 interpretation § 1225(b)(2), which post-dates and therefore cannot explain DHS's actions in May 2025.

The Court therefore grants plaintiffs' motion for extra-record discovery. As defendants suggest, the appropriate scope of discovery is limited to "(1) if there is a re-detention policy …; (2) what the re-detention policy is; (3) when the re-detention began; and (4) why [DHS] decided to implement the re-detention policy."

The Court will not, however, order defendants to respond to the specific requests for production in plaintiffs' motion. The parties have yet to meet and confer concerning the scope of plaintiffs' discovery requests, and the Court agrees that basic fairness requires that defendants have an opportunity to object to such requests.[2] Given the fast-approaching close of fact discovery "and the harms befalling [members of the provisional class]," however, "time is of the essence." *Nat'l TPS All. v. Noem*, No. 25-cv-05687, 2025 WL 2419266, at *2-3 (N.D. Cal. Aug. 21, 2025). Accordingly, the parties are ordered to meet and confer as soon as is feasible regarding plaintiffs' requests for production. By no later than April 20, 2026, the parties shall file either a status report confirming their agreement as to the scope of defendants' responses or a discovery letter brief setting forth any outstanding disputes. Defendants are ordered to respond to plaintiffs' requests to production within 14 days of the filing of a joint status report or the Court's ruling on any outstanding discovery dispute. As the parties agreed at the hearing, defendants shall produce a privilege log for all documents withheld based on a claim of privilege concurrent with their responses to plaintiff's requests for production.[3]

## CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' request to order completion of the administrative record. The denial is without prejudice to a future motion to compel defendants to

---

[2] Defendants are incorrect, however, that the local rules or Federal Rules of Civil Procedure entitle them to a particular period in which to object or respond to plaintiffs' discovery requests. The Court has discretion to alter deadlines and other requirements imposed by the local rules. *See United States v. Simmons*, 476 F.2d 33, 35 (9th Cir. 1973); *see also Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005) (holding that "a district court has inherent authority to waive its local rules"). And in cases for review on an administrative record, discovery proceeds as authorized by the Court, rather than under the normal sequence outlined by the federal rules. *See* Civ. L.R. 16-7 ("[I]n categories of cases that are exempted by [Rule] 26(a)(1)(B) from the initial disclosure requirements of [Rule] 26(a)(1) … [d]iscovery shall proceed … at the time, and to the extent, authorized by the Judge."); Fed. R. Civ. P. 26(a)(1)(B)(i) (exempting "action[s] for review on an administrative record"). For the reasons noted above, "[g]ood cause exists to expedite discovery—these proceedings are time sensitive, and the [Court] has already determined that [p]laintiffs will likely succeed on the merits." *Nat'l TPS All.*, 2025 WL 2419266, at *3.

[3] Even absent the parties' agreement, the Court would find it appropriate to order the production of a privilege log to determine whether any materials withheld based on the deliberative-process privilege "are in fact deliberative." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024); *see also Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019).

complete the administrative record after the conclusion of discovery concerning the existence and scope of a re-detention policy. The Court grants plaintiffs' request for extra-record discovery, orders the parties to meet and confer and to file a status report or discovery letter brief within 10 days of this order, and advises defendants to prepare for prompt document production.

**IT IS SO ORDERED.**

Dated: April 10, 2026

P. Casey Pitts
United States District Judge