UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA GARRO PINCHI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Defendants. | Case No.  25-cv-05632-PCP<br><br>**ORDER RE: PLAINTIFFS' REQUESTS FOR PRODUCTION**<br><br>Re: Dkt. No. 133 |

This putative class action under the Administrative Procedure Act centers on the alleged implementation of a new and unwritten "re-detention policy" under which the Department of Homeland Security (DHS) authorizes its agents to re-detain previously released non-citizens without first making individualized determinations of changed circumstances justifying such detention—that is, without determining that the non-citizens pose a flight risk or danger to the public. Plaintiffs allege that DHS began implementing the challenged policy in May 2025. Defendants deny the implementation of any re-detention policy at that time. To facilitate the resolution of that factual dispute, the Court granted plaintiffs' motion for extra-record discovery on April 10, 2026. In that order, the Court explained that "the appropriate scope of discovery is limited to (1) if there is a re-detention policy; (2) what the re-detention policy is; (3) when the re-detention [policy] began; and (4) why DHS decided to implement the re-detention policy." Dkt. No. 130 at 5 (cleaned up). The Court also instructed the parties to meet and confer concerning plaintiffs' requests for production and, if they could not reach agreement as to the proper scope of such requests, to file a discovery letter brief setting forth their outstanding disputes. Unable to reach agreement, the parties filed a joint letter brief on April 20, 2026.

Having reviewed the parties' joint letter brief and the exhibits thereto, the Court concludes that all but one of plaintiffs' proposed requests for production are appropriate. Plaintiffs seek

United States District Court
Northern District of California

documents that are highly relevant—either directly or circumstantially—to the existence and scope of any "re-detention policy," the timing of such policy's implementation, and the reasons therefor. And their requests are reasonably tailored to those ends. Defendants' attempt to limit discovery to the period *after* the re-detention policy's alleged implementation in May 2025 ignores the "'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015)). Documents pre-dating a policy's implementation are as or more probative of an agency's contemporaneous rationale than documents created after the fact. Defendants' proposal to produce documents related only to certain statutory provisions also misses the mark. As the Court has explained, "[p]laintiffs challenge … DHS's policy of redetaining noncitizens whom it previously released … without regard to the statutory authority DHS invokes to justify" the policy. Dkt. No. 85 at 43–44. Defendants also argue that, in requesting documents that implement or provide guidance regarding Stephen Miller's May 2025 instruction for DHS to increase immigration arrests, plaintiffs seek "materials that are plainly subject to the presidential communications privilege." But even assuming that Miller's communications might be privileged, defendants do not explain why their own documents implementing his instruction within DHS would be subject to any privilege. Most of defendants' remaining objections fail to persuade.

The Court agrees with defendants, however, that plaintiffs' third proposed request for production exceeds the proper scope of discovery. That request seeks:

> Documents sufficient to show DHS's prior policy and practice where a previous release determination was made by DHS such that DHS generally only re-arrested aliens pursuant to § 1226(b) after a material change in circumstances as described in *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

Defendants have already conceded the existence of this prior policy. *See* Dkt. No. 85 at 41 ("At the hearing on plaintiffs' motions, [defendants] confirmed that DHS's prior policy was to re-detain noncitizens only after making an individualized determination of materially changed circumstances and that DHS officers began departing from that practice *en masse* in May [2025].") As a result, plaintiffs' request seeks material that is no longer relevant to a disputed

United States District Court
Northern District of California

factual issue. In any event, the prior policy is already documented in publicly available records. *See, e.g.*, Federal Defendants' Supplemental Brief at 1, *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) (No. 17-cv-03615-VC), Dkt. No. 90 at 2; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

Defendants raise two additional issues unrelated to the scope of plaintiffs' requests for production.

First, defendants request "a minimum of 120 days" to respond to the requests for production authorized below. The request is denied. Defendants have had notice of plaintiffs' requests for production for at least six weeks, when plaintiffs first filed their motion for extra-record discovery. Two weeks ago, the Court explained that "time is of the essence" and that defendants would be required to respond to plaintiffs' requests for production within 14 days of the Court's ruling on any outstanding discovery dispute. And the Court "advise[d] defendants to prepare for prompt document production." The Court is confident that, having done so, defendants can complete production within the prescribed timeframe. If that is not the case, the Court encourages the parties to meet and confer to agree upon a rolling schedule for the completion of production by the close of fact discovery on June 5, 2026.[1]

Second, defendants ask the Court to order that plaintiffs submit initial disclosures. This request is also denied. "[A]n action for review on an administrative record" is exempt from the usual initial-disclosure requirement under Federal Rule of Civil Procedure 26(a)(1)(B)(i), unless the action includes additional claims that are not reviewed on an administrative record, *see United Farm Workers v. Noem*, No. 1:25-cv-00246, 2025 WL 1490131, at *4 (E.D. Cal. May 23, 2025), which is not the case here.

For the foregoing reasons, the Court orders defendants to produce, within 14 days of this order, the following documents:

---

[1] Defendants also note that "the parties are still negotiating their joint agreement for ESI protocols" and assert that "[t]he parties should not simultaneously be in production while still negotiating their ESI protocols." That is an argument for the parties to reach prompt agreement as to an ESI protocol, not for delaying production.

United States District Court
Northern District of California

1. All documents and communications from January 20, 2025 to present regarding DHS' policies practice, guidance, and/or standards regarding re-arrest or re-detention of aliens in removal proceedings within the area of the San Francisco Field Office.

2. All documents and communications from January 20, 2025 to present that DHS considered or relied upon in developing its re-detention policies, practice, guidance, and/or standards regarding re-arrest or re-detention of aliens in removal proceedings within the area of the San Francisco Field Office.

3. All documents and communications from January 20, 2025 to present that discuss, analyze, or otherwise reference the following:

   a. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A.1981);

   b. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017);

   c. The 1995 INS Memorandum cited at paragraph 43 of plaintiffs' amended complaint.

4. All documents and communications from January 20, 2025 to present implementing or providing guidance, directives, or instruction regarding either (1) Stephen Miller's May 2025 instruction to DHS to increase arrests within the agency or (2) the executive orders referenced in defendants' opposition to plaintiffs' motion to compel (Dkt. 125), including but not limited to Executive Order 14165.

5. All documents, communications, and other materials from January 20, 2025 to present considered or relied upon in formulating, drafting, or implementing the July 8, 2025 Broadcast Email titled Interim Guidance Regarding Detention Authority for Applicants for Admission (the "July 8 Memo").

6. The following documents relating to former or current members of the preliminarily certified class and sub-class:

   a. A-files for all former or current class members or sub-class members who have been re-arrested or re-detained from January 20, 2025 to present;

b.    All documents and communications related to the re-arrest or re-detention of any former or current class member from January 20, 2025 to present, including but not limited to Form I-200 Warrants and Form I-862 Notices to Appear;

c.    All documents and communications relating to the alleged flight risk or danger to the community of any former or current class member from January 20, 2025 to present, including but not limited to documents or communications related to criminal convictions, immigration violations, and attendance at immigration hearings and check-ins;

d.    The number of former or current class members or sub-class members who have been re-arrested or re-detained from May 2025 to present.

**IT IS SO ORDERED.**

Dated: April 23, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California