UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA GARRO PINCHI, et al., | Case No. 25-cv-05632-PCP |
| Plaintiffs, | |
| v. | **ORDER RESOLVING DISCOVERY DISPUTES** |
| MARKWAYNE MULLIN, et al., | Re: Dkt. Nos. 144, 157, 158 |
| Defendants. | |

This putative class action under the Administrative Procedure Act centers on the alleged implementation of a new and unwritten "re-detention policy" under which the Department of Homeland Security (DHS) authorizes its agents to re-detain previously released non-citizens without first making individualized determinations of changed circumstances justifying such detention—that is, without determining that the non-citizens pose a flight risk or danger to the public. Plaintiffs allege that DHS began implementing the challenged policy in May 2025. Defendants deny the implementation of any re-detention policy at that time. To facilitate the resolution of that factual dispute, the Court granted plaintiffs' motion for extra-record discovery on April 10, 2026. In that order, the Court explained that "the appropriate scope of discovery is limited to (1) if there is a re-detention policy; (2) what the re-detention policy is; (3) when the redetention [policy] began; and (4) why DHS decided to implement the re-detention policy." Dkt. No. 130 at 5 (cleaned up). After the Court granted defendants' request to extend the deadline for production of documents responsive to plaintiffs' discovery requests, *see* Dkt. No. 145, discovery closed on July 31, 2026. Before the close of discovery, the parties filed a joint letter brief asking the Court to resolve three disputes concerning defendants' withholding of documents based on contested claims of privilege. *See* Dkt. No. 144. The Court heard argument on the matter on July 30, 2026. *See* Dkt. No. 152. At the hearing, the Court ordered the parties to file supplemental

United States District Court
Northern District of California

briefs by August 7, 2026 addressing, *inter alia*, the scope of the presidential communications privilege and whether defendants' final document production altered plaintiffs' need for the documents subject to the parties' privilege disputes. The parties having done so, *see* Dkt. Nos. 157 and 158, the matter is ripe for resolution. The Court addresses each of the three privilege disputes below. In conformance with the parties' practice, the Court refers to the documents at issue using the documents' Bates number.

## I.      GOV00000026 and GOV00000027–38

Defendants seek to withhold two documents pursuant to the presidential communications privilege. The first is an email titled "Due 11/11/2025 NLT 1600 EST => ERO TASKER – 216113014," which was sent by a detention and deportation officer at Immigration and Customs Enforcement (ICE) to two listservs labelled "ero-sfr-pocs-dom-ops" and "ero-spm-pocs-dom-ops" that appear to include personnel of ICE's Enforcement and Removal Operations. That email attaches and distributes the second document: "26113014-PLCY*Draft*11_17_Weekly_RFI_EO_ Implementation.docx," which defendants describe as "a draft memorandum for White House Deputy Chief of Staff concerning the shaping and implementation of immigration policies" and "containing opinions and recommendations concerning agency policies and actions which may be taken related to Executive decisions." In support of their privilege claim, defendants submitted a declaration from Gary M. Lawkowski, Deputy Assistant to the President and Deputy Counsel to the President. On the President's behalf, Lawkowski formally asserted the presidential communications privilege on the basis that the email and memorandum were "solicited by and for the benefit of the White House." Specifically, Lawkowski attested that the communications "provide updates regarding the DHS's implementation of Presidential Actions, including Executive Orders and Memoranda," and "describe information solicited and prepared for immediate presidential advisors and their staff who have broad and significant responsibility for investigating and formulating advice to be given to the President with respect to decision-making on the subjects of immigration policy and national security." Although Lawkoski stated that "[t]he intended recipient of the [m]emorandum" was "a high-ranking White House staff member who provides support and advice to the President and his senior advisors," and that such "[m]emoranda

2

United States District Court
Northern District of California

were regularly provided to the White House," neither Lawkowski's declaration nor any other evidence in the record shows that the particular memorandum at issue here was actually received by the White House. Plaintiffs dispute that the memorandum or the email to which it was attached fall within the presidential communications privilege.

