UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRESCIA GARRO PINCHI, et al.,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Defendants. | Case No. 25-cv-05632-PCP<br>**ORDER RESOLVING REMAINING DISCOVERY DISPUTES**<br>Re: Dkt. Nos. 169, 173, 185 |

In this Administrative Procedure Act action, a group of non-citizen plaintiffs challenge the alleged implementation of a new and unwritten "re-detention policy" pursuant to which the Department of Homeland Security (DHS) authorizes its agents to re-detain previously released non-citizens without first making individualized determinations of changed circumstances justifying such detention—that is, without determining that changed circumstances now demonstrate that the non-citizens pose a flight risk or danger to the public. Plaintiffs allege that DHS began implementing the challenged policy in May 2025. Defendants deny the implementation of any re-detention policy at that time. To facilitate the resolution of that factual dispute, the Court granted plaintiffs' motion for extra-record discovery on April 10, 2026. In that order, the Court explained that "the appropriate scope of discovery is limited to (1) if there is a re-detention policy; (2) what the re-detention policy is; (3) when the re detention [policy] began; and (4) why DHS decided to implement the re-detention policy." Dkt. No. 130 at 5 (cleaned up). The Court also instructed the parties to meet and confer concerning plaintiffs' requests for production and, if they could not reach agreement as to the proper scope of such requests, to file a discovery letter brief setting forth their outstanding disputes. Unable to reach an agreement, the parties filed a joint letter brief. The Court granted all but one of plaintiffs' proposed requests for production. *See* Dkt. No. 134.

United States District Court
Northern District of California

Defendants subsequently produced a number of records while asserting privilege over a substantial number of other documents. Plaintiffs sent defendants a letter challenging some assertions of privilege on August 21, 2026. *See* Letter Brief Regarding Plaintiffs' Requests for Production, Dkt. No. 162. Plaintiffs and defendants filed separate briefs related to the outstanding disputes. *See* Dkt. Nos. 162, 163, 164, 166. The Court ordered the parties to continue to meet and confer regarding the outstanding disputes and to submit a revised joint letter brief setting forth the remaining scope of their dispute and their respective positions. *See* Dkt. No. 167. The parties did so. *See* Dkt. No. 168. After a hearing on those remaining disputes, the Court ordered production of certain documents, transmission of other documents to the Court for *in camera* review, and submission of the privilege logs to the Court for the documents that remained in dispute. *See* Dkt. No. 173.

Following *in camera* review of the documents and review of the privilege logs, the Court ordered production of certain documents but determined that defendants had properly withheld others. *See* Dkt. No. 185. The Court also ordered defendants to submit documents for *in camera* review that had been omitted in their initial transmission. *Id.* Lastly, the Court ordered defendants to transmit for *in camera* review the documents over which they assert the presidential communications privilege because the Court was unable to determine whether defendants' assertions of privilege were warranted without reviewing the documents themselves. This order addresses the remaining privilege disputes.

## I. Documents for Which Defendants Assert the Attorney Client Privilege

Plaintiffs seek production of documents that contain communications with Immigration and Customs Enforcement (ICE) in-house counsel at the Office of the Principal Legal Adviser (OPLA). Defendants assert attorney client privilege over those documents. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures," *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997)), but "[t]he fact that a person is a lawyer does not make all communications with that person privileged," *id.* (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)). "Generally,

'a party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication.'" *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (alteration in original) (quoting *Ruehle*, 583 F.3d at 607). Courts "apply an 'eight-part test' to determine whether the information in dispute is covered by the attorney-client privilege." *Id.* The Ninth Circuit has outlined those eight elements as follows:

> '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'

*Id.* (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). In the Ninth Circuit, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications." *Id.* (quoting *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021)). "Under the primary-purpose test, 'courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or [other non-legal] advice.'" *Id.* (alteration in original) (quoting *Grand Jury*, 23 F.4th at 1091). Following *in camera* review of the disputed documents, the Court makes the following determinations:

GOV-00057304 and GOV-00057424 involve legal advice being sought from a legal advisor in their capacity as such, the communications relate to that purpose and were made in confidence, the communications are protected from disclosure, and the privilege has not been waived. *Greer*, 127 F.4th at 1224; *Graf*, 610 F.3d at 1156. On review, it is also clear that legal advice was the primary purpose of the documents. *Greer*, 127 F.4th at 1224; *Grand Jury*, 23 F.4th at 1092. As a result, plaintiffs have not overcome the attorney client privilege, and defendants have properly withheld GOV-00057304 and GOV-00057424.