"The presidential communications privilege … preserves the President's ability to obtain candid and informed opinions from his advisors and to make decisions confidentially." *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (citation modified) (quoting *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008)). As its name implies, the privilege primarily "protects communications directly involving and documents actually viewed by the President." *Id.* (citation modified) (quoting *Loving*, 550 F.3d at 37). But "actual presidential involvement in the communication is not a prerequisite to privilege"—both the D.C. Circuit and Ninth Circuit have recognized a "limited extension of the privilege beyond the President to his immediate advisers." *In re Sealed Case*, 121 F.3d 729, 747, 749 (D.C. Cir. 1997); *see also Karnoski*, 926 F.3d at 1203. The reasons for this extension are intuitive, as the D.C. Circuit explained in first recognizing it:

> [T]he privilege itself is rooted in the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber, informed by honest advice and full knowledge. Confidentiality is what ensures the expression of candid, objective, and even blunt or harsh opinions and the comprehensive exploration of all policy alternatives before a presidential course of action is selected. … If presidential advisers must assume they will be held to account publicly for all approaches that were advanced, considered but ultimately rejected, they will almost inevitably be inclined to avoid serious consideration of novel or controversial approaches to presidential problems.
>
> Presidential advisers do not explore alternatives only in conversations with the President or pull their final advice to him out of thin air.… Rather, the most valuable advisers will investigate the factual context of a problem in detail, obtain input from all others with significant expertise in the area, and perform detailed analyses of several different policy options before coming to closure on a recommendation for the Chief Executive.… In the vast majority of cases, few if any of the documents advisers generate in the course of their own preparation for rendering advice to the President … will ever enter the Oval Office. Yet these pre-decisional documents are usually highly revealing as to the evolution of advisers' positions and as to the different policy options considered along the way. If these

United States District Court
Northern District of California

> materials are not protected by the presidential privilege, the President's access to candid and informed advice could well be significantly circumscribed.

*In re Sealed Case*, 121 F.3d at 750.

Still, the presidential communications privilege is, at its core, concerned only with "intrusion into *presidential* deliberations" that might "impede *the President's* ability to perform his constitutional duty." *Id.* at 751 (citation modified; emphasis added). An extension of the privilege too far outside the immediate sphere of presidential decisionmaking "could pose a significant risk of expanding to a large swath of the executive branch a privilege that is bottomed on a recognition of the unique role of the President." *Id.* at 752. For that reason, both the D.C. Circuit and Ninth Circuit have instructed that "the privilege should apply only to communications [1] authored or [2] solicited *and* received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *Id.*; *accord Karnoski*, 926 F.3d at 1203. And the privilege "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3 at 752.

Here, the Court agrees with plaintiffs that the presidential communications privilege does not apply to GOV00000026 or GOV00000027–38.

Where "the government seeks to assert the presidential communications privilege in regard to particular communications of" executive-branch officials who perform functions other than advising the President, the government ordinarily "bears the burden of proving that the communications occurred in conjunction with the process of advising the President." *In re Sealed Case*, 121 F.3d at 752. But defendants argue that where, as here, the White House has formally invoked the privilege, the reverse is true—a presumption of privilege applies, and the party seeking to compel production must rebut that presumption. *See Karnoski*, 926 F.3d at 1197 (describing a district court's reasoning "that the President could invoke the privilege when asked to produce documents, and that if he does so, the documents are presumed privileged"). Even assuming that the mere assertion of the privilege creates such a presumption, plaintiffs have

4

rebutted it, identifying at least two independent reasons to find that the email and memorandum do not fall within the privilege.

First and foremost, the record does not reflect that these documents were either "authored" or "solicited and received" by any White House staff with "broad and significant responsibility" for immigration policy decisions. *See id.*; *In re Sealed Case*, 121 F.3d at 752. The parties agree that the author was an ICE employee who does not work in the White House or advise the President. And defendants' privilege log states that the email (and enclosed memorandum) were sent to two listservs of ICE staffers, which defendants make no effort to dispute. In asserting the privilege over the documents, Lawkowski attested only that they had been "solicited and prepared for immediate presidential advisors" and that "[t]he intended recipient" was "a White House Deputy Chief of Staff." "[E]xtension of the [presidential communications] privilege to [agency] documents that never make their way to the Office of the President on the basis that the documents were created for the sole purpose of advising the President on a non-delegable duty is unprecedented and unwarranted." *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1116–17 (D.C. Cir. 2004). Lawkowski's declaration includes only a general statement that memoranda like GOV00000027–38 "were regularly provided to the White House," but it does not attest that GOV00000026 or GOV00000027–38 were ever received by the White House, nor even that *most* similar memoranda are ultimately provided to the White House. *Cf. Elec. Frontier Found. v. Cent. Intel. Agency*, No. 09-CV-3351, 2013 WL 5443048, at \*19 (N.D. Cal. Sept. 30, 2013) (concluding that presidential advisers "solicited and received" reports where an executive order required the advisers to review *all* such reports and to do so at regular intervals). Given that Lawkowski's declaration was filed after plaintiffs had already advised defendants that the presidential communications privilege is limited to documents solicited *and* received by presidential advisers, Lawkowski's refusal to attest that the documents here were received by the White House is conspicuous. So too is defendants' failure to identify any other evidence of such receipt, despite having three opportunities to do so in the letter brief, at the hearing, and in their supplemental brief. Taken together, the evidence strongly suggests that no presidential adviser has received GOV00000026 or GOV00000027–38 and thus that the documents are not privileged.