With respect to GOV-00054670, the Court concludes that although the communications involve attorneys, no legal advice of any kind was being offered. *See Grand Jury*, 23 F.4th at 1092 (noting that "the attorney-client privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege'" (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976))). The Court further concludes that legal advice was not a

primary purpose of any of the communications. *Greer*, 127 F.4th at 1224, *In re Grand Jury*, 23 F.4th at 1092. There is no indication that the communications were the result of OPLA's need to give legal advice, but even if they were, under the primary purpose test, defendants "must do more than show the 'dual-purpose communication was made 'because of' the need to give or receive legal advice.'" *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1179 (9th Cir. 2025*), cert. granted in part*, 146 S. Ct. 2812 (2026) (quoting *Grand Jury*, 23 F.4th at 1092). As a result, defendants have improperly withheld GOV-00054670 and plaintiffs' request to compel production of those documents is granted.

**II. Documents for Which Defendants Assert the Deliberative Process Privilege**

Plaintiffs seek production of various documents for which defendants assert the deliberative process privilege. The deliberative process privilege "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Karnoski v. Trump*, 926 F.3d 1180, 1203 (9th Cir. 2019) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). And "[f]or the deliberative process privilege to apply, the material must be 'predecisional' and 'deliberative.'" *Id.* at 1204 (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).

The Ninth Circuit has "held that '[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure.'" *Id.* at 1206 (quoting *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)). The court "balance[s] four factors in determining whether this exception to the deliberative process privilege is met: '1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.'" *Id.* (quoting *Warner*, 742 F.2d at 1161). To support their assertions of the deliberative process privilege, plaintiffs provided a declaration from Samuel J. Olson, Acting Deputy Executive Associate Director for Enforcement and Removal Operations (ERO) at ICE. *See* Dkt. No. 168. Following *in camera* review of the documents, the Court makes the following determinations:

GOV-00055346, GOV-00139700, GOV-00139699, and GOV-00139361 contain no non-deliberative content, and each document is subject to the deliberative process privilege.[1] To the extent that any relevant information is contained in the documents, it is reasonably available to plaintiffs from other sources. The government's interest in "full and frank communication," *Karnoski*, 926 F.3d at 1206, outweighs any interest the plaintiffs have in the information contained in the documents. As a result, plaintiffs have not overcome the deliberative process privilege, and defendants have properly withheld GOV-00055346, GOV-00139700, GOV-00139699, and GOV-00139361.

## III. Documents for Which Defendants Assert the Presidential Communications Privilege

Plaintiffs seek production of various documents for which defendants assert the presidential communications privilege. The presidential communications privilege "protects 'communications directly involving and documents actually viewed by the President,' as well as documents 'solicited and received' by the President or his 'immediate White House advisers [with] ... broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Karnoski*, 926 F.3d at 1203 (alteration in original) (quoting *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1114 (D.C. Cir. 2004)). "[T]he presidential communications privilege is, at all times, a qualified one, so that an expansion to cover communications of presidential advisers which do not directly involve the President does not mean that these communications will become permanently shielded; they will remain available upon a sufficient showing of need." *In re Sealed Case*, 121 F.3d at 751. "[C]ommunications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President." *Id.* at 752. "The privilege must also extend to communications authored or received in response to a solicitation by members of a presidential adviser's staff" but to "limit [the] risk" of

[1] Defendants assert only the presidential communications privilege over GOV-00139361, but defendants assert the deliberative process privilege over GOV-00139700 and GOV-00139699. These three documents are different versions of the same email thread, so the Court assumes that defendants intended to assert the deliberative process privilege over GOV-00139361 and construes the assertion of privilege as such.

overextending that privilege, "the presidential communications privilege should be construed narrowly." *Id.* "Not every person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the privilege" and, "[i]n particular, the privilege should not extend to staff outside the White House in executive branch agencies." *Id.* Critically, "[t]he presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Id.*

To support their assertions of the presidential communications privilege, defendants provided a declaration from Gary M. Lawkowski, who serves as Deputy Assistant to the President and Deputy Counsel to the President. *See* Dkt. No. 168. Following *in camera* review of the documents, the Court makes the following determinations:

GOV-00071657, GOV-00028115, GOV-00051924, GOV-00123795, GOV-00028513, GOV-00028115, GOV-00146330, GOV-00146395, GOV-00146396, GOV-00146397, GOV-00146398, GOV-00146399, GOV-00146400, GOV-00146401, GOV-00139272, GOV-00139283, GOV-00139285, GOV-00139286, GOV-00139287, GOV-00139705, GOV-00139706, GOV-00139707, GOV-00139708, GOV-00139709, GOV-00139710, GOV-00145914, GOV-00125571, GOV-00145708, GOV-00145709, GOV-00145913, GOV-00118889, GOV-00118847, and GOV-00052009 involve only intra-agency communications and contain no communications with any presidential advisor. Because the presidential communications privilege does "not extend to staff outside the White House in executive branch agencies," *In re Sealed Case*, 121 F.3d at 752, and all of the documents involve communications exclusively among agency staff, the presidential communications privilege does not apply. As a result, defendants have improperly withheld those documents, and plaintiffs' request to compel production of those documents is granted.

With regard to GOV-00054651, GOV-00124457, GOV-00145806, and GOV-00124459, the email threads were originally started by a presidential advisor, but the advisor sent only the first email and did not remain on the threads. The subsequent emails involve agency staff gathering information and data. Given that the presidential communications privilege does not apply to communications to or from agency staff, *In re Sealed Case*, 121 F.3d at 752, defendants



United States District Court
Northern District of California

United States District Court
Northern District of California

have improperly withheld these documents, and plaintiffs' request to compel production of GOV-00054651, GOV-00054651, GOV-00124457, GOV-00145806, and GOV-00124459 is granted.

With regard to GOV-00145949, the email thread was started by a presidential advisor, and he remained on the thread for several of the subsequent emails. Given that the presidential communications privilege does apply to communications to or from agency staff, *In re Sealed Case*, 121 F.3d at 752, defendants have improperly withheld the remainder GOV-00145949, and plaintiffs' request to compel production of GOV-00145949 is granted.

GOV-00053248, GOV-00053266, GOV-00053267, GOV-00124156, involve only intra-agency communications. There is mention of directives from presidential advisors, or at least implication that directives were coming from presidential advisors, but those advisors are not part of the email threads. In any case, the presidential communications privilege does "not extend to staff outside the White House in executive branch agencies." *In re Sealed Case*, 121 F.3d at 752. As a result, defendants have improperly withheld GOV-00053248, GOV-00053266, GOV-00053267, GOV-00124156, and plaintiffs' request to compel production of those documents is granted.

GOV-00053261 and GOV-00053335 are both documents titled "federal coordination plan." The declaration from Gary M. Lawkowski does not include reference to GOV-00053261 or GOV-00053335, so defendants' reasons for asserting the presidential communications privilege over the documents is unclear. The documents appear to be ICE internal documents, and in no way involve communications between the agency and any presidential advisor, nor is there any indication that the documents were prepared by or for the White House. As a result, defendants have improperly withheld GOV-00053261 and GOV-00053335, and plaintiffs' request to compel production of those documents is granted.

* * *

For the foregoing reasons, the Court orders the following:

1. By October 16, 2026, defendants must produce GOV-00054670, which was improperly withheld under the attorney client privilege.
2. By October 16, 2026, defendants must produce GOV-00053248, GOV-00053266, GOV-

00053267, GOV-00028115, GOV-00051924, GOV-00124156, GOV-00123795, GOV-00028513, GOV-00028115, GOV-00146330, GOV-00146395, GOV-00146396, GOV-00146397, GOV-00146398, GOV-00146399, GOV-00146400, GOV-00146401, GOV-00139272, GOV-00139283, GOV-00139285, GOV-00139286, GOV-00139287, GOV-00139705, GOV-00139706, GOV-00139707, GOV-00139708, GOV-00139709, GOV-00139710, GOV-00145914, GOV-00125571, GOV-00145708, GOV-00145709, GOV-00145913, GOV-00118889, GOV-00118847, GOV-00052009, GOV-00053261, GOV-00054651, GOV-00124457, GOV-00145806, GOV-00124459, GOV-00145949, and GOV-00053335, which were improperly withheld under the presidential communications privilege.

**IT IS SO ORDERED.**

Dated: October 14, 2026

P. Casey Pitts
United States District Judge