Second, the fact that the email and memorandum contained in GOV00000026 or GOV00000027–38 were circulated to two listservs within ICE and thus "were distributed to more than just the President's closest advisors" undercuts defendants' claim of privilege. *Knight First Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, 560 F. Supp. 3d 810, 829 (S.D.N.Y. 2021) (explaining that prior disclosure of documents beyond the President's immediate advisers suggested that further disclosure of the documents would not intrude on presidential decisionmaking); *see also Ctr. for Effective Gov't v. Dep't of State*, 7 F. Supp. 3d 16, 25 (D.D.C. 2013) (rejecting "the extension of the … privilege to presidential communications distributed and implemented widely throughout the Executive Branch").[1]

In sum, the record does not suggest that disclosure of GOV00000026 or GOV00000027–38 would "be revelatory of [the President's] deliberations or … pose a risk to the candor of his advisers." *See In re Sealed Case*, 121 F.3d at 752. And because these communications do not directly "reflect[] presidential decision making and deliberations," *Karnoski*, 926 F.3d at 1203 (citation modified), the presidential communications privilege does not apply. The Court therefore need not address whether plaintiffs have demonstrated a need for the communications that could overcome the privilege. Nor must the Court review the communications *in camera* to excise non-relevant material. *See In re Sealed Case*, 121 F.3d at 745 (explaining that a court should proceed to that step if it finds that the privilege applies and that "an adequate showing of need has been demonstrated").

Defendants argue that, "if [the] [C]ourt rules that the presidential communications privilege alone is not a sufficient basis on which to withhold the document[s]," the Court should afford "an opportunity to raise more particularized claims of privilege." *See In re Sealed Case*, 121 F.3d at 745. Yet the only additional claim of privilege that defendants argue may apply is the

---

[1] Plaintiffs also argue that the title of the email, which includes "EO_Implementation," suggests that the email and memorandum described efforts to implement a preexisting presidential decision, rather than involving predecisional deliberations. Even if that is true, the presidential communications privilege "covers documents reflecting presidential decision making …, regardless of whether the documents are predecisional or not." *Karnoski*, 926 F.3d at 1203 (citation modified). So the fact that the documents at issue here may not have been predecisional does not necessarily negate a claim of privilege.

6

deliberative process privilege. Defendants expressly waived any assertion of the deliberative process privilege as to GOV00000026 and GOV00000027–38. Although defendants insist that their waiver of that privilege does not preclude the President's separate assertion of the privilege, they cite no authority for that proposition. Nor does it make any sense. Unlike the presidential communications privilege, which stems from "the unique role of the President," the deliberative process privilege is "more general" and broadly protects predecisional and deliberative material at all levels of the executive branch. *See id.* at 751–52. So there is little reason to think that the White House has any claim of deliberative process privilege that is unique or separate from the now-waived privilege claim of DHS and ICE staff, particularly given the lack of evidence that the White House ever received or relied upon the documents at issue. *Cf. State v. Su*, 121 F.4th 1, 18 (9th Cir. 2024) (R. Nelson, J., concurring) (explaining that the Executive Branch is generally to be treated as "unitary" because "Article II 'makes a single President responsible for the actions of the Executive Branch'—whether they stem from the White House or a federal agency" (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496 (2010))).

Accordingly, defendants are ordered to produce GOV00000026 and GOV00000027–38 to plaintiffs by no later than August 14, 2026.

## II.     GOV00000847–48

Defendants also seek to withhold GOV00000847–48 based on the deliberative process privilege. As noted above, the deliberative process privilege is broader in scope but weaker in effect than the presidential communications privilege. *Karnoski*, 926 F.3d at 1206. It protects "predecisional" and "deliberative" documents that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]" *Id.* at 1203–04 (citation modified). Here, defendants assert the privilege over "a draft-stage document including edits and comments by agency employees reflecting their opinions, recommendations, and advice regarding a pre-decisional strategic plan to meet the goal of 1 million removals." Because such pre-decisional policy deliberations fall within the heartland of the deliberative process privilege, the Court concludes that at least some of the material defendants seek to withhold is presumptively privileged.

United States District Court
Northern District of California

The Court nevertheless concludes that *in camera* review of GOV00000847–48 is warranted here for two reasons. *See Oceana, Inc. v. Ross*, No. 19-CV-03809, 2020 WL 2128853, at *2 (N.D. Cal. May 5, 2020) (explaining that "under some circumstances, pre-decisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and capricious," and "the appropriate way to address these circumstances is through in camera review").

First, "the deliberative process privilege does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." *Karnoski*, 926 F.3d at 1204 (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)). Here, defendants have withheld GOV00000847–48 in its entirety. Yet defendants have provided only a conclusory statement that the document "is entirely deliberative," which does not alone suffice to remove the possibility that the document contains non-deliberative factual material that could be reasonably segregated from any privileged information. *See Cal. Native Plant Soc'y v. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal. 2008) ("Conclusory statements that a document is deliberative do not suffice.").

Second, even where the deliberative process privilege applies, a party seeking to compel production may overcome the privilege by showing that their "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Karnoski*, 926 F.3d at 1206 (quoting *FTC v. Warner Comms. Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). Courts "balance four factors in determining whether this exception to the deliberative process privilege is met: '1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Id.* (quoting *Warner*, 742 F.2d at 1161).

As to the first factor, the core factual question at issue in this action, and about which the Court authorized discovery, is whether and why DHS implemented a policy in May 2025 of re-arresting and re-detaining noncitizens without first finding that their circumstances had materially changed since their prior release. A memorandum discussing DHS's internal proposals for how to

significantly increase removals in the months preceding May 2025 is likely to be highly relevant to the existence of such policy. Defendants argue otherwise on the basis that removal is distinct from arrest and detention. But it is common sense that civil immigration arrests and detention serve the ultimate end of removal—indeed, the government itself has expressly linked increased arrests to increased removals. For example, then-Secretary of Homeland Security Kristi Noem stated in August 2025 that the intent of certain DHS detention policies was to signal to noncitizens that "if they are detained, they'll be removed." *See* Dkt. No. 38 ¶ 64 (quoting Nicole Sganga, *Kristi Noem says "Alligator Alcatraz" to be model for ICE state-run detention centers*, CBS News, Aug. 4, 2025, https://www.cbsnews.com/news/alligator-alcatraz-modelkristi-noem-homeland-security/).[2]

As to the second factor, plaintiffs' counsel has attested that they "searched for documents related to GOV00000847" and "identified two other documents with the same file name, both of which are currently withheld pursuant to [d]efendants' [other] claims of [d]eliberative [p]rocess [p]rivilege." Defendants have not disputed that the information in the memorandum is not otherwise available to plaintiffs. Further, because "[t]he evidence sought is primarily, if not exclusively, under [d]efendants' control, and the government—the Executive—is a party to and the focus of the litigation," both the "second and third criteria favor [p]laintiffs." *Id.*

As to the fourth factor, the Ninth Circuit has noted that "[d]ocuments involving the most senior executive branch officials … may require greater deference" to avoid chilling executive-branch decisionmaking. *Karnoski*, 926 F.3d at 1206. But nothing in the record suggests that the memorandum in GOV00000847–48 involve senior officials—defendants describe the memorandum only as including "edits and comments by agency employees" of an unspecified level. And the declaration submitted by defendants in support of their privilege claim does not identify any specific harms that might result from the disclosure of the information in the

---

[2] Former Secretary Noem's statement is a matter of public record and an official statement of which the Court may take judicial notice. *See Graybill v. Wells Fargo Bank, N.A.*, 953 F. Supp. 2d 1091, 1093 n.2 (N.D. Cal. 2013); *see also Heath v. Wallace*, 138 U.S. 573, 584 (1891) ("We think we may take judicial notice of such official statements made by the head of one of the branches of the executive department.").

memorandum, instead offering only general and speculative concerns that disclosure "could chill open and candid discussion."

The Court concludes that, on balance, the *Warner* factors suggest a strong possibility that plaintiffs have a sufficient need to overcome the presumptive deliberative process privilege as to at least some of the information in GOV00000847–48. Defendants are therefore ordered to transmit GOV00000847–48 to the Court's courtroom deputy by no later than August 14, 2026.

## III.    GOV00000162–163

Finally, the parties dispute whether defendants may withhold GOV00000162-163 under the attorney-client privilege. According to plaintiffs, GOV00000162-163 is part of an email thread in which the Chief of Staff for ICE's San Francisco field office forwarded communications from counsel to a group of non-attorney ICE employees. Thereafter, the non-attorney employees exchanged several emails without copying or otherwise including counsel on the communications. Plaintiffs concede that the communications from counsel are privileged but argue that the subsequent emails among non-attorney employees are not.

Defendants have withheld the emails on the basis that they "contain communications from ICE employees that discuss legal advice from attorneys at ICE." If that description is accurate, the emails fall within the scope of the attorney-client privilege's protections for non-attorney communications that "discuss or transmit legal advice given by counsel." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) (quoting *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011)). Plaintiffs appear to recognize as much. But they argue that "to the extent the communications discuss operational decisions stemming from legal advice—rather than transmitting the legal advice itself—they are not privileged." Plaintiffs therefore request that the Court either compel disclosure of the emails or review the emails *in camera* to assess defendants' privilege claim. Plaintiffs do not, however, offer a convincing reason to think that that the emails discuss operational decisions rather than the legal advice itself.

Plaintiffs argue that defendants have not submitted any declaration attesting that the emails disclose the advice of counsel. *See Laatz v. Zazzle, Inc.*, No. 22-cv-04844, 2024 WL 3849348, at *2 (N.D. Cal. Aug. 15, 2024) (granting *in camera* review where a privilege declaration was not

United States District Court
Northern District of California

supported by a declaration). But a declaration is not required—a party may use other means to substantiate a claim of privilege. *See id.*; *see also Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("Briefs, declarations or other proof may establish the purpose of the communication or the specific role of the sender and each individual recipient."). And the face of the document itself may sufficiently support a claim of privilege. *See EEOC v. Safeway Store, Inc.*, No. 00-CV-3155, 2002 WL 31947153, at *3 (N.D. Cal. Sept. 16, 2002). Here, defendants explain in the letter brief that the emails at issue disclose the advice of counsel, and the face of the document clearly supports that claim. Per the privilege log, the email chain is titled "RE: Class Decision - Pinchi et al v. Noem et al, CD Cal 5:25-cv-5632-PCP - Next Steps" and was initiated by counsel in the days immediately following the Court's order granting provisional class certification and staying the alleged re-detention policy. The natural inference from this information is that the email chain's sole purpose was to notify ICE employees about the fact of the Court's order and to convey the advice of counsel as to how to comply with the order.

Plaintiffs next argue that, although the email chain concededly began with counsel disclosing privileged legal advice, the fact that later emails in the chain involved only non-attorney employees supports an inference that the conversation topic changed to discussing operational decisions. The mere fact that attorneys were not directly party to a communication is not enough to assume that the communication is not privileged where, as here, context suggests that the communication primarily discussed counsel's legal advice and the privilege log reflects that the communication's purpose was "soliciting and/or providing legal advice concerning litigation and agency guidance." *See Dolby Lab'ys*, 402 F. Supp. 3d at 406 (noting that communications between non-attorneys are privileged where the employees "discuss or transmit legal advice given by counsel").

Plaintiffs also contend that the subject line of the email chain suggests that the non-attorney employees discussed operational decisions, not just legal advice, because the subject line refers to "Next Steps." But by all accounts, the email chain was started by attorneys, so the subject line was almost certainly authored by those same attorneys. In context, then, the reference to "Next Steps" very likely refers to the advice of counsel as to how to comply with this Court's stay

United States District Court
Northern District of California

order, rather than referring to non-attorney employees' own operational decisions.

Accordingly, the Court finds that defendants have properly withheld GOV00000162-163 based on the attorney-client privilege. Because plaintiffs have not demonstrated a factual basis adequate to support a good-faith belief that the emails they seek contain non-privileged information, the Court declines their request to perform *in camera* review of the emails. *See Universal Connectivity Techs. Inc. v. HP Inc.*, No. 24-CV-04097, 2026 WL 686592, at *2 (N.D. Cal. Mar. 11, 2026) (explaining the showing required for *in camera* review)

## IV.    Conclusion

For the foregoing reasons, plaintiffs' request to compel production of GOV00000026 and GOV00000027–38 is GRANTED, and defendants shall produce those documents by no later than August 14, 2026. Plaintiffs' request for *in camera* review of GOV00000847-48 is also GRANTED, and defendants shall transmit that memorandum to the Court's courtroom deputy by no later than August 14, 2026. Plaintiffs' request to compel production or to conduct *in camera* review of GOV00000162-163 is DENIED.

**IT IS SO ORDERED.**

Dated: August 11, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